# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Duke and King Acquisition Corp. | Case No. 10-38652 |
| | Chapter 11 Case |
| Debtor. | |

| | |
|---|---|
| Duke and King Missouri, LLC | Case No. 10-38653 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Missouri Holdings, Inc. | Case No. 10-38654 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Real Estate, LLC | Case No.10-38655 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| DK Florida Holdings, Inc. | Case No. 10-38656 |
| Debtor. | Chapter 11 Case |

**NOTICE OF HEARING AND JOINT MOTION FOR AN EXPEDITED HEARING AND FOR AN ORDER AUTHORIZING DEBTORS TO PAY PREPETITION WAGES AND EMPLOYEE BENEFITS AND AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

TO:    The Office of the United States Trustee and Other Parties in Interest as Specified in Local Rule 9013.

1.    The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move this Court for the relief requested below and give notice of hearing.

2.    The Court will hold a hearing on this Motion at a time and location that have not been determined.  The Debtors will request that the Court hold the hearing on December 7, 2010, in the Federal Courthouse in either Minneapolis, Minnesota or St. Paul, Minnesota.  The Debtors will provide separate notice of the time and location of the hearing.  Alternatively, parties-in-interest may contact Debtors' counsel for hearing information.

4843171

3.      Local Rule 9006-1(b) provides deadlines for responses to this Motion.  However, given the expedited nature of the relief sought, the Debtors do not object to written responses being served and filed immediately prior to the hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Rule 5005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 1070-1 and 1073-1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' chapter 11 cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The petitions commencing these chapter 11 cases were filed on December 4, 2010 (the "Petition Date").  The cases are currently pending in this Court.

5.      This Motion arises under 11 U.S.C. §§ 105(a), 363, 549, and 507(a)(3) and (4), and is filed pursuant to Local Rules 9013-1 through 3.  Expedited relief is requested pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(d).  Notice of the hearing on this Motion is provided pursuant to Bankruptcy Rule 2002(a) and Local Rules 9013-3 and 2002-1(b).  The Debtors request an order of this Court granting an expedited hearing and authorizing them to pay and continue prepetition accrued and unpaid employee expense wages and benefits in an amount not to exceed the statutory cap established by sections 507(a)(4) and (5) of the Bankruptcy Code.

## BACKGROUND

6.      On the Petition Date, each of the Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").  The Debtors have continued in possession of their property and are managing their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the Petition Date, the Debtors operate 92 separate franchise locations: 39 in Minnesota; 28 in Missouri; 17 in Illinois; 12 in Wisconsin; 3 in Iowa; and 1 in Kansas.

8.      Duke and King Acquisition Corp. ("D&K Acquisition") was formed in November 2006, to acquire 88 Burger King franchise restaurants from the Nath Companies ("Nath").  The acquisition was funded by approximately $11.2 million in equity contributions from Kinderhook Capital Fund I and $17 million of debt provided by Bank of America, N.A. ("BofA").  At the time of the acquisition, Burger King Corporation ("BKC") and Kinderhook Industries ("Kinderhook") recognized that the stores being purchased were significantly behind on both successor and CAPEX commitments.  Notwithstanding the significant CAPEX requirements, D&K Acquisition decided to move forward with the Nath acquisition, based in part, on guidance from BKC that there would be opportunities in the near future to bolster its platform with additional acquisitions. The Nath acquisition also included 12 restaurants in Florida which D&K Acquisition planned on divesting shortly after closing the transaction so that it could focus on its core Midwest market.[1]

9.      Shortly after the Nath acquisition, D&K Acquisition formed Duke and King Missouri, LLC ("D&K Missouri" and with D&K Acquisition, the "Company") to purchase 24 restaurants in Missouri, known at the time as the Swisshelm Group ("Swisshelm").  Like the Nath restaurants, the Swisshelm assets were in poor condition and were also in need of significant operational and capital improvements.  For example, in the first six months following the Swisshelm acquisition, 20 of the 23 regional managers and three of the four area managers were replaced in that market.  This high turnover, while ultimately improving on-going operations, initially hurt productivity and added significant replacement and training costs.

---

[1] In July 2007, D&K Acquisition sold four of the 12 Florida restaurants purchased as part of the Nath acquisition. Ten months later, BKC acquired seven of the Company's remaining Florida locations and converted them to corporate stores.

Additionally, the CAPEX required to bring the stores to acceptable conditions exceeded original estimates by over 140%. If D&K Missouri had not purchased the Swisshelm locations, there was a high probability that the majority of the 24 stores would have been closed or converted to another concept.

10.     After the Swisshelm acquisition, the Company continued to seek additional growth opportunities in an effort to "average in" low CAPEX and "clean EBITDA" to bolster the overall strength and value of its portfolio.  In May 2007, the Company signed a letter of intent to purchase 66 restaurants from Simmonds Restaurants in the Omaha and Des Moines markets. However, BKC did not approve the Company's purchase of the Omaha and Des Moines markets. Unfortunately, this development set back the Company's business plan and handcuffed its ability to "average in" better-conditioned stores with advantageous operating results.  Its plan to use cash flow from stronger locations to fund CAPEX at older restaurants could not, as a result, work.  The Company was left with increasingly troubled assets requiring high CAPEX dollars without the ability to leverage better performing stores.

11.     The need to spend CAPEX dollars has been a constant drain on the Company. Since its inception, the Company has reinvested all of its excess cash flow into the restaurants and spent over $8.75 million on CAPEX ($4.0 million in 2007, $1.9 million in 2008, $2.3 million in 2009 and approximately $600 thousand year-to-date in 2010).  Moreover, to meet additional CAPEX obligations, the Company performed sale-leasebacks of all of its real property holdings – 10 stores in 2008 and 3 stores in 2009 — generating approximately $13.3 million.  Of that amount, approximately $10.5 million was used to pay down debt and approximately $2.8 million was reinvested in the restaurants.

12.     The Company's chapter 11 filing is driven by both macroeconomic factors and the Company's acute short-term liquidity problems.  The Company finds itself in a situation in

which its growth opportunity is limited by economic reality and its agreements with Burger

King.  The prolonged recession has greatly reduced customer traffic in its stores, driving down

cash flow.  In short, the Company's year-to-date financials have fallen short of projections.  For

the eleven periods[2] ended November 4, 2010, sales are $81.7 million, which is $5.4 million short

of projections.   Through this fiscal year, the BKC system has experienced same store sales

declines for the past several quarters.  Over the past four periods, the Company has experienced

sales declines of 4.4% (period 8), 10% (period 9), 2.7% (period 10), 5.2% (period 11) and 11.1%

(period 12 to date).  Furthermore, through period eleven, the Company's same store sales are

down 4.0% from 2009.   Restaurant margins have come under increased pressure with the

impacts of winter weather, value promotions such as the "$1 Double Cheeseburger" and

fluctuations in commodity prices, which have contributed to a decline in EBITDAR (Earnings

before Interest, Taxes, Depreciation, Amortization and Rent) of over 9% in the past two years.

Although the Company continues to maintain a high level of operating efficiency, and 90% of its

restaurants have received "excellent" or "good" ratings from BKC, operating margins have not

been sufficient to meet the restaurants' required CAPEX.

13.     Earlier this year, as it addressed its liquidity problems, the Company was sued by

BKC for breach of post-termination obligations under certain of BKC's franchise agreements.

The litigation was resolved by the Company executing a Limited License Agreement with BKC,

which, among other things, requires a sale of 52 of the Company's franchise locations on or

before December 30, 2010.   After that date, the Company's rights under 52 of their BKC

franchise agreements will terminate, absent an extension from BKC.

14.     Since October, 2010, the Company has been working on a short-term solution of

its liquidity issues with BKC, as well as a long-term plan that would align the Company with

---

[2] The Company uses "periods" rather than "months" in its financial reporting.  A "period" is equal to 4 weeks.

BKC's new vision for improving the Burger King brand name.  The Company also reached out to BofA to discuss the Company's financial condition.  The Company, BKC and BofA (and their respective advisors) met several times leading up to the Petition Date.  As a result of these meetings, the parties agreed to a deferral of principal and interest payments to BofA and the deferral of franchise, advertising and royalty fees to BKC.  Among other conditions, and similar to the requirement of the Limited License Agreement, the Company was required to engage the services of an investment banker to market the assets and sell the business.  The Company has retained an investment banker who has commenced a professional process to find a buyer or buyers for the business in order to maximize the value of the enterprise.  Through the parties' collaborative efforts, the Company was able to continue to operate until a consensual long-term deal could be finalized.  However, the Company's acute cash needs — obligations to BofA, BKC, landlords and vendors — coupled with lagging revenues and the beginning of the Company's slow season, necessitated a filing under chapter 11 of the Bankruptcy Code in order to preserve the value of the business.  The filing will also provide time and liquidity to market and sell the business.

15.    D&K Acquisition and its subsidiaries included in the chapter 11 filing are all borrowers under the credit facility with BofA.  D&K Acquisition and its subsidiaries fall into the following categories:

**Operating Companies**

16.    Duke and King Acquisition Corp.  Headquartered in Burnsville, MN, it is a Delaware corporation and 100% owner of both Duke and King Missouri Holdings, Inc. and DK Florida Holdings, Inc.  It employs senior executive management and operates restaurants in Minnesota, Wisconsin, Iowa and Illinois.

17.    <u>Duke and King Missouri, LLC</u>.    Headquartered in Burnsville, MN, it is a Delaware limited liability company and operates restaurants in Missouri and Kansas, but is wholly owned by Duke and King Missouri Holdings, Inc.

**Holding Companies**

18.    <u>Duke and King Missouri Holdings, Inc.</u>  It is a Delaware corporation holding company that owns 100% of D&K Missouri.

19.    <u>DK Florida Holdings, Inc.</u>  It is a Delaware corporation that serves as a holding company that formerly owned 100% of DK Florida, LLC (which was cancelled in September 2009).

20.    <u>Duke and King Real Estate, LLC.</u>  It is a Delaware limited liability company that used to own real estate in fee for certain locations, but divested itself of those holdings as of 2009.

21.    A chart depicting the Debtors' organizational structure is as follows:



---

[1] Duke and King Acquisition Corp. is 100% owned by Duke and King Holdings, Inc.

22.    The Debtors' primary secured financing is through a credit facility with BofA, with obligations totaling approximately $11,000,000 as of December 1, 2010.

### RELIEF REQUESTED

23.    In the ordinary course of their business operations, the Debtors directly employ, at any one time, approximately 2,200 individuals at locations across six states.[3]  Those individuals employed by the Debtors work in various capacities, including corporate management and support, area and in-store management, shift supervision, and counter staff or crew (collectively, the "Employees").   Of the Debtors' active Employees, approximately 265 are salaried Employees (the "Salaried Employees") and the remaining Employees are hourly Employees (the "Hourly Employees").

24.    The Debtors pay wages and other compensation to their Employees on a bi-weekly basis and in alternating weeks[4], resulting in 26 pay periods per year for a given Employee.  The Debtors' aggregate gross payroll per pay period for all Employees including wages, salaries, other forms of compensation and payroll tax obligations averages approximately $1,200,000[5].  For purposes of administration and distribution of payroll, the Debtors utilize Automatic Data Processing, Inc. as their payroll servicing provider for their Employees (the "Payroll Provider").  The Debtors remit gross payroll amounts, which includes the employee portion of all federal and state withholding taxes, employer's share of federal, state and local taxes, as well as voluntary and non-voluntary Employee deductions (including 401(k) contributions), to the Payroll Provider on a weekly basis.

---

[3]  The Debtors maintain and run franchise locations in Minnesota, Missouri, Illinois, Wisconsin, Iowa and Kansas.

[4]  In example, if the Minnesota Employees are paid on the first Friday of any particular month, the Missouri and Illinois Employees are paid on the subsequent Friday.  Therefore, in any given month, the Debtors are issuing payroll checks on a weekly basis.

[5]  Average payroll may fluctuate slightly based upon Employee attrition, which is not atypical in the Debtors' industry.

25.     The Debtors' pay period for their Employees typically begins on Friday and ends on the second Thursday thereafter (the "Pay Period").  Employee wages are customarily paid on the first Friday following the end of an Employee Pay Period (or 8 days after the end of a Pay Period) (the "Pay Day").  As of December 2, 2010, the Debtors owe approximately $1,035,000 to their Employees on account of accrued, but unpaid wages, salaries, other compensation, and payroll tax obligations (collectively, the "Unpaid Wages and Salaries").  The Debtors fund the entirety of wages earned during the Pay Period to the Payroll Provider on the Wednesday prior to each Pay Day.  None of the Employees are owed amounts in excess of the $11,725 priority claim cap under section 507(a)(4) of the Bankruptcy Code.

26.     In addition to wages, the Debtors, in the ordinary course of their business operations, provide Employees with access to a number of benefits including, without limitation: (i) medical, dental and health benefits, (ii) short and long term disability insurance, (iii) an Employee 401(k) savings plan, and (iv) a cafeteria plan for medical and dependent care reimbursement (collectively, the "Employee Benefits").  The approximate monthly cost to the Debtors for the Employee Benefits is as follows:

| Employee Benefit | Benefit Funding | Approx. Monthly Cost ($) |
| --- | --- | --- |
| Flex 125 Administration | Debtor(s) paid | $125.00 |
| COBRA Administration | Debtor(s) paid | $210.00 |
| 401(k) Administration (One America) | Debtor(s) paid | $255.00 |
| Medical Insurance (Medica) | Debtor(s)/Employee Split (60/40) | $35,977.00 |
| Medical Insurance (Medica) | Debtor(s)/Employee Split (52/48) | $27,622.00 |
| Dental Insurance (Delta) | Debtor(s)/Employee Split (60/40) | $9,155.00 |

| Medical Insurance (Cigna) | Employee paid | $0.00[6] |
| Life Insurance (Hartford) | Debtor(s)/Employee Split 50/50 | $626.00 |
| Long-Term Disability (Hartford) | Debtor(s)/Employee Split 50/50 | $1,988.00 |
| Short-Term Disability (Hartford) | Debtor(s)/Employee Split 50/50 | $3,054.00 |

27.     The Debtors also provide Salaried Employees and Hourly Employee with paid vacation and, in some instances, paid sick days (collectively, "Paid Time Off").  In general, Paid Time Off is based upon an Employee's years of service with the Debtors, with those most-senior Employees receiving a maximum of 27 days of Paid Time Off.  The Debtors estimate that accrued, prepetition Paid Time Off totals $377,000.  The Debtors request permission to continue their Paid Time Off policies in the ordinary course, including honoring Paid Time Off accrued by Employees prepetition.

28.     Given the Debtors' use of the Payroll Provider, described above, the Debtors do not directly withhold any amounts from Employee wages and salaries, nor do they directly remit any withheld amounts, or required federal, state or local taxes associated with the wages and salaries, to the appropriate taxing authorities.  The Payroll Provider is directly responsible for the withholding of all required taxes and deductions and the remittance of same to all appropriate governmental authorities and third parties.

29.     The Debtors' intent is to continue to utilize the Payroll Provider postpetition, in the ordinary course of business and in the same manner as utilized prepetition, in accordance with the terms of their respective agreements with the Payroll Provider.[7]

---

[6] Cigna Medical Insurance is a program offered to Hourly Employees in which the monthly premium is fully funded by those Hourly Employees that elect to participate in the program (the "Cigna Program").  Although the Debtors are not responsible for the monthly costs of the Cigna Program, the Debtors withhold Hourly Employee funds relating to the Cigna Program and remit such funds on a monthly basis.  The Debtors estimate that approximately $16,500 of premiums are paid on account of the Cigna Program each month.

30.     The Employees perform a variety of critical tasks, including daily staffing and local management of the Debtors' various restaurant locations, as well as provide direct services for the Debtors' customers. The Employees' knowledge and understanding of the Debtors' operations and customer relations are essential to the effective restructuring of the Debtors' businesses. Without the continued services of the Employees, an effective restructuring of the Debtors will not be possible.

31.     If prepetition wage, compensation, benefit and reimbursement amounts are not received by the Employees in the ordinary course, they will suffer extreme personal hardship and, in many cases, will be unable to pay their basic living expenses. Such a result would destroy Employee morale and result in unmanageable Employee turnover, causing immediate and pervasive damage to the Debtors' ongoing business operations, thereby resulting in immediate and irreparable harm to the Debtors and their estates.

32.     To facilitate the relief sought herein, the Debtors seek authority, in their discretion to: (a) continue to maintain and provide all Employee Benefits provided by the Debtors in the ordinary course; and (b) pay all costs and expenses required to be paid under, or incident to, the Employee Benefits to the extent any amounts accrued prepetition and/or accrued postpetition but related to the period prior to the Petition Date.

33.     The Debtors also seek authority, in their discretion, and without the need for further Court approval, to modify, cancel, discontinue and/or replace any policies, plans, offerings or programs relating to Employee Benefits as they deem appropriate, and to pay any amounts necessary to effect such modification, cancellation, discontinuance or replacement in the ordinary course of business without the need for further Court approval.

---

[7]   The Debtors intend to utilize the Payroll Provider postpetition is not to be interpreted as a concession by the Debtors that their agreements with the Payroll Provider are executory contracts and/or that the Debtors' intend to assume the agreements with the Payroll Provider pursuant to section 365 of the Bankruptcy Code. The Debtors specifically reserve all rights under section 365 of the Bankruptcy Code.

34.     Finally, the Debtors seek entry of an order authorizing and directing banks and other financial institutions to receive, process, honor and pay all checks presented for payment and electronic payments related to the foregoing Employee Benefits, irrespective of whether such checks were presented, or electronic payment requests submitted, prior to or after the Petition Date.

35.     Pursuant to Local Rule 9013-2(a), this Motion is verified and is accompanied by a Memorandum, a Proposed Order and proof of service.

36.     Pursuant to Local Rule 9013-2(c), the Debtors give notice that they may, if necessary, call Becky Moldenhauer, the Chief Financial Officer of the Debtors, to testify regarding the facts underlying this Motion.  Her business address is 12281 Nicolett Avenue, Burnsville, MN 55337.

WHEREFORE, Debtors move the Court for an order

    a.     granting expedited relief;

    b.     authorizing them to pay accrued and unpaid employee wages and benefits;

    c.     authorizing them to pay incidental benefits, including paid time off, in the ordinary course of business;

    d.     authorizing them to continue to maintain Employee Benefits in the ordinary course of business;

    e.     authorizing them to modify, cancel, discontinue and/or replace any policies, plans, offerings or programs relating to Employee Benefits as they deem appropriate, and to pay any amounts necessary to effect such modification, cancellation, discontinuance or replacement in the ordinary course of business without the need for further Court approval;

    f.     authorizing and directing banks that maintain Debtors' payroll and operating accounts to honor checks or fund transfer requests to pay the other obligations described herein; and

g.    granting such other and further relief as the court may deem just and equitable.

FREDRIKSON & BYRON, P.A.

Dated:  December 4, 2010

*/s/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
Douglas W. Kassebaum (#386802)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
ccutler@fredlaw.com
dkassebaum@fredlaw.com

PROPOSED CO-COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION

– and –

McDONALD HOPKINS LLC

Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027)
Michael J. Kaczka (OH 0076548)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

PROPOSED CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

## VERIFICATION

I, Becky Moldenhauer, am the Chief Financial Officer of the Debtors.  Based upon my

personal information and belief, I declare under penalty of perjury that the facts set forth in

paragraphs 6-30 of the preceding Motion are true and correct, according to the best of my

knowledge, information and belief.

Dated:  December 4, 2010                    Signed: _Becky. Moldenhau_____

                                                            Becky Moldenhauer

4843171

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | |
| Duke and King Acquisition Corp. | Case No. 10-38652 |
| | Chapter 11 Case |
| Debtor. | |
| Duke and King Missouri, LLC | Case No. 10-38653 |
| Debtor. | Chapter 11 Case |
| Duke and King Missouri Holdings, Inc. | Case No. 10-38654 |
| Debtor. | Chapter 11 Case |
| Duke and King Real Estate, LLC | Case No.10-38655 |
| Debtor. | Chapter 11 Case |
| DK Florida Holdings, Inc. | Case No. 10-38656 |
| Debtor. | Chapter 11 Case |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR AN EXPEDITED HEARING AND FOR AN ORDER AUTHORIZING DEBTORS TO PAY PREPETITION WAGES AND EMPLOYEE BENEFITS AND AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

The above debtors and debtors in possession (collectively, "Debtors") seek entry of an order authorizing them to pay accrued prepetition wages and employee benefits. The Motion should be granted because the Debtors have a compelling business justification for paying these obligations. Namely, the Debtors will lose the goodwill of their employees and may lose permanently the employees if these payments are not made. Thus, the payment of these claims is important to the Debtors' ongoing operations and effective resolution of these cases.

## BACKGROUND

The facts in support of this memorandum are set forth in the verified Motion.[8]

---

[8] Capitalized terms used, but not otherwise defined, have the meanings given to them in the Motion.

4843171

## LEGAL ANALYSIS

**I.    THE COURT HAS AUTHORITY TO APPROVE A POSTPETITION PAYMENT OF A PREPETITION CLAIM.**

Nowhere in the Bankruptcy Code is a debtor expressly prohibited from making postpetition payment of a prepetition claim, as the Debtors propose to do here.  Two provisions of the Bankruptcy Code, however, suggest that obtaining court approval is required or, at least, prudent.  Section 363(b) of the Bankruptcy Code provides that after notice and a hearing, the debtor may use property of the estate other than in the ordinary course of business.  And section 549 of the Bankruptcy Code allows a debtor to avoid the postpetition transfer of property that is not authorized by the Bankruptcy Code or by the court.  Thus, the Bankruptcy Code, including these provisions, establishes this Court's authority to approve a postpetition payment of a prepetition claim, as the Debtors propose here.

**A.    The Bankruptcy Code Authorizes Payment of Certain Prepetition Claims.**

Section 363 of the Bankruptcy Code allows a debtor to pay claims not in the ordinary course of business, with court authorization.  It is in the ordinary course of business for a company to pay wages, salaries, and employee benefits.  See In re Tusa-Expo Holdings, Inc., 2008 WL 4857954 (Bankr. N.D. Tex. 2008).  Several courts have suggested, however, that satisfaction of such an obligation that accrued prepetition is not in the ordinary course, and therefore requires court approval.  See In re K-Mart Corp., 359 F.3d 866, 872 (7th Cir. 2004); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Chapter 11 practice in this District and elsewhere has also generally accepted this understanding, and debtors frequently request court authorization to pay wages, salaries and employee benefits that accrued prepetition.

Paying employee claims that accrued prepetition, like any other use of property outside the ordinary course of business, is appropriate if the debtor demonstrates a "business justification" for making such payments.  As stated by the court in the Ionosphere Clubs case,

> [s]ection 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances.  However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under section 363(b).

In re Ionosphere Clubs, Inc., 98 B.R. at 175 (citations omitted); see also Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (noting that court allowed the debtor to continue payment of prepetition wages and salary, and other benefits with an aggregate value exceeding $250,000,000 because it was consistent with the debtor's "imperatives").  Payment of prepetition claims is appropriate when payment will help to "stabilize [the] debtor's business relationships without significantly hurting any party."  Russell A. Eisenberg and Frances F. Gecker.  The Doctrine of Necessity and its Parameters, 73 Marq. L. Rev. 1 (1989); see also In re UNR Industries, Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992).

Thus, where a debtor can establish the above factors, a court should approve the postpetition payment of prepetition accrued employee wages and benefits and commissions.

**B.     The Code Recognizes the "Doctrine of Necessity," which Authorizes Payment of Certain Prepetition Claims.**

The "doctrine of necessity" recognizes that in certain circumstances it is in the best interest of all concerned to pay certain prepetition creditors out of turn, as an inducement to them to continue working for, or doing business with, the debtor.  See Miltenberger v. Logansport, 106 U.S. 286 (1882).  As the above citation indicates, this doctrine predated the Bankruptcy Code by many years.  Nonetheless, the idea that it is in the best interests of all concerned to pay

such claims as are necessary to keep the debtor in business, and to keep the debtor in business and its employees in wage-paying jobs has survived and has been recognized under the Bankruptcy Code.  See, e.g., In re Payless Cashways, Inc., 268 B.R. 543 (Bankr. W.D. Mo. 2001); In re Just For Feet, 242 B.R. 821 (D. Del. 1999); In re Equal Net Communications Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000); In re Gulf Air, Inc., 112 B.R. 152 (Bankr. W.D. La. 1989); In re Ionosphere Clubs, Inc., supra.  Furthermore, in applying the "doctrine of necessity," courts have relied on section 105 of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code grants the court authority to issue any order "necessary or appropriate to carry out the provisions" of the Bankruptcy Code, and also provides a basis for authorizing the debtor to pay accrued prepetition wages, salary and benefits.  See In re Ionosphere Clubs, Inc., 98 B.R. at 175; In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991).

Thus, the Bankruptcy Code furnishes a basis for postpetition payment of prepetition claims in the right circumstances.  This is true notwithstanding the decision in the case of In re K-Mart Corp., 359 F.3d 866 (7th Cir. 2004).  In K-Mart, the court questioned whether the bankruptcy court had authority to approve payments to "critical vendors."  In that case, the appellate court ruled that the court had not established its authority to do so.  In so ruling, however, the court also recognized that section 363(b) of the Bankruptcy Code might provide a basis for authorizing such payments in the right circumstance.  In re K-Mart Corp., 359 F.3d at 872.  The court suggested that to justify a request for authority to pay prepetition claims, the debtor should demonstrate that it will suffer damage if the payment is not made,[9] and that other creditors will be as well-off with the payment as without.  Id.  Where a debtor can make such a

---

[9]  The K-Mart case dealt with payment to critical vendors, and the court suggested that the debtor would need to make a showing that vendors not paid for prepetition deliveries will refuse to make postpetition deliveries.  In the employee situation, an analogous damage to the Debtors would be the risk of employees terminating their employment or harboring ill-will which adversely affects performance or operations.  Such factors are present here.

showing, it appears that even the Seventh Circuit would overcome its skepticism and allow postpetition payment of a prepetition claim.

Moreover, as the court recently recognized in In re Tusa-Expo Holdings, employees are not situated similarly with other unsecured creditors, such as "critical vendors."  Congress has given a preferred status to employee claims in section 507(a)(4) and (5) of the Bankruptcy Code, and payment of these claims in advance of dealing with claims of lesser status does not disadvantage unsecured creditors.  Id. at *2.  Even though the wage motion in Tusa-Expo was not opposed, the court deemed it important "that a prospective chapter 11 debtor be confident that, absent a question as to whether continuation of its operations is appropriate, prepetition wage and benefit obligations will continue during chapter 11 to be honored on a timely basis…it would be an abuse of discretion not to grant the payment of the priority prepetition wages within the statutory limit…" Id. at *1.

## II.    POSTPETITION PAYMENT OF PREPETITION CLAIMS IS APPROPRIATE IN THESE CASES.

In applying the provisions of the Bankruptcy Code and the "doctrine of necessity" discussed above, the Court should be guided by practicality and common sense.  In re Payless Cashways, 268 B.R. at 546.  This is particularly important when the Court considers payment to employees whose livelihood depends on a debtor's payments.  Courts have long recognized the importance of maintaining the goodwill of employees.  In LTV Corp. v. Aetna Cas. & Sur. Co. (In re Chateaugay Corp.), 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990), the court stated:

> Additionally, employee good will and contentment in an asset which is vital to the continuation of a debtor's operation and its ability to effectively reorganize during the Chapter 11 process.

As the court noted in Tusa-Expo:

> Clearly a debtor's employees are among those creditors with whom the debtor must deal.  Absent competent personnel, it is

doubtful that any debtor would be able to operate its business as
contemplated by Code section 1108…  [A]s a practical matter, no
debtor can afford to lose very many of its employees, especially in
a chapter 11 case's early days…  Second, continuity of conduct of
business is important in a newly filed Chapter 11 case….
Employees familiar with the debtor's operations will be essential
to [all of the early case responsibilities….  Third, even if
employees remain with a debtor notwithstanding non-payment of
prepetition wages and benefits, it is probable that their work would
be [adversely] affected by their loss of income.

In the Debtors' cases, employees are the core of their operations.  If payment of wages and

benefits are postponed to the close of the case, the Debtors' going-concern value will be

threatened by employee losses and a severe disruption to restaurant services.  To the extent the

Debtors' operations suffer, creditors also suffer and estate assets will be diminished.  It is in the

best interest of creditors that wages and benefits be paid to employees to maintain their good

will.  The issue is really one of timing of payment, and creditors are not harmed; rather, they will

benefit by payment as Debtors propose.


*[Remainder of page intentionally left blank.]*

## CONCLUSION

The proposed payments are supported by a good business justification and are consistent with the priority scheme designed by Congress. In this case, even the stringent requirements of the K-Mart decision are met. For these reasons, this Court should enter an order authorizing Debtors to pay the accrued prepetition employee wages and benefits set out in the motion, and Debtors request that the Court enter an order authorizing such payment.

FREDRIKSON & BYRON, P.A.

Dated: December 4, 2010

*/s/ Clinton E. Cutler*
Clinton E. Cutler (#158094)
Douglas W. Kassebaum (#386802)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
ccutler@fredlaw.com
dkassebaum@fredlaw.com

PROPOSED CO-COUNSEL TO DEBTORS
AND DEBTORS IN POSSESSION

– and –

McDONALD HOPKINS LLC

Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027)
Michael J. Kaczka (OH 0076548)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

PROPOSED CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

4843171

7

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

| | |
|---|---|
| Duke and King Acquisition Corp. | Case No. 10-38652 |
| | Chapter 11 Case |
| Debtor. | |

| | |
|---|---|
| Duke and King Missouri, LLC | Case No. 10-38653 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Missouri Holdings, Inc. | Case No. 10-38654 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Real Estate, LLC | Case No. 10-38655 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| DK Florida Holdings, Inc. | Case No. 10-38656 |
| Debtor. | Chapter 11 Case |

## CERTIFICATE OF SERVICE

Douglas W. Kassebaum, under penalty of perjury, states that on December 4, 2010, he caused to be served the following:

1.  **Notice of Intention to Seek Expedited Hearing;**

2.  **Declaration of Relatedness of Chapter 11 Cases;**

3.  **Notice of Hearing and Joint Motion for (I) Expedited Relief and (II) Interim and Final Orders (A) Authorizing Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection;**

4.  Memorandum of Law in Support of Joint Motion for (I) Expedited Relief, and (II) Interim and Final Orders (A) Authorizing Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection;

5.  Proposed Interim Order;

6.  Proposed Final Order;

7.  **Notice of Motion and Joint Motion for an Expedited Hearing and for an Order Authorizing Debtors to Pay Prepetition Wages and Employee Benefits and Authorizing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief;**

8.     Memorandum of Law in Support of Joint Motion for an Expedited Hearing and for an Order Authorizing Debtors to Pay Prepetition Wages and Employee Benefits and Authorizing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief;

9.     Proposed Order;

10.     **Notice of Hearing and Joint Motion for Order (I) Granting Expedited Relief, (II) Authorizing Maintenance of Existing Bank Accounts and Business Forms, (III) Authorizing Continued Use of Cash Management System, and (IV) Waiving the Requirements of 11 U.S.C. § 345(B)**;

11.     Memorandum in Support of Joint Motion for Order (I) Granting Expedited Relief, (II) Authorizing Maintenance of Existing Bank Accounts and Business Forms, (III) Authorizing Continued Use of Cash Management System, and (IV) Waiving the Requirements of 11 U.S.C. § 345(B);

12.     Proposed Order;

13.     **Notice of Motion and Joint Motion for Expedited Hearing and Authorizing Debtors to Pay Prepetition Taxes and Fees and Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief;**

14.     Memorandum of Law in Support of Joint Motion for Expedited Hearing and Authorizing Debtors to Pay Prepetition Taxes and Fees and Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief;

15.     Proposed Order

16.     **Notice of Hearing and Joint Motion for Expedited Hearing and for an Order Authorizing Debtors to Pay the Prepetition Claims of Certain Critical Vendors;**

17.     Memorandum of Law in Support of Joint Motion for Expedited Hearing and for an Order Authorizing Debtors to Pay the Prepetition Claims of Certain Critical Vendors;

18.     Proposed Order;

19.     **Notice of Hearing and Joint Motion for Expedited Relief and for Order Authorizing Debtors to Honor Certain Prepetition Programs to Customer Programs;**

20.     Memorandum in Support of Joint Motion for Expedited Relief and for Order Authorizing Debtors to Honor Certain Prepetition Programs to Customer Programs;

21.     Proposed Order;

22.     **Notice of Hearing and Joint Motion for Order (I) Granting Expedited Relief, (II) Authorizing Joint Administration of Cases, and (III) Restricting Service under Local Rule 9013-3(A)(2)**;

23.     Memorandum in Support of Notice of Hearing and Joint Motion for Order (I) Granting Expedited Relief, (II) Authorizing Joint Administration of Cases, and (III) Restricting Service under Local Rule 9013-3(A)(2);

24.     Proposed Order; and

25.     Certificate of Service

by sending true and correct copies to all parties on the attached Service List as indicated therein.

Dated:  December 4, 2010                              */s/ Douglas W. Kassebaum*
                                                      Douglas W. Kassebaum

Duke and King Acquisition Corp. and Related Debtors  -  Bky No. 10-38652
FIRST DAY DOCUMENTS SERVICE LIST
Served via overnight mail except those parties whose contact information includes an e-mail address were served via e-mail

### US Trustee and Other Required Parties

U.S. Trustee's Office
1015 US Courthouse
300 S Fourth St
Minneapolis MN 55415
ustpregion12.mn.ecf@usdoj.gov

U.S. Trustee's Office
1015 US Courthouse
300 South Fourth Street
Minneapolis MN 55415
robert.raschke@usdoj.gov

IRS District Counsel
380 Jackson St, Ste 650
St Paul MN 55101-4804

Internal Revenue Service
Wells Fargo Place
30 E 7th St, Mail Stop 5700
St Paul MN 55101

MN Department of Revenue
Collection Enforcement
551 Bankruptcy Section
600 North Robert Street
PO Box 64447
St Paul MN 55101-2228

US Attorney
600 US Courthouse
300 S Fourth St
Minneapolis MN 55415

Minnesota Department of Economic
Security
332 Minnesota St, Ste E200
St. Paul MN 55101-1351

### Debtors

Duke and King Acquisition Corp.
Attn: Becky Moldenhauer
12281 Nicollet Ave S
Burnsville, MN  55337
bmoldenhauer@dukeandking.com

### Debtors' 10 Largest Unsecured Creditors

Kinderhook
521 Fifth Ave 34th Floor
New York, NY  10175
ttuttle@kinderhook.com

Burger King Corporation
Attn: Frank Taylor
PO Box 93290
Atlanta, GA  31193-2980
ftaylor@whopper.com

**Attorneys for Burger King Corporation**
Paul J. Battista
Genovese Joblove & Battista, P.A.
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
pbattista@gjb-law.com

Swisshelm
Attn: Bruce Swisshelm
3765 East Turtle Hatch Road
Springfield, MO 65809

Reinhart Foodservice LLC
230 North Front Street
La Crosse, WI  54601
rerytilahti@rfsdelivers.com

MBM Corporation
Attn: Dana Demers
P.O. Box 841170
Dallas, TX  75284-1170
ddemers@mbmfoodservice.com

Sicom Systems  Inc.
4140 Skyron Drive
Doylestown, PA  18901
mdeily@sicom.com

Gilbert Mechanical Cont. inc.
4451 West 76th Street
Minneapolis, MN  55435
mgoelz@gilbertmech.com

OI Distribution
12900 Southwest 89th Court
Miami, FL  33176
iliana@originalimpressions.com

Pan-O-Gold Baking Co.
444 East St. Germain St.
St. Cloud, MN 56304
info@panogold.com

Legacy Enterprises
Attn: John Strong
1109 S Pickwick Ave
Springfield, MO 65804

### Major Secured Creditors

Bank of America, N.A.
as Administrative Agent
600 Peachtree Street, NE,
GA1-006-13-20
Atlanta, GA  30308
Fax No. 404-942-4476

**Attorneys for Bank of America**
Stephen M. Mertz
Michael R. Stewart
Michael F. Doty
Faegre & Benson LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402-3901
SMertz@faegre.com
MStewart@faegre.com
MDoty@faegre.com

**Attorneys for Bank of America**
Wendy S. Walker
Jonathan K. Bernstein
Patrick D. Fleming
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
wwalker@morganlewis.com
jbernstein@morganlewis.com
pfleming@morganlewis.com

Duke Manufacturing Co.
Attn: Officer or Agent
2305 North Broadway
Saint Louis, MO  63102
Fax No. 314-231-5074

GreatAmerica Leasing Corporation
Attn: Officer or Agent
625 1st Street, SE, Suite 800
Cedar Rapids, IA  52401-2031
Fax No. 319-365-8607

Meadowbrook Meat Company
Attn: Dana Demers
2641 Meadowbrook Road
Rocky Mount, NC  27802
Fax No. 252-467-4520
ddemers@mbmfoodservice.com

Coca-Cola Financial Corporation
Attn: Amber Meyer
1410 SW Morrison St., #750
Portland, OR  97205
amber_meyer@leasedimensions.com

Warren Capital Corporation
Attn: Scott Shapiro
100 Rowland Way #205
Novato, CA  94945
Fax No. 415-892-7075

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| In re: | |
| Duke and King Acquisition Corp. | Case No. 10-38652 |
| | Chapter 11 Case |
| Debtor. | |

| | |
|---|---|
| Duke and King Missouri, LLC | Case No. 10-38653 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Missouri Holdings, Inc. | Case No. 10-38654 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| Duke and King Real Estate, LLC | Case No.10-38655 |
| Debtor. | Chapter 11 Case |

| | |
|---|---|
| DK Florida Holdings, Inc. | Case No. 10-38656 |
| Debtor. | Chapter 11 Case |

**ORDER GRANTING EXPEDITED HEARING AND AUTHORIZING DEBTORS TO PAY PREPETITION WAGES AND EMPLOYEE BENEFITS AND AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH RELIEF**

This case came before the court on the Debtors' Motion for an Order for Expedited Hearing and Authorizing Debtors to Pay Prepetition Wages and Employee Benefits and Authorizing Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief (the "Motion"). Appearances are noted on the record.

Based on the arguments of counsel, all of the files, records and proceedings herein, the court having been advised in the premises, and the court's findings of fact and conclusions of law, if any, having been stated orally and recorded in open court following the close of evidence,

IT IS HEREBY ORDERED that:

1. The Motion for expedited relief is granted.

2.     The Debtors are hereby authorized, but not directed, to pay accrued prepetition wages and salaries for the Debtors' employees, in the approximate aggregate amount of $1,035,000 (the "Compensation Expenses").

3.     The Debtors are hereby authorized, but not directed, to pay other prepetition employee benefits as described in the Motion, the aggregate of which with Compensation Expenses shall not exceed the priority dollar limit established by 11 U.S.C. §§ 507(a)(4) and (5) as to each employee (collectively with the Compensation Expenses, the "Approved Expenses").

4.     The Debtors are hereby authorized, but not required, to pay any funds withheld from employee wages as directed by the employee or on the employee's behalf.

5.     The Debtors are hereby authorized, but not directed, to pay for and continue all of the Employee Benefits.

6.     The Debtors are herby authorized, but not directed, to pay for and continue all of the Paid Time Off.

7.     The Debtors are hereby authorized to modify, cancel, discontinue and/or replace any policies, plans, offerings or programs relating to Employee Benefits as they deem appropriate, and to pay any amounts necessary to effect such modification, cancellation, discontinuance or replacement in the ordinary course of business without the need for further Court approval.

8.     The financial institutions at which Debtors maintain payroll and operating accounts are hereby authorized and directed to honor all instruments presented in payment of the Approved Expenses and Employee Benefits.

Dated: _____         _____

United States Bankruptcy Judge

4843171

2