remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or under any other Loan Document now or hereafter existing at law, in equity or by statute.

(e)    Each Lender agrees that it will not take any action, nor institute any actions or proceedings, against the Borrower hereunder or under any Loan Document, without the prior written consent of the Required Lenders or, as may be provided in this Agreement or the other Loan Documents, at the direction of the Administrative Agent.

## ARTICLE VIII.
## THE ADMINISTRATIVE AGENT

8.1    <u>Appointment and Authorization</u>.  Each Lender hereby irrevocably appoints the Administrative Agent as the Administrative Agent of such Lender and authorizes the Administrative Agent to act on such Lender's behalf to the extent provided herein or under any of the other Loan Documents, and to take such other action and exercise such other powers as may be reasonably incidental thereto.  Each Lender hereby agrees that it will require any transferee of any of such Lender's interests in its Loans to irrevocably appoint and authorize the Administrative Agent as such transferee's Administrative Agent in accordance with the terms hereof. Notwithstanding the use of the term "agent," it is expressly understood and agreed that the Administrative Agent shall not have any fiduciary responsibilities to any Lender by reason of this Agreement and that the Administrative Agent is merely acting as the representative of the Lenders with only those duties as are expressly set forth in this Agreement and the other Loan Documents.  In its capacity as the Lenders' contractual representative, the Administrative Agent (i) does not hereby assume any fiduciary duties to the Borrower, any of the Lenders or any other Person (and no such fiduciary duties shall be implied) and (ii) is acting as an independent contractor, the rights and duties of which are limited to those expressly set forth in this Agreement and the other Loan Documents.  The Borrower and each of the Lenders hereby agrees to assert no claim against the Administrative Agent on any agency theory or any other theory of liability for breach of fiduciary duty, all of which claims the Borrower and each Lender hereby waives.

8.2    <u>Power</u>.  The Administrative Agent shall have and may exercise such powers under this Agreement and any other Loan Documents as are specifically delegated to the Administrative Agent by the terms hereof or thereof, together with such powers as are reasonably incidental thereto.  As to any matters not expressly provided for by the Loan Documents (including, without limitation, enforcement or collection of the Notes), the Administrative Agent shall not be required to exercise any discretion or take any action, but shall be required to act or to refrain from acting (and shall be fully protected in so acting or refraining from acting) upon the instructions of the Required Lenders, and such instructions shall be binding upon all Lenders and all holders of the Notes; provided, however, that the Administrative Agent shall not be required to take any action which exposes the Administrative Agent to personal liability or which is contrary to any Loan Document or applicable law.  The Administrative Agent shall not have any implied duties or any obligation to take any action under this Agreement or any other Loan Document except such action as is specifically provided by this Agreement or any other Loan Document to be taken by the Administrative Agent.

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

8.3     Interest Holders.  The Administrative Agent may treat each Lender, or the Person designated in the last notice filed with the Administrative Agent, whether under Section 9.3 or 9.10, or otherwise hereunder, as the holder of all of the interests of such Lender in its Loans until written notice of transfer, signed by such Lender (or the Person designated in the last notice filed with the Administrative Agent) and by the Person designated in such written notice of transfer, in form and substance satisfactory to the Administrative Agent, shall have been filed with the Administrative Agent.

8.4     Employment of Counsel; etc.  The Administrative Agent may execute any of its duties under this Agreement or any other Loan Document, and any instrument, agreement or document executed, issued or delivered pursuant or in connection herewith or therewith, by or through employees, agents and attorneys-in-fact and shall not be answerable for the default or misconduct of any such employee, agent or attorney-in-fact selected by it in good faith.  The Administrative Agent shall be entitled to rely on advice of counsel (including counsel who are the employees of the Administrative Agent) selected by the Administrative Agent concerning all matters pertaining to the agency hereby created and its duties under any of the Loan Documents and shall not be liable for any action taken or suffered by it in good faith in consultation with such counsel or at the direction of the Required Lenders or in reliance on such consultations or directions.

8.5     Reliance.  The Administrative Agent shall be entitled to rely upon and shall not be under a duty to examine or pass upon the validity, effectiveness, genuineness of this Agreement, any other Loan Document or any notice, consent, waiver, amendment, certificate, affidavit, letter, telegram, statement, paper, document or writing furnished pursuant to this Agreement or any other Loan Document, and the Administrative Agent shall be entitled to assume (absent actual knowledge to the contrary) that the same are valid, effective and genuine, have been signed or sent by the proper Person(s) and are what they purport to be.  The Administrative Agent shall be entitled to assume that no Default has occurred and is continuing unless it has actual knowledge, or has been notified in writing by the Borrower, of such fact, or has been notified by a Lender in writing that such Lender considers that a Default has occurred and is continuing, and such Lender shall specify in detail the nature thereof in writing.    The Administrative Agent shall not be liable hereunder for any action taken or omitted to be taken except for its own gross negligence or willful misconduct.  The Administrative Agent shall provide promptly each Lender with copies of such documents received from the Borrower as such Lender may reasonably request.

8.6     General Immunity.    Neither the Administrative Agent nor any of the Administrative Agent's directors, officers, agents, attorneys or employees shall be liable or responsible in any manner to the Borrower, any Lender or any other Person for any action taken or omitted to be taken by it or them under the Loan Documents or in connection therewith except for any liability imposed by law for its own willful misconduct or gross negligence.  Without limitation on the generality of the foregoing, the Administrative Agent:    (a) shall not be responsible to any Lender for any recitals, statements, warranties, representations, or failure or delay of performance under the Loan Documents or any agreement or document related thereto or for the financial condition of the Borrower; (b) shall not be responsible for the authenticity, accuracy, completeness, value, validity, effectiveness, due execution, legality, genuineness, enforceability or sufficiency of any of the Loan Documents, any provisions thereof or any

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

document contemplated thereby; (c) shall not be responsible for the validity, genuineness, creation, perfection or priority of any of the Liens created or reaffirmed by any of the Loan Documents, or the validity, genuineness, enforceability, existence, value or sufficiency of any Collateral or other security; (d) shall not be bound to ascertain or inquire as to the performance or observance of any of the terms, covenants or conditions of any of the Loan Documents on the part of the Borrower or of any of the terms of any such agreement by any party thereto and shall have no duty to inspect the property (including the books and records) of the Borrower; (e) shall incur no liability under or in respect of any of the Loan Documents or any other document or Collateral by acting upon any notice, consent, certificate or other instrument or writing (which may be by telegram, cable or telex) furnished pursuant to this Agreement or any other Loan Document; (f) shall incur no liability to the Borrower or any other Person as a consequence of any failure or delay in performance by or any breach by, any Lender or Lenders of any of its or their obligations under this Agreement; and (g) may consult with legal counsel (including counsel for the Borrower), independent public accountants and other experts selected by the Administrative Agent and shall not be liable for any action taken or omitted to be taken in good faith in accordance with the advice of such counsel, accountants or experts.

8.7    Credit Analysis. Each Lender has made, and shall continue to make, its own independent investigation or evaluation of the operations, business, property and condition, financial and otherwise, of the Borrower in connection with the making of its commitments hereunder and has made, and will continue to make, its own independent appraisal of the creditworthiness of the Borrower. Without limiting the generality of the foregoing, each Lender acknowledges that prior to the execution of this Agreement, it had this Agreement and all other Loan Documents and such other documents or matters as it deemed appropriate relating thereto reviewed by its own legal counsel as it deemed appropriate, and it is satisfied with the form and substance of this Agreement and all other Loan Documents.    Each Lender agrees and acknowledges that neither the Administrative Agent nor any of its directors, officers, attorneys or employees makes any representation or warranties about the creditworthiness of the Borrower or with respect to the due execution, legality, validity, genuineness, effectiveness, sufficiency or enforceability of this Agreement or any other Loan Documents, or the validity, genuineness, execution, perfection or priority of Liens created or reaffirmed by any of the Loan Documents, or the validity, genuineness, enforceability, existence, value or sufficiency of any Collateral or other security. Each of the Lenders shall use its commercially reasonable efforts to provide the other Lenders with any credit or other material information which comes into the possession of such Lender on or before a Default or Event of Default or at any time thereafter with respect to the operations, business, property, condition or creditworthiness of the Borrower but no Lender shall have any liability to any other Lender for its inadvertent failure to do so. Each Lender, upon the request of another Lender, shall deliver to such other Lender any financial statement, report, certificate or other document required to be delivered to the Lenders pursuant to Section 5.1 which the requesting Lender did not receive. Except as explicitly provided herein, neither the Administrative Agent nor any Lender has any duty or responsibility, either initially or on a continuing basis, to provide any other Lender with any credit or other information with respect to such operations, business, property, condition or creditworthiness, whether such information comes into its possession on or before a Default or an Event of Default or at any time thereafter.

8.8    Administrative Agent and Affiliates. With respect to the Loans made by it and the Notes issued to it, the Administrative Agent, in its individual capacity, shall have the same

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

rights and powers under the Loan Documents as any other Lender and may exercise the same as though it were not an Administrative Agent; and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated, include the Administrative Agent in its individual capacity. The Administrative Agent, in its individual capacity, and its Affiliates may accept deposits from, lend money to, act as trustee under indentures of, and generally engage in any kind of business with, the Borrower, and any Person who may do business with or own securities of the Borrower, all as if it were not an Administrative Agent and without any duty to account    herefore to the Lenders.

8.9    Indemnification. The Lenders jointly and severally agree to indemnify and hold harmless the Administrative Agent and its officers, directors, employees and agents (to the extent not reimbursed by the Borrower), ratably according to their respective Commitments, from and against any and all claims, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against the Administrative Agent or any of its officers, directors, employees or agents, in any way relating to or arising out of any investigation, litigation or proceeding concerning or relating to the transaction contemplated by this Agreement or any of the other Loan Documents, or any of them, or any action taken or omitted by the Administrative Agent or any of its officers, directors, employees or agents, under any of the Loan Documents; provided, however, that no Lender shall be liable for any portion of such claims, liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the gross negligence or willful misconduct of the Administrative Agent or any of its officers, directors, employees or agents. Without limitation of the foregoing, each Lender agrees to reimburse the Administrative Agent promptly upon demand for such Lender's proportionate share of any out-of-pocket expenses (including counsel fees) incurred by the Administrative Agent or its officers, directors, employees or agents in connection with the preparation, execution, administration, or enforcement of, or legal advice in respect of rights or responsibilities under any of, the Loan Documents, to the extent that the Administrative Agent is not reimbursed for such expenses by the Borrower.

8.10    Security Documents. The Administrative Agent, as collateral agent hereunder and under the Security Documents, is hereby authorized to act on behalf of the Lenders, in its own capacity and through other agents and sub-agents appointed by it in good faith, under the Security Documents, provided that the Administrative Agent shall not agree to the release of any Collateral, or any property encumbered by any mortgage, pledge or security interests except in compliance with Section 8.11. In connection with its role as secured party with respect to the Collateral hereunder, the Administrative Agent shall act as collateral agent, for itself and for the ratable benefit of the Lenders, and such role as Administrative Agent shall be disclosed on all appropriate accounts, filings, mortgages, and other Collateral documentation.

8.11    Collateral Matters. The Administrative Agent is authorized on behalf of all the Lenders, without the necessity of any notice to or further consent from the Lenders, from time to time to take any action with respect to the Security Documents or any Collateral thereunder which may be necessary to perfect and maintain perfected the security interest in and Liens upon the Collateral granted pursuant to the Security Documents. The Lenders irrevocably authorize the Administrative Agent, at its option and in its discretion, to release any Lien granted to or held by the Administrative Agent upon any Collateral (i) upon termination of the Commitments and

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

payment in full of all Loans and all other Obligations of the Borrower known to the Administrative Agent and payable under this Agreement or any other Loan Document; (ii) constituting property sold or to be sold or disposed of as part of or in connection with any disposition permitted hereunder; (iii) consisting of an instrument evidencing Indebtedness or other debt instrument, if the Indebtedness evidenced thereby has been paid in full; or (iv) if approved, authorized or ratified in writing by all the Lenders.   Upon request by the Administrative Agent at any time the Lenders will confirm in writing the Administrative Agent's authority to release particular types or items of Collateral pursuant to this Section 8.11, provided that the absence of any such confirmation for whatever reason shall not affect the Administrative Agent's rights under this Section 8.11.

     8.12    Action by the Administrative Agent.

     (a)    The Administrative Agent shall be entitled to use its discretion with respect to exercising or refraining from exercising any rights with which it may be vested and with respect to taking or refraining from taking any action or actions which it may be able to take under or in respect of, this Agreement, unless the Administrative Agent shall have been instructed by the Required Lenders to exercise or refrain from exercising such rights or to take or refrain from taking such action; provided that the Administrative Agent shall not exercise any rights under Section 7.3 of this Agreement except upon the request of the Required Lenders or of all the Lenders, where expressly required by this Agreement. The Administrative Agent shall incur no liability under or in respect of this Agreement with respect to anything which it may do or refrain from doing in the exercise of its judgment or which may seem to it to be necessary or desirable in the circumstances, except for its gross negligence or willful misconduct as determined by a final, non-appealable order of a court having jurisdiction over the subject matter.

     (b)    The Administrative Agent shall not be liable to the Lenders or to any Lender in acting or refraining from acting under this Agreement or any other Loan Document in accordance with the instructions of the Required Lenders or of all the Lenders, where expressly required by this Agreement, and any action taken or failure to act pursuant to such instructions shall be binding on all Lenders.

     (c)    Notice of Default or Event of Default. In the event that the Administrative Agent or any Lender shall acquire actual knowledge, or shall have been notified in writing, of any Default (other than through a notice by one party hereto to all other parties), such Lender shall promptly notify the Administrative Agent and the Administrative Agent shall promptly notify the Lenders, and the Administrative Agent shall take such action and assert such rights under this Agreement and the other Loan Documents as the Required Lenders (or all the Lenders, where expressly required by this Agreement) shall request in writing, and the Administrative Agent shall not be subject to any liability by reason of its acting pursuant to any such request. If the Required Lenders shall fail to request the Administrative Agent to take action or to assert rights under this Agreement in respect of any Default within ten (10) days after their receipt of the notice of any Default from the Administrative Agent or any Lender, or shall request inconsistent action with respect to such Default, the Administrative Agent may, but shall not be required to, take such action and assert such rights as it deems in its discretion to be advisable for the protection of the Lenders, except that, if the Required Lenders have instructed the Administrative

Agent not to take such action or assert such right, in no event shall the Administrative Agent act contrary to such instructions.

8.13    Successor Administrative Agent.

(a)    Reorganization.    The Administrative Agent may resign at any time as Administrative Agent under the Loan Documents by giving thirty (30) days' prior written notice thereof to the Lenders and the Borrower. Upon any such resignation, the Required Lenders shall have the right to appoint a successor Administrative Agent hereunder, subject, at any such time as there is no Default hereunder, to the prior written consent of the Borrower, such consent not to be unreasonably withheld or delayed. If no successor Administrative Agent shall have been so appointed by the Required Lenders, and shall have accepted such appointment, within thirty (30) days after the retiring Administrative Agent's giving of notice of resignation, then the retiring Administrative Agent may, on behalf of the Lenders, appoint a successor Administrative Agent, which shall be a commercial bank organized under the laws of the United States or of any state thereof and having a combined capital and surplus of at least $250,000,000. Upon the acceptance of any appointment as Administrative Agent under the Loan Documents by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent, and the retiring Administrative Agent shall be discharged from its duties and obligations under the Loan Documents.    After any retiring Administrative Agent's resignation or removal as Administrative Agent under the Loan Documents, the provisions of this Article VIII shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Administrative Agent under the Loan Documents.

(b)    Removal. The Administrative Agent may be removed as Administrative Agent hereunder at any time by written notice to it by Lenders holding not less than sixty-six and two-thirds percent (66-2/3%) of the sum of the Commitments (or after termination of such Commitments, the outstanding principal balance of the Loans). Upon any such removal, such Lenders shall have the right to appoint a successor Administrative Agent, subject, at any such time as there is no Default hereunder, to the prior written consent of the Borrower, such consent not to be unreasonably withheld or delayed. Any such successor Administrative Agent may be any Lender or any commercial bank which has combined capital and surplus in excess of $250,000,000 and is organized under the laws of the United States of America or a political subdivision thereof. Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all the rights, powers, privileges, duties and obligations of the retiring Administrative Agent and the retiring Administrative Agent shall be discharged from its duties and obligations hereunder. After any retiring Administrative Agent's resignation hereunder as Administrative Agent, the provisions of this Article VIII shall continue in effect for its benefit in respect of any actions taken or to be taken by it while it was acting as the Administrative Agent.

8.14    Administrative Agent's Fees. The Borrower agrees to pay to the Administrative Agent, for its own account, the fees agreed to by the Borrower and the Administrative Agent pursuant to the Fee Letter, or as otherwise agreed from time to time.

8.15    Legal Representation of Agent. In connection with the negotiation, preparation and execution of this Agreement and the other Loan Documents, and in connection with future legal representation relating to loan administration, amendments, modifications, waivers or enforcement of remedies in connection herewith, Morris, Manning & Martin, LLP ("MMM") has represented only and shall represent only Bank of America, N.A. in its capacity as Administrative Agent and as a Lender. The Borrower and each other Lender hereby acknowledges that MMM does not represent it in connection with any such matters.

## ARTICLE IX.
## MISCELLANEOUS

9.1    Waivers, Amendments; etc. The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by the Borrower and the Required Lenders; provided, that no amendment, waiver or consent shall, unless in writing and signed by all of the Lenders, do any of the following: (a) waive any of the conditions specified in Article III, (b) increase the Commitments of the Lenders or subject the Lenders to any additional obligations, (c) reduce the principal of, or interest on, the Notes or any fees or other amounts payable hereunder, (d) postpone any date fixed for any payment of principal of, or interest on, the Notes or any fees or other amounts payable hereunder, (e) change the percentage of the Commitments, or of the aggregate unpaid principal amount of the Notes or the number of Lenders which shall be required for the Lenders or any of them to take any action hereunder, or (f) amend this Section 9.1 or (g) except as specifically permitted hereby or thereby, release or impair the security interest in any of the Collateral granted to the Administrative Agent, for the benefit of the Lenders, under the Security Documents or discharge any Guarantor; provided, further, that no amendment, waiver or consent shall, unless in writing and signed by the Administrative Agent in addition to the Lenders required above to take such action, affect the rights or duties of the Administrative Agent under this Agreement or any Note.

No failure or delay on the part of the Administrative Agent, any Lender or the holder of any Note in exercising any power or right under this Agreement or any Note shall operate as a waiver thereof, nor shall any single or partial exercise of any such power or right preclude any other or further exercise thereof or the exercise of any other power or right. No notice to or demand on the Borrower in any case shall entitle it to any notice or demand in similar or other circumstances.

9.2    Payment Dates. Except as expressly provided in this Agreement, whenever any payment to be made hereunder by or to the Lenders or to the holder of any Note shall otherwise be due on a day which is not a Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall be included in computing the fees or interest payable on such next succeeding Business Day. Time is of the essence of this Agreement.

9.3    Notices. All communications and notices provided under this Agreement shall be in writing by mail, telecopy or personal delivery and if to the Borrower addressed or delivered to the Borrower at its address shown on the signature page hereof or if to the Administrative Agent or the Lenders delivered to it at the address shown on the signature page hereof, or to any party at such other address as may be designated by such party in a written notice to the other parties.

Any notice shall be deemed given when transmitted by telecopier or when personally delivered, or if mailed properly addressed, shall be deemed given upon the third Business Day after the placing thereof in the United States mail, postage prepaid.

9.4    Costs and Expenses.    The Borrower agrees to pay, or reimburse, the Administrative Agent for all expenses reasonably incurred for the preparation of this Agreement, including exhibits, and the Loan Documents and any amendments hereto or thereto or consents or waivers hereunder or thereunder as may from time to time hereafter be required thereby or by the transactions contemplated hereby, including, but not limited to, the fees and out-of-pocket expenses of the Administrative Agent, charges and disbursements of special counsel to the Administrative Agent from time to time incurred in connection with the preparation and execution of this Agreement and any document relevant to this Agreement, including the Loan Documents, any amendments hereto or thereto, or consents or waivers hereunder or thereunder, and the consideration of legal questions relevant hereto and thereto. The Borrower agrees to pay, or reimburse, the Administrative Agent and each Lender upon demand for all costs and expenses (including attorneys', auditors' and accountants' fees and expenses) reasonably incurred and arising out of the transactions contemplated by this Agreement and the Loan Documents, in connection with any work-out or restructuring of the transactions contemplated hereby and by the Loan Documents and any collection or enforcement of the obligations of the Borrower hereunder or thereunder, whether or not suit is commenced, including, without limitation, attorneys' fees and legal expenses in connection with any appeal of a lower court's order or judgment. The obligations of the Borrower under this Section 9.4 shall survive any termination of this Agreement.

9.5    Indemnification. In consideration of the execution and delivery of this Agreement by the Administrative Agent and the Lenders, the Borrower agrees to indemnify, protect, defend, exonerate and hold the Administrative Agent, each Lender and their respective officers, directors, employees, shareholders, agents, successors and assigns (the "Indemnified Parties") free and harmless from and against any and all actions, causes of action, suits, judgments, actual losses, claims, obligations, damages, costs, penalties, judgments, liabilities and damages, and expenses and disbursements in connection therewith, including, without limitation, reasonable attorneys' fees and disbursements and all expenses of litigation or preparation therefore whether or not the Administrative Agent or such Lender is a party thereto (the "Indemnified Liabilities"), imposed on, incurred by or asserted against the Indemnified Parties or any of them as a result of, or in any way arising out of or relating to:

(a)    any transaction financed or to be financed in whole or in part directly or indirectly with proceeds of any Advance, or

(b)    the execution, delivery, performance or enforcement of this Agreement, the Loan Documents or any document executed pursuant hereto or thereto by any of the Indemnified Parties, or

(c)    any other matter, action or failure to act by the Indemnified Parties in connection with this Agreement, any other Loan Document or the transactions contemplated hereby or thereby,

MMMBUCKHEAD-#1531405-v12-duke&kmg_credit_agreement DOC

except for any such Indemnified Liabilities arising on account of such Indemnified Party's gross negligence or willful misconduct. The provisions of this <u>Section 9.5</u> shall survive termination of this Agreement and payment in full of the Notes.

9.6     <u>Severability</u>. Any provision of this Agreement, the Notes or any other Loan Document executed pursuant hereto which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement, the Notes or any other Loan Document or affecting the validity or enforceability of such provision in any other jurisdiction.

9.7     <u>Headings</u>. The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof.

9.8     <u>Governing Law</u>. This Agreement and the Notes shall each be deemed to be a contract made under, governed by and interpreted pursuant to the internal laws (and not the law of conflicts) of the State of New York.

9.9     <u>Successors and Assigns</u>.

(a)     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns except that: (i) the Borrower may not assign or transfer its rights hereunder without the prior written consent of all of the Lenders and the Administrative Agent; and (ii) any assignment by a Lender must be made in compliance with subsection (b) below and any participation by a Lender must be made in compliance with subsection (c) below. Notwithstanding clause (ii) of this subsection (a), any Lender may at any time, without the consent of Borrower or the Administrative Agent, assign all or any portion of its rights under this Agreement and its Notes to a Federal Reserve Bank. Except to the extent otherwise required by its context, the word "Lender" where used in this Agreement shall mean and include any such assignee and such assignee shall be bound by and have the benefits of this Agreement the same as if such holder had been a signatory hereto.

(b)     Any Lender may, in the ordinary course of its business and in accordance with applicable law, at any time assign to one or more banks or other entities all or a portion of its Credit Commitments, Advances owing to it, and its rights and obligations under this Agreement in respect thereof in accordance with the provisions of this subsection (b). Each assignment shall be of a constant, and not a varying, ratable percentage of the assigning Lender's rights and obligations under this Agreement and each assignee shall assume a pro rata share of the assigning Lender's obligations determined by the percentage of the Credit Commitments assigned for the period from the effective date of the assignment through the Maturity Date. Such assignment shall be substantially in the form of the Assignment Agreement attached as **Exhibit D** hereto (the "<u>Assignment Agreement</u>") and shall not be permitted hereunder unless (i) such assignment is for all of such Lender's Credit Commitment and the rights and obligations under this Agreement related thereto, (ii) the amount of the Credit Commitment assigned by the assigning Lender pursuant to each assignment shall be at least ten percent (10%) of such Lender's Credit Commitment and the amount of the Credit Commitment retained by the assigning Lender shall be at least ten percent (10%) of such Lender's Credit Commitment, or

(iii) such assignment is to another Lender or an Affiliate of a Lender, in which case no minimum amount shall apply. The consent of the Administrative Agent and, provided no Default or Event of Default then exists, the Borrower (which consents shall not be unreasonably withheld or delayed) shall be required prior to an assignment becoming effective with respect to a transferee which is not a Lender or an Affiliate thereof. Upon (i) delivery to the Administrative Agent of an executed Assignment Agreement, together with any required consents and (ii) payment of a $2,500 fee to the Administrative Agent for processing such assignment, such assignment shall become effective on the effective date specified in such Assignment Agreement. On and after the effective date of such assignment, such transferee, if not already a Lender, shall for all purposes be a Lender party to this Agreement and any other Loan Documents executed by the Lenders and shall have all the rights and obligations of a Lender under the Loan Documents, to the same extent as if it were an original party hereto, and no further consent or action by the Borrower, the Lenders or the Administrative Agent shall be required to release the transferor Lender with respect to the percentage of the Credit Commitment, Advances and Letter of Credit participations assigned to such transferee Lender. Upon the consummation of any assignment pursuant to this <u>Section 9.9</u>, the Administrative Agent and the Borrower shall make appropriate arrangements so that replacement Notes are issued to such transferor Lender and new Credit Notes or, as appropriate, replacement Notes, are issued to such transferee Lender, in each case in principal amounts reflecting their Credit Commitment, as adjusted pursuant to such assignment.

(c)     Each Lender may, without the consent of the Borrower or the Administrative Agent, sell participations to one or more banks or other entities in all or a portion of its rights and obligations under this Agreement (including all or a portion of its Commitment, the Loans owing to it, hereunder); <u>provided</u>, <u>however</u>, that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the other parties hereto for the performance of such obligations, (iii) the participating banks or other entities shall be entitled to the benefit of the cost protection provisions contained in <u>Section 2.3</u> to the extent of the Lender selling such participation and the Borrower's aggregate obligations with respect to <u>Section 2.3</u> shall not be increased by reason of such participation, and (iv) the Borrower, the Administrative Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement, and such Lender shall retain the sole right (and shall not limit its rights) to enforce the obligations of the Borrower relating to the Loans and to approve any amendment, modification or waiver of any provision of this Agreement (other than amendments, modifications or waivers with respect to any fees payable hereunder (to the extent such participants are entitled to such fees) or the amount of principal of or the rate at which interest is payable on the Loans, or the dates fixed for payments of principal of or interest on the Loans).

(d)     The Administrative Agent shall maintain a copy of each Assignment Agreement delivered to it and a register for the recordation of the names and addresses of the Lenders, and the Commitments of, and the principal amount of the Loans owing to, each Lender pursuant to the terms hereof from time to time (the "<u>Register</u>"). The entries in the Register shall be conclusive, absent manifest error, and the Borrower, the Administrative Agent and the Lenders may treat each person whose name is recorded in the Register pursuant to the terms hereof as a Lender hereunder for all purposes of this Agreement, notwithstanding notice to the contrary. Upon the Administrative Agent's receipt of a duly completed Assignment Agreement executed by an assigning Lender and an assignee Lender, the assignee's completed administrative

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

questionnaire (unless the assignee is already a Lender), the fee referred to in <u>Section 9.9(b)</u> above, and any written consent to such assignment required by such subsection, the Administrative Agent shall accept such Assignment Agreement and record the information contained therein in the Register.   No assignment shall be effected for purposes of this Agreement unless it has been recorded in the Register as provided in this subsection.

(e)   Notwithstanding anything to the contrary contained in this <u>Section 9.9</u>, and Lender that is a fund that invests in bank loans may pledge all or a portion of its rights in connection with this Agreement to the trustee or other agent for holders of obligations owed, or securities issued, by such fund as security for such obligations or securities, provided that any foreclosure or other exercise of remedies by such trustee shall be subject, in all respects, to the provisions of this <u>Section 9.9</u> regarding assignments.   No pledge described in the immediately preceding sentence shall release any such Lender from its obligations hereunder.

(f)   Except as specifically set forth in this <u>Section 9.9</u>, nothing in this Agreement, expressed or implied, is intended to or shall confer on any Person other than the respective parties hereto and thereto and their successors and assignees permitted hereunder and thereunder any benefit or any legal or equitable right, remedy or other claim under this Agreement or any Notes.

(g)   The provisions of this <u>Section 9.9</u> shall not apply to any purchase of participations among the Lenders pursuant to <u>Section 2.8</u>.

9.10   <u>Execution in Counterparts</u>.   This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

9.11   <u>Joint and Several Liability</u>.   The Obligations of the Borrower hereunder are joint and several.   The obligations of the Administrative Agent and each of the Lenders hereunder are several, not joint.

9.12   <u>Financial Information</u>.   The Borrower assumes responsibility for keeping itself informed of its own financial condition and the financial condition of any and all endorsers and/or other guarantors of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations, or any part thereof, that diligent inquiry would reveal, and the Borrower agrees that the Administrative Agent and the Lenders shall have no duty to advise the Borrower of information known to them regarding such condition or any such circumstances.

9.13   <u>Entire Agreement</u>.   Except as otherwise expressly provided herein, this Agreement and the other documents described or contemplated herein embody the entire agreement and understanding among the parties hereto and thereto and supersede all prior agreements and understandings relating to the subject matter hereof and thereof.

9.14   <u>Other Relationships</u>.   No relationship created hereunder or under any other Loan Document shall in any way affect the ability of the Administrative Agent or its Affiliates and each Lender or its respective Affiliates to enter into or maintain business relationships with the

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

Borrower beyond the relationships specifically contemplated by this Agreement and the other Loan Documents.

9.15    Directly or Indirectly. If any provision in this Agreement refers to any action taken by any Person, or which such Person is prohibited from taking, such provision shall be applicable whether such action is taken directly or indirectly by such Person, whether or not expressly specified in such provision.

9.16    Consent to Jurisdiction. BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY GEORGIA STATE OR FEDERAL COURT SITTING IN FULTON COUNTY, GEORGIA, OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE NOTES OR ANY OTHER LOAN DOCUMENT AND HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH GEORGIA STATE OR FEDERAL COURT. BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING. EACH PARTY IRREVOCABLY CONSENTS TO THE SERVICE OF COPIES OF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY BE SERVED IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING BY UNITED STATES CERTIFIED MAIL, RETURN RECEIPT REQUESTED, OF COPIES OF SUCH PROCESS TO SUCH BORROWER'S ADDRESS REFERENCED IN SECTION 9.3. EACH PARTY AGREES THAT A JUDGMENT, FINAL BY APPEAL OR EXPIRATION OF TIME TO APPEAL WITHOUT AN APPEAL BEING TAKEN, IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. NOTHING IN THIS SECTION SHALL AFFECT THE RIGHT OF ANY PARTY TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR AFFECT THE RIGHT OF THE ADMINISTRATIVE AGENT OR ANY LENDER TO BRING ANY ACTION OR PROCEEDING AGAINST SUCH BORROWER OR ITS PROPERTY IN THE COURTS OF ANY OTHER JURISDICTION.

9.17    Waiver of Jury Trial. THE BORROWER, THE ADMINISTRATIVE AGENT AND THE LENDERS HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY NOTE, OR ANY OTHER INSTRUMENT OR DOCUMENT DELIVERED HEREUNDER OR THEREUNDER.

9.18    Arbitration.

(a)    CLAIM OR CONTROVERSY. IN LIEU OF PROCEEDING AT LAW AS CONTEMPLATED BY SECTION 9.16, PRIOR TO THE DATE ON WHICH THE FIRST NEW LENDER BECOMES A LENDER AND EXCEPT AS PROVIDED IN SECTION (c) BELOW, ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF A BREACH OR AN ALLEGED BREACH OF THE PROVISIONS OF THIS AGREEMENT, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING

ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (OR IF NOT APPLICABLE, THE APPLICABLE STATE LAW), THE RULES OF PRACTICE AND PROCEDURE FOR THE ARBITRATION OF COMMERCIAL DISPUTES OF J.A.M.S./ENDISPUTE OR ANY SUCCESSOR THEREOF ("J.A.M.S."), AND THE PROVISIONS OF SECTION (b) BELOW. IN THE EVENT OF ANY INCONSISTENCY AMONG SUCH RULES OF PRACTICE OR PROCEDURE AND THIS AGREEMENT, THE PROVISIONS OF SECTION (b) BELOW SHALL CONTROL. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION, INCLUDING AS CONTEMPLATED BY SECTION 9.16.    ANY PARTY TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN THE COURTS CONTEMPLATED BY SECTION 9.16.

(b)    SPECIAL RULES.    THE ARBITRATION SHALL BE CONDUCTED IN ATLANTA, GEORGIA AND ADMINISTERED BY J.A.M.S. WHO WILL APPOINT THREE (3) ARBITRATORS; PROVIDED, HOWEVER, THAT IF J.A.M.S. IS UNABLE OR LEGALLY PRECLUDED FROM ADMINISTERING THE ARBITRATION, THEN THE AMERICAN ARBITRATION ASSOCIATION WILL SERVE.    ALL ARBITRATION HEARINGS WILL BE COMMENCED WITHIN THIRTY (30) DAYS OF THE DEMAND FOR ARBITRATION; FURTHER, THE ARBITRATOR SHALL ONLY, UPON A SHOWING OF CAUSE, BE PERMITTED TO EXTEND THE COMMENCEMENT OF SUCH HEARING FOR UP TO AN ADDITIONAL FIFTEEN (15) DAYS.

(c)    RESERVATION OF RIGHTS.    NOTHING IN THIS SECTION SHALL BE DEEMED TO (i) LIMIT THE APPLICABILITY OF ANY OTHERWISE APPLICABLE STATUTES OF LIMITATION OR REPOSE AND ANY WAIVERS CONTAINED IN THIS AGREEMENT; (ii) BE A WAIVER BY THE LENDERS OF THE PROTECTION AFFORDED TO THEM BY 12 U.S.C. SEC. 91 OR ANY SIMILAR STATE LAW; (iii) LIMIT THE RIGHT OF THE ADMINISTRATIVE AGENT AND THE LENDERS IN THE EVENT OF A DEFAULT IN THE PAYMENT OF PRINCIPAL, INTEREST OR OTHER AMOUNTS OWED BY THE BORROWER TO, IN LIEU OF ARBITRATION (EVEN IF ALREADY COMMENCED), PROCEED TO A COURT OF COMPETENT JURISDICTION, INCLUDING AS CONTEMPLATED BY SECTION 9.16, TO ENFORCE THEIR RIGHTS AND REMEDIES, IN WHICH EVENT THIS SECTION SHALL NOT APPLY TO SUCH MATTER; OR (iv) LIMIT THE RIGHT OF THE ADMINISTRATIVE AGENT AND THE LENDERS (A) TO EXERCISE SELF HELP REMEDIES INCLUDING, BUT NOT LIMITED TO, SETOFF, OR (B) TO FORECLOSE AGAINST ANY REAL OR TANGIBLE OR INTANGIBLE PERSONAL PROPERTY COLLATERAL, OR (C) TO OBTAIN FROM A COURT PROVISIONAL OR ANCILLARY REMEDIES SUCH AS (BUT NOT LIMITED TO) INJUNCTIVE RELIEF, WRIT OF POSSESSION OR THE APPOINTMENT OF A RECEIVER.    THE ADMINISTRATIVE AGENT AND THE LENDERS MAY EXERCISE SUCH SELF HELP RIGHTS, FORECLOSE UPON SUCH PROPERTY, OR OBTAIN SUCH PROVISIONAL OR ANCILLARY REMEDIES BEFORE, DURING OR AFTER THE PENDENCY OF ANY ARBITRATION PROCEEDING BROUGHT PURSUANT TO THIS AGREEMENT.    NEITHER THE EXERCISE OF SELF HELP REMEDIES NOR THE INSTITUTION OR MAINTENANCE OF AN ACTION FOR FORECLOSURE OR

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement.DOC

PROVISIONAL OR ANCILLARY REMEDIES SHALL CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY, INCLUDING THE CLAIMANT IN ANY SUCH ACTION, TO ARBITRATE THE MERITS OF THE CONTROVERSY OR CLAIM OCCASIONING RESORT TO SUCH REMEDIES.

9.19    Disclosure.    Administrative Agent and each Lender agrees, on behalf of itself and each of its Affiliates, directors, officers, employees and representatives, to use reasonable precautions to keep confidential, in accordance with its customary procedures for handling confidential information of the same nature and in accordance with safe and sound banking practices, any non-public information supplied to it by the Borrower or any of its Subsidiaries pursuant to this Agreement that is identified by such Person as being confidential at the time the same is delivered to the Administrative Agent or any Lender; provided that nothing herein shall limit the disclosure of any such information (a) after such information shall have become public other than through a violation of this Section, (b) to the extent required by statute, rule, regulation or judicial process, (c) to counsel for the Administrative Agent or any Lender on a confidential basis, (d) to bank examiners or any other regulatory authority having jurisdiction over the Administrative Agent or any Lender, or to auditors or accountants on a confidential basis, (e) to comply with any order issued by a court of competent jurisdiction in any litigation, including any action arising in connection with the enforcement of rights or remedies hereunder or under any other Loan Document or (f) to any assignee or participant (or prospective assignee or participant) provided that such assignee or participant or potential assignee or participant shall agree (i) to treat in confidence such information unless such information otherwise becomes public knowledge, (ii) not to disclose such information to a third party, except as required by law or legal process and (c) not to make use of such information for purposes of transactions unrelated to such contemplated assignment or participation.

9.20    Consent.    Notwithstanding anything to the contrary in this Agreement, in the event that Borrower requests Lender consent to any matter requiring consent of all Lenders and all of the following have occurred:

(a)    Administrative Agent obtains consent from Lenders holding not less than 66.37% of the total Credit Commitment but is not able to obtain consent form the remaining Lender(s); and

(b)    The non-consenting Lender or Lender's (each a "Non-consenting Lender") refuse to consent to the requested matter within thirty (30) days after written request for such consent and such refusal is not in good faith;

then Borrower shall have the right and option to tender to each Non-consenting Lender payment in full of such Non-consenting Lender's Credit Commitment of the outstanding principal amount and accrued interest on the Loan. Upon such tender, the Non-consenting Lender shall accept payment and shall thereafter have no rights and obligations under this Agreement.

[Signature pages follow]

MMMBUCKHEAD-#1531405-v12-duke&king_credit_agreement DOC

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

**"BORROWER"**

**DUKE AND KING ACQUISITION CORP.**, a
Delaware corporation

By: _____
Name: Christian Michalik
Title: Vice President

Address:   c/o Kinderhook Industries, LLC
888 Seventh Avenue, 16th Floor
New York, NY 10106
Attention: Paul Cifelli

**DUKE AND KING FLORIDA, LLC**, a
Delaware limited liability company

By: _____
Name: Christian Michalik
Title: Vice President

Address:   c/o Kinderhook Industries, LLC
888 Seventh Avenue, 16th Floor
New York, NY 10106
Attention: Paul Cifelli

**"ADMINISTRATIVE     AGENT"     AND
"LENDERS"**

65

**BANK OF AMERICA, N.A.,** in its capacity as
Administrative Agent

By: _____

    Name: John M. Huss
    Title: Principal

Address:    GA1-006-13-20
          600 Peachtree Street, N.E.
          Atlanta, Georgia 30308-2214
          Attention: Credit Products Officer,
          Restaurant Finance Group

"LENDERS"

**BANK OF AMERICA, N.A.,** in its capacity
as a Lender

By: _____

Name: John M. Huss

Title: Principal

Address:    GA1-006-13-20
            600 Peachtree Street, N.E.
            Atlanta, Georgia 30308-2214
            Attention: Credit Products Officer,
            Restaurant Finance Group

MMMBUCKHEAD-#1531405-v8-dukeking_credit_agreement

## SCHEDULE I

## LENDERS/COMMITMENTS

| LENDER | COMMITMENT RATIO | CREDIT COMMITMENT |
|--------|------------------|-------------------|
| Bank of America, N.A. | 100 | $23,500,000.00 |
| | | |
| | | |
| | | |
| | | |

## SCHEDULE 2.1(h)

## FLORIDA UNITS
## (by Unit No.)

| Restaurant Unit Number | Unit Address |
|---|---|
| Unit 12350 | 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 |
| Unit 42 | 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Florida 33311 |
| Unit 2131 | 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 |
| Unit 2755 | 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462 |
| Unit 3197 | 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484 |
| Unit 4451 | 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407 |
| Unit 4972 | 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 |
| Unit 5777 | 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 |
| Unit 6122 | 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 |
| Unit 6224 | 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 |
| Unit 6923 | 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 |
| Unit 7128 | 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 |

# SCHEDULE 3.1(b)(1)

# FEE AND GROUND LEASED UNITS

| Restaurant Unit Number | Unit Address |
|---|---|
| Unit 111 | 901 North Lake Street, Aurora, Kane County, Illinois 60506 |
| Unit 1888 | 2624 Milton Avenue, Janesville, Rock County, Wisconsin 53545 |
| Unit 2641 | 2011 E. Main Street, Albert Lea, Freeborn County, Minnesota 56007 |
| Unit 3203 | 4121 Sauk Trail, Richton Park, Cook County, Illinois 60471 |
| Unit 4009 | 14251 Nicollet Avenue, Burnsville, Dakota County, Minnesota 55337 |
| Unit 4043 | 229 West Kimberly Road, Davenport, Scott County, Iowa 52806 |
| Unit 4116 | 2651 County Road I, Mounds View, Ramsey County, Minnesota 55112 |
| Unit 4151 | 1150 East Highway 13, Burnsville, Dakota County, Minnesota 55337 |
| Unit 4201 | 5231 Brady Street, Davenport, Scott County, Iowa 52807 |
| Unit 4297 | 4040 38th Avenue, Moline, Rock Island County Illinois 61265 |
| Unit 4334 | 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 |
| Unit 4553 | 1501 Northwest Seventh Street, Faribault, Rice County, Minnesota 55021 |
| Unit 5012 | 2025 Northdale Boulevard, Coon Rapids, Anoka County, Minnesota 55433 |
| Unit 5879 | 1830 Southwest Avenue, Freeport, Stephenson County, Illinois 61032 |
| Unit 5960 | 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 |
| Unit 5971 | 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 |
| Unit 6211 | 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 |
| Unit 6270 | 8510 Edinborough Center Drive, Brooklyn Park, Hennepin County, Minnesota 55444 |
| Unit 6545 | 1022 East Blue Earth Avenue, Fairmont, Martin County, Minnesota 56031 |
| Unit 6615 | 1318 Riverfront Drive, Mankato, Blue Earth County, Minnesota 56001 |
| Unit 7444 | 835 Bridge Street, Owatonna, Steele County, Minnesota 55060 |
| Unit 7557 | 8501 Springbrook Drive Northwest, Coon Rapids, Anoka County, Minnesota 55433 |
| Unit 7937 | 2411 Center Drive, Hudson, St. Croix County, Wisconsin 54016 |
| Unit 8004 | 3333 Rice Street, Shoreview, Ramsey County, Minnesota 55126 |
| Unit 8224 | 5105 Industrial Boulevard, Edina, Hennepin County, Minnesota 55439 |
| Unit 9081 | 1409 Fourth Street Northwest, Austin, Mower County, Minnesota 55912 |
| Unit 9272 | 403 Fire Monument Road, Hinckley, Pine County, Minnesota 55037 |
| Unit 9332 | 5358 West Broadway, Crystal, Blue Earth County, Minnesota 55428 |
| Unit 9366 | 400 Center Way, Janesville, Rock County, Wisconsin 53545 |
| Unit 10239 | 244 Grand Avenue, St. Paul, Ramsey County, Minnesota 55102 |
| Unit 10748 | 678 West 14th Street, Chicago Heights, Cook County, Illinois 60411 |
| Unit 11143 | 120 Elm Street, Farmington, Dakota County, Minnesota 55024 |
| Unit 11682 | 38711 Tanger Drive, North Branch, Chisago County, Minnesota 55056 |
| Unit 11877 | 504 West Blackhawk Drive, Byron, Ogle County, Illinois 61010 |
| Unit 12350 | 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 |
| Unit 12757 | 1287 North Main Street, River Falls, Pierce County, Wisconsin 54022 |
| Unit 13091 | 287 57th Avenue, Fridley, Anoka County, Minnesota 55432-5421 |

## SCHEDULE 3.1(b)(2)

## LEASED UNITS

| Restaurant Unit Number | Unit Address |
|---|---|
| Unit 42 | 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Florida 33311 |
| Unit 106 | 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425 |
| Unit 116 | 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 |
| Unit 255 | 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 |
| Unit 437 | 1138 East State Street, Rockford, Winnebago County, Illinois 61104 |
| Unit 805 | 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413 |
| Unit 1060 | 1450 4th Street, Beloit, Rock County, Wisconsin 53511 |
| Unit 1326 | 2434 11th Street, Rockford, Winnebago County, Illinois 61104 |
| Unit 1747 | 209 Norris Drive, Ottawa, La Salle County, Illinois 61350 |
| Unit 1752 | 723 Shooting Park, Peru, La Salle County, Illinois 61254 |
| Unit 1764 | 2655 East Washington, Madison, Dane County, Wisconsin 53704 |
| Unit 2131 | 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 |
| Unit 2160 | 1385 Douglas Avenue, Montgomery, Kane County, Illinois 60538 |
| Unit 2755 | 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462 |
| Unit 3197 | 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484 |
| Unit 3792 | 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220 |
| Unit 4111 | 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151 |
| Unit 4122 | 5020 160th Street, SE, Prior Lake, Scott County, Minnesota 55372 |
| Unit 4206 | 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 |
| Unit 4451 | 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407 |
| Unit 4507 | 13840 Grove Drive, Maple Grove, Hennepin County, Minnesota 55311 |
| Unit 4857 | 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 |
| Unit 4972 | 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 |
| Unit 5382 | 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 |
| Unit 5591 | 2535 Division Street North, St. Paul, Ramsey County, Minnesota 55109 |
| Unit 5713 | 1501 Weir Drive, Woodbury, Washington County, Minnesota 55125 |
| Unit 5777 | 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 |
| Unit 5978 | 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 |
| Unit 6122 | 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 |
| Unit 6224 | 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 |
| Unit 6254 | 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 |
| Unit 6299 | 10801 Bloomington Ferry Road, Bloomington, Hennepin County, Minnesota 55438 |
| Unit 6530 | 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 |
| Unit 6590 | 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 |
| Unit 6923 | 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 |
| Unit 7128 | 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 |
| Unit 7435 | 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 |
| Unit 7466 | 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 |
| Unit 9095 | 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 |
| Unit 9256 | 255 Triangle Lane, Jordan, Scott County, Minnesota 55352 |
| Unit 9934 | 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 |
| Unit 9993 | 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 |
| Unit 9994 | 318 East Kraft Drive, Melrose, Sterns County, Minnesota 56352 |
| Unit 10234 | 7510 East State Street, Rockford, Winnebago County, Illinois 61109 |
| Unit 10284 | 695 East 7th Street, St. Paul, Ramsey County, Minnesota 55106 |
| Unit 11191 | 2789 Milwaukee Road, Beloit, Rock County, Wisconsin, 53511 |
| Unit 11243 | 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 |
| Unit 11254 | 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 |
| Unit 11284 | 1500 Stinson Boulevard Northeast, Minneapolis, Hennepin County, Minnesota 55413 |
| Unit 11535 | 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 |
| Unit 12250 | 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 |

## SCHEDULE 3.1(b)(3)

## SITES WITHOUT LANDLORD CONSENTS

| | **SALE LEASE-BACK SITES** | **SITES WHERE LESSOR CONSENTS NOT PROVIDED OR LESSOR CONSENTS NOT ACCEPTABLE TO AGENT** |
|---|---|---|
| 1. | Unit 111 – 901 North Lake Street, Aurora, Kane County, Illinois 60506 | |
| 2. | Unit 1888 – 2624 Milton Avenue, Janesville, Rock County, Wisconsin 53545 | |
| 3. | Unit 2641 – 2011 E. Main Street, Albert Lea, Freeborn County, Minnesota 56007 | |
| 4. | Unit 3203 – 4121 Sauk Trail, Richton Park, Cook County, Illinois 60471 | |
| 5. | Unit 4009 – 14251 Nicollet Avenue, Burnsville, Dakota County, Minnesota 55337 | |
| 6. | Unit 4043 – 229 West Kimberly Road, Davenport, Scott County, Iowa 52806 | |
| 7. | Unit 4116 - 2651 County Road I, Mounds View, Ramsey County, Minnesota 55112 | |
| 8. | Unit 4151 – 1150 East Highway 13, Burnsville, Dakota County, Minnesota 55337 | |
| 9. | Unit 4201 – 5231 Brady Street, Davenport, Scott County, Iowa 52807 | X |
| 10. | Unit 4297 – 4040 38th Avenue, Moline, Rock Island County Illinois 61265 | |
| 11. | Unit 4334 – 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 | X |
| 12. | Unit 4553 – 1501 Northwest Seventh Street, Faribault, Rice County, Minnesota 55021 | |
| 13. | Unit 5012 – 2025 Northdale Boulevard, Coon Rapids, Anoka County, Minnesota 55433 | |
| 14. | Unit 5879 – 1830 Southwest Avenue, Freeport, Stephenson County, Illinois 61032 | |
| 15. | Unit 5960 – 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 | |
| 16. | Unit 5971 – 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 | |
| 17. | Unit 6211 – 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 | |
| 18. | Unit 6270 – 8510 Edinborough Center Drive, Brooklyn Park, Hennepin County, Minnesota 55444 | |
| 19. | Unit 6545 – 1022 East Blue Earth Avenue, Fairmont, Martin County, Minnesota 56031 | |
| 20. | Unit 6615 – 1318 Riverfront Drive, Mankato, Blue Earth County, Minnesota 56001 | |
| 21. | Unit 7444 – 835 Bridge Street, Owatonna, Steele County, Minnesota 55060 | X |
| 22. | Unit 7557 – 8501 Springbrook Drive Northwest, Coon Rapids, Anoka County, Minnesota 55433 | |
| 23. | Unit 7937 – 2411 Center Drive, Hudson, St. Croix County, Wisconsin 54016 | |
| 24. | Unit 8004 – 3333 Rice Street, Shoreview, Ramsey County, Minnesota 55126 | |
| 25. | Unit 8224 – 5105 Industrial Boulevard, Edina, Hennepin County, Minnesota 55439 | |
| 26. | Unit 9081 – 1409 Fourth Street Northwest, Austin, Mower County, Minnesota 55912 | |
| 27. | Unit 9272 – 403 Fire Monument Road, Hinckley, Pine County, Minnesota 55037 | |
| 28. | Unit 9332 – 5358 West Broadway, Crystal, Blue Earth County, Minnesota | |

| | | |
|---|---|---|
| | 55428 | |
| 29. | Unit 9366 – 400 Center Way, Janesville, Rock County, Wisconsin 53545 | X |
| 30. | Unit 10239 – 244 Grand Avenue, St. Paul, Ramsey County, Minnesota 55102 | |
| 31. | Unit 10748 – 678 West 14th Street, Chicago Heights, Cook County, Illinois 60411 | |
| 32. | Unit 11143 – 120 Elm Street, Farmington, Dakota County, Minnesota 55024 | |
| 33. | Unit 11682 – 38711 Tanger Drive, North Branch, Chisago County, Minnesota 55056 | |
| 34. | Unit 11877 – 504 West Blackhawk Drive, Byron, Ogle County, Illinois 61010 | |
| 35. | Unit 12350 – 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 | |
| 36. | Unit 12757 – 1287 North Main Street, River Falls, St. Croix County, Wisconsin 54022 | |
| 37. | Unit 13091 - 287 57th Avenue, Fridley, Anoka County, Minnesota 55432-5421 | |

| | LEASE SITES | SITES WHERE LESSOR CONSENTS NOT PROVIDED OR LESSOR CONSENTS NOT ACCEPTABLE TO AGENT |
|---|---|---|
| 1. | Unit 42 - 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Broward County, Florida 33311  **BKC OWNED SITE.** | |
| 2. | Unit 106 – 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425  **BKC OWNED SITE.** | |
| 3. | Unit 116 – 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 | |
| 4. | Unit 255 – 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 | |
| 5. | Unit 437 – 1138 East State Street, Rockford, Winnebago County, Illinois 61104 | |
| 6. | Unit 805 – 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413  **BKC OWNED SITE.** | |
| 7. | Unit 1060 – 1450 4th Street, Beloit, Rock County, Wisconsin 53511 | |
| 8. | Unit 1326 – 2434 11th Street, Rockford, Winnebago County, Illinois 61104 | |
| 9. | Unit 1747 – 209 Norris Drive, Ottawa, La Salle County, Illinois 61350 | |
| 10. | Unit 1752 – 723 Shooting Park, Peru, La Salle County, Illinois 61254 | X |
| 11. | Unit 1764 – 2655 East Washington, Madison, Dane County, Wisconsin 53704 | |
| 12. | Unit 2131 – 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 | |
| 13. | Unit 2160 – 1385 Douglas Avenue, Montgomery, Kane County, Illinois 60538 | |
| 14. | Unit 2755 - 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462  **BKC OWNED SITE.** | |
| 15. | Unit 3197 – 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484  **BKC OWNED SITE.** | |
| 16. | Unit 3792 – 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220  **BKC OWNED SITE.** | |
| 17. | Unit 4111 – 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151  **BKC OWNED SITE.** | ' |
| 18. | Unit 4122 - 5020 160th Street, SE, Prior Lake, Scott County, Minnesota 55372 | |
| 19. | Unit 4206 - 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 | |
| 20. | Unit 4451 – 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407  **BKC OWNED SITE.** | |

| | | |
|---|---|---|
| 21. | Unit 4507 - 13840 Grove Drive, Maple Grove, Hennepin County, Minnesota 55311 | |
| 22. | Unit 4857 - 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 | X |
| 23. | Unit 4972 - 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 | |
| 24. | Unit 5382 - 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 | X |
| 25. | Unit 5591 - 2535 Division Street North, St. Paul, Ramsey County, Minnesota 55109 | |
| 26. | Unit 5713 - 1501 Weir Drive, Woodbury, Washington County, Minnesota 55125 | |
| 27. | Unit 5777 - 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 | X |
| 28. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X |
| 29. | Unit 6122 - 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 | |
| 30. | Unit 6224 - 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 | X |
| 31. | Unit 6254 - 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 | X |
| 32. | Unit 6299 – 10801 Bloomington Ferry Road, Bloomington, Hennepin County, Minnesota 55438 **BKC OWNED SITE.** | |
| 33. | Unit 6530 - 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 | X |
| 34. | Unit 6590 - 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 | X |
| 35. | Unit 6923 - 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 | |
| 36. | Unit - 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 | |
| 37. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X |
| 38. | Unit - 7466 - 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 | X |
| 39. | Unit 9095 - 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 | |
| 40. | Unit 9256 - 255 Triangle Lane, Jordan, Scott County, Minnesota 55352 | |
| 41. | Unit 9934 - 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 | X |
| 42. | Unit 9993 - 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 | X |
| 43. | Unit 9994 - 318 East Kraft Drive, Melrose, Sterns County, Minnesota 56352 | |
| 44. | Unit 10234 - 7510 East State Street, Rockford, Winnebago County, Illinois 61109 | |
| 45. | Unit 10284 - 695 East 7th Street, St. Paul, Ramsey County, Minnesota 55106 | |
| 46. | Unit 11191 - 2789 Milwaukee Road, Beloit, Rock County, Wisconsin, 53511 | |
| 47. | Unit 11243 - 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 | |
| 48. | Unit 11254 - 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 | X |
| 49. | Unit 11284 - 1500 Stinson Boulevard Northeast, Minneapolis, Hennepin County, Minnesota 55413 | |
| 50. | Unit 11535 - 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 | X |
| 51. | Unit 12250 - 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 | |

## SCHEDULE 4.1

## JURISDICTIONS WHERE BORROWER IS QUALIFIED TO DO BUSINESS

**Duke and King Acquisition Corp.**

Florida
Illinois
Iowa
Minnesota
Wisconsin

**Duke and King Florida, LLC**

Florida

## SCHEDULE 4.3

### SUBSIDIARIES OWNERSHIP; JURISDICTION OF
### ORGANIZATION; JURISDICTION WHERE QUALIFIED TO DO BUSINESS

| SUBSIDIARY | OWNERSHIP | QUALIFICATION JURISDICTIONS |
|---|---|---|
| DK Florida Holdings, Inc. | 100% | Florida |
| Duke and King Florida, LLC | 100% | Florida |
|  |  |  |
|  |  |  |

## SCHEDULE 4.28(b)

## LEASED UNITS WITH EXPIRATION PRIOR TO MATURITY

| | SALE LEASE-BACK SITES | SITES WHERE TERM OF LEASE EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 38. | Unit 111 – 901 North Lake Street, Aurora, Kane County, Illinois 60506 | |
| 39. | Unit 1888 – 2624 Milton Avenue, Janesville, Rock County, Wisconsin 53545 | |
| 40. | Unit 2641 – 2011 E. Main Street, Albert Lea, Freeborn County, Minnesota 56007 | |
| 41. | Unit 3203 – 4121 Sauk Trail, Richton Park, Cook County, Illinois 60471 | |
| 42. | Unit 4009 – 14251 Nicollet Avenue, Burnsville, Dakota County, Minnesota 55337 | |
| 43. | Unit 4043 – 229 West Kimberly Road, Davenport, Scott County, Iowa 52806 | |
| 44. | Unit 4116 - 2651 County Road I, Mounds View, Ramsey County, Minnesota 55112 | |
| 45. | Unit 4151 – 1150 East Highway 13, Burnsville, Dakota County, Minnesota 55337 | |
| 46. | Unit 4201 – 5231 Brady Street, Davenport, Scott County, Iowa 52807 | |
| 47. | Unit 4297 – 4040 38th Avenue, Moline, Rock Island County Illinois 61265 | |
| 48. | Unit 4334 – 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 | |
| 49. | Unit 4553 – 1501 Northwest Seventh Street, Faribault, Rice County, Minnesota 55021 | |
| 50. | Unit 5012 – 2025 Northdale Boulevard, Coon Rapids, Anoka County, Minnesota 55433 | |
| 51. | Unit 5879 – 1830 Southwest Avenue, Freeport, Stephenson County, Illinois 61032 | |
| 52. | Unit 5960 – 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 | |
| 53. | Unit 5971 – 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 | |
| 54. | Unit 6211 – 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 | |
| 55. | Unit 6270 – 8510 Edinborough Center Drive, Brooklyn Park, Hennepin County, Minnesota 55444 | |
| 56. | Unit 6545 – 1022 East Blue Earth Avenue, Fairmont, Martin County, Minnesota 56031 | |
| 57. | Unit 6615 – 1318 Riverfront Drive, Mankato, Blue Earth County, Minnesota 56001 | |
| 58. | Unit 7444 – 835 Bridge Street, Owatonna, Steele County, Minnesota 55060 | |
| 59. | Unit 7557 – 8501 Springbrook Drive Northwest, Coon Rapids, Anoka County, Minnesota 55433 | |
| 60. | Unit 7937 – 2411 Center Drive, Hudson, St. Croix County, Wisconsin 54016 | |
| 61. | Unit 8004 – 3333 Rice Street, Shoreview, Ramsey County, Minnesota 55126 | |
| 62. | Unit 8224 – 5105 Industrial Boulevard, Edina, Hennepin County, Minnesota 55439 | |
| 63. | Unit 9081 – 1409 Fourth Street Northwest, Austin, Mower County, Minnesota 55912 | |
| 64. | Unit 9272 – 403 Fire Monument Road, Hinckley, Pine County, Minnesota 55037 | |
| 65. | Unit 9332 – 5358 West Broadway, Crystal, Blue Earth County, Minnesota 55428 | |
| 66. | Unit 9366 – 400 Center Way, Janesville, Rock County, Wisconsin 53545 | |
| 67. | Unit 10239 – 244 Grand Avenue, St. Paul, Ramsey County, Minnesota 55102 | |
| 68. | Unit 10748 – 678 West 14th Street, Chicago Heights, Cook County, Illinois 60411 | |
| 69. | Unit 11143 – 120 Elm Street, Farmington, Dakota County, Minnesota 55024 | |
| 70. | Unit 11682 – 38711 Tanger Drive, North Branch, Chisago County, Minnesota 55056 | |
| 71. | Unit 11877 – 504 West Blackhawk Drive, Byron, Ogle County, Illinois 61010 | |
| 72. | Unit 12350 – 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 | |

| | | |
|---|---|---|
| 73. | Unit 12757 – 1287 North Main Street, River Falls, St. Croix County, Wisconsin 54022 | |
| 74. | Unit 13091 - 287 57th Avenue, Fridley, Anoka County, Minnesota 55432-5421 | |

| | LEASE SITES | SITES WHERE TERM OF LEASE EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 52. | Unit 42 - 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Broward County, Florida 33311  **BKC OWNED SITE.** | |
| 53. | Unit 106 – 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425  **BKC OWNED SITE.** | X |
| 54. | Unit 116 – 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 | X |
| 55. | Unit 255 – 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 | |
| 56. | Unit 437 – 1138 East State Street, Rockford, Winnebago County, Illinois 61104 | |
| 57. | Unit 805 – 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413  **BKC OWNED SITE.** | X |
| 58. | Unit 1060 – 1450 4th Street, Beloit, Rock County, Wisconsin 53511 | |
| 59. | Unit 1326 – 2434 11th Street, Rockford, Winnebago County, Illinois 61104 | |
| 60. | Unit 1747 – 209 Norris Drive, Ottawa, La Salle County, Illinois 61350 | |
| 61. | Unit 1752 – 723 Shooting Park, Peru, La Salle County, Illinois 61254 | |
| 62. | Unit 1764 – 2655 East Washington, Madison, Dane County, Wisconsin 53704 | |
| 63. | Unit 2131 – 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 | |
| 64. | Unit 2160 – 1385 Douglas Avenue, Montgomery, Kane County, Illinois 60538 | |
| 65. | Unit 2755 - 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462  **BKC OWNED SITE.** | |
| 66. | Unit 3197 – 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484  **BKC OWNED SITE.** | |
| 67. | Unit 3792 – 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220  **BKC OWNED SITE.** | X |
| 68. | Unit 4111 – 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151  **BKC OWNED SITE.** | |
| 69. | Unit 4122 - 5020 160th Street, SE, Prior Lake, Scott County, Minnesota 55372 | |
| 70. | Unit 4206 - 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 | |
| 71. | Unit 4451 – 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407  **BKC OWNED SITE.** | X |
| 72. | Unit 4507 - 13840 Grove Drive, Maple Grove, Hennepin County, Minnesota 55311 | |
| 73. | Unit 4857 - 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 | |
| 74. | Unit 4972 - 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 | X |
| 75. | Unit 5382 - 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 | |
| 76. | Unit 5591 - 2535 Division Street North, St. Paul, Ramsey County, Minnesota 55109 | |
| 77. | Unit 5713 - 1501 Weir Drive, Woodbury, Washington County, Minnesota 55125 | |
| 78. | Unit 5777 - 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 | |
| 79. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X |
| 80. | Unit 6122 - 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 | |
| 81. | Unit 6224 - 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 | |
| 82. | Unit 6254 - 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 | |
| 83. | Unit 6299 – 10801 Bloomington Ferry Road, Bloomington, Hennepin County, Minnesota 55438  **BKC OWNED SITE.** | |
| 84. | Unit 6530 - 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 | |

| 85. | Unit 6590 - 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 | |
|---|---|---|
| 86. | Unit 6923 - 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 | |
| 87. | Unit - 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 | |
| 88. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X |
| 89. | Unit - 7466 - 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 | |
| 90. | Unit 9095 - 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 | |
| 91. | Unit 9256 - 255 Triangle Lane, Jordan, Scott County, Minnesota 55352 | |
| 92. | Unit 9934 - 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 | |
| 93. | Unit 9993 - 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 | |
| 94. | Unit 9994 - 318 East Kraft Drive, Melrose, Sterns County, Minnesota 56352 | |
| 95. | Unit 10234 - 7510 East State Street, Rockford, Winnebago County, Illinois 61109 | |
| 96. | Unit 10284 - 695 East 7th Street, St. Paul, Ramsey County, Minnesota 55106 | |
| 97. | Unit 11191 - 2789 Milwaukee Road, Beloit, Rock County, Wisconsin, 53511 | |
| 98. | Unit 11243 - 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 | |
| 99. | Unit 11254 - 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 | |
| 100. | Unit 11284 - 1500 Stinson Boulevard Northeast, Minneapolis, Hennepin County, Minnesota 55413 | |
| 101. | Unit 11535 - 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 | |
| 102. | Unit 12250 - 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 | |

# SCHEDULE 5.3

## FRANCHISE AGREEMENTS TO BE EXTENDED

| | SALE LEASE-BACK SITES | SITES WHERE TERM OF FRANCHISE AGREEMENT EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 75. | Unit 111 – 901 North Lake Street, Aurora, Kane County, Illinois 60506 | |
| 76. | Unit 1888 – 2624 Milton Avenue, Janesville, Rock County, Wisconsin 53545 | |
| 77. | Unit 2641 – 2011 E. Main Street, Albert Lea, Freeborn County, Minnesota 56007 | |
| 78. | Unit 3203 – 4121 Sauk Trail, Richton Park, Cook County, Illinois 60471 | |
| 79. | Unit 4009 – 14251 Nicollet Avenue, Burnsville, Dakota County, Minnesota 55337 | |
| 80. | Unit 4043 – 229 West Kimberly Road, Davenport, Scott County, Iowa 52806 | |
| 81. | Unit 4116 - 2651 County Road I, Mounds View, Ramsey County, Minnesota 55112 | |
| 82. | Unit 4151 – 1150 East Highway 13, Burnsville, Dakota County, Minnesota 55337 | |
| 83. | Unit 4201 – 5231 Brady Street, Davenport, Scott County, Iowa 52807 | |
| 84. | Unit 4297 – 4040 38th Avenue, Moline, Rock Island County Illinois 61265 | |
| 85. | Unit 4334 – 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 | X |
| 86. | Unit 4553 – 1501 Northwest Seventh Street, Faribault, Rice County, Minnesota 55021 | |
| 87. | Unit 5012 – 2025 Northdale Boulevard, Coon Rapids, Anoka County, Minnesota 55433 | |
| 88. | Unit 5879 – 1830 Southwest Avenue, Freeport, Stephenson County, Illinois 61032 | |
| 89. | Unit 5960 – 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 | X |
| 90. | Unit 5971 – 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 | X |
| 91. | Unit 6211 – 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 | X |
| 92. | Unit 6270 – 8510 Edinborough Center Drive, Brooklyn Park, Hennepin County, Minnesota 55444 | |
| 93. | Unit 6545 – 1022 East Blue Earth Avenue, Fairmont, Martin County, Minnesota 56031 | |
| 94. | Unit 6615 – 1318 Riverfront Drive, Mankato, Blue Earth County, Minnesota 56001 | |
| 95. | Unit 7444 – 835 Bridge Street, Owatonna, Steele County, Minnesota 55060 | |
| 96. | Unit 7557 – 8501 Springbrook Drive Northwest, Coon Rapids, Anoka County, Minnesota 55433 | |
| 97. | Unit 7937 – 2411 Center Drive, Hudson, St. Croix County, Wisconsin 54016 | |
| 98. | Unit 8004 – 3333 Rice Street, Shoreview, Ramsey County, Minnesota 55126 | |
| 99. | Unit 8224 – 5105 Industrial Boulevard, Edina, Hennepin County, Minnesota 55439 | |
| 100. | Unit 9081 – 1409 Fourth Street Northwest, Austin, Mower County, Minnesota 55912 | |
| 101. | Unit 9272 – 403 Fire Monument Road, Hinckley, Pine County, Minnesota 55037 | |
| 102. | Unit 9332 – 5358 West Broadway, Crystal, Blue Earth County, Minnesota 55428 | |
| 103. | Unit 9366 – 400 Center Way, Janesville, Rock County, Wisconsin 53545 | |
| 104. | Unit 10239 – 244 Grand Avenue, St. Paul, Ramsey County, Minnesota 55102 | |
| 105. | Unit 10748 – 678 West 14th Street, Chicago Heights, Cook County, Illinois 60411 | |
| 106. | Unit 11143 – 120 Elm Street, Farmington, Dakota County, Minnesota 55024 | |
| 107. | Unit 11682 – 38711 Tanger Drive, North Branch, Chisago County, Minnesota 55056 | |
| 108. | Unit 11877 – 504 West Blackhawk Drive, Byron, Ogle County, Illinois 61010 | |

| | | |
|---|---|---|
| 109. | Unit 12350 – 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 | |
| 110. | Unit 12757 – 1287 North Main Street, River Falls, St. Croix County, Wisconsin 54022 | |
| 111. | Unit 13091 - 287 57th Avenue, Fridley, Anoka County, Minnesota 55432-5421 | |

| | **LEASE SITES** | **SITES WHERE TERM OF FRANCHISE AGREEMENT EXPIRES PRIOR TO MATURITY DATE** |
|---|---|---|
| 103. | Unit 42 - 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Broward County, Florida 33311  **BKC OWNED SITE.** | |
| 104. | Unit 106 – 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425 **BKC OWNED SITE.** | X |
| 105. | Unit 116 – 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 | X |
| 106. | Unit 255 – 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 | |
| 107. | Unit 437 – 1138 East State Street, Rockford, Winnebago County, Illinois 61104 | |
| 108. | Unit 805 – 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413 **BKC OWNED SITE.** | X |
| 109. | Unit 1060 – 1450 4th Street, Beloit, Rock County, Wisconsin 53511 | X |
| 110. | Unit 1326 – 2434 11th Street, Rockford, Winnebago County, Illinois 61104 | |
| 111. | Unit 1747 – 209 Norris Drive, Ottawa, La Salle County, Illinois 61350 | |
| 112. | Unit 1752 – 723 Shooting Park, Peru, La Salle County, Illinois 61254 | |
| 113. | Unit 1764 – 2655 East Washington, Madison, Dane County, Wisconsin 53704 | |
| 114. | Unit 2131 – 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 | X |
| 115. | Unit 2160 – 1385 Douglas Avenue, Montgomery, Kane County, Illinois 60538 | |
| 116. | Unit 2755 - 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462 **BKC OWNED SITE.** | |
| 117. | Unit 3197 – 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484 **BKC OWNED SITE.** | |
| 118. | Unit 3792 – 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220 **BKC OWNED SITE.** | X |
| 119. | Unit 4111 – 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151 **BKC OWNED SITE.** | X |
| 120. | Unit 4122 - 5020 160th Street, SE, Prior Lake, Scott County, Minnesota 55372 | |
| 121. | Unit 4206 - 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 | X |
| 122. | Unit 4451 – 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407  **BKC OWNED SITE.** | |
| 123. | Unit 4507 - 13840 Grove Drive, Maple Grove, Hennepin County, Minnesota 55311 | |
| 124. | Unit 4857 - 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 | |
| 125. | Unit 4972 - 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 | X |
| 126. | Unit 5382 - 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 | X |
| 127. | Unit 5591 - 2535 Division Street North, St. Paul, Ramsey County, Minnesota 55109 | |
| 128. | Unit 5713 - 1501 Weir Drive, Woodbury, Washington County, Minnesota 55125 | |
| 129. | Unit 5777 - 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 | |
| 130. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X |
| 131. | Unit 6122 - 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 | |
| 132. | Unit 6224 - 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 | X |
| 133. | Unit 6254 - 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 | X |
| 134. | Unit 6299 – 10801 Bloomington Ferry Road, Bloomington, Hennepin County, | |

| | Minnesota 55438 **BKC OWNED SITE.** | |
|---|---|---|
| 135. | Unit 6530 - 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 | X |
| 136. | Unit 6590 - 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 | X |
| 137. | Unit 6923 - 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 | |
| 138. | Unit - 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 | X |
| 139. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X |
| 140. | Unit - 7466 - 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 | |
| 141. | Unit 9095 - 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 | |
| 142. | Unit 9256 - 255 Triangle Lane, Jordan, Scott County, Minnesota 55352 | |
| 143. | Unit 9934 - 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 | |
| 144. | Unit 9993 - 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 | |
| 145. | Unit 9994 - 318 East Kraft Drive, Melrose, Sterns County, Minnesota 56352 | |
| 146. | Unit 10234 - 7510 East State Street, Rockford, Winnebago County, Illinois 61109 | |
| 147. | Unit 10284 - 695 East 7th Street, St. Paul, Ramsey County, Minnesota 55106 | |
| 148. | Unit 11191 - 2789 Milwaukee Road, Beloit, Rock County, Wisconsin, 53511 | |
| 149. | Unit 11243 - 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 | X |
| 150. | Unit 11254 - 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 | |
| 151. | Unit 11284 - 1500 Stinson Boulevard Northeast, Minneapolis, Hennepin County, Minnesota 55413 | |
| 152. | Unit 11535 - 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 | |
| 153. | Unit 12250 - 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 | X |

## SCHEDULE 6.5

### LIENS

### NONE

## SCHEDULE 6.12

## GUARANTEES

## NONE

## EXHIBIT "A-1"

## TERM NOTE A

**$15,000,000**                                                                     November 1, 2006

FOR VALUE RECEIVED, DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC, a Delaware limited liability company (collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta, Georgia 30308-2214, in lawful money of the United States and in immediately available funds, the principal sum of **FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00)** and all other amounts advanced by Lender to or on behalf of Borrower pursuant to the Credit Agreement (as hereinafter defined) or any other Credit Document, and interest thereon from the date hereof until the maturity hereof, in accordance with the terms of the Credit Agreement. All computations of interest shall be based upon a 360-day year on the actual number of days elapsed in such month.

The Borrower hereby unconditionally further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding from the date hereof, and on any unpaid interest payable hereon, from the date such interest is due hereunder, at the applicable rates per annum and on the dates set forth in the Credit Agreement until such principal amount is paid in full. Further, the Borrower hereby unconditionally further agrees to pay principal on the dates and pursuant to the terms set forth in the Credit Agreement.

Borrower shall make all payments hereunder in lawful money of the United States and in same day or immediately available funds. If any payment is to be made on a day other than a Business Day, such payment shall instead be made on the following Business Day, and such extension of time shall be included in computing the interest payable.

This Note is a "Term Note" referred to in the Credit Agreement, dated as of November 1, 2006, between Borrower and Lender (together with all supplements and amendments thereto, the "Credit Agreement") which is incorporated herein by reference and is subject to the provisions of and entitled to the benefits of the Credit Agreement, including, without limitation, the provisions regarding the interest rate, Default Rate, and principal payments; restrictions on and requirements for prepayment; and rights of acceleration. This Note also is subject to, secured by, and has the benefit of the other Loan Documents. Terms used herein have the meanings assigned to those terms in the Credit Agreement, unless otherwise defined herein.

This Note is hereby expressly limited in that in no event shall the interest payable under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason whatsoever, the provision of any Loan Document, at the time performance of such provision occurs, involves the payment of interest in excess of that permitted by law, and if, under any circumstances, Lender receives as interest any amount which would exceed the highest lawful

rate applicable to Borrower, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance and not the payment of interest.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

### BORROWER:

**DUKE AND KING ACQUISITION CORP.**, a Delaware corporation

By: _____
    Name:_____
    Title:_____


**DUKE AND KING FLORIDA, LLC**, a Delaware limited liability company

By: _____
    Name:_____
Title:

## EXHIBIT "A-2"

## TERM NOTE B

**$1,000,000**                                                                November 1, 2006

      FOR VALUE RECEIVED, DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC, a Delaware limited liability company (collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta, Georgia 30308-2214, in lawful money of the United States and in immediately available funds, the principal sum of **ONE MILLION AND NO/100 DOLLARS ($1,000,000.00)** and all other amounts advanced by Lender to or on behalf of Borrower pursuant to the Credit Agreement (as hereinafter defined) or any other Credit Document, and interest thereon from the date hereof until the maturity hereof, in accordance with the terms of the Credit Agreement. All computations of interest shall be based upon a 360-day year on the actual number of days elapsed in such month.

      The Borrower hereby unconditionally further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding from the date hereof, and on any unpaid interest payable hereon, from the date such interest is due hereunder, at the applicable rates per annum and on the dates set forth in the Credit Agreement until such principal amount is paid in full. Further, the Borrower hereby unconditionally further agrees to pay principal on the dates and pursuant to the terms set forth in the Credit Agreement.

      Borrower shall make all payments hereunder in lawful money of the United States and in same day or immediately available funds. If any payment is to be made on a day other than a Business Day, such payment shall instead be made on the following Business Day, and such extension of time shall be included in computing the interest payable.

      This Note is a "Term Note" referred to in the Credit Agreement, dated as of November 1, 2006, between Borrower and Lender (together with all supplements and amendments thereto, the "Credit Agreement") which is incorporated herein by reference and is subject to the provisions of and entitled to the benefits of the Credit Agreement, including, without limitation, the provisions regarding the interest rate, Default Rate, and principal payments; restrictions on and requirements for prepayment; and rights of acceleration. This Note also is subject to, secured by, and has the benefit of the other Loan Documents. Terms used herein have the meanings assigned to those terms in the Credit Agreement, unless otherwise defined herein.

      This Note is hereby expressly limited in that in no event shall the interest payable under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason whatsoever, the provision of any Loan Document, at the time performance of such provision occurs, involves the payment of interest in excess of that permitted by law, and if, under any circumstances, Lender receives as interest any amount which would exceed the highest lawful rate applicable to Borrower, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance and not the payment of interest.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

**BORROWER:**

**DUKE AND KING ACQUISITION CORP.**, a Delaware corporation

By: _____
     Name:_____
     Title:_____

**DUKE AND KING FLORIDA, LLC**, a Delaware limited liability company

By: _____
     Name:_____
Title:

## EXHIBIT "B"

## ACQUISITION NOTE

**$7,500,000**                                                                November 1, 2006
                                                                              Atlanta, Georgia

                 For value received, **DUKE AND KING ACQUISITION CORP**, a Delaware
corporation and **DUKE AND KING FLORIDA, LLC**, a Delaware limited liability company
(collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or
its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta,
Georgia 30308-2214, in lawful money of the United States and in immediately available funds,
the principal amount of **SEVEN MILLION FIVE HUNDRED THOUSAND DOLLARS
($7,500,000.00)** or (if less) the aggregate unpaid principal amount of all Acquisition Loan
advances that Lender has made to Borrower, on the Termination Date (as such term is defined in
the Credit Agreement referenced below), and to pay interest (computed on the basis of a year of
360 days for the actual number of days elapsed) from the date of this Note on the unpaid
principal amount of this Note, in like money, at that Principal Office, at the rate in effect in
accordance with the terms of that certain Credit Agreement dated as of November 1, 2006 (as
hereafter amended, modified or supplemented, the "Credit Agreement") and to make payments
in strict accordance with the terms thereof. Any amount of principal hereof which is not paid
when due, whether at stated maturity, by acceleration, or otherwise, shall bear interest from the
date when due until it is paid in full, payable on demand, at a rate per annum set according to the
terms of the Credit Agreement.

                 Borrower hereby consents to Lender's maintenance of records of (x) all Advances
made by Lender to Borrower, (y) all payments made by Borrower on Advances, and (z) all other
appropriate debits and credits as provided in the Credit Agreement and this Note. However,
Lender's failure to make such an entry with respect to any Advance or payment or other debit or
credit shall not limit or otherwise affect Borrower's obligations under the Credit Agreement or
this Note.

                 Borrower shall make all payments hereunder in lawful money of the United States
and in same day or immediately available funds. If any payment is to be made on a day other
than a Business Day, such payment shall instead be made on the following Business Day, and
such extension of time shall be included in computing the interest payable.

                 This Note is hereby expressly limited in that in no event shall the interest payable
under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason
whatsoever, the provision of any Loan Document, at the time performance of such provision
occurs, involves the payment of interest in excess of that permitted by law, and if, under any
circumstances, Lender receives as interest any amount which would exceed the highest lawful
rate applicable to Borrower, such amount which would be excessive interest shall be applied to
reduce the unpaid principal balance and not the payment of interest.

This Note is an "Acquisition Note" as defined in the Credit Agreement. Terms used in this Note that are defined in the Credit Agreement have the same meanings as in the Credit Agreement. The Credit Agreement contains provisions for acceleration of the maturity of this Note upon the happening of certain events and also for full or partial repayments on account of principal of this Note before it is scheduled to mature. This Note is secured by the Credit Agreement, which describes the Collateral provided and the rights of Borrower and Lender with respect to that Collateral.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

**BORROWER:**

**DUKE AND KING ACQUISITION CORP.**, a Delaware corporation

By: _____
    Name:_____
    Title:_____


**DUKE AND KING FLORIDA, LLC**, a Delaware limited liability company

By: _____
    Name:_____
Title:

## EXHIBIT "C"

### FORM OF NOTICE OF BORROWING
as of _____ __, 200_

TO THE LENDERS AND THE ADMINISTRATIVE AGENT,
UNDER THE UNDERSIGNED'S CREDIT
AGREEMENT DATED AS OF November 1, 2006

> Re:    Credit Loans to DUKE AND KING ACQUISITION CORP., a Delaware
> corporation

Ladies and Gentlemen:

We refer to the Credit Agreement dated as of November 1, 2006 (as amended, modified or supplemented from time to time, the "Credit Agreement") by and between DUKE AND KING ACQUISITION CORP., a Delaware corporation (the "Borrower"), the Lenders (as defined in the Credit Agreement), and Bank of America, N.A., as Administrative Agent (as defined in the Credit Agreement). Unless otherwise defined herein, capitalized terms used herein shall have the meanings given thereto in the Credit Agreement.

The Borrower hereby certifies to the Lenders and the Administrative Agent that:

1.    The Borrower hereby requests an Advance in the aggregate amount of $_____ to be made on _____, under the Commitment. Such Advance shall be a Base Rate Loan. The proceeds of the Advance shall be wired to the Borrower or for the account of the Borrower, to other Persons, as requested on Schedule A attached hereto. The foregoing instructions shall be irrevocable.

2.    All of the representations and warranties of the Borrower and the other obligors made under the Credit Agreement and any other Loan Document (including, without limitation, all representations and warranties with respect to the Subsidiaries of the Borrower), which, pursuant to Article IV of the Credit Agreement, are deemed made at and as of the time of any Advance, are true and correct as of the date hereof in all material respects, both before and after giving effect to the application of the proceeds of the Advance in connection with which this Notice of Borrowing is given.

3.    As of this date, and after giving effect to the Advance requested in this Notice of Borrowing, (i) there does not and will not exist any Default or Event of Default under the Credit Agreement and (ii) no Material Adverse Occurrence has occurred.

4.    All other conditions precedent to the Advance requested hereby, including those set forth in Article III of the Credit Agreement, have been satisfied or waived by Administrative Agent.

5.      The proceeds of all Advances requested hereby shall be used for the acquisition of the Units set forth on <u>Schedule B</u> attached hereto.


IN WITNESS WHEREOF, the Borrower, acting through an authorized signatory, has executed this Notice of Borrowing as of the date above first written.


By: _____

Name: _____

Title: _____


Schedule A      -      Borrower's Wire Transfer Instructions
Schedule B      -      Units Being Acquired

## SCHEDULE A

Borrower's Wire Transfer Instructions

**Duke and King Acquisition Corp**

**Incoming Wire Instructions**

**For incoming wires please use the following instructions:**

| | |
|---|---|
| **Direct to:** | **US Bank** |
| **Account # :** | **1 047 7640 3263** |
| **Routing # :** | **091000022** |
| **Beneficiary :** | **Duke and King Acquisition Corp** |
| **Bank Contact:** | **Julio Lacayo** |
| | **612-303-3135** |

## SCHEDULE B

Units Being Acquired

## EXHIBIT "D"

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement (this "Agreement") is made and entered into as of
_____, 200\_, by and among _____ (the "Assignor"),
_____ (the "Assignee"), Bank of America, N.A., as administrative
agent (the "Administrative Agent"), and Duke and King Acquisition Corp. (the "Borrower").

### Recitals

A.     The Borrower and the Assignor are parties to that certain Credit Agreement dated
as of November 1, 2006 (as amended, restated, supplemented or otherwise modified from time to
time in accordance with the terms thereof, the "Credit Agreement") by and among the Borrower,
the Lenders (as defined in the Credit Agreement), and the Administrative Agent.  Pursuant to the
Credit Agreement, certain of the Lenders have agreed to extend  Loans to the Borrower in an
aggregate original principal amount not to exceed at any time outstanding $23,500,000.00 (the
"Commitment") of which the Assignor's current portion of the Commitment is the amount
specified in Item 1 of Schedule 1 attached hereto (the "Assignor's Commitment").  As of the
date hereof, the aggregate principal amount of the outstanding Loans (as defined in the Credit
Agreement) made by the Assignor to the Borrowers pursuant to the Assignor's Commitment are
specified in Item 2 of Schedule 1 attached hereto (the "Assignor's Loans").  All capitalized terms
used herein and not otherwise defined herein shall have the meanings set forth in the Credit
Agreement.

B.     The Assignor wishes to sell and assign to the Assignee, and the Assignee wishes
to purchase and assume from the Assignor, as applicable and as specified on Schedule 1 attached
hereto, (i) the portion of the Assignor's Commitment specified in Item 3 of Schedule 1 hereto
which is equivalent to the percentage (as a percentage of the Commitment) specified in Item 4 of
Schedule 1 (the "Assigned Commitment"), and (ii) the portion of the Assignor's  Credit Loan(s)
under the Commitment, as specified in Item 5 of Schedule 1 hereto (the "Assigned Loans").

The parties agree as follows:

1.     Assignment.  Subject to the terms and conditions set forth herein, the Assignor
hereby sells and assigns to the Assignee, and the Assignee hereby purchases and assumes
from the Assignor, without recourse to the Assignor, on the date first set forth above (the
"Assignment Date") (a) all right, title and interest of the Assignor to the Assigned Loans and
(b) all obligations of the Assignor under the Credit Agreement with respect to the Assigned
Commitment.  As full consideration for the sale of the Assigned Loans and the Assigned
Commitment, the Assignee shall pay to the Assignor on the Assignment Date such amount as
shall have been agreed between the Assignee and the Assignor (the "Purchase Price").

2.     Consent and Undertaking.  The Administrative Agent and the Borrower hereby
consent to the assignment made herein, and the Borrower undertakes within ten (10)

1

Business Days from the Assignment Date, if requested to do so by the Assignor or the Assignee, to execute new Notes to the Administrative Agent or its designee, for the benefit of the Assignee and the Assignor, as appropriate, to reflect the portion of the Commitment held by each of the Assignee and the Assignor after giving effect to the assignment contemplated by this Agreement. Said new Notes shall be substantially identical to the prior Notes, replacing only the name of the Lender and reflecting the correct amount. If applicable, the Assignor agrees on the tenth (10th) Business Day following receipt by the Administrative Agent of the new Notes, to return its superseded Notes to the Administrative Agent or its designee, which shall thereupon transmit the new Notes to the Assignor and the Assignee, as appropriate, and the superseded Notes to the Borrower for cancellation.

3. <u>Representations and Warranties</u>. Each of the Assignor and the Assignee represents and warrants to the other, to the Administrative Agent and to the Borrower that (a) it has full power and legal right to execute and deliver this Agreement and to perform the provisions of this Agreement; (b) the execution, delivery and performance of this Agreement have been authorized by all necessary action, corporate or otherwise, on its part and do not violate any provisions of its charter or by-laws or any contractual obligations or requirement of law binding on it; and (c) this Agreement constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms, subject, as to enforcement of remedies, to the following qualifications: (i) an order of specific performance and an injunction are discretionary remedies and, in particular, may not be available where damages are considered an adequate remedy at law, (ii) enforcement may be limited by bankruptcy, insolvency, liquidation, reorganization, reconstruction and other similar laws affecting enforcement of creditors' rights generally (insofar as any such law relates to the bankruptcy, insolvency or similar event of the Assignor and the Assignee) and (iii) enforcement may be subject to general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law) and may be limited by public policies which may affect the enforcement of certain rights or remedies provided for in this Agreement. In addition, the Assignee represents and warrants to the Assignor that the Assignee satisfies the minimum capital and surplus, asset or assets under management criteria set forth in the Credit Agreement.

4. <u>Condition Precedent</u>. The obligations of the Assignor and the Assignee hereunder shall be subject to the fulfillment of the condition that the Assignor shall have (i) received payment in full of the Purchase Price and (ii) complied with other applicable provisions of the Credit Agreement.

5. <u>Notice of Assignment</u>. The Assignor hereby gives notice to the Administrative Agent of the assignment and assumption of the Assigned Loans and the Assigned Commitments and hereby instructs the Borrower to make payments with respect to the Assigned Loans and the Assigned Commitment directly to the Administrative Agent for the benefit of the Assignee as provided in the Credit Agreement; <u>provided</u>, <u>however</u>, that the Borrower and the Administrative Agent shall be entitled to continue to deal solely and directly with the Assignor in connection with the interests so assigned until (i) the Administrative Agent shall have received counterparts of this Agreement duly executed by the Assignor, the Assignee and the Borrower (if the Borrower's consent hereto is required), and, unless receipt thereof is waived by the Administrative Agent, shall have received the

2

assignment fee described in the Credit Agreement and (ii) the Assignor shall have delivered to the Administrative Agent any Notes that shall be subject to such assignment. From and after the date on which the Administrative Agent shall notify the Borrower, the Assignee, and the Assignor that (i) and (ii) shall have occurred and all consents, if any, required shall have been given, the Assignee shall be deemed to be a party to the Credit Agreement and, to the extent that rights and obligations thereunder shall have been assigned to the Assignee as provided herein, shall have the rights and obligations of a Lender under the Credit Agreement. After the Closing Date, and with respect to all such amounts accrued from the Assignment Date, (a) all interest, principal, fees, and other amounts that would otherwise be payable to the Assignor in respect of the Assigned Loans and the Assigned Commitments shall be paid to the Assignee, (b) if the Assignor receives any payment on account of the Assigned Loans or the Assigned Commitment, the Assignor shall promptly deliver such payment to the Assignee, and (c) any notices to the Assignee as a Lender under the Credit Agreement shall be sent to it at the address shown in Item 6 of Schedule 1 hereto. The Assignee agrees to deliver to the Borrower and the Administrative Agent such Internal Revenue Service forms as may be required to establish that the Assignee is entitled to receive payments under the Credit Agreement without deduction or withholding of tax.

6. Independent Investigation. The Assignee acknowledges that it is purchasing the Assigned Loans and the Assigned Commitment from the Assignor without recourse and, except as provided in Section 3 hereof, without representation or warranty. The Assignee further acknowledges that it has made its own independent investigation and credit evaluation of the Borrower in connection with its purchase of the Assigned Loans and the Assigned Commitment, and has received copies of all Loan Documents that it has requested. Except for the representations or warranties set forth in Section 3 hereof, the Assignee acknowledges that it is not relying on any representation or warranty of the Assignor, expressed or implied, including, without limitation, any representation or warranty relating to the legality, validity, genuineness, enforceability, collectibility, interest rate, repayment schedule or accrual status of the Assigned Loans or the Assigned Commitment, the legality, validity, genuineness, or enforceability of the Credit Agreement or any other Loan Document (including those which purport to provide Collateral for the Loans) referred to in or delivered pursuant to the Credit Agreement, or the financial condition or creditworthiness of the Borrower. The Assignor has not acted and will not be acting as either the representative, agent or trustee of the Assignee with respect to matters arising out of or relating to the Credit Agreement or this Agreement. From and after the Closing Date, the Assignor shall have no rights or obligations with respect to the Assigned Loans or the Assigned Commitment.

7. Method of Payment. All payments to be made by either party hereunder shall be in funds available at the place of payment on the same day and shall be made by wire transfer to the account designated by the party to receive payment.

8. Integration. This Agreement shall supersede any prior agreement or understanding between the parties (other than the Credit Agreement and the other Loan Documents) as to the subject matter hereof.

9. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall

together constitute but one in the same instrument and shall be binding upon the parties, their successors and assigns.  Delivery of a counterpart hereof via facsimile transmission shall be effective as delivery of a manually executed counterpart of this Agreement hereof.

      10. <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to contracts made and to be performed in New York.

[Remainder of this page intentionally left blank.]

4

WHEREAS, the parties hereto have executed this Assignment as of the date first above written.

**[ASSIGNOR]**

By: _____

Name: _____

Title: _____

**[ASSIGNEE]**

By: _____

Name: _____

Title: _____

Agreed, Accepted and Consented to:

**BORROWER:**

DUKE AND KING ACQUISITION CORP.

By: _____

　　　Name: _____

　　　Title: _____

Address: _____

_____

**ADMINISTRATIVE AGENT:**

**BANK OF AMERICA, N.A.**

By: _____

Name: _____

Title: _____

5

## SCHEDULE 1
## TO
## ASSIGNMENT AND ASSUMPTION AGREEMENT

Credit Agreement for Duke and King Acquisition Corp.

Item 1.    Assignor's Credit Commitme: $_____

            Total               $_____

Item 2.    Assignor's  Credit Loans    $_____

Item 3.    Amount of Assigned                $_____
            Credit Commitment:

Item 4.    Percentage of              _____ %
            Credit Commitment Assigned:

Item 5.    Amount of Assigned                $_____
            Credit Loans

Item 6.    Lending Office of Assignee          _____
            and Address for Notices        _____
            under  Credit Agreement   _____
                                      Attn:_____
                                      Telecopy:_____

## EXHIBIT "E"

## FORM OF COMPLIANCE CERTIFICATE

The undersigned, being the _____ of DUKE AND KING ACQUISITION CORP., a Delaware corporation (the "Borrower") does hereby certify, pursuant to Section 5.1(c) of the Credit Agreement dated as of November 1, 2006, (as in effect on the date hereof, the "Credit Agreement") by and among the Borrower, the Lenders (as defined in the Credit Agreement), and Bank of America, N.A., as Administrative Agent (the "Administrative Agent"):

1.    The accompanying **[audited/unaudited]** financial statements of the Borrower as of _____, ____, for the **[quarter/year]** ended, are complete and correct in all material respects and present fairly, in accordance with GAAP, the financial condition and the results of operations for such period then ended of the Borrower as of the end of such period and the lack of GAAP footnotes, in each case on the basis presented and subject, in the case of interim statements, only to normal year-end adjustments that are not material in amount or type.

2.    Attached hereto as Schedule 1 are calculations performed by the undersigned or under the undersigned's supervision demonstrating what the "Applicable Margin" should be pursuant to Section 2.1(g) of the Credit Agreement.

3.    Attached hereto as Schedule 2 are calculations performed by the undersigned or under the undersigned's supervision demonstrating the Borrower's compliance with each of the financial covenants set forth in Article VI of the Credit Agreement, as of the end of the period **[quarter/year]** being reported.

4.    To the best of the undersigned's knowledge, after reasonable investigation, no Default or Event of Default has occurred and is continuing.

Capitalized terms used herein and not otherwise defined are used as defined in the Credit Agreement.

[Remainder of page has been intentionally left blank.]

IN WITNESS WHEREOF, the undersigned have signed this Compliance Certificate as of the _____ day of _____, ____.

By:_____

Name: _____
Title:_____

| | | |
|---|---|---|
| Schedule 1 | - | Calculations Demonstrating the "Applicable Margin" under <u>Section 2.1(g)</u> of the Credit Agreement |
| Schedule 2 | - | Calculations Demonstrating Compliance With Financial Covenants |

## SCHEDULE 1

### Calculations Demonstrating the "Applicable Margin"

## SCHEDULE 2

### Calculations Demonstrating Compliance With Financial Covenants