# EXHIBIT B

# FIRST AMENDMENT
## TO
# CREDIT AGREEMENT

FIRST AMENDMENT TO CREDIT AGREEMENT, dated as of March 1, 2007 ("Amendment"), to the Credit Agreement (as amended, restated, supplemented or modified from time to time, the "Credit Agreement"), dated as of November 1, 2006, by and among DUKE AND KING ACQUISITION CORP. and DUKE AND KING FLORIDA, LLC (collectively, the "Original Borrower"), the lenders now a party thereto (the "Lenders"), and Bank of America, N.A., a national banking association, in its capacity as Administrative Agent for the Lenders (in its capacity as such, and together with any successor administrative agent hereunder, the "Administrative Agent").

## W I T N E S S E T H:

WHEREAS, on even date, Lenders have made a loan (the "New Loan") to Duke and King Real Estate, LLC, a Delaware limited liability company and Duke and King Missouri, LLC a Delaware limited liability company (collectively the "New Borrower"); and

WHEREAS, Original Borrower and New Borrower are Affiliates; and

WHEREAS, the Original Borrower, the New Borrower and the Required Lenders have agreed that the Credit Agreement shall be amended to incorporate the New Loan and the New Borrower on the terms and subject to the conditions herein provided;

NOW, THEREFORE, in consideration of the terms and conditions contained herein, and of any loans or extensions of credit heretofore, now or hereafter made to or for the benefit of the Borrower by the Lenders and the Administrative Agent, the parties hereto agree as follows:

A.    **Defined Terms**.  Capitalized terms used herein but not defined herein have the respective meanings ascribed thereto in the Credit Agreement.

B.    **Amendments to Article I**.  Article I of the Credit Agreement is hereby amended as follows:

(1)    The definition of "Acquisition Loan Commitment" is deleted in its entirety and the following inserted in lieu thereof:

"Acquisition Loan Commitment" shall mean the original principal amount of up to $3,500,000"

(2)    The following definition is added:

"Acquisition Note" shall have the meaning set forth in Section 2.1(b)(1)."

1

(3)     The definition of "Asset Purchase Agreement" is deleted in its entirety and the following inserted in lieu thereof:

"Asset Purchase Agreement (Nath)" shall mean the Asset Purchase Agreement dated October 10, 2005 between Borrower, Nath Minnesota Franchise Group, Inc., Nath Illinois Franchise Group, Inc., Nath Florida Franchise Group, Inc., Nath Miami Franchise Group, Inc., Nath Minnesota Operating Group, LLC, and Nath Illinois Operating Group, LLC, as amended".

"Asset Purchase Agreement (Swisshelm)" shall mean the Asset Purchase Agreement dated December 22, 2006 between Duke and King Missouri, LLC, Duke and King Real Estate, LLC, and Swisshelm Group, Inc., Swisshelm Family Limited Partnership, Point Guard Enterprises, Inc. and the individuals listed on the signature pages thereto, as amended.

(4)     The definition of "Borrower" is deleted in its entirety and the following inserted in lieu thereof:

"Borrower" shall mean Duke and King Acquisition Corp., a Delaware corporation ("Acquisition Corp."), Duke and King Florida, LLC, a Delaware limited liability company ("FL LLC"), Duke and King Real Estate, LLC, a Delaware limited liability company ("Real Estate LLC") and Duke and King Missouri, LLC, a Delaware limited liability company ("MO LLC"), jointly and severally. Acquisition Corp. and FL LLC are sometimes hereinafter referred to collectively as "Original Borrower" and Real Estate LLC and MO LLC are sometimes hereinafter referred to collectively as "New Borrower".

(5)     The definition of "Closing Date" is deleted in its entirety and the following inserted in lieu thereof:

"Closing Date" shall mean, for the Original Borrower, the Original Closing Date and for the New Borrower, the New Closing Date."

(6)     The definition of "Commitment" is amended by deleting the amount $23,500,000" and inserting in its place the amount "$33,262,000."

(7)     The following definitions shall be added:

"Initial Acquisition Loan" shall have the meaning set forth in Section 2.1(b)(4)."

"New Closing Date" shall mean March 1, 2007."

"Original Closing Date" shall mean November 1, 2006."

(8)     The definition of "Note(s)" is deleted in its entirety and the following inserted in lieu thereof:

"Note(s)" shall mean, individually or collectively, as the case may be, (a) Term Note(s) and (b) the Acquisition Note(s) (in form substantially as attached hereto as **Exhibits A and B,** respectively, and (f) such other promissory notes accepted by the Lenders in exchange for or in substitution of any such Notes."

(9)   The definition of "Term Loan" is deleted in its entirety and the following inserted in lieu thereof:

"Term Loan" shall mean collectively (i) that certain loan dated as of November 1, 2006 made by Lenders to Original Borrower in the aggregate principal amount of up to $16,000,000 comprised of (a) Term Loan A in the original principal amount of $15,000,000 and (b) Term Loan B in the original principal amount of $1,000,000; and (ii) that certain loan dated as of March 1, 2007 made by Lenders to New Borrower in the aggregate principal amount of up to $13,762,000 comprised of (c) Term Loan C in the original principal amount of $5,826,000 and (d) Term Loan D in the original principal amount of $7,936,000."

(10)   The definitions of "Term Loan A" and "Term Loan B" are deleted in their entirety and the following definitions inserted in lieu thereof:

"Term Loan A" shall mean that certain loan dated as of November 1, 2006, made by Lenders to Borrower in the original principal amount of up to $15,000,000.

"Term Loan B" shall mean that certain loan dated as of November 1, 2006, made by Lenders to Borrower in the original principal amount of up to $1,000,000.

"Term Loan C" shall mean that certain loan dated as of March 1, 2007, made by Lenders to Borrower in the original principal amount of up to $5,826,000.

"Term Loan D" shall mean that certain loan dated as of March 1, 2007, made by Lenders to Borrower in the original principal amount of up to $7,936,000.

(11)   The definition of "Term Loan Commitment" is amended by deleting the amount $16,000,000" and inserting in its place the amount "$29,762,000."

(12)   The definition of "Term Loan B Maturity Date" is amended by deleting the date "April 30, 2007" and inserting in its place the date "June 30, 2007".

(13)   The following definition shall be added:

"Term Note" shall have the meaning set forth in Section 2.1(a)

C.   **Amendments to Article II**.   Article II of the Credit Agreement is hereby amended as follows:

(1)     Section 2.1(a) is deleted in its entirety and the following inserted in lieu thereof::

"(a)    Term Loan.   Subject to the terms and conditions set forth herein, the
Lenders agree to make (i) Term Loan A and Term Loan B to the Original
Borrower on the Original Closing Date and (ii) Term Loan C and Term Loan D to
the New Borrower on the New Closing Date in an aggregate principal amount not
to exceed the Term Loan Commitment to fund the acquisition of Units pursuant to
the Asset Purchase Agreement (Nath) and the Asset Purchase Agreement
(Swisshelm).  In the event that the Term Loan is not fully advanced on the New
Closing Date, the un-advanced portion of the Term Loan Commitment shall be
terminated.  The execution and delivery of this Agreement by the Borrower and
the satisfaction or waiver of all conditions precedent pursuant to Article III shall
be deemed to constitute the Borrower's request to borrow the Term Loan on the
Closing Date. The Borrower's obligation to pay the principal of, and interest on,
the Term Loan shall be evidenced by the records of the Lenders and by term loan
promissory notes in form substantially as attached hereto as **Exhibit "A-1"**,
**Exhibit "A-2"**, **Exhibit "A-3"** and **Exhibit "A-4"** (individually and collectively
the "Term Note").   The entries made in such records and/or on the schedule
annexed to the Term Note shall be *prima facie* evidence of the existence and
amounts of the obligations of the Borrower therein recorded, absent manifest
error; provided, that the failure or delay of the Lenders in maintaining or making
entries into any such record or on such schedule or any error therein shall not in
any manner affect the obligation of the Borrower to repay the Term Loan (both
principal and unpaid accrued interest) in accordance with the terms of this
Agreement."

(2)     Section 2.1(d)(2) is amended by deleting the date "October 1, 2007" and inserting
in lieu thereof the date "June 1, 2007".

(3)     Section 2.1(d) is amended by adding the following as new subsections (4) and
(5):

"(4) Term Loan C.  Commencing on April 1, 2007 and continuing on the first day
of each month thereafter through and including October 1, 2011, monthly
payments of principal and interest on Term Loan C shall be due and payable, each
such monthly payment shall be in an amount which would be required in order to
fully amortize the then outstanding principal balance of Term Loan C, at the rate
of interest then in effect, over a period of ten (10) years pursuant to an
amortization schedule calling for one hundred twenty (120) substantially equal
payments of principal and interest. The unpaid principal balance of Term Loan C,
together with accrued but unpaid interest, shall be due and payable in full on the
Maturity Date.

(5) Term Loan D.  Commencing on April 1, 2007 and continuing on the first day
of each month thereafter through and including October 1, 2011, monthly
payments of principal and interest on Term Loan D shall be due and payable, each

such monthly payment shall be in an amount which would be required in order to fully amortize the then outstanding principal balance of Term Loan D, at the rate of interest then in effect, over a period of fifteen (15) years pursuant to an amortization schedule calling for one hundred eighty (180) substantially equal payments of principal and interest. The unpaid principal balance of the Term Loan D, together with accrued but unpaid interest, shall be due and payable in full on the Maturity Date."

(4)     Section 2.1(e)(1) is deleted in its entirety and the following inserted in lieu thereof:

"(1)     Term Loan A, Term Loan C and Term Loan D.  From the date hereof through the Maturity Date, Term Loan A, Term Loan C and Term Loan D shall bear interest at the Floating Rate unless and until the Term Loan is converted, in whole or in part, to an Effective Fixed Rate Loan.  Upon such conversion, the portion of the Term Loan converted to an Effective Fixed Rate Loan shall bear interest at the Effective Fixed Rate.  On the Closing Date, Borrower shall convert not less than fifty percent (50%) of the outstanding principal balance of Term Loan A, Term Loan C and Term Loan D to an Effective Fixed Rate Loan.  To convert all or a portion of Term Loan A, Term Loan C and Term Loan D to an Effective Fixed Rate Loan, Borrower must have in place an interest rate swap ("Swap").  To that end, Borrower shall execute and deliver to Administrative Agent, on or prior to the Closing Date, a Swap agreement in form and with a Swap provider satisfactory to Administrative Agent in Administrative Agent's sole but reasonable discretion ("Swap Agreement").  The date on which the Swap is effective shall be the "Conversion Date."  For purposes of the foregoing, a Swap Agreement on the International Swap Dealers Association Agreement form shall be acceptable to Administrative Agent.  The portion of Term Loan A, Term Loan C and Term Loan D converted shall be maintained as an Effective Fixed Rate Loan from the Conversion Date through the Maturity Date (the "Effective Fixed Rate Period").  In the event that the initial Swap Agreement does not remain in effect for the entire Effective Fixed Rate Period, Borrower shall, within thirty (30) days prior to the expiration of the initial Swap Agreement, deliver to Administrative Agent a substitute Swap Agreement, in form and substance reasonably satisfactory to Administrative Agent, which shall be in place for the balance of the Effective Fixed Rate Period."

(5)     Section 2.9 is amended by adding the following as new subsection (c):

"(c)     Lenders' Upfront Fee.  On the New Closing Date, Borrower shall pay to Administrative Agent for the account of each Lender in accordance with its Commitment Ratio, an upfront fee in an amount equal to one percent (1.0%) of the $9,762,000 increase in the total Commitment ("Upfront Fee").  Borrower has previously paid $0.00 of the Upfront Fee with the balance of $97,620 to be paid on the Closing Date. The Upfront Fee is for the Credit Commitment of each Lender and is fully earned as of the date of this Agreement."

D.     **Article IV Amendments.**  Section 4.3 of the Credit Agreement is amended by deleting the phrase "on the attached <u>Annex II</u>" on line 13 of such Section and inserting in lieu thereof the phrase "on **Schedule 4.3**".

E.     **Article V Amendments.**     Section 5.16 of the Credit Agreement is deleted in its entirety and the following inserted in lieu thereof:

"5.16  <u>Interest Rate Protection</u>.  Borrower shall maintain not less than fifty percent (50%) of Term Loan A, Term Loan C, Term Loan D and all Acquisition Loans as Effective Fixed Rate Loans."

F.     **Article VI Amendments.**  Article VI of the Credit Agreement is hereby amended as follows:

(1)     Section 6.2 is deleted in its entirety and the following inserted in lieu thereof:

"<u>Leverage Ratio</u>.  For each twelve-month period ending on the last day of each fiscal quarter of the Borrower, the Borrower shall maintain a Total Leverage Ratio not in excess of the ratio set forth below:

| Applicable Time Period | Maximum Total Leverage Ratio |
|---|---|
| Agreement Date through December 31, 2007 | 3.75:1.00 |
| January 1, 2008 through December 31, 2008 | 3.50:1.00 |
| Commencing January 1, 2009 and each fiscal quarter thereafter | 3.25:1.00 |

(2)     Section 6.3 is deleted in its entirety and the following inserted in lieu thereof:

"<u>Maximum Rent Adjusted Leverage</u>.  For each twelve-month period ending on the last day of each fiscal quarter of the Borrower, the Borrower shall maintain a Maximum Rent Adjusted  Leverage ratio not in excess of the ratio set forth below:

| Applicable Time Period | Maximum Rent Adjusted Leverage Ratio |
|---|---|
| Agreement Date through December 31, 2007 | 6.00:1.00 |
| Commencing January 1, 2008 and each fiscal quarter thereafter | 5.75:1.00 |

(3)    Section 6.13 is deleted in its entirety and the following inserted in lieu thereof:

"Limitations on Distributions. The Borrower will not make or permit to be made any distributions other than (i) to pay taxes and (ii) to pay $250,000 per annum earn-out to the Swisshelm family."

G.    **Amendments to Schedules and Exhibits.**

(1)    The following Schedules to the Credit Agreement shall be deleted in their entirety and the corresponding revised Schedules attached hereto shall be substituted in lieu thereof::  Schedule I; Schedule 3.1(b)(1); Schedule 3.1(b)(2); Schedule 3.1(b)(3); Schedule 4.1; Schedule 4.3; Schedule 4.28(b); Schedule 5.3; and

(2)    **Exhibit "A-3"** and **Exhibit "A-4"** attached hereto shall be included in **Exhibit "A"** of the Credit Agreement.

(3)    **Exhibit "B"** is deleted in its entirety and **Revised Exhibit "B"** attached hereto is inserted in lieu thereof.

H.    **New Borrower**.  Each of Real Estate LLC and MO LLC, by execution and delivery of this Amendment, does hereby covenant and agree that each and every representation, warranty, covenant, term and condition of the Credit Agreement applicable to the Borrower thereunder, shall be deemed made by and enforceable against Real Estate LLC and MO LLC as if each was an original Borrower thereunder and signatory thereto.  Real Estate LLC and MO LLC shall be obligated on all notes executed by Original Borrower as if each had been a maker thereof.  All references to "Borrower" in the Credit Agreement shall mean and be deemed to mean Original Borrower and New Borrower, jointly and/or severally, as the context so requires.

I.    **Cross-Collateralization and Cross-Default**.  Each Original Borrower and New Borrower hereby covenants and agrees as follows:

(1)    An Event of Default by any Borrower under the Credit Agreement shall be an Event of Default for each Borrower.  An Event of Default under any Security Document or other Loan Document executed by a Borrower shall be an Event of Default under all Security Documents and other Loan Documents.

(2)  All Collateral mortgaged, assigned, pledged, or in which a security interest has been granted to Administrative Agent for any of the Obligations shall serve as security and collateral for all other Obligations of Original Borrower and New Borrower, to the same extent and effect as if so provided in the original documentation evidencing and/or securing each such Obligation.

(3)  Except as expressly provided in the Credit Agreement, the security interest in any and all Collateral mortgaged, assigned, pledged, or in which a security interest has been granted to Administrative Agent for any of Obligations shall not be terminated in whole or in part until and unless all Obligations are fully paid and satisfied and the terms of every Security Document has been fully performed by Original Borrower and New Borrower.

J.  **Representations and Warranties**. Each Original Borrower and New Borrower hereby represents and warrants as follows:

(1)  After giving effect to this Amendment, each of the representations and warranties in Article IV of the Credit Agreement and in each of the other Loan Documents are true and correct in all material respects on and as of the date hereof as though made on and as of such date.

(2)  No Event of Default has occurred and is continuing as of the date hereof.

(3)  The execution, delivery and performance by each Original Borrower and New Borrower of this Amendment has been duly authorized by all requisite company action on the part of each Original Borrower and New Borrower and will not violate any of its articles of organization, bylaws, operating agreement or other organizational documents.

(4)  This Amendment has been duly executed and delivered by each Original Borrower and New Borrower, and this Amendment constitutes the legal, valid and binding obligation of each Borrower, enforceable against each Original Borrower and New Borrower in accordance with its terms.

K.  **No Other Amendments**. Except as modified and amended hereby, the Credit Agreement shall be and remain unchanged and in full force and effect and is hereby ratified and affirmed. The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, operate as an amendment, waiver or modification of any right, power or remedy of Lenders or Administrative Agent under any of the Loan Documents, nor constitute an amendment, waiver or modification of any other provisions of the Loan Documents. This Amendment shall constitute a Loan Document for all purposes.

L.  **Conditions to Effectiveness**. This Amendment shall become effective as of the date hereof when Administrative Agent shall have received the following in form and substance satisfactory to Administrative Agent:

(1)     This Amendment duly executed by and on behalf of Original Borrower and New
        Borrower, the Administrative Agent and the Required Lenders;

(2)     All reasonable fees and expenses payable or reimbursable by Original Borrower
        and New Borrower as of the date hereof, including, without limitation, all costs,
        fees and expenses of Administrative Agent in connection with the preparation,
        execution and delivery of this Amendment and the other instruments and
        documents to be delivered pursuant hereto (including the reasonable fees and out-
        of-pocket expenses of counsel for Administrative Agent with respect thereto);

(3)     Term Note C and Term Note D executed by New Borrower;

(4)     Any other documents or instruments required by the Credit Agreement to be
        executed by New Borrower; and

(5)     Delivery by Duke and King Holdings, LLC of a guaranty and security agreement
        in form reasonably satisfactory to Administrative Agent.

      M.     **Applicable Law**.  This Amendment shall be governed by and construed and
interpreted in accordance with the laws of the State of New York without giving effect to its
conflict of laws principles.

      N.     **Counterparts and Headings**.  This Amendment may be executed in any number
of counterparts and by different parties hereto in separate counterparts, each of which when so
executed shall be deemed to be an original and all of which taken together shall constitute one
and the same instrument.  Receipt by the Administrative Agent of a facsimile copy of an
executed signature page hereof shall constitute receipt by Administrative Agent of an executed
counterpart of this Amendment.  The headings of this Amendment are for convenience of
reference only, are not part of this Amendment and are not to affect the construction of, or to be
taken into consideration in interpreting, this Amendment.

      O.     **No Novation**.  This Amendment is not intended as, nor shall it be deemed or
construed as, a novation of the Obligations of Borrower under the Credit Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

**"BORROWERS"**

**DUKE AND KING ACQUISITION CORP.**, a
Delaware corporation

By: _____
Name: _Louis Avralio_
Title: _Vice President & Secretary_

**DUKE AND KING FLORIDA, LLC**, a
Delaware limited liability company

By: _____
Name: _Louis Avralio_
Title: _Vice President & Assistant Secretary_

**DUKE AND KING REAL ESTATE, LLC**, a
Delaware limited liability company

By: _____
Name: _Louis Avralio_
Title: _VICE PRESIDENT & Assistant Secretary_

**DUKE AND KING MISSOURI, LLC**, a
Delaware limited liability company

By: _____
Name: _Louis Avralio_
Title: _VICE PRESIDENT & Assistant Secretary_

## CONSENT AND REAFFIRMATION OF GUARANTOR

By execution of this Amendment, Kinderhook Capital Fund I, L.P. ("Guarantor") hereby consents to this Amendment and reaffirms all the terms and provisions of that certain Guaranty Agreement dated as of November 1, 2006, by Guarantor in favor of Lenders (the "Guaranty") and agrees that the Guaranty shall continue to be valid and enforceable until all liabilities of Guarantor under the Guaranty have been paid in full or the Guaranty terminates in accordance with its terms. Guarantor affirms that this Amendment shall in no manner affect the obligations of Guarantor under the Guaranty.

**KINDERHOOK CAPITAL FUND I, L.P.**

By:    Kinderhook Capital Fund I GP, LLC, its general partner

By: _____

Name: _Christian Michalik_____

Title:_____

**"ADMINISTRATIVE AGENT"**

**BANK OF AMERICA, N.A.,** in its capacity as
Administrative Agent

By: _____

Name: _JOHN M. HUSS_

Title: _PRINCIPAL_


**"LENDERS"**

**BANK OF AMERICA, N.A.,** in its capacity as
a Lender

By: _____

Name: _JOHN M. HUSS_

Title: _PRINCIPAL_

## <u>REVISED SCHEDULE I</u>

### <u>LENDERS/COMMITMENTS</u>

| LENDER | COMMITMENT RATIO | CREDIT COMMITMENT |
|---|---|---|
| Bank of America, N.A. | 100 | $33,262,000 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## REVISED SCHEDULE 3.1(b)(1)

## FEE AND GROUND LEASED UNITS

| Restaurant Unit Number | Unit Address |
|---|---|
| Unit 111 | 901 North Lake Street, Aurora, Kane County, Illinois 60506 |
| Unit 1888 | 2624 Milton Avenue, Janesville, Rock County, Wisconsin 53545 |
| Unit 2641 | 2011 E. Main Street, Albert Lea, Freeborn County, Minnesota 56007 |
| Unit 3203 | 4121 Sauk Trail, Richton Park, Cook County, Illinois 60471 |
| Unit 4009 | 14251 Nicollet Avenue, Burnsville, Dakota County, Minnesota 55337 |
| Unit 4043 | 229 West Kimberly Road, Davenport, Scott County, Iowa 52806 |
| Unit 4116 | 2651 County Road I, Mounds View, Ramsey County, Minnesota 55112 |
| Unit 4151 | 1150 East Highway 13, Burnsville, Dakota County, Minnesota 55337 |
| Unit 4201 | 5231 Brady Street, Davenport, Scott County, Iowa 52807 |
| Unit 4297 | 4040 38th Avenue, Moline, Rock Island County Illinois 61265 |
| Unit 4334 | 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 |
| Unit 4553 | 1501 Northwest Seventh Street, Faribault, Rice County, Minnesota 55021 |
| Unit 5012 | 2025 Northdale Boulevard, Coon Rapids, Anoka County, Minnesota 55433 |
| Unit 5879 | 1830 Southwest Avenue, Freeport, Stephenson County, Illinois 61032 |
| Unit 5960 | 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 |
| Unit 5971 | 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 |
| Unit 6211 | 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 |
| Unit 6270 | 8510 Edinborough Center Drive, Brooklyn Park, Hennepin County, Minnesota 55444 |
| Unit 6545 | 1022 East Blue Earth Avenue, Fairmont, Martin County, Minnesota 56031 |
| Unit 6615 | 1318 Riverfront Drive, Mankato, Blue Earth County, Minnesota 56001 |
| Unit 7444 | 835 Bridge Street, Owatonna, Steele County, Minnesota 55060 |
| Unit 7557 | 8501 Springbrook Drive Northwest, Coon Rapids, Anoka County, Minnesota 55433 |
| Unit 7937 | 2411 Center Drive, Hudson, St. Croix County, Wisconsin 54016 |
| Unit 8004 | 3333 Rice Street, Shoreview, Ramsey County, Minnesota 55126 |
| Unit 8224 | 5105 Industrial Boulevard, Edina, Hennepin County, Minnesota 55439 |
| Unit 9081 | 1409 Fourth Street Northwest, Austin, Mower County, Minnesota 55912 |
| Unit 9272 | 403 Fire Monument Road, Hinckley, Pine County, Minnesota 55037 |
| Unit 9332 | 5358 West Broadway, Crystal, Blue Earth County, Minnesota 55428 |
| Unit 9366 | 400 Center Way, Janesville, Rock County, Wisconsin 53545 |
| Unit 10239 | 244 Grand Avenue, St. Paul, Ramsey County, Minnesota 55102 |
| Unit 10748 | 678 West 14th Street, Chicago Heights, Cook County, Illinois 60411 |
| Unit 11143 | 120 Elm Street, Farmington, Dakota County, Minnesota 55024 |
| Unit 11682 | 38711 Tanger Drive, North Branch, Chisago County, Minnesota 55056 |
| Unit 11877 | 504 West Blackhawk Drive, Byron, Ogle County, Illinois 61010 |
| Unit 12350 | 495 State Road 13, Jacksonville, St. Johns County, Florida 32259 |
| Unit 12757 | 1287 North Main Street, River Falls, Pierce County, Wisconsin 54022 |
| Unit 13091 | 287 57th Avenue, Fridley, Anoka County, Minnesota 55432-5421 |

| | |
|---|---|
| Unit 1227 | 935 W. Kearney, Springfield, Missouri |
| Unit 1558 | 1411 Rangeline, Joplin, Missouri |
| Unit 3475 | 2138 N. Glenstone, Springfield, Missouri |
| Unit 5539 | 1101 S. Limit, Sedalia, Missouri |
| Unit 5357 | 1022 Kings Highway, Rolla, Missouri |
| Unit 6030 | 1011 W. Central, Carthage, Missouri |
| Unit 7203 | 525 S. National, Springfield, Missouri |
| Unit 7204 | 1699 W. Jackson, Ozark, Missouri |
| Unit 9744 | 1429 Main Street, Parsons, Kansas |
| Unit 11049 | 3095 Gardner Edgewood, Neosho, Missouri |
| Unit 11751 | 808 Illinois, Republic, Missouri |
| Unit 12281 | 2200 E. Austin, Nevada, Missouri |
| Unit 12415 | 875 East Highway 60, Monett, Missouri |
| Unit 12602 | 505 E. Trimble, Berryville, Arkansas |
| | |
| Unit 4513 | 1077 S. Jefferson, Lebanon, Missouri |
| Unit 9331 | 1317 Preacher Roe, West Plains, Missouri |
| Unit 12413 | 315 N. Massey, Nixa, Missouri |

## REVISED SCHEDULE 3.1(b)(2)

## LEASED UNITS

| Restaurant Unit Number | Unit Address |
|---|---|
| Unit 42 | 1 N.W. Oakland Park Boulevard, Ft. Lauderdale, Florida 33311 |
| Unit 106 | 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425 |
| Unit 116 | 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 |
| Unit 255 | 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 |
| Unit 437 | 1138 East State Street, Rockford, Winnebago County, Illinois 61104 |
| Unit 805 | 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413 |
| Unit 1060 | 1450 4th Street, Beloit, Rock County, Wisconsin 53511 |
| Unit 1326 | 2434 11th Street, Rockford, Winnebago County, Illinois 61104 |
| Unit 1747 | 209 Norris Drive, Ottawa, La Salle County, Illinois 61350 |
| Unit 1752 | 723 Shooting Park, Peru, La Salle County, Illinois 61254 |
| Unit 1764 | 2655 East Washington, Madison, Dane County, Wisconsin 53704 |
| Unit 2131 | 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 |
| Unit 2160 | 1385 Douglas Avenue, Montgomery, Kane County, Illinois 60538 |
| Unit 2755 | 1001 South Federal Highway, Lantana, Palm Beach County, Florida 33462 |
| Unit 3197 | 5080 West Atlantic Avenue, Delray Beach, Palm Beach County, Florida 33484 |
| Unit 3792 | 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220 |
| Unit 4111 | 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151 |
| Unit 4122 | 5020 160th Street, SE, Prior Lake, Scott County, Minnesota 55372 |
| Unit 4206 | 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 |
| Unit 4451 | 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407 |
| Unit 4507 | 13840 Grove Drive, Maple Grove, Hennepin County, Minnesota 55311 |
| Unit 4857 | 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 |
| Unit 4972 | 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 |
| Unit 5382 | 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 |
| Unit 5591 | 2535 Division Street North, St. Paul, Ramsey County, Minnesota 55109 |
| Unit 5713 | 1501 Weir Drive, Woodbury, Washington County, Minnesota 55125 |
| Unit 5777 | 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 |
| Unit 5978 | 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 |
| Unit 6122 | 1107 North Ponce de Leon Boulevard, St. Augustine, St. Johns County, Florida 32084 |
| Unit 6224 | 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 |
| Unit 6254 | 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 |
| Unit 6299 | 10801 Bloomington Ferry Road, Bloomington, Hennepin County, Minnesota 55438 |
| Unit 6530 | 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 |
| Unit 6590 | 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 |
| Unit 6923 | 12045 U.S. Route 1, Juno Beach, Palm Beach County, Florida 33408 |
| Unit 7128 | 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 |
| Unit 7435 | 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 |
| Unit 7466 | 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 |
| Unit 9095 | 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 |
| Unit 9256 | 255 Triangle Lane, Jordan, Scott County, Minnesota 55352 |
| Unit 9934 | 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 |
| Unit 9993 | 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 |
| Unit 9994 | 318 East Kraft Drive, Melrose, Sterns County, Minnesota 56352 |
| Unit 10234 | 7510 East State Street, Rockford, Winnebago County, Illinois 61109 |
| Unit 10284 | 695 East 7th Street, St. Paul, Ramsey County, Minnesota 55106 |
| Unit 11191 | 2789 Milwaukee Road, Beloit, Rock County, Wisconsin, 53511 |
| Unit 11243 | 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 |
| Unit 11254 | 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 |
| Unit 11284 | 1500 Stinson Boulevard Northeast, Minneapolis, Hennepin County, Minnesota 55413 |
| Unit 11535 | 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 |
| Unit 12250 | 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 |

| Unit 3232 | 3009 S. Campbell, Springfield, Missouri |
| Unit 6609 | 3020 E. Sunshine, Springfield, Missouri |
| Unit 8384 | 1911 S. Springfield, Bolivar, Missouri |
| Unit 8964 | 1220 E. Republic Road, Springfield, Missouri |
| Unit 9747 | 1015 S. Broadway, Pittsburg, Kansas |
| Unit 9907 | 1710 Maiden Lane, Joplin, Missouri |
| Unit 10725 | 1312 S. Madison, Webb City, Missouri |

## REVISED SCHEDULE 3.1(b)(3)

## SITES WITHOUT LANDLORD CONSENTS

| | LEASE SITES | SITES WHERE LESSOR CONSENTS NOT PROVIDED OR LESSOR CONSENTS NOT ACCEPTABLE TO AGENT | SITES IN WHICH THERE ARE MATERIAL LEASE DEFICIENCIES |
|---|---|---|---|
| 1. | Unit 255 – 913 West Lincoln Highway, DeKalb, Dekalb County, Illinois 60115 | | X<br><br>Missing lease of 4/16/99 between Glidden Trust Account #391 and Borrower. |
| 2. | Unit 1752 – 723 Shooting Park, Peru, La Salle County, Illinois 61254 | X | |
| 3. | Unit 4857 - 822 Windsor Street, Sun Prairie, Dane County, Wisconsin 53590 | X | |
| 4. | Unit 5382 - 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 | X | X<br><br>Missing confirmation of exercise of options of Ground Lease. Also missing any evidence that Borrower is a subtenant to the sublease dated 12/28/86 |
| 5. | Unit 5777 - 2949 North Military Trail, West Palm Beach, Palm Beach County, Florida 33409 | X | |
| 6. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X | |
| 7. | Unit 6224 - 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 | X | |
| 8. | Unit 6254 - 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 | X | |
| 9. | Unit 6530 - 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 | X | X<br><br>Missing First Amendment of Lease Agreement of 4/26/89. |
| 10. | Unit 6590 - 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 | X | |
| 11. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X | |

1

| | | | |
|---|---|---|---|
| 12. | Unit - 7466 - 330 North Garden, Bloomington, Hennepin County, Minnesota 55425 | X | |
| 13. | Unit 9095 - 106 Ninth Avenue Circle South, Princeton, Mille Lacs County, Minnesota 55371 | | X<br><br>Missing confirmation of exercise of options to lease dated 4/27/95. |
| 14. | Unit 9934 - 120 Meridian Drive, New Richmond, St. Croix County, Wisconsin 54017 | X | |
| 15. | Unit 9993 - 10861 University Avenue Northeast, Blaine, Anoka County, Minnesota 55435 | X | |
| 16. | Unit 11254 - 9896 Norma Lane, Woodbury, Washington County, Minnesota 55125 | X | |
| 17. | Unit 11535 - 8481 Southeast Point Douglas Road, Cottage Grove, Washington County, Minnesota 55016 | X | |
| 18. | Unit 4334 – 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 | X | |

## REVISED SCHEDULE 4.1

## JURISDICTIONS WHERE BORROWER IS QUALIFIED TO DO BUSINESS

### Duke and King Acquisition Corp.

Florida
Illinois
Iowa
Minnesota
Wisconsin

### Duke and King Florida, LLC

Florida

### Duke and King Real Estate, LLC

Arkansas
Missouri

### Duke and King Missouri, LLC

Kansas
Missouri

**REVISED SCHEDULE 4.3**

**SUBSIDIARIES OWNERSHIP; JURISDICTION OF**
**ORGANIZATION; JURISDICTION WHERE QUALIFIED TO DO BUSINESS**

| SUBSIDIARY | OWNERSHIP | QUALIFICATION JURISDICTIONS |
|---|---|---|
| DK Florida Holdings, Inc. | 100% | Florida |
| Duke and King Missouri Holdings, Inc. | 100% | |
| | | |

1

## REVISED SCHEDULE 4.28(b)

## LEASED UNITS WITH EXPIRATION PRIOR TO MATURITY

| | LEASE SITES | SITES WHERE TERM OF LEASE EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 19. | Unit 106 – 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425 **BKC OWNED SITE.** | X |
| 20. | Unit 116 – 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 | X |
| 21. | Unit 805 – 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413 **BKC OWNED SITE.** | X |
| 22. | Unit 3792 – 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220 **BKC OWNED SITE.** | X |
| 23. | Unit 4451 – 4138 West Blue Heron Boulevard, Rivera Beach, Palm Beach County, Florida 33407 **BKC OWNED SITE.** | X |
| 24. | Unit 4972 - 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 | X |
| 25. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X |
| 26. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X |

## REVISED SCHEDULE 5.3

## FRANCHISE AGREEMENTS TO BE EXTENDED

| | SALE LEASE-BACK SITES | SITES WHERE TERM OF FRANCHISE AGREEMENT EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 1. | Unit 4334 – 2423 Rockingham Road, Davenport, Scott County, Iowa 52802 | X |
| 2. | Unit 5960 – 2001 Center Avenue, Janesville, Rock County, Wisconsin 53545 | X |
| 3. | Unit 5971 – 1710 DeKalb, Sycamore, Dekalb County, Illinois 60178 | X |
| 4. | Unit 6211 – 1222 42nd Avenue, East Moline, Rock Island County, Illinois 61244 | X |

| | LEASE SITES | SITES WHERE TERM OF FRANCHISE AGREEMENT EXPIRES PRIOR TO MATURITY DATE |
|---|---|---|
| 27. | Unit 106 – 18459 South Halsted Street, Glenwood, Cook County, Illinois 60425 **BKC OWNED SITE.** | X |
| 28. | Unit 116 – 2800 66th Street West, Richfield, Hennepin County, Minnesota 55423 | X |
| 29. | Unit 805 – 1717 Central Avenue NE, Minneapolis, Hennepin County, Minnesota 55413 **BKC OWNED SITE.** | X |
| 30. | Unit 1060 – 1450 4th Street, Beloit, Rock County, Wisconsin 53511 | X |
| 31. | Unit 2131 – 1725 US 1 South, St. Augustine, St. Johns County, Florida 32084 | X |
| 32. | Unit 3792 – 4980 South 76th Street, Greenfield, Milwaukee County, Wisconsin 53220 **BKC OWNED SITE.** | X |
| 33. | Unit 4111 – 3500 S. Moorland Road, New Berlin, Waukesha County, Wisconsin 53151 **BKC OWNED SITE.** | X |
| 34. | Unit 4206 - 1948 West Wayzata Boulevard, Long Lake, Hennepin County, Minnesota 55356 | X |
| 35. | Unit 4972 - 2711 Northeast 187th Street, Aventura, Miami-Dade County, Florida 33180 | X |
| 36. | Unit 5382 - 1404 Madison Avenue, Mankato, Blue Earth County, Minnesota 56001 | X |
| 37. | Unit 5978 - 3001 White Bear Avenue North, St. Paul, Ramsey County, Minnesota 55109 | X |
| 38. | Unit 6224 - 20403 Biscayne Boulevard, Aventura, Miami-Dade County, Florida 33180 | X |
| 39. | Unit 6254 - 3751 North Lexington Avenue, Arden Hills, Ramsey County, Minnesota 55126 | X |
| 40. | Unit 6530 - 7051 10th Street North, Oakdale, Washington County, Minnesota 55128 | X |
| 41. | Unit 6590 - 1215 Gun Club Road, White Bear Lake, Washington County, Minnesota 55110 | X |
| 42. | Unit - 7128 - 2325 State Road 16, St. Augustine, St. Johns County, Florida 32095 | X |
| 43. | Unit 7435 - 3970 Southdale Center, Edina, Hennepin County, Minnesota 55435 | X |
| 44. | Unit 11243 - 1560 West Fourth Street, Rush City, Chisago County, Minnesota 55069 | X |
| 45. | Unit 12250 - 925 Washington Avenue Southeast, Minneapolis, Hennepin County, Minnesota 55414 | X |

**EXHIBIT "A-3"**

**TERM NOTE C**

**$5,826,000**                                                    March 1, 2007

      FOR VALUE RECEIVED, DUKE AND KING REAL ESTATE, LLC, a Delaware limited liability company, DUKE AND KING MISSOURI, LLC, a Delaware limited liability company, DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC a Delaware limited liability company (collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta, Georgia 30308-2214, in lawful money of the United States and in immediately available funds, the principal sum of **FIVE MILLION EIGHT HUNDRED TWENTY SIX THOUSAND AND NO/100 DOLLARS ($5,826,000.00)** and all other amounts advanced by Lender to or on behalf of Borrower pursuant to the Credit Agreement (as hereinafter defined) or any other Credit Document, and interest thereon from the date hereof until the maturity hereof, in accordance with the terms of the Credit Agreement. All computations of interest shall be based upon a 360-day year on the actual number of days elapsed in such month.

      The Borrower hereby unconditionally further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding from the date hereof, and on any unpaid interest payable hereon, from the date such interest is due hereunder, at the applicable rates per annum and on the dates set forth in the Credit Agreement until such principal amount is paid in full. Further, the Borrower hereby unconditionally further agrees to pay principal on the dates and pursuant to the terms set forth in the Credit Agreement.

      Borrower shall make all payments hereunder in lawful money of the United States and in same day or immediately available funds. If any payment is to be made on a day other than a Business Day, such payment shall instead be made on the following Business Day, and such extension of time shall be included in computing the interest payable.

      This Note is a "Term Note" referred to in the Credit Agreement, dated as of November 1, 2006, between Duke and King Acquisition Corp., Duke and King Florida, LLC and Lender, as modified by First Amendment to Credit Agreement by and among Borrower and Lender dated as of March 1, 2007 (together with all supplements and amendments thereto, the "Credit Agreement") which is incorporated herein by reference and is subject to the provisions of and entitled to the benefits of the Credit Agreement, including, without limitation, the provisions regarding the interest rate, Default Rate, and principal payments; restrictions on and requirements for prepayment; and rights of acceleration. This Note also is subject to, secured by, and has the benefit of the other Loan Documents. Terms used herein have the meanings assigned to those terms in the Credit Agreement, unless otherwise defined herein.

      This Note is hereby expressly limited in that in no event shall the interest payable under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason whatsoever, the provision of any Loan Document, at the time performance of such provision occurs, involves the payment of interest in excess of that permitted by law, and if, under any

circumstances, Lender receives as interest any amount which would exceed the highest lawful rate applicable to Borrower, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance and not the payment of interest.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

## EXHIBIT "A-4"

## TERM NOTE D

**$7,936,000**                                                                                           March 1, 2007

   FOR VALUE RECEIVED, DUKE AND KING REAL ESTATE, LLC, a Delaware limited liability company, DUKE AND KING MISSOURI, LLC, a Delaware limited liability company, DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC a Delaware limited liability company (collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta, Georgia 30308-2214, in lawful money of the United States and in immediately available funds, the principal sum of **SEVEN MILLION NINE HUNDRED THIRTY SIX THOUSAND AND NO/100 DOLLARS ($7,936,000.00)** and all other amounts advanced by Lender to or on behalf of Borrower pursuant to the Credit Agreement (as hereinafter defined) or any other Credit Document, and interest thereon from the date hereof until the maturity hereof, in accordance with the terms of the Credit Agreement. All computations of interest shall be based upon a 360-day year on the actual number of days elapsed in such month.

   The Borrower hereby unconditionally further agrees to pay interest in like money at such office on the unpaid principal amount hereof from time to time outstanding from the date hereof, and on any unpaid interest payable hereon, from the date such interest is due hereunder, at the applicable rates per annum and on the dates set forth in the Credit Agreement until such principal amount is paid in full. Further, the Borrower hereby unconditionally further agrees to pay principal on the dates and pursuant to the terms set forth in the Credit Agreement.

   Borrower shall make all payments hereunder in lawful money of the United States and in same day or immediately available funds. If any payment is to be made on a day other than a Business Day, such payment shall instead be made on the following Business Day, and such extension of time shall be included in computing the interest payable.

   This Note is a "Term Note" referred to in the Credit Agreement, dated as of November 1, 2006, between Duke and King Acquisition Corp., Duke and King Florida, LLC and Lender, as modified by First Amendment to Credit Agreement by and among Borrower and Lender dated as of March 1, 2007 (together with all supplements and amendments thereto, the "Credit Agreement") which is incorporated herein by reference and is subject to the provisions of and entitled to the benefits of the Credit Agreement, including, without limitation, the provisions regarding the interest rate, Default Rate, and principal payments; restrictions on and requirements for prepayment; and rights of acceleration. This Note also is subject to, secured by, and has the benefit of the other Loan Documents. Terms used herein have the meanings assigned to those terms in the Credit Agreement, unless otherwise defined herein.

   This Note is hereby expressly limited in that in no event shall the interest payable under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason whatsoever, the provision of any Loan Document, at the time performance of such provision occurs, involves the payment of interest in excess of that permitted by law, and if, under any

circumstances, Lender receives as interest any amount which would exceed the highest lawful rate applicable to Borrower, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance and not the payment of interest.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

**BORROWER:**

**DUKE AND KING REAL ESTATE, LLC**, a
Delaware limited liability company

By: _____
      Name:_____
      Title:_____

**DUKE AND KING MISSOURI, LLC**, a Delaware
limited liability company

By: _____
      Name:_____
      Title:_____

**DUKE AND KING ACQUISITION CORP.**, a
Delaware corporation

By: _____
      Name:_____
      Title:_____

**DUKE AND KING FLORIDA, LLC**, a Delaware
limited liability company

By: _____
      Name:_____
      Title:_____

## REVISED EXHIBIT "B"

## AMENDED AND RESTATED
## ACQUISITION NOTE

**$3,500,000**

As of March 1, 2007
Atlanta, Georgia

For value received, DUKE AND KING REAL ESTATE, LLC, a Delaware limited liability company, DUKE AND KING MISSOURI, LLC, a Delaware limited liability company, DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC a Delaware limited liability company (collectively "Borrower") hereby promise to pay to the order of BANK OF AMERICA, N.A., or its assigns ("Lender"), at Lender's Principal Office located at 600 Peachtree Street NE, Atlanta, Georgia 30308-2214, in lawful money of the United States and in immediately available funds, the principal amount of **THREE MILLION FIVE HUNDRED THOUSAND DOLLARS ($3,500,000.00)** or (if less) the aggregate unpaid principal amount of all Acquisition Loan advances that Lender has made to Borrower, on the Termination Date (as such term is defined in the Credit Agreement referenced below), and to pay interest (computed on the basis of a year of 360 days for the actual number of days elapsed) from the date of this Note on the unpaid principal amount of this Note, in like money, at that Principal Office, at the rate in effect in accordance with the terms of that certain Credit Agreement dated as of November 1, 2006 (as hereafter amended, modified or supplemented, the "Credit Agreement") and to make payments in strict accordance with the terms thereof. Any amount of principal hereof which is not paid when due, whether at stated maturity, by acceleration, or otherwise, shall bear interest from the date when due until it is paid in full, payable on demand, at a rate per annum set according to the terms of the Credit Agreement.

Borrower hereby consents to Lender's maintenance of records of (x) all Advances made by Lender to Borrower, (y) all payments made by Borrower on Advances, and (z) all other appropriate debits and credits as provided in the Credit Agreement and this Note. However, Lender's failure to make such an entry with respect to any Advance or payment or other debit or credit shall not limit or otherwise affect Borrower's obligations under the Credit Agreement or this Note.

Borrower shall make all payments hereunder in lawful money of the United States and in same day or immediately available funds. If any payment is to be made on a day other than a Business Day, such payment shall instead be made on the following Business Day, and such extension of time shall be included in computing the interest payable.

This Note is hereby expressly limited in that in no event shall the interest payable under this Note exceed the highest lawful rate as applicable to Borrower. If for any reason whatsoever, the provision of any Loan Document, at the time performance of such provision occurs, involves the payment of interest in excess of that permitted by law, and if, under any circumstances, Lender receives as interest any amount which would exceed the highest lawful

rate applicable to Borrower, such amount which would be excessive interest shall be applied to reduce the unpaid principal balance and not the payment of interest.

This Note is an "Acquisition Note" as defined in the Credit Agreement. Terms used in this Note that are defined in the Credit Agreement have the same meanings as in the Credit Agreement. The Credit Agreement contains provisions for acceleration of the maturity of this Note upon the happening of certain events and also for full or partial repayments on account of principal of this Note before it is scheduled to mature. This Note is secured by the Credit Agreement, which describes the Collateral provided and the rights of Borrower and Lender with respect to that Collateral.

This Note, the Credit Agreement and the other Loan Documents are not subject to any valid right of rescission, set-off, abatement, diminution, counterclaim or defense as against Lender, including the defense of usury, and the operation of any of the terms of the loan, or the exercise of any right thereunder, will not render the Loan unenforceable, in whole or in part, or subject to any right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, and Lender has not taken any action which would give rise to the assertion of any of the foregoing and no such right of rescission, set-off, abatement, diminution, counterclaim or defense, including the defense of usury, has been asserted with respect thereto.

Should the indebtedness represented by this Note or any part hereof be collected at law or in equity or in bankruptcy, receivership or other court proceeding, or should this Note be placed in the hands of attorneys for collection after default, the Borrower agrees to pay, in addition to the principal, interest due and payable hereon and any other sums due and payable hereon, all other costs and expenses for which Borrower is liable under the Credit Agreement.

Borrower and all endorsers of this Note hereby waive presentment, demand, notice, protest, stay of execution, and all other defenses to payment generally, assent to the terms hereof, and agree that any renewal, extension, or postponement of the time for payment or any other indulgence or any substitution, exchange, or release of collateral or the additional release of any person or entity primarily or secondarily liable, may be affected without notice to and without releasing Borrower or any endorser from any liability hereunder.

This Note shall be governed by the laws of the State of New York.

TIME IS OF THE ESSENCE OF THIS NOTE.

This instrument amends and restates in its entirety that certain Acquisition Note dated as of November 1, 2006, by Duke and King Acquisition Corp. and Duke and King Florida, LLC payable to Lenders in the original principal amount of $7,500,000 (the "Prior Note"). This Note is not intended nor shall it be deemed or construed as a novation of the prior Note or the indebtedness evidenced thereby.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date and year first above written.

**BORROWER:**

**DUKE AND KING ACQUISITION CORP.**, a
Delaware corporation

By: _____
     Name:_____
     Title:_____

**DUKE AND KING FLORIDA, LLC**, a Delaware
limited liability company

By: _____
     Name:_____
     Title:_____

**DUKE AND KING REAL ESTATE, LLC**, a
Delaware limited liability company

By: _____
     Name:_____
     Title:_____

**DUKE AND KING MISSOURI, LLC**, a Delaware
limited liability company

By: _____
     Name:_____
     Title:_____