# Exhibit D

# SECURITY AGREEMENT

This SECURITY AGREEMENT (this "Agreement") dated as of 1st day of March, 2007, by and among DUKE AND KING ACQUISITION CORP., a Delaware corporation and DUKE AND KING FLORIDA, LLC, a Delaware limited liability company, DUKE AND KING REAL ESTATE, LLC, a Delaware limited liability company and DUKE AND KING MISSOURI, LLC, a Delaware limited liability company (collectively, the "Debtors" and individually a "Debtor"), the Lenders (as defined in the Credit Agreement), and BANK OF AMERICA, N.A., as administrative agent (the "Administrative Agent") for the benefit of the Lenders.

1. Grant of Security. In consideration of the execution and delivery of that certain Credit Agreement dated as of November 1, 2006, (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Credit Agreement"), by and among the Debtors, the Lenders and the Administrative Agent pursuant to which the Lenders have agreed, severally and not jointly, to make the Loan (as defined in the Credit Agreement) to the Debtors, the Debtors hereby unconditionally grant and assign to the Administrative Agent, for itself and for the ratable benefit of the Lenders, a continuing security interest and lien in and to (hereinafter referred to as the "Security Interest") all of the Debtors' following described property and assets of whatever type or description, and all additions thereto and replacements thereof, and all other property whether now owned or hereafter created, acquired or reacquired by the Debtors (collectively, the "Collateral"):

(a) Inventory. All inventory and supplies of whatever nature and kind (including, without limitation, (i) all food and paper inventory, supplies and all other raw materials, components, work in process, finished goods, goods in transit and packing and shipping materials, and (ii) all goods that are returned to or repossessed by any Debtor), together with all additions and accessions thereto, replacements therefor, products thereof and documents therefor located at each Unit described on Schedule 3 attached hereto and incorporated herein by this reference (collectively, the "Inventory");

(b) Accounts. All "accounts," as such term is defined in the UCC, of each Debtor whether now existing or hereafter created or arising, including, without limitation, (i) all accounts receivable, other receivables, book debts and other forms of obligations (other than forms of obligations evidenced by chattel paper (as defined in the UCC) or instruments (as defined in the UCC)) (including any such obligations that may be characterized as an account or contract right under the UCC), (ii) all of each Debtor's rights in, to and under all purchase orders or receipts for goods or services, (iii) all of each Debtor's rights to any goods represented by any of the foregoing (including unpaid sellers' rights of rescission, replevin, reclamation and stoppage in transit and rights to returned, reclaimed or repossessed goods), (iv) all rights to payment due to a Debtor for property sold, leased, licensed, assigned or otherwise disposed of, for a policy of insurance issued or to be issued, for a secondary obligation incurred or to be incurred, for energy provided or to be provided, for the use or hire of a vessel under a charter or other contract, arising out of the use of a credit card or charge card, or for services rendered or to be rendered by such Debtor or in connection with any other transaction (whether or not yet earned by performance on the part of such Debtor) and (v) all collateral security of any kind, given by any Account Debtor or any other Person with respect to any of the foregoing. (collectively, the "Accounts");

(c) Equipment. All equipment and supplies not included in Inventory above (including, without limitation, food storage and preparation equipment, registers, communications equipment, and replacements therefor), together with all additions and accessions thereto located at each Unit described on Schedule 3 attached hereto and incorporated herein by this reference (collectively, the "Equipment");

(d) Licenses. All franchise agreements (but only to the extent the franchisor has consented to a security interest and lien), licenses, permits and operating rights granted to or held by the Debtor for each Unit described on Schedule 3 attached hereto and incorporated herein by this reference (collectively, the "Licenses");

(e) Contracts and Leases. All (a) (i) contracts and agreements for the purchase of real and personal property, easements and rights of way, (ii) Material Contracts and any rights thereunder, including the right to receive payments, (iii) security agreements, guarantees and other agreements evidencing, securing or otherwise relating to the Accounts or other rights to receive payment, and (iv) other agreements to which any Debtor is a party, whether now existing or hereafter arising (collectively, the "Contracts"); (b) lease agreements for real or personal property to which either Debtor is a party, whether now existing or hereafter arising (collectively, the "Leases"); and (c) all other contracts and contractual rights, indemnification rights, and other remedies or provisions now existing or hereafter arising in favor of the Debtors (collectively, the "Other Contracts");

(f) General Intangibles. All general intangibles including personal property not included above, including, without limitation, (i) customer and supplier lists, books and records (including all of its Records indicating, summarizing, or evidencing the Collateral or liabilities, all of its Records relating to its business operations or financial condition, and all of its goods or general intangibles related to such information), computer programs and other intellectual property rights, insurance policies, tax refunds, (ii) all proprietary trademarks, trademark applications, trade names, trade secrets, patents, patent applications, copyrights, formulas, recipes, industrial designs, software, all goodwill of the business associated with the foregoing, other intellectual property or proprietary rights therein, whether under license or otherwise, and (iii) all payment intangibles (collectively, the "Intangibles");

(g) Deposit Accounts. All of either Debtor's interest with respect to any "deposit account" as that term is defined in the UCC and, in any event, including, without limitation, any checking or other demand deposit account, time, savings, passbook or similar account maintained with a bank (collectively, "Deposit Accounts");

(h) Negotiable Collateral. All of either Debtor's letters of credit, letter of credit rights, instruments, promissory notes, drafts and documents, as such terms may be defined in the UCC, and any and all supporting obligations in respect thereof ("Negotiable Collateral");

(i) Furniture and Fixtures. All furniture and fixtures not forming a part of real property (including all tables, seating, signage, decorations and other furniture and fixtures), together with all additions and accessions thereto and replacements therefor located at each Unit described on Schedule 3 attached hereto and incorporated herein by this reference (collectively, the "Furniture and Fixtures");

(j) Investment Property. All of Debtors' "investment property" as that term is defined in the UCC and, in any event, including, without limitation, all securities, whether certificated or uncertificated, security entitlements, securities accounts, commodity contracts and commodity accounts as such terms may be defined in the UCC, and any and all supporting obligations in respect thereof ("Investment Property");

(k) Supporting Obligations. All of the Debtors' "supporting obligations" as such term is defined in the UCC, including letters of credit and guaranties issued in support of Accounts, chattel paper, documents, Intangibles, instruments, or Investment Property (collectively, the "Supporting Obligations");

(l) Miscellaneous Items. All goods (other than consumer goods, farm products, or Inventory), chattel paper (whether tangible or electronic), documents, supplies, choses in action, commercial tort claims, (including, without limitation, payments received with respect to termination, arbitration or litigation under any Contract), URL's, domain names and licenses, and all other property and assets of whatever type or description not included above (collectively, the "Miscellaneous Items");

(m) Cash. All of Debtors' cash, money, certificates of deposit or other assets of each Debtor that now or hereafter come into the possession, custody, or control of any Lender or the Administrative Agent; and

(n) Proceeds. All proceeds and products, whether tangible or intangible, of any of the foregoing, and all proceeds of any loss of, damage to or destruction of the above, whether insured or not insured, all other proceeds of any sale, lease or other disposition of any property or interest therein referred to above, together with all proceeds of any policies of insurance covering any or all of the above, the proceeds of commercial tort claims covering any or all of the foregoing, the proceeds of any award in condemnation with respect to any of the property of the Debtor, any rebates or refunds, whether for taxes or otherwise, and together with all proceeds of any such proceeds, and to the extent not otherwise included, any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral (collectively, the "Proceeds").

Notwithstanding the foregoing provisions of Section (d), Section 1(f)(ii) and Section 1(j), the grant of a security interest in any Licenses, intellectual property or intellectual property licenses or investment property shall not include (x) any License agreement or franchise agreement in effect as of the date hereof which by its terms prohibits the grant of the security interest contemplated by this Agreement, (y) any intellectual property to the extent the grant of such security interest and Lien in such intellectual property would result in the loss, abandonment, invalidity, unenforceability, voiding or cancellation of such intellectual property or (z) any stock, membership interest, partnership interest or other ownership or beneficial interest (collectively, "Equity Interests") in any Person in which Debtor owns less than 50% of the Equity Interests and which is not an Affiliate of the Debtor, to the extent that (1) the Debtor is prohibited from granting a Lien thereon by an enforceable provision of the organizational documents of such Person, or any contractual obligation, or (2) the pledge of the Equity Interests requires consent of a third party (other than Administrative Agent or any Lender); provided, however, that upon the termination of such prohibitions or restrictions, for any reason

whatsoever, the provisions of Section (d), Section 1(f)(ii) and Section 1(j) shall be deemed to apply thereto automatically; and provided, further however, that such Debtor shall fully disclose to the Administrative Agent all such prohibitions or restrictions on the pledge of the interests set forth herein and shall promptly notify the Administrative Agent upon the termination of such prohibitions or restrictions.

(o) Security for Obligations. This Agreement and the Security Interest secure payment and performance of all obligations of the Debtor to the Lenders, or any of them, under this Agreement, the Credit Agreement, and every other Loan Document and any extensions, renewals or amendments thereto, however created, acquired, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due, including any Rate Hedging Obligations together with all other now existing or hereafter arising Obligations (all of the foregoing obligations being hereinafter collectively referred to as the "Obligations").

2. Defined Terms. Capitalized terms used herein shall have the meanings ascribed to such terms in the Credit Agreement to the extent not otherwise defined or limited herein. To the extent not inconsistent with this Agreement, the rules of construction and interpretation set forth in the Credit Agreement shall also be applicable to this Agreement and are incorporated herein by this reference.

(a) All terms used to define or describe types of Collateral and rights therein shall have the meanings set forth in the UCC to the extent not inconsistent with this Agreement.

(b) The words "hereof," "herein" and "hereunder" and words of like import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and paragraph references are to this Agreement unless otherwise specified.

(c) No reference to "proceeds" herein shall be deemed to authorize any sale, transfer or other disposition of any Collateral.

(d) "Account Debtor", as used in this Agreement, means any Person who is obligated to make payments in respect of an Account.

(e) "Records", as used in this Agreement, means information that is inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form.

(f) "UCC" means the Uniform Commercial Code as in effect in the State of Georgia and as required to enforce this Agreement, any other applicable jurisdiction in which the Collateral is located.

3. UCC Financing Statements. The Debtors hereby irrevocably authorize the Administrative Agent to file such financing statements, continuation statements, amendments and such other documents as the Administrative Agent may deem necessary to protect or perfect the interest of the Administrative Agent in the Collateral, and appoint the Administrative Agent as each Debtor's attorney-in-fact, with a power of attorney to file on the Debtors' behalf such

UCC financing statement forms, continuation statements, amendments and execute other similar instruments as the Administrative Agent may from time to time deem necessary to protect or perfect such interests in the Collateral. Such power of attorney is coupled with an interest and shall be irrevocable. In addition, the Debtors agree to make, execute, furnish, deliver or cause to be done, furnished, executed and delivered all such further acts, information, documents and things as the Administrative Agent may reasonably require for the purpose of perfecting or protecting the rights of the Administrative Agent hereunder or otherwise giving effect to this Agreement, all promptly upon request therefor. Each Debtor also hereby ratifies its authorization for the Administrative Agent to have filed in any jurisdiction any financing statements, in-lieu financing statements or amendments thereto if filed prior to the date hereof. Each Debtor acknowledges that it is not authorized to file any financing statement or amendment or termination statement with respect to any financing statement filed in connection with this Agreement without the prior written consent of the Administrative Agent, subject to each Debtor's rights under Section 9-509(d)(2) of the UCC.

4. Representations and Warranties. Each Debtor represents and warrants to the Lenders and the Administrative Agent that:

(a) Debtor is the owner of the Collateral, free from any right or claim of any Person or any Lien, except for the Security Interest created by this Agreement and Permitted Liens;

(b) Each Debtor now keeps all records concerning the Accounts, Contracts, Leases, Other Contracts, Intangibles and other Collateral at the chief executive office of such Debtor which is at the address set forth on **Schedule 1** attached hereto;

(c) All names and addresses under and at which each Debtor has operated and owned the Collateral for the five (5) year period prior to the Agreement Date are listed on **Schedule 1** attached hereto. The Internal Revenue Service taxpayer identification number and the organizational identification number issued by the state of formation of each Debtor are listed next to such Debtor's name on **Schedule 1** attached hereto.

5. Administrative Agent's Perfected First Priority Security Interest. The Debtor further represents and warrants that, upon the filing of UCC financing statements in the jurisdictions set forth on **Schedule 2** attached hereto, the Security Interest in the Collateral granted hereunder constitutes and, assuming timely filing of continuation statements, shall constitute at all times a valid first priority security interest, perfected with respect to all Collateral for which the filing of UCC financing statements is a valid method of perfection. The Debtor shall take or cause to be taken such acts and actions as shall be necessary or reasonably requested by Administrative Agent to assure that the Security Interest in the Collateral shall not become subordinate or junior to the security interests, Liens or claims of any other Person, and that the Collateral shall not otherwise be or become subject to any Lien, except for Permitted Liens.

6. Covenants. The Debtor covenant and agree that:

(a) Location of Collateral and Records. Without providing at least twenty (20) days prior written notice to the Administrative Agent, the Debtors will not keep any of their



1624703 v01

Records at any other address or change their respective names, the location of their respective chief executive offices, places of business, mailing addresses, or organizational identification numbers. The Debtors shall advise the Administrative Agent, in writing at least thirty (30) days in advance of the opening of any new place of business, the closing of any existing place of business or any change in the location of the place where it keeps any of the Collateral.

(b) Commercial Tort Claims. If any Debtor shall, at any time, acquire a commercial tort claim, as defined in Article 9 of the UCC, such Debtor shall promptly notify the Administrative Agent in a writing signed by such Debtor, accompanied by a brief description of the commercial tort claim, and grant to the Administrative Agent in such writing a security interest therein and in the proceeds thereof, all upon the terms of this Agreement, with such writing to be in form and substance reasonably satisfactory to the Administrative Agent.

(c) Negotiable Collateral and Tangible Chattel Paper. If any Debtor shall at any time hold or acquire any Negotiable Collateral or tangible chattel paper, such Debtor shall promptly notify the Administrative Agent and, at the request and option of the Administrative Agent, such Debtor shall forthwith endorse, assign and deliver the same to the Administrative Agent, accompanied by such instruments of transfer or assignments duly executed in blank as the Administrative Agent may from time to time specify.

(d) Electronic Chattel Paper and Transferable Records. If any Debtor at any time holds or acquires an interest in any electronic chattel paper or any "transferable record," as that term is defined in § 201 of the Federal Electronic Signatures in Global and National Commerce Act, or in § 16 of the Uniform Electronic Transactions Act as then in effect in any relevant jurisdiction, such Debtor shall promptly notify the Administrative Agent thereof and, at the request and option of the Administrative Agent, shall take such action as the Administrative Agent may reasonably request to vest in the Administrative Agent control of such electronic chattel paper or transferable record under § 9 105 of the UCC or control of such electronic chattel paper or transferable record under § 201 of the Federal Electronic Signatures in Global and National Commerce Act or, as the case may be, § 16 of the Uniform Electronic Transactions Act, as so in effect in such jurisdiction, of such transferable record.

(e) Letter of Credit Rights. If any Debtor is at any time a beneficiary under a letter of credit, such Debtor shall promptly notify the Administrative Agent thereof and, at the request and option of the Administrative Agent, such Debtor shall, pursuant to an authenticated control agreement in form and substance satisfactory to the Administrative Agent, either (1) arrange for the issuer and any confirmer or other nominated Person of such letter of credit to consent to an assignment of the Administrative Agent of the proceeds of the letter of credit, or (2) arrange for the Administrative Agent to become the transferee beneficiary of the letter of credit, with the Administrative Agent agreeing, in each case, that the proceeds of the letter of credit are to be applied as provided in the Credit Agreement.

(f) Control. The Debtors shall at any time, and from time to time, take such steps as the Administrative Agent may reasonably request for the Administrative Agent (1) to obtain an acknowledgment, in form and substance satisfactory to the Administrative Agent, of any bailee having possession of any of the Collateral that the bailee holds such Collateral for the Administrative Agent and that the bailee agrees to comply, without consent or notice to the

Debtor with the Administrative Agent's instructions, (2) to obtain "control" from each issuer of uncertificated securities, securities intermediary, or commodities intermediary issuing or holding any financial assets or commodities, or from each bank or financial institution holding a Deposit Account, in accordance with Article 9 of the UCC, with any authenticated control agreements, to be in form and substance satisfactory to the Administrative Agent, and (3) otherwise to insure the continued perfection and priority of the Administrative Agent's Security Interest in any of the Collateral and of the preservation of its rights therein. In furtherance of the foregoing, each of the Debtor shall promptly notify the Administrative Agent in writing if such Debtor acquires any property or interest which constitutes Collateral or if any Collateral is at any time in the possession of a bailee, and shall endorse, assign and deliver to the Administrative Agent or cause the Administrative Agent to be the registered holder of, any securities, financial assets or other Investment Property now owned or hereafter acquired by any Debtor.

(g) Change Name; Reincorporate. Each Debtor covenants and agrees that such Debtor will not, without at least thirty (30) days prior written notice to the Administrative Agent, change such Debtor's name or reincorporate or reorganize itself under the laws of any jurisdiction other than the jurisdiction in which such Debtor is incorporated or organized as of the date hereof.

(h) Other Acts as to Any and All Collateral. The Debtors agree to comply with the covenants and agreements set forth in the Credit Agreement, including such covenants as pertain to the Collateral. In addition, the Debtors agree, at the request and option of the Administrative Agent, to take any and all other actions the Administrative Agent may determine to be necessary for the attachment, perfection and first priority of, and the ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in any and all of the Collateral including, without limitation, (i) executing, delivering and, where appropriate, filing financing statements and amendments relating thereto under the UCC, to the extent, if any, that any Debtor's signature thereon is required therefor, (ii) causing the Administrative Agent's name to be noted as secured party on any certificate of title for a titled good if such notation is a condition to attachment, perfection or priority of, or ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in such Collateral, (iii) complying with any provision of any statute, regulation or treaty of the United States as to any Collateral if compliance with such provision is a condition to attachment, perfection or priority of, or ability of the Administrative Agent to enforce, the Administrative Agent's Security Interest in such Collateral, (iv) obtaining governmental and, subject to the provisions of the Credit Agreement, other third party waivers, consents and approvals in form and substance reasonably satisfactory to Administrative Agent, including, without limitation, any consent of any licensor, lessor or other Person obligated on Collateral, and (v) subject to the provisions of the Credit Agreement, obtaining waivers from mortgagees and landlords in form and substance satisfactory to the Administrative Agent.

(i) Savings Clause. Nothing contained in this Section 6 shall be construed to narrow the scope of the Administrative Agent's or a Lender's security interest in any of the Collateral or the perfection or priority thereof or to impair or otherwise limit any of the rights, powers, privileges or remedies of the Administrative Agent or any other Lender hereunder.

7. Personal Property. The parties intend that, to the extent permitted by applicable law, the Collateral shall remain personal property irrespective of the manner of its attachment or affixation to realty.

8. Risk of Loss. Any and all injury to, or loss or destruction of, the Collateral shall be at the Debtors' risk and shall not release any Debtor from its Obligations.

9. Insurance. Each Debtor agrees to maintain insurance with respect to the Collateral and their respective businesses as required by the Credit Agreement.

10. Event of Default. Upon the occurrence and during the continuation of an Event of Default, the Administrative Agent shall have, without any other notice or demand upon the Debtors, (a) such rights and remedies as are set forth in the Credit Agreement and herein, (b) all the rights, powers and privileges of a secured party under the UCC and (c) all other rights and remedies available to the Administrative Agent at law or in equity. The Debtors covenant and agree that any notification of intended disposition of any Collateral, if such notice is required by law, shall be deemed reasonably and properly given if given in the manner provided for below at least five (5) calendar days (unless the Collateral is perishable or threatens to decline speedily in value or is of a type sold on a recognized market) prior to such disposition. Upon the occurrence and during the continuation of an Event of Default, the Administrative Agent shall have the right to the appointment of a receiver for the properties and assets of the Debtors, and the Debtors hereby consent to such appointment and hereby waive any objection they may have thereto and the right to have a bond or other security posted by the Administrative Agent or any other Person in connection therewith. The Debtors agree, after the occurrence and during the continuation of an Event of Default, promptly to take any actions at the Debtors' sole cost and expense that the Administrative Agent may request in order to enable the Administrative Agent to obtain and enjoy the full rights and benefits granted to the Administrative Agent under this Agreement and the other Loan Documents. The Administrative Agent shall have the right, in connection with the issuance of any order for relief in a bankruptcy proceeding, to petition the bankruptcy court for the transfer of control or assignment of the Collateral to a receiver, trustee, transferee, or similar official or to any purchaser of the Collateral pursuant to any public or private sale, foreclosure or other exercise of remedies available to the Administrative Agent, all as permitted by applicable law. All amounts realized or collected through the exercise of remedies hereunder shall be applied as provided in the Credit Agreement.

11. Attorney in Fact. Each of the Debtors hereby further irrevocably constitutes and appoints the Administrative Agent as its attorney-in-fact, with power of substitution, with authority, upon the occurrence and during the continuation of an Event of Default, to: (a) collect all Accounts, endorse its name on any note, acceptance, Negotiable Collateral, check, draft, money order or other evidence of debt or of payment which constitutes a portion of the Collateral and which may come into the possession of the Administrative Agent; (b) take such action, execute such documents, and perform such work, as the Administrative Agent may deem appropriate in exercise of the rights and remedies granted the Administrative Agent herein or in any other Loan Document; (c) compromise and settle or to sell, assign or transfer or to ask, collect, receive or issue any and all claims possessed by the Debtors which constitute a portion of the Collateral, all in the name of the Debtor; and (d) generally to do such other things and acts in the name of any Debtor with respect to the Collateral as are necessary or appropriate to protect or

enforce the rights of the Administrative Agent hereunder or under any other Loan Document. The powers of attorney granted herein are coupled with an interest and shall be irrevocable. To the extent permitted by law, the Debtors hereby ratify all that said attorney-in-fact shall lawfully do or cause to be done. The powers conferred on the Administrative Agent hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Administrative Agent shall be accountable only for the amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or agents shall be responsible to the Debtors for any act or failure to act, except for the Administrative Agent's own willful misconduct or gross negligence, as determined by a final, non-appealable order of a court having jurisdiction over the subject matter. To the extent that the Administrative Agent shall incur any costs or pay any expenses in connection with its rights hereunder, including any costs or expenses of litigation associated therewith, such costs, expenses or payments shall be included in the Obligations secured hereby and shall bear interest from the payment of such costs or expenses at the Default Rate.

12. Remedies Cumulative. The Debtors agree that the rights of the Administrative Agent, the Lenders, or any of them, under this Agreement, the Credit Agreement, any other Loan Document or any other contract or agreement now or hereafter in existence between the Administrative Agent and the Debtor and the other obligors thereunder, or any of them, shall be cumulative, and that the Administrative Agent may from time to time exercise such rights and such remedies as such Person or Persons may have thereunder and under the laws of the United States or any state, as applicable, in the manner and at the time that the Person or Persons in its or their sole discretion desire, subject to the terms of such agreements. The Debtors further expressly agree that the Administrative Agent shall in no event be under any obligation to resort to any Collateral secured hereby prior to exercising any other rights that the Administrative Agent, the Lenders, or any of them, may have against any Debtor or its property, nor shall the Administrative Agent be required to resort to any other collateral or security for the Obligations, prior to any exercise of the Administrative Agent's rights against any Debtor and its property hereunder.

13. Remedies.

(a) The Administrative Agent is hereby granted a license or other right to use, without liability for royalties or any other charge, each Debtor's labels, patents, copyrights, rights of use of any name, trade secrets, trade names, trademarks, service marks and advertising matter, URLs, domain names, industrial designs, other industrial or intellectual property or any property of a similar nature, whether owned by any of the Debtor or with respect to which any of the Debtor have rights under license, sublicense or other agreements (but only to the extent (i) such license, sublicense or agreement does not prohibit such use by the Administrative Agent and (ii) such Debtor will not be in default under such license, sublicense or other agreement as a result of such use by the Administrative Agent), as it pertains to the Collateral, in preparing for sale, advertising for sale and selling any Collateral, and each Debtor's rights under all licenses and all franchise agreements shall inure to the benefit of the Administrative Agent.

(b) Any cash held by the Administrative Agent as Collateral and all cash proceeds received by the Administrative Agent in respect of any sale of, collection from, or other realization upon all or any part of the Collateral may, in the discretion of the Administrative

Agent, be held by the Administrative Agent as collateral for, and/or then or at any time thereafter be applied in whole or in part by the Administrative Agent against, all or any part of the Obligations in such order as may be set forth in the Credit Agreement. Any surplus of such cash or cash proceeds held by the Administrative Agent and remaining after payment in full of all the Obligations shall be delivered to the Debtors.

(c) The Debtors hereby acknowledge that the Obligations arose out of a commercial transaction and agree that if an Event of Default shall occur and be continuing, the Administrative Agent shall have the right to immediate possession without notice or a hearing, and hereby knowingly and intelligently waive any and all rights they may have to any notice and posting of a bond by the Administrative Agent, the other Lenders, or any of them, prior to seizure by the Administrative Agent, or any of its transferees, assigns or successors in interest, of the Collateral or any portion thereof. The Administrative Agent shall have the right to the appointment of a receiver for the properties and assets of each of the Debtors, and each Debtor hereby consents to such rights and such appointment and hereby waives any objection such Debtor may have thereto. Immediately upon the occurrence of an Event of Default and upon its continuance, the Administrative Agent may, so far as the Debtors can give authority therefor, enter upon any premises on which the Collateral may be situated and remove the same therefrom. The Administrative Agent's sole duty with respect to the custody, safe keeping and physical preservation of the Collateral in its possession, shall be to deal with such Collateral in substantially the same manner as the Administrative Agent deals with similar property for its own account.

(d) The Administrative Agent may in its discretion require the Debtors to assemble all or any part of the Collateral at such location or locations within the jurisdiction(s) of the Debtors' chief executive office(s) or at such other locations as the Administrative Agent may reasonably designate. In addition, the Debtors waive any and all rights that they may have to a judicial hearing in advance of the enforcement of any of the Administrative Agent's rights and remedies hereunder.

14. Marshalling. The Administrative Agent shall not be required to marshal any present or future collateral security (including but not limited to the Collateral) for, or other assurances of payment of, the Obligations or any of them or to resort to such collateral security or other assurances of payment in any particular order, and the Debtors hereby irrevocably waive the benefits of all such laws in connection with the enforcement of this Agreement and the other Loan Documents.

15. No Release or Waiver. No transfer or renewal, extension, assignment or termination of this Agreement or of the Credit Agreement or of any other Loan Document, or additional Advances or Loans made by the Administrative Agent to any of the Debtors, or the taking of further security, nor the retaking or re-delivery of the Collateral by the Administrative Agent, or any other act of the Administrative Agent, shall release the Debtors from, or waive any Obligation, except a release or waiver executed in writing by the Administrative Agent in accordance with the Credit Agreement with respect to such Obligation or upon full payment and satisfaction of all Obligations and termination of all Commitments.

16. Assignment. The Debtors agree that this Agreement and the rights hereunder may, in the discretion of the Administrative Agent, be assigned in whole or in part in connection with any assignment of the Credit Agreement or the Obligations evidenced thereby. In the event this Agreement or the rights hereunder are so assigned by any of the Lenders or the Administrative Agent, the terms "Lenders," or "Administrative Agent," wherever used herein, shall be deemed, as applicable, to refer to and include any such assignee. The Debtors shall not assign their rights in this Agreement.

17. Successors. This Agreement shall apply to and bind the respective successors and permitted assigns of the Debtors and inure to the benefit of the Lenders and the successors and permitted assigns of the Lenders.

18. Notices. All notices and other communications required or permitted hereunder shall be in writing and shall be given in a fashion prescribed in the Credit Agreement.

19. Governing Law. This Agreement shall be construed and interpreted in accordance with the internal laws (and not the law of conflicts) of the State of New York. This Agreement, together with the Credit Agreement and all other Loan Documents and all documents and agreements referred to herein and therein, constitute the entire agreement among the Debtors, the Lenders and the Administrative Agent with respect to the matters addressed herein and may not be modified except by a writing executed by the Administrative Agent and the Debtor.

20. Severability. If any paragraph or part thereof of this Agreement shall for any reason be held or adjudged to be invalid, illegal or unenforceable by any court of competent jurisdiction, such paragraph or part thereof so adjudicated invalid, illegal or unenforceable shall be deemed separate, distinct and independent, and the remainder of this Agreement shall remain in full force and effect and shall not be affected by such holding or adjudication.

21. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

22. Joint and Several Liability. The Obligations of the Debtors hereunder are joint and several. Any action taken or required to be taken, or any notice, consent or other agreements made or given or required to be made or given under this Agreement or any other Loan Document by or with respect to the Debtors or any of them shall be deemed to be taken, made or given by or on behalf of all Debtors if such action, notice, consent or other agreement is taken, made or given by an authorized representative of the Debtors; and each such action, notice, consent or agreement taken, made or given by the Debtors shall be jointly and severally binding on the Debtors. The Debtors shall be liable for, on a joint and several basis, and each hereby guarantees the timely payment by every other Debtor of the payments and Obligations required by this Agreement, regardless of which Debtor actually may have received the proceeds of the Loans or other extensions of credit under the Credit Agreement or the amount of the Loans received or the manner in which the Lenders account for the Loan or other extensions of credit on its books and records, it being acknowledged and agreed that the proceeds of a Loan to any Debtor inure to the mutual benefit of the Debtors and that the Lenders and the Administrative

Agent are relying on the joint and several liability of the Debtors in extending the Loans and other financial accommodations under the Credit Agreement. The Debtors hereby unconditionally and irrevocably agree that upon default in any payment or performance of any Obligation when due hereunder, such Debtors shall forthwith pay or perform the same without notice or demand. The Administrative Agent may proceed directly against any Debtor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations, without first proceeding against any other Debtor or any other Person, or against any security or collateral for the Obligations.

23. Administrative Agent. Each reference herein to any right granted to, benefit conferred upon or power exercisable by the "Administrative Agent" shall be a reference to the Administrative Agent for the Lenders, and each action taken or right exercised hereunder shall be deemed to have been so taken or exercised by the Administrative Agent for the benefit of and on behalf of the Lenders.

24. Term of Agreement. This Agreement shall remain in full force and effect until all Obligations have been paid in full. Upon payment in full in cash, or other satisfaction of the Obligations and the expiration or termination of the Commitments, the security interest granted hereby shall terminate and all rights to the Collateral shall revert to the Debtor or any other Person entitled thereto. At such time, the Administrative Agent will authorize the filing of appropriate termination statements to terminate such security interests. In the event that Debtor satisfies all conditions set forth in the Credit Agreement for the release of a portion of the Collateral, Administrative Agent will authorize the filing of appropriate partial terminations with respect to the Collateral being released.

25. **ARBITRATION**.

(a) **ANY CONTROVERSY OR CLAIM BETWEEN OR AMONG THE PARTIES HERETO INCLUDING BUT NOT LIMITED TO THOSE ARISING OUT OF OR RELATING TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT OR ANY RELATED INSTRUMENTS, AGREEMENTS OR DOCUMENTS, INCLUDING ANY CLAIM BASED ON OR ARISING FROM AN ALLEGED TORT, SHALL BE DETERMINED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (OR IF NOT APPLICABLE, THE APPLICABLE STATE LAW), THE RULES OF PRACTICE AND PROCEDURE FOR THE ARBITRATION OF COMMERCIAL DISPUTES OF J.A.M.S./ENDISPUTE OR ANY SUCCESSOR THEREOF ("J.A.M.S."), AND THE "SPECIAL RULES" SET FORTH BELOW. IN THE EVENT OF ANY INCONSISTENCY, THE SPECIAL RULES SHALL CONTROL. JUDGMENT UPON ANY ARBITRATION AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. ANY PARTY TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT MAY BRING AN ACTION, INCLUDING A SUMMARY OR EXPEDITED PROCEEDING, TO COMPEL ARBITRATION OF ANY CONTROVERSY OR CLAIM TO WHICH THIS AGREEMENT APPLIES IN ANY COURT HAVING JURISDICTION OVER SUCH ACTION.**

(b) **SPECIAL RULES. THE ARBITRATION SHALL BE CONDUCTED IN THE COUNTY OF ANY BORROWER'S DOMICILE AT THE TIME OF THE**

**EXECUTION OF THIS INSTRUMENT, AGREEMENT OR DOCUMENT AND ADMINISTERED BY J.A.M.S. WHO WILL APPOINT AN ARBITRATOR; IF J.A.M.S. IS UNABLE OR LEGALLY PRECLUDED FROM ADMINISTERING THE ARBITRATION, THEN THE AMERICAN ARBITRATION ASSOCIATION WILL SERVE. ALL ARBITRATION HEARINGS WILL BE COMMENCED WITHIN 90 DAYS OF THE DEMAND FOR ARBITRATION; FURTHER, THE ARBITRATOR SHALL ONLY, UPON A SHOWING OF CAUSE, BE PERMITTED TO EXTEND THE COMMENCEMENT OF SUCH HEARING FOR UP TO AN ADDITIONAL 60 DAYS.**

(c) RESERVATION OF RIGHTS. **NOTHING IN THIS ARBITRATION PROVISION SHALL BE DEEMED TO (I) LIMIT THE APPLICABILITY OF ANY OTHERWISE APPLICABLE STATUTES OF LIMITATION OR REPOSE AND ANY WAIVERS CONTAINED IN THIS INSTRUMENT, AGREEMENT OR DOCUMENT; OR (II) BE A WAIVER BY LENDER OF THE PROTECTION AFFORDED TO IT BY 12 U.S.C. SEC. 91 OR ANY SUBSTANTIALLY EQUIVALENT STATE LAW; OR (III) LIMIT THE RIGHT OF LENDER HERETO (A) TO EXERCISE SELF HELP REMEDIES SUCH AS (BUT NOT LIMITED TO) SETOFF, OR (B) TO FORECLOSE AGAINST ANY REAL OR PERSONAL PROPERTY COLLATERAL, OR (C) TO OBTAIN FROM A COURT PROVISIONAL OR ANCILLARY REMEDIES SUCH AS (BUT NOT LIMITED TO) INJUNCTIVE RELIEF, WRIT OF POSSESSION OR THE APPOINTMENT OF A RECEIVER. LENDER MAY EXERCISE SUCH SELF HELP RIGHTS, FORECLOSE UPON SUCH PROPERTY, OR OBTAIN SUCH PROVISIONAL OR ANCILLARY REMEDIES BEFORE, DURING OR AFTER THE PENDENCY OF ANY ARBITRATION PROCEEDING BROUGHT PURSUANT TO THIS INSTRUMENT, AGREEMENT OR DOCUMENT. NEITHER THIS EXERCISE OF SELF HELP REMEDIES NOR THE INSTITUTION OR MAINTENANCE OF AN ACTION FOR FORECLOSURE OR PROVISIONAL OR ANCILLARY REMEDIES SHALL CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY, INCLUDING THE CLAIMANT IN ANY SUCH ACTION, TO ARBITRATE THE MERITS OF THE CONTROVERSY OR CLAIM OCCASIONING RESORT TO SUCH REMEDIES.**

IN WITNESS WHEREOF, the undersigned parties hereunto have executed this Agreement by and through their duly authorized officers, as of the day and year first above written.

**DEBTOR:**

**DUKE AND KING ACQUISITION CORP., a Delaware corporation**

By: [signature]
Name: Louis Aurelio
Title: Vice President & Assistant Secretary

**Address:**
888 Seventh Avenue, 16th Floor
New York, New York 10106

**DUKE AND KING FLORIDA, LLC., a Delaware limited liability company**

By: [signature]
Name: Louis Aurelio
Title: Vice President & Assistant Secretary

**Address:**
888 Seventh Avenue, 16th Floor
New York, New York 10106

**DUKE AND KING REAL ESTATE, LLC., a Delaware limited liability company**

By: [signature]
Name: Louis Aurelio
Title: Vice President & Assistant Secretary

**Address:**
888 Seventh Avenue, 16th Floor
New York, New York 10106

**DUKE AND KING MISSOURI, LLC., a Delaware limited liability company**

By: [signature]
Name: Louis Aurelio
Title: Vice President & Assistant Secretary

**Address:**
888 Seventh Avenue, 16th Floor
New York, New York 10106

**ADMINISTRATIVE AGENT and LENDER:**

**BANK OF AMERICA, N.A.,**
a national banking association, in its capacity as Administrative Agent and Lender

By: [signature]
Name: JOHN M. HUSS
Title: PRINCIPAL

# SCHEDULE 1

LIST OF NAMES, ADDRESSES, FEIN AND ORGANIZATIONAL IDENTIFICATION NUMBER

| NAMES | FEIN | ORGANIZATIONAL ID NUMBER | ADDRESS |
|---|---|---|---|
| Duke and King Acquisition Corp. | 20-5407188 | 4042565 (Delaware) | 888 Seventh Avenue, 16th Floor<br>New York, New York 10106<br>Attention: Paul Cifelli<br>Telecopy: (212) 581-4720 |
| Duke and King Florida, LLC | 20-5683823 | 4230279 (Delaware) | 888 Seventh Avenue, 16th Floor<br>New York, New York 10106<br>Attention: Paul Cifelli<br>Telecopy: (212) 581-4720 |
| Duke and King Real Estate, LLC | 20-8155854 | 4271486 (Delaware) | 888 Seventh Avenue, 16th Floor<br>New York, New York 10106<br>Attention: Paul Cifelli<br>Telecopy: (212) 581-4720 |
| Duke and King Missouri, LLC | 20-8157933 | 4271490 (Delaware) | 888 Seventh Avenue, 16th Floor<br>New York, New York 10106<br>Attention: Paul Cifelli<br>Telecopy: (212) 581-4720 |

**Trade Names or Prior Names**: N/A

**SCHEDULE 2**

LIST OF UNIFORM COMMERCIAL CODE FINANCING STATEMENT
FILING JURISDICTIONS

| NAME | FILING JURISDICTION |
|---|---|
| Duke and King Acquisition Corp. | Delaware Secretary of State |
| Duke and King Florida, LLC | Delaware Secretary of State |
| Duke and King Real Estate, LLC | Delaware Secretary of State |
| Duke and King Missouri, LLC | Delaware Secretary of State |

# SCHEDULE 3

| Restaurant Unit Number | Unit Address |
|---|---|
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| 9747 | 1015 S. Broadway, Pittsburg, Kansas |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |
| «UNIT» | «ADDRESSCOMPLETE» |