UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

---

In re:

DUKE AND KING
    ACQUISITION CORP,
        Debtors.

Includes:
Duke and King Missouri, LLC
Duke and King Missouri Holdings, Inc.
Duke and King Real Estate, LLC
Duke and King Florida Holdings, Inc.

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

Court File No. 10-38652 (GFK)

10-38653
10-38654
10-38655
10-38656

---

### UNITED STATES TRUSTEE'S RECOMMENDATION
### AGAINST EMPLOYMENT OF McDONALD HOPKINS, LLC

---

The United States Trustee, through his undersigned attorney, files this report and recommendation in opposition to approval of the employment of McDonald Hopkins, LLC (McDonald) as chapter 11 counsel in each of the above named chapter 11 cases. In furtherance of his position, the U.S. Trustee states the following:

1. The voluntary petition commencing each of these chapter 11 cases was filed on December 4, 2010. The jointly administered debtors own and operate as franchisees of approximately 88 Burger King restaurants in six states.

## FACTS

2. On information and belief, as franchisees, the Debtors operate under a franchise contract with Burger King Corporation (BKC) which governs the operations of the restaurants, advertising, products, etc. The Debtors are obligated to pay franchise fees to cover advertising

and royalties in the approximate sum of $665,000 per month.  On information and belief, the Debtors are now substantially in arrears on this obligation.

3. On December 7, 2010, the Debtors filed applications to employ McDonald Hopkins, LLC (McDonald) as their lead bankruptcy counsel in these cases. Application.  (See Docket #25).  That Application includes the unsworn declaration of Shawn M. Riley (Riley Declaration), a member of the McDonald Firm.

4. The Riley Declaration provides, *inter alia*, that:

> "f.  McDonald Hopkins currently represents Burger King Corp. (BKC) and SS&G Financial Services Inc. (SS&G) which are creditors of the Debtors, in matters entirely unrelated to the Debtors and their chapter 11 cases.  BKC and SS&G have waived any potential conflict in the firm's representation of the Debtors herein".

Riley Declaration, p. 3, ¶ 4 (f).

5. The Riley Declaration further provides that McDonald Hopkins did not provide services to the Debtors prior to September 17, 2010.  Riley Declaration, p.2, ¶ 4(a - b).  It is unknown how long McDonald Hopkins has been providing services to BKC.

6. Along with the petition commencing these cases, the Debtor in Duke and King Acquisition Corp. filed a list of its twenty largest creditors.  That list includes Burger King Corporation as the second largest creditor with a claim of $2,021,369.00 arising out of an executory contract.  That twenty largest list further lists SS&G as holding a claim of $17,175.00 arising from SS&G's providing professional services to the Debtors.

7. On December 4, 2010, the Debtors filed a verified motion seeking authority to use the cash collateral of, *inter alia*, Bank of America (BofA).  See Docket #8.  The Debtors' verified cash collateral motion provided, *inter alia*, as follows:

A. Duke and King Acquisition Corp. acquired 88 Burger King franchised restaurants in 2006 which were "significantly behind on both successor and CAPEX commitments"[1]. Cash collateral motion, p.5

B. The Debtors spent all excess cash flow on CAPEX which was a constant drain on the debtors. Cash Collateral motion, p.6.

C. The Debtors performed sale-leasebacks of all its real property, including 3 stores in 2009. Cash collateral motion, p.6.

D. "Restaurant margins have come under increased pressure with impacts of . . . value promotions such as the $1 Double Cheeseburger". Cash Collateral Motion, p.7. On information and belief, such promotions are at the direction of BKC pursuant to the franchise agreements.

E. Debtors were sued by BKC on March 29, 2010, "for breach of post termination obligations under certain of BKC's franchise agreements" which resulted in the debtors executing limited license agreements with BKC which required the Debtors to sell 52 of the franchise locations on or before December 30, 2010, unless BKC grants an extension. See Cash Collateral Motion, pp. 8-9, ¶19.

F. BKC does not have a security interest in any of the Debtors' assets to secure obligations owed to BKC under the Franchise Agreements or the Limited License Agreement. Cash collateral motion, p. 14, ¶43.

G. "Certain non-debtors have guaranteed the BKC Licensees' obligations to BKC under the Limited License Agreement". *Id.* The Identity of such non-debtor

---

[1] On information and belief, CAPEX refers to Capital Expenditures the franchisees are obligated to pay under the franchise agreement with BKC in order to maintain the quality of individual restaurants.

guarantors is not disclosed anywhere in the court record and it is unknown whether those guarantors had represent in that transaction separate from the legal representation received by the Debtors.

8. In addition, the Debtors' Cash Collateral motion took the very unusual position that none of the proceeds from the sale of food in Debtors' restaurants was the cash collateral of BofA. See Memorandum in support of Cash Collateral Motion, p.3.

9. At the December 8, 2010, hearing before the court on Debtors' motion to use cash collateral, the representations were made by Debtor's counsel from McDonald Hopkins that A) the debtors' expectations for these chapter 11 cases are to market the restaurants and sell the restaurants by motion under 11 U.S.C. §363(b), with a sale coming in the spring of 2011; and B) that the Debtors are one of the ten largest franchisees of Burger King Corp.

## RECOMMENDATION AGAINST PROPOSED EMPLOYMENT

### Representation of Burger King Corp.

10. The United States Trustee submits that McDonald Hopkins's employment can not be approved because it represents an interest adverse to the estate insofar as it represents Burger King Corporation. Under 11 U.S.C. §327(a), counsel to be employed can not hold or represent an interest adverse to the estate and must be disinterested. Here, McDonald Hopkins represents Burger King Corp., which is a creditor with a claim exceeding $2 million. As a result, McDonald Hopkins represents an interest adverse to the estate and the U.S. Trustee objects to its employment on that basis.

11. Under §327(c), upon objection by a party, the court must look for an actual conflict of interest. If such a conflict exists, the proposed employment can be disapproved. See 11 U.S.C. §327(c). The U.S. Trustee submits that the Application to employ McDonald Hopkins is insufficient to determine whether or not a conflict exists. However, based on the facts currently in the record, it appears that an actual conflict between the Debtors and McDonald Hopkins is likely. If the Debtors decide to go forward with the Applications to employ McDonald Hopkins, they and McDonald Hopkins need to establish that McDonald truly does not represent an interest adverse to the estate, is disinterested and is entitled to be employed.

12. The following facts are evidence of McDonald Hopkins's actual conflict arising out of its simultaneous representation of BKC.

13. First, the Application and record establish that McDonald has only represented the debtors for a couple months and that the expectation is that all the Debtors' restaurants will be sold within the next 4-5 months. Hence, the Debtors will be short term clients of McDonald Hopkins while the nature and duration of McDonald's representation of BKC remains unknown. Parties and the court need to know the precise details of McDonald Hopkins's ongoing representation of BKC, including the type of representation being provided, how long ago in the past that representation started and how long McDonald Hopkins and BKC expect it to run in the future. The dollar value to McDonald Hopkins of its representation of BKC would be additional evidence of whether the Debtors or BKC are McDonald's primary client.

14. In addition, it is unknown whether the representation of BKC has any collateral effect on the business of these Debtors and the claim of BKC against them. For example, if McDonald Hopkins's representation of BKC is adverse to other unrelated franchisees, that representation could have an adverse effect on the Debtors if it resulted in an increase in

franchise obligations for all franchisees (e.g. for advertising), or if it set a precedent adverse to franchisees in a case in which these Debtors are not involved. Again, the result is that substantially more detail is required in the employment disclosures.

15. Also, from the court record made by McDonald Hopkins, it appears that BKC is in a unique position to exert undue control over these Debtors and their bankruptcy cases, despite its lack of collateral securing its claims. The record thus far shows that Burger King Corp. is owed substantial franchise fees, is entitled to cancel the Debtors' franchise agreements on December 31, 2010, is entitled to pre approve any prospective buyer of the restaurants, is able to impose capital expenditure requirements, is able to pursue the Debtors' officers under personal guarantees of franchise obligations, etc. Again, these representations are from a law firm that is also representing BKC in some unknown and undisclosed capacity. Further, the facts came out after the interim cash collateral hearing at which the Debtors were clearly aligned with BKC against Bank of America. Without precise details of McDonald's representation of BKC, it remains unknown whether there is an actual, disqualifying conflict.

16. Similarly, it is unknown whether McDonald Hopkins is taking directions from officers or insiders of the Debtors who also gave personal guarantees to BKC. If McDonald Hopkins has a long term working relationship with BKC, then McDonald Hopkins may not have a disinterested perspective regarding which restaurants to sell and which to close. The Debtors' prior business strategy was described in the cash collateral motion as buying underperforming restaurants with unpaid capital expenditure obligations and putting them "into the mix" so that on average, the restaurants as a group performed financially. However, according to the cash collateral motion, that business strategy did not work so the Debtors are now proposing to either

sell or close restaurants. However, if a particular under performing restaurant (or all restaurants owned by one of the Debtor corporations but not the other Debtor corporation) should be closed, both BKC and the Debtor's insiders would instead benefit from them being sold since doing so would mitigate the losses on their unsecured claims. Conversely, excluding a non-performing restaurant from the sale may enhance the return to other creditors at the expense of BKC and its guarantors.

17. Finally, the assertion in the Riley Declaration that "BKC and SS&G have waived any potential conflict in the firm's representation . . ", is meaningless from the perspective of the fiduciary debtors in possession, other creditors and the court. The waiver by Burger King Corporation is not sufficient to overcome the specific requirements of §327(a) & (c), and such waiver is also inadequate to assure that McDonald Hopkins is in a position to provide unbiased representation to the Debtors. The fact that Burger King Corp "waived any potential conflict" for McDonald Hopkins, indicates that it should also be willing to waive its right to keep the nature, extent and value of McDonald Hopkins's representation confidential.

18. Based on the foregoing, it cannot be determined whether McDonald Hopkins is without a conflict and is entitled to represent the Debtors in these cases. Without a substantial enhancement of the record, the proposed employment under the terms set forth in the Applications cannot be approved under §327(a) due to an adverse representation.

<u>SS&G Financial Services, Inc.</u>

19. Like McDonald Hopkins's representation of BKC, the ongoing of SS&G creates similar, although apparently less onerous, problems. Before the employment is approved, the

Application should be supplemented to describe the nature, extent and value of the representation provided by McDonald Hopkins to the Debtors.

## CONCLUSION

20. Under 11 U.S.C. §327(a), the estate may employ a professional which does not hold or represent an interest adverse to the estate. The existence of McDonald Hopkins's representation of Burger King Corporation is the representation of an adverse interest. As a result, the proposed employment must be denied unless and until McDonald Hopkins and the Debtors can make a showing that there is no conflict of interest.

21. Pursuant to Loc. R. Bankr. P. 2014-1(b) the United States Trustee requests that if the debtor would like to pursue the proposed employment, that it schedule a hearing and notify the undersigned of the hearing date and time.

WHEREFORE, the United States Trustee makes this report and recommendation against the employment of McDonald Hopkins, LLC, as counsel to each of the debtor in the above entitled jointly administered cases. The United States Trustee recommends that the proposed employment not be approved.

Dated: December 10, 2010	HABBO G. FOKKENA
	United States Trustee
	Region 12

	By:	 e/Michael R. Fadlovich
		MICHAEL R. FADLOVICH
		Trial Attorney
		MN Attorney I.D. No. 158410
		U.S. Trustee's Office
		Suite 1015 U.S. Courthouse
		300 South Fourth Street

Minneapolis, MN  55415
(612) 334-1350

## VERIFICATION

I, Michael R Fadlovich, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Dated: December 10, 2010          <u>/s/ Michael R. Fadlovich</u>
                                  Michael R. Fadlovich

# CERTIFICATE OF SERVICE

In re:

DUKE AND KING
    ACQUISITION CORP,
    Debtors.

JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652

Court File No. 10-38652 (GFK)

Includes:

| | |
|---|---|
| Duke and King Missouri, LLC | 10-38653 |
| Duke and King Missouri Holdings, Inc. | 10-38654 |
| Duke and King Real Estate, LLC | 10-38655 |
| Duke and King Florida Holdings, Inc. | 10-38656 |

The undersigned hereby certifies under penalty of perjury that he is an employee in the Office of the United States Trustee for the District of Minnesota and is a person of such age and discretion as to be competent to serve papers. That on December 10, 2010, he caused to be served a copy of the attached: United States Trustee's Report and Recommendation Against Employment of Fredrikson & Byron, PA, by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

Addressee(s):

Clint Cutler, Esq.
Fredrikson & Byron, PA
Suite 4000
200 S. Sixth Street
Minneapolis, MN 55402-1425

Burger King Acquisition Corp.
12281 Nicollet Ave. S
Burnsville, MN 55337

BURGER KING CORPORATION
KENNETH COREY-EDSTROM
LARKIN HOFFMAN ET AL
7900 XERXES AVE S
1500 WELLS FARGO PLAZA
MINNEAPOLIS MN 55431-1194

BURGER KING CORPORATION
PAUL J BATTISTA
GENOVESE JOBLOVE & BATTISTA
100 SE 2ND ST 44TH FL
BANK OF AMERICA TOWER
MIAMI FL 33131

MEADOWBROOK MEAT COMPANY INC
LARRY B RICKE
RICKE & SWEENEY PA
325 CEDAR ST STE 600
ST PAUL MN 55101

BANK OF AMERICA NA
STEPHEN M MERTZ
FAEGRE & BENSON LLP
90 S 7TH ST
2200 WELLS FARGO CTR
MINNEAPOLIS MN 55402-3901

| | |
|---|---|
| Thomas F. Blakemore<br>Winston & Strawn LLP<br>35 W. Wacker Dr.<br>Chicago, IL 60601-9703 | Jonathan T. Edwards<br>Alston & Bird LLP<br>1201 West Peachtree St.<br>One Atlantic Center<br>Atlanta, GA 20209-2424 |

ANNIE C WELLS
MORGAN LEWIS & BOCKIUS LLP
101 PARK AVE
NEW YORK, NY 10178

In addition, the following have been served via the bankruptcy court's CM/ECF electronic service system.

Paul J Battista pbattista@gjb-law.com,

Kenneth Corey-Edstrom kcoreyedstrom@larkinhoffman.com,

Clinton E. Cutler ccutler@fredlaw.com,

Michael F. Doty mdoty@faegre.com

Christopher J Harayda charayda@faegre.com,

Michael J Kaczka MKACZKA@MCDONALDHOPKINS.COM

Douglas W. Kassebaum dkassebaum@fredlaw.com,

Jeffrey D. Klobucar jklobucar@foleymansfield.com

Stephen M Mertz smertz@faegre.com

Scott N Opincar SOPINCAR@MCDONALDHOPKINS.COM,

Larry B. Ricke rickel@srsg.net

Shawn M Riley SRILEY@MCDONALDHOPKINS.COM

Wendy S Walker WWALKER@MORGANLEWIS.COM

Annie C Wells awells@morganlewis.com

                                              **By:**\_\_\_**e**/Michael R. Fadlovich\_\_\_\_\_
                                                  Michael R. Fadlovich
                                                  Trial Attorney
                                                  MN Atty I.D. No. 158410
                                                  U.S. Trustee's Office
                                                  300 South Fourth St., #1015
                                                  Minneapolis, MN 55415
                                                  (612) 334-1350

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DUKE AND KING
    ACQUISITION CORP,
        Debtors.

**JOINTLY ADMINISTERED UNDER CASE NO. 10-38652**

Court File No. 10-38652 (GFK)

Includes:
| | |
|---|---|
| Duke and King Missouri, LLC | 10-38653 |
| Duke and King Missouri Holdings, Inc. | 10-38654 |
| Duke and King Real Estate, LLC | 10-38655 |
| Duke and King Florida Holdings, Inc. | 10-38656 |

---

O R D E R

---

The above-entitled matter came on before the undersigned on the application by the debtor for an order approving the employment of McDonald Hopkins, LLC, as counsel to the debtors in each of the above captioned chapter 11 cases. Michael R. Fadlovich appeared on behalf of the United States Trustee. Other appearances were noted in the record.

Based upon the arguments of counsel, the findings of the court on the record, and all of the files, records and proceedings herein, it is ORDERED:

That the applications to approve the employment of McDonald Hopkins, LLC are disapproved.

 

_____
GREGORY F. KISHEL
United States Bankruptcy Judge