UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DUKE AND KING ACQUISITION CORP.,

Debtors.

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

Court File No. 10-38652

Court File Nos:

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

**NOTICE OF HEARING AND MOTION TO CONVERT DEBTORS'
CHAPTER 11 CASES TO CASES UNDER CHAPTER 7**

TO:    The Debtors and all parties listed on the attached certificate of service:

1.    Bank of America, National Association (the "Bank"), pursuant to 11 U.S.C. § 1112(b)(1) hereby submits this motion ("Motion") to convert the Chapter 11 cases of Duke and King Acquisition Corp. et al. (collectively the "Debtors") to cases under Chapter 7, and gives notice of hearing herewith.

2.    The Court will hold a hearing on this Motion at 9:30 a.m. on Monday, January 10, 2011, in Courtroom 2A of the United States Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101.

3.    Any response to this Motion must be filed and served by delivery no later than Wednesday, January 5, 2011, which is five days before the time set for the hearing.

**UNLESS A RESPONSE TO THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING UNDER LOCAL RULE 9013-2(f).**

## JURISDICTION

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     The statutory basis for the relief sought in this Motion is 11 U.S.C. § 1112(b)(1). In support of the Motion, the Bank respectfully states as follows:

## FACTUAL BACKGROUND

**A.  The Debtors' Restaurants.**

6.     On December 4, 2010 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 in this Court.  As the Debtors make clear in their first day papers, they are in the business of operating Burger King-franchised restaurants.  (Notice of Hearing And Joint Motion For (I) Expedited Relief And (II) Interim And Final Orders (A) Authorizing Debtors' Use Of Unencumbered Cash Or, In the Alternative, Cash Collateral and (B) Granting Adequate Protection, [D.I. 8] (the "Cash Collateral Motion") at ¶ 12.)

7.     In particular, Debtors Duke and King Acquisition Corp. ("D&K Acquisition") and Duke and King Missouri, LLC ("D&K Missouri" and together with D&K Acquisition, the "Franchise Debtors") operated 92 Burger King restaurants pursuant to various franchise agreements.  (*Id*. at ¶ 40.)

8.     In March 2010, Burger King Corporation ("Burger King") sued the Franchise Debtors for breach of post-termination obligations under certain of Burger King's franchise agreements.  (*Id*. at ¶ 18.)  To resolve this litigation, Burger King, the Franchise Debtors, and

certain of the Franchise Debtors' insiders, executed a Limited License Agreement on June 30, 2010 (the "Limited License Agreement"). (*Id*.) Under the Limited License Agreement, Burger King granted the Franchise Debtors a limited license to operate 52 of their franchised locations until December 30, 2010. (*Id*.) Debtors' counsel has informed the Bank that Burger King has agreed to extend this deadline to January 21, 2011. After this date, the Debtors will no longer have the authority to operate a majority of their locations as Burger King restaurants without further extensions from Burger King.

9.     Additionally, as the Debtors' first day motions also make clear, the Debtors are unable to pay their post-petition obligations to Burger King as they come due, and each month the Debtors operate they continue to incur significant post-petition administrative expenses. (Cash Collateral Motion, at Ex. A.) Additionally, there is no possibility of a reorganization of the Debtors' existing business absent an influx of capital which has not been forthcoming. As a result, the Debtors intend to use the chapter 11 process to market and sell their assets.

**B. The Bank's Credit Agreement.**

10.     The Bank is an interested party in this case by virtue of its status as a secured creditor. On November 1, 2006, the Bank and the Debtors entered into a credit agreement (as amended, the "Credit Agreement").[1] Pursuant to the Credit Agreement, the Bank loaned $33,262,000.00 to the Debtors. As of the Petition Date, $10,884,777.65 remained outstanding on account of principal, $111,447.77 on account of interest and $6,685.47 on account of fees and

---

[1] Copies of the Credit Agreement, the Security Agreement (as defined below) and various additional documents pertinent to the Bank's relationship with the Debtors are annexed to the Stipulation of Admissibility and Facts, dated as of December 7, 2010 (the "Stipulation") [D.I. 30]

expenses.[2] Additionally, as of December 3, 2010, the Debtors were liable to the Bank under a swap agreement dated as of November 10, 2006 in the amount of $704,400.

11. The Debtors also executed a security agreement (as amended, the "Security Agreement"), pursuant to which the Debtors granted the Bank a security interest in, among other things, all of the Debtors' inventory, accounts, equipment and supplies, licenses, contracts and leases, general intangibles, deposit accounts, negotiable collateral, furniture and fixtures, investment property, cash and miscellaneous items (including, all other property and assets of whatever type or description not included above), and all proceeds and products of the foregoing. The Debtors also executed leasehold mortgages with respect to a substantial number of their leased locations. The Bank perfected its security interests in the collateral by duly recording the leasehold mortgages and by filing UCC financing and fixture filings in the appropriate jurisdictions.

**C. The Debtors Continue To Lose Money After The Petition Date.**

12. The Debtors have suffered declining revenues and same store sales for the last two years. (Cash Collateral Motion at ¶ 17.) Additionally, their rights under the Limited Licensing Agreement end on December 30, 2010. (Stipulation at Ex. P.) However, the Debtors have informed the Bank's counsel that, notwithstanding the stated expiration of the Limited License Agreement, Burger King has agreed to temporarily extend the Debtors' rights under the Limited License Agreement until January 21, 2011. But, if Burger King fails to extend the Limited License Agreement in the future, the Debtors will no longer be able to operate their locations as Burger King restaurants.

---

[2] Of the amount outstanding, (i) D&K Acquisition is liable for principal in the amount of $9,247,143.89, interest in the amount of $110,285.81 and fees and expenses in the amount of $6,413.28, and (ii) Duke and King Real Estate, LLC is liable for principal in the amount of $1,637,633.76, interest in the amount of $1,161.96 and fees and expenses in the amount of $272.19.

13.     Even if the Debtors can continue to operate as Burger King restaurants after January 21, 2011, their own pleadings demonstrate that they will operate at a substantial loss.  In particular, the Debtors have only provided for the monthly payment of $25,000 local advertising fees owing to Burger King under the Franchise Debtors' various franchise agreements and the Limited Licensing Agreement. (Cash Collateral Motion at Ex. A.)  However, according to the Debtors' own estimates, these amounts accrue at approximately $665,000 per month.  (Cash Collateral Motion at ¶ 41.)  The fees for each location are equal to a total of 8.5% of the *gross* monthly sales.  (Stipulation, Ex. R at p. 5; Ex. P at pp. 4-5.)  At the first day hearings, counsel for the Debtors admitted that the amount of post-petition royalties and national advertising fees owed to Burger King will continue to accrue at approximately $640,000 per month.   While Burger King may have agreed to defer payment of these royalties and advertising expenses, ultimately, if the Debtors hope to sell their business, they, or the purchaser, will have to cure these amounts.

14.     Based on the Debtors' own budget, the Debtors anticipate they will have $536,424 cash available on December 31, 2010.  (Cash Collateral Motion, at Ex. A.)  However, if the Debtors were to pay the $640,000 of royalties and national advertising fees for the month of December rather than accruing such amounts, the Debtors' projected available cash on December 31 would be negative $103,576.  The Debtors' cash situation does not improve as the months go on.  On March 25, 2011, at the end of their sixteen week budget, the Debtors anticipate having $579,510 in cash on hand.  (*Id.*)  However, between the Petition Date and the end of March, 2011, approximately $2,560,000 in Burger King royalties and national advertising expenses will accrue.  If the Debtors paid those amounts rather than accruing them, they would

have a projected cash shortfall of $1,980,490 by March 25, 2011.  Based on the Debtors' own budget, they are incapable of paying their post-petition debts as they accrue.

15.     Additionally, the Debtors have substantial outstanding capital expenditure obligations of approximately $7-8 million pursuant to agreements with Burger King ("CapEx Liability").  Indeed, the Debtors admit that CapEx Liability has been a consistent drain on their performance.  (Cash Collateral Motion at ¶ 16.)  For example, store number 06609 has a CapEx Liability of $318,000, and the aggregate CapEx Liability for the Debtors' eight worst performing stores is over $2,000,000. *See* Store Valuation Analysis attached to this Memorandum as Exhibit A.

16.     The Debtors' continuing failure to pay the CapEx Liability, or pay royalties and advertising fees as they come due, ultimately shifts these costs to the non-Burger King creditors, because any purchaser who wishes to operate a store as a Burger King restaurant will have to cure the Debtors' defaults under the related franchise agreement, including the Debtors' failure to make required capital improvements or pay royalties and advertising fees.  Since the Debtors have no other funds with which to pay those liabilities, they will necessarily result in a reduction to the purchase price the Debtors can command for their assets and, therefore, a lower recovery for the creditors.

**D.  The Insider Guarantees.**

17.     As part of the various franchise agreements and the Limited License Agreement, Duke and King Holdings, LLC,[3] Rodger Head, Robert Murphy, and Thomas Metzger (collectively, the "Insider Guarantors") all insiders of the Debtors, agreed to guarantee certain amounts owing to Burger King by the Franchise Debtors.  (Stipulation, at Ex. P at p. 1, 5.)

---

[3] Duke and King Holdings, LLC is 100% owner of DK Acquisition, which in turn owns the remaining Debtors.

These amounts include the royalties and advertising payments that the Debtors continue to accrue. (*Id.* at 5.) The Insider Guarantors' individual liabilities to Burger King provide a powerful incentive to manage these Chapter 11 cases for the benefit Burger King and to limit their own personal guaranty liability rather than manage the cases for the benefit of all creditors.

18. Permitting the Debtors to continue operating their poorly performing stores while accruing post-petition royalties and advertising payments benefits only Burger King and the Insider Guarantors. The Insider Guarantors have a strong incentive to see to it that all of the Debtors' restaurants – including the restaurants with negative sale values – remain open and are sold. In connection with such a sale, and the assumption and assignment of the related franchise agreement to the purchaser, the Debtors will have to cure any unpaid Burger King royalty and advertising fees – including prepetition royalties and advertising fees -- effectively eliminating the Insider Guarantors' personal obligations to Burger King. Likewise, Burger King benefits because all of its unpaid franchise fees and advertising expenses will get paid, it will continue to have operating Burger King franchise locations, and the new purchaser will pay the related CapEx Liabilities. Because the Debtors clearly do not have any ability to make cash payments for the royalties, national advertising fees, and other administrative expenses, the only way they will get paid is by the purchaser. Therefore, a purchaser will factor in those amounts when deciding how much it will bid for a restaurant location and reduce the cash bid for the restaurants by the amount of the CapEx Liabilities and royalties and national advertising expenses. The result is that the value of the stores to Bank of America and the bankruptcy estate will continue to decrease over time, especially with respect to the stores that already have a negative sale value.

### E. No Intent Or Ability To Rehabilitate.

19.     The Debtors do not intend to rehabilitate their businesses under Chapter 11.  The terms of the Limited License Agreement require that the Franchise Debtors sell a majority of their operating locations.  (Stipulation at Ex. P at p. 4, 6.)  In addition, as the Debtors counsel has stated before this Court, the Debtors' ultimate intention is to arrange a sale of the Debtors' restaurant locations.

20.     However, even if the Debtors did not intend to sell their restaurant locations, the Debtors' own cash projections show that any rehabilitation would be impossible if one includes the accruing royalties and national advertising fees.

21.     It is in the best interest of the estate and the Debtors' creditors for the estate to be administered by an independent chapter 7 trustee who could monetize and distribute the Debtors' remaining assets subject to the Court's continued supervision and jurisdiction.

### NOTICE OF WITNESSES

22.     Pursuant to Local Rule 9013-2(c), counsel for the Bank gives notice that it may call Salvatore LoBiondo, Jr., Senior Managing Director for Marotta Gund Budd & Dzera, LLC, and Anthony D. Healey, Senior Vice President for the Bank, to testify regarding the matters set forth in this Motion.

### RELIEF REQUESTED

23.     Pursuant to 11 U.S.C. § 1112(b)(1), the Bank requests that the Bankruptcy Court

convert, for cause, the Debtors' chapter 11 cases to chapter 7 cases.

                                  FAEGRE & BENSON LLP

Dated December  20, 2010             /e/  Michael F. Doty
                                  Stephen M. Mertz (#212131)
                                  Michael F. Doty (#0388303)
                                  Christopher J. Harayda (#0390333)
                                  2200 Wells Fargo Center
                                  90 South Seventh Street
                                  Minneapolis, MN 55402
                                  Telephone:  (612) 766-7000
                                  Facsimile:  (612) 766-1600

                                    -and-

                                  MORGAN LEWIS & BOCKIUS, LLP
                                  Jonathan K. Bernstein
                                  225 Franklin Street, 16th Floor
                                  Boston, MA 02110-4104
                                  Phone:    (617) 341-7760
                                  Fax:       (617) 341-7701

                                  *Attorneys for Bank of America, N.A.*

# Exhibit A

**Duke and King Acquisition**
Store Valuation Analysis
10/28/10

| Store # | Address | City | State | F/A Expires | Lease Expires | TTM Period 10 Sales | Total CapEx | SLEBITDA less Alloc G&A | Estimated Sales Price 4.0x Multiple | Est. Sale Price net of CapEx 4.0x Multiple | Negative Net 4.0x Multiple |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **BKC Close List (assumed)** | | | | | | | | | | | |
| 10748 | 678 West 14th Street | Chicago Heights | IL | 5/21/2017 | 8/31/2025 | 638,085 | 25,000 | (129,598) | (518,392) | (543,392) | (211,234) |
| 03203 | 4121 Sauk Trail | Richton Park | IL | 6/29/2020 | 8/31/2025 | 872,775 | 58,000 | (127,768) | (511,073) | (569,073) | (203,897) |
| 11143 | 120 Elm Street | Farmington | MN | 9/29/2017 | 8/31/2025 | 686,261 | 25,000 | (106,682) | (426,728) | (451,728) | (296,833) |
| 10725 | 1312 S. Madison Street | Webb City | MO | 4/21/2017 | 12/31/2018 | $ 534,761 | $ 35,000 | $ (177,222) | $ (708,887) | $ (743,887) | (242,882) |
| 09907 | 1710 Maiden Lane | Joplin | MO | 1/10/2016 | 12/31/2018 | 718,099 | 35,000 | (96,361) | (385,446) | (420,446) | (474,181) |
| | | | | | Subtotal | 3,449,980 | 178,000 | (637,631) | (2,550,525) | (2,728,525) | (2,102,294) |
| | | | | | Store Count | 5 | | | | | |
| **Remaining D&K Close List** | | | | | | | | | | | |
| 00106 | 901 North Lake Street | Aurora | IL | 2/27/2021 | 2/27/2021 | 946,767 | 75,000 | (34,059) | (136,234) | (211,234) | (211,234) |
| 09744 | 1429 Main Street | Parsons | KS | 5/10/2019 | 9/17/2028 | 772,071 | 75,000 | (32,224) | (128,897) | (203,897) | (203,897) |
| 11751 | 808 S Illinois Avenue | Republic | MO | 7/28/2018 | 1/7/2029 | 638,957 | 75,000 | (55,458) | (221,833) | (296,833) | (296,833) |
| 08864 | 1220 E. Republic Road | Springfield | MO | 6/6/2015 | 12/31/2018 | 813,285 | 35,000 | (51,970) | (207,882) | (242,882) | (242,882) |
| 06609 | 3020 E. Sunshine Street | Springfield | MO | 2/28/2010 | 12/31/2018 | 817,665 | 318,000 | (39,045) | (156,181) | (474,181) | (474,181) |
| 01558 | 1411 S. Range Line Road | Joplin | MO | 9/18/2010 | 8/26/2028 | 936,138 | 316,700 | 2,462 | 9,849 | (306,851) | (306,851) |
| 04111 | 3500 South Moreland Road | New Berlin | WI | 7/7/2014 | 8/31/2025 | 817,730 | 25,000 | (45,980) | (183,919) | (208,919) | (208,919) |
| 11191 | 2789 Milwaukee Road | Beloit | WI | 1/17/2018 | 11/7/2018 | 805,158 | 25,000 | (33,124) | (132,496) | (157,496) | (157,496) |
| | | | | | Subtotal | 6,547,772 | 944,700 | (289,399) | (1,157,594) | (2,102,294) | (2,102,294) |
| | | | | | Store Count | 8 | | | | | |
| **Additional Stores Not to be Sold** | | | | | | | | | | | |
| 09971 | 1710 DeKalb Avenue | Sycamore | IL | 2/28/2010 | 8/31/2025 | 971,933 | 312,500 | (46,888) | (187,553) | (500,053) | (500,053) |
| 05960 | 2001 Center Avenue | Janesville | WI | 2/28/2010 | 8/31/2025 | 843,873 | 325,000 | (4,499) | (17,995) | (342,995) | (342,995) |
| 04334 | 2423 Rockingham Road | Davenport | IA | 8/31/2025 | 5/29/2028 | 945,628 | 325,000 | 5,766 | 23,065 | (301,935) | (301,935) |
| 07204 | 1699 W. Jackson Street | Ozark | MO | 8/13/2011 | 5/29/2028 | 838,277 | 320,000 | 28,094 | 112,377 | (207,623) | (207,623) |
| 06030 | 1011 W. Central Avenue | Carthage | MO | 2/28/2010 | 8/14/2028 | 959,885 | 310,000 | 32,294 | 129,175 | (180,825) | (180,825) |
| | | | | | Subtotal | 4,559,596 | 1,592,500 | 14,767 | 59,070 | (1,533,430) | (1,533,430) |
| | | | | | Store Count | 5 | | | | | |
| **Stores to be Sold** | | | | | | | | | | | |
| 09934 | 120 Meridian Drive | New Richmond | WI | 7/23/2011 | 7/23/2011 | 703,746 | 125,000 | (10,484) | (41,935) | (166,935) | (166,935) |
| 12757 | 1287 N Main St | River Falls | WI | 10/15/2019 | 8/31/2025 | 861,492 | 25,000 | (33,412) | (133,650) | (158,650) | (158,650) |
| 04857 | 822 Windsor Street | Sun Prairie | WI | 2/27/2012 | 2/28/2012 | 856,484 | 40,000 | (23,342) | (93,367) | (133,367) | (133,367) |
| 07557 | 8501 Springbrook Drive NW | Coon Rapids | MN | 11/13/2012 | 8/31/2025 | 829,175 | 25,000 | (27,038) | (108,150) | (133,150) | (133,150) |
| 06545 | 1022 E Blue Earth Avenue | Fairmont | MN | 9/18/2016 | 8/15/2011 | 916,844 | 312,500 | 48,862 | 195,448 | (117,052) | (117,052) |
| 12413 | 315 N. Massey Blvd | Nixa | MO | 6/9/2019 | 2/28/2024 | 701,490 | 62,500 | (11,670) | (46,680) | (109,180) | (109,180) |
| 04507 | 13840 Grove Drive | Maple Grove | MN | 6/26/2015 | 6/26/2015 | 996,282 | 25,000 | (15,899) | (63,596) | (88,596) | (88,596) |
| 07937 | 2411 Center Drive | Hudson | WI | 6/17/2013 | 8/31/2025 | 1,060,062 | 60,000 | (6,138) | (24,551) | (84,551) | (84,551) |
| 00437 | 1138 East State Street | Rockford | IL | 9/8/2019 | 9/8/2019 | 1,038,814 | 75,000 | (1,618) | (6,472) | (81,472) | (81,472) |
| 16573 | 2320 Route 34 | Oswego | IL | 6/1/2028 | 7/31/2028 | 1,111,536 | | (19,979) | (79,918) | (79,918) | (79,918) |
| 04122 | 5020 60th Street SE | Prior Lake | MN | 7/14/2014 | 7/14/2014 | 881,834 | 25,000 | (10,982) | (43,926) | (68,926) | (68,926) |
| 10234 | 7510 East State Street | Rockford | IL | 9/18/2016 | 8/15/2011 | 944,284 | 25,000 | (10,919) | (43,677) | (68,677) | (68,677) |
| 09366 | 400 Center Way | Janesville | WI | 12/13/2015 | 8/31/2025 | 933,451 | 25,000 | (7,440) | (29,761) | (54,761) | (54,761) |
| 04151 | 1150 East Highway 13 | Burnsville | MN | 9/30/2014 | 8/31/2025 | 1,032,535 | 25,000 | (5,814) | (23,255) | (48,255) | (48,255) |
| 01764 | 2655 East Washington | Madison | WI | 11/30/2016 | 9/30/2012 | 1,085,439 | 25,000 | (5,720) | (22,879) | (47,879) | (47,879) |
| 00111 | 18459 South Halsted Street | Glenwood | IL | 6/29/2020 | 8/31/2025 | 1,056,323 | 53,000 | 4,536 | 18,144 | (34,856) | (34,856) |
| 09095 | 106 Ninth Avenue Circle South | Princeton | MN | 6/1/2015 | 6/2/2010 | 774,426 | 25,000 | 16,372 | 65,488 | 40,488 | 40,488 |
| 01747 | 209 Norris Drive | Ottawa | IL | 5/31/2016 | 5/31/2011 | 984,313 | 227,500 | 59,967 | 239,866 | 12,366 | 12,366 |
| 00255 | 913 West Lincoln Highway | DeKalb | IL | 10/31/2016 | 11/1/2011 | 962,344 | 25,000 | 6,406 | 25,623 | 623 | 623 |
| 05539 | 1101 S. Limit Avenue | Sedalia | MO | 2/28/2017 | 7/30/2028 | 1,208,127 | 325,000 | 86,967 | 347,868 | 22,868 | 22,868 |
| 01227 | 935 W. Kearney | Springfield | MO | 2/28/2010 | 10/6/2028 | 1,164,492 | 300,000 | 82,269 | 329,076 | 29,076 | 29,076 |
| 06590 | 1215 Gun Club Road | White Bear Lake | MN | 2/28/2010 | 8/31/2025 | 1,190,095 | 263,577 | 70,115 | 280,459 | 16,882 | 16,882 |
| 02641 | 2011 E Main Street | Albert Lea | MN | 6/19/2018 | 8/31/2025 | 1,003,631 | 25,000 | 18,349 | 73,397 | 48,397 | 48,397 |
| 09994 | 318 East Kraft Drive | Melrose | MN | 8/27/2016 | 7/14/2011 | 827,415 | 25,000 | 25,461 | 101,844 | 76,844 | 76,844 |
| 12250 | 925 Washington Ave SE | Minneapolis | MN | 12/26/2018 | 12/31/2013 | 1,209,940 | 25,000 | 10,928 | 43,711 | 18,711 | 18,711 |
| 09332 | 5358 West Broadway Ave | Crystal | MN | 9/27/2015 | 8/31/2025 | 999,885 | 50,000 | 20,581 | 82,324 | 32,324 | 32,324 |
| 04201 | 5231 N Brady Street | Davenport | IA | 6/29/2020 | 8/31/2025 | 989,755 | 60,000 | 23,292 | 93,167 | 33,167 | 33,167 |
| 04553 | 1501 NW 7th Street | Faribault | MN | 6/27/2025 | 6/30/2025 | 1,121,914 | 25,000 | 26,839 | 107,357 | 82,357 | 82,357 |
| 04043 | 229 West Kimberly Road | Davenport | IA | 6/29/2020 | 8/31/2025 | 988,329 | 65,000 | 36,471 | 145,883 | 80,883 | 80,883 |

**Duke and King Acquisition**
Store Valuation Analysis
10/28/10

| Store # | Address | City | State | FA Expires | Lease Expires | TTM Period 10 Sales | Total CapEx | SLEBITDA less Alloc G&A | Estimated Sales Price 4.0x Multiple | Est. Sale Price net of CapEx 4.0x Multiple | Negative Net Sales Price 4.0x Multiple |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 03792 | 4980 South 76th Street | Greenfield | WI | 7/30/2017 | 7/31/2017 | 1,080,172 | 25,000 | 34,186 | 136,744 | 111,744 | |
| 09331 | 1317 Preacher Roe Blvd | West Plains | MO | 10/15/2015 | 5/11/2020 | 889,913 | 65,500 | 43,773 | 175,092 | 109,592 | |
| 09256 | 255 Triangle Lane N Ste 2 | Jordan | MN | 8/20/2010 | 8/20/2010 | 961,951 | 125,000 | 42,241 | 168,963 | 43,963 | |
| 06299 | 10801 Bloomington Ferry Road | Bloomington | MN | 7/22/2026 | 7/11/2026 | 1,018,267 | 25,000 | 42,532 | 170,128 | 145,128 | |
| 09993 | 10861 University Avenue NE | Blaine | MN | 8/23/2016 | 7/14/2011 | 1,036,326 | 50,000 | 42,294 | 169,178 | 119,178 | |
| 10239 | 244 Grand Avenue | St Paul | MN | 10/31/2016 | 8/31/2025 | 1,012,149 | 50,000 | 45,055 | 180,219 | 130,219 | |
| 11535 | 8481 SE Point Douglas Road | Cottage Grove | MN | 2/19/2018 | 6/25/2011 | 1,036,610 | 65,000 | 47,222 | 188,887 | 123,887 | |
| 05357 | 1022 Kings Highway Street | Rolla | MO | 2/28/2027 | 6/23/2028 | 1,020,698 | 50,000 | 52,810 | 211,240 | 161,240 | |
| 03232 | 3009 S. Campbell Avenue | Springfield | MO | 6/29/2020 | 12/31/2018 | 1,304,263 | 60,000 | 42,768 | 171,073 | 111,073 | |
| 06270 | 8510 Edinburgh Center Drive | Brooklyn Park | MN | 8/31/2025 | 8/31/2025 | 1,253,506 | 60,000 | 45,197 | 180,787 | 120,787 | |
| 11877 | 504 West Blackhawk Drive | Byron | IL | 9/22/2018 | 8/31/2025 | 1,176,313 | 60,000 | 53,616 | 214,465 | 154,465 | |
| 01888 | 2624 Milton Avenue | Janesville | WI | 1/17/2012 | 8/31/2025 | 1,113,425 | 40,000 | 57,693 | 230,772 | 190,772 | |
| 11682 | 38711 Tanger Drive | North Branch | MN | 6/10/2018 | 8/31/2025 | 1,208,393 | 25,000 | 62,693 | 250,771 | 225,771 | |
| 02160 | 1385 Douglas Avenue | Montgomery | IL | 8/31/2013 | 8/31/2013 | 1,176,202 | 25,000 | 64,829 | 259,317 | 234,317 | |
| 05713 | 1501 Weir Drive | Woodbury | MN | 6/29/2020 | 10/25/2012 | 1,263,515 | 62,000 | 64,682 | 258,727 | 196,727 | |
| 08004 | 3333 Rice Street | Shoreview | MN | 8/15/2013 | 8/31/2025 | 1,094,256 | 40,000 | 75,444 | 301,776 | 261,776 | |
| 03475 | 2138 N. Glenstone Avenue | Springfield | MO | 6/29/2020 | 9/15/2028 | 1,084,727 | 41,900 | 78,763 | 315,052 | 273,152 | |
| 01326 | 2434 11th Street | Rockford | IL | 11/29/2013 | 11/30/2028 | 1,030,222 | 25,000 | 84,498 | 337,990 | 312,990 | |
| 04513 | 1077 S. Jefferson Avenue | Lebanon | MO | 3/31/2015 | 9/30/2014 | 1,213,102 | 25,000 | 78,678 | 314,711 | 289,711 | |
| 05591 | 2535 Division Street | North St Paul | MN | 6/29/2020 | 7/18/2020 | 1,394,612 | 60,000 | 75,164 | 300,658 | 240,658 | |
| 06211 | 1222 Avenue of the Cities | East Moline | IL | 2/28/2010 | 8/31/2025 | 1,199,467 | 312,500 | 90,064 | 360,257 | 47,757 | |
| 10284 | 695 7th Street East | St Paul | MN | 9/27/2016 | 8/15/2011 | 1,365,981 | 25,000 | 85,549 | 342,196 | 317,196 | |
| 11243 | 1560 West 4th Street | Rush City | MN | 12/31/2017 | 12/31/2012 | 1,125,073 | 25,000 | 98,039 | 392,157 | 367,157 | |
| 05012 | 2025 Northdale Blvd | Coon Rapids | MN | 8/31/2025 | 8/31/2025 | 1,426,324 | 25,000 | 86,066 | 344,265 | 319,265 | |
| 01752 | 723 Shooting Park | Peru | IL | 9/22/2011 | 9/22/2011 | 1,207,555 | 25,000 | 97,141 | 388,563 | 363,563 | |
| 05879 | 1830 Southwest Avenue | Freeport | IL | 10/1/2010 | 8/31/2025 | 1,114,817 | 285,000 | 102,594 | 410,375 | 125,375 | |
| 08384 | 1911 S. Springfield Avenue | Bolivar | MO | 5/17/2014 | 12/28/2024 | 1,135,662 | 60,000 | 108,497 | 433,987 | 373,987 | |
| 07444 | 735 Bridge Street | Owatonna | MN | 8/12/2012 | 8/31/2025 | 1,209,809 | 25,000 | 106,112 | 424,446 | 399,446 | |
| 01060 | 1450 4th Street | Beloit | WI | 10/31/2026 | 10/31/2026 | 1,223,605 | 25,000 | 107,134 | 428,535 | 403,535 | |
| 06530 | 7051 Tenth Street North | Oakdale | MN | 2/28/2010 | 7/23/2014 | 1,352,654 | 255,181 | 103,164 | 412,658 | 157,477 | |
| 04297 | 4040 38th Avenue | Moline | IL | 12/16/2014 | 6/30/2026 | 1,275,489 | 25,000 | 108,596 | 434,383 | 409,383 | |
| 07466 | 330 North Garden | Bloomington | MN | 1/31/2011 | 1/31/2011 | 1,249,593 | 125,000 | 115,401 | 461,605 | 336,605 | |
| 09081 | 1409 4th Street NW | Austin | MN | 6/29/2015 | 8/31/2025 | 1,221,040 | 40,000 | 121,853 | 487,413 | 447,413 | |
| 07203 | 525 S National Avenue | Springfield | MO | 5/11/2011 | 6/1/2028 | 1,329,485 | 310,000 | 129,009 | 516,037 | 206,037 | |
| 12281 | 2200 E. Austin Blvd | Nevada | MO | 5/29/2019 | 12/17/2029 | 1,177,259 | 69,195 | 137,827 | 551,306 | 482,111 | |
| 08224 | 5105 Edina Industrial Blvd | Edina | MN | 12/3/2013 | 8/31/2025 | 1,345,686 | 25,000 | 140,896 | 563,583 | 538,583 | |
| 09272 | PO 264  403 Fire Monument Road | Hinckley | MN | 7/19/2015 | 8/31/2025 | 1,478,727 | 25,000 | 136,611 | 546,446 | 521,446 | |
| 11284 | 1500 Stinson Blvd NE | Minneapolis | MN | 1/9/2018 | 9/16/2017 | 1,422,757 | 60,000 | 139,979 | 559,915 | 499,915 | |
| 11049 | 3095 Gardner Edgewood Drive | Neosho | MO | 9/15/2017 | 12/28/2029 | 1,216,178 | 63,900 | 159,527 | 638,108 | 574,208 | |
| 12415 | 875 E. Highway 60 | Monett | MO | 5/20/2028 | 11/5/2028 | 1,311,642 | 72,900 | 163,606 | 654,422 | 581,522 | |
| 13091 | 289 57th Avenue NE | Fridley | MN | 3/2/2020 | 6/30/2026 | 1,780,334 | 70,000 | 156,088 | 624,350 | 554,350 | |
| 04116 | 2651 County Road I | Mounds View | MN | 6/27/2014 | 6/30/2026 | 1,255,982 | 325,000 | 181,678 | 726,713 | 401,713 | |
| 06615 | 1318 Riverfront Drive | Mankato | MN | 2/28/2010 | 8/31/2025 | 1,475,110 | 272,500 | 194,109 | 776,435 | 503,935 | |
| 11254 | 9896 Norma Lane | Woodbury | MN | 12/13/2017 | 12/31/2012 | 1,505,364 | 25,000 | 222,823 | 891,291 | 866,291 | |
| 04009 | 14251 Nicollet Avenue | Burnsville | MN | 6/29/2020 | 8/31/2025 | 1,777,491 | 40,000 | 217,653 | 870,610 | 830,610 | |
| | | | | | Subtotal | 83,985,396 | 5,959,653 | 4,791,112 | 19,164,447 | 13,204,794 | (1,476,224) |
| | | | | | Store Count | 74 | | | | | |

|  |  |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER**<br>**CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | Court File Nos: |

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

## Verification

I, Salvatore LoBiondo, Jr., Senior Managing Director for Marotta Gund Budd &

Dzera, LLC, declare under penalty of perjury that the facts set forth in paragraphs 12-15 of

the foregoing Motion To Convert Debtors' Chapter 11 Cases To Cases Under Chapter 7 are

true and correct according to the best of my knowledge, information and belief.

Dated:  December 20, 2010

Salvatore LoBiondo, Jr.
Senior Managing Director
Marotta Gund Budd & Dzera

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| In re: | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
|---|---|

DUKE AND KING ACQUISITION CORP.,                    Court File No. 10-38652

Debtors.

Court File Nos:

(includes:
Duke and King Missouri, LLC;                    10-38653 (GFK)
Duke and King Missouri Holdings, Inc.;          10-38654 (GFK)
Duke and King Real Estate, LLC;                 10-38655 (GFK)
DK Florida Holdings, Inc.)                      10-38656 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

**Verification**

I, Anthony D. Healey, Senior Vice President for Bank of America, N.A., declare

under penalty of perjury that the facts set forth in paragraphs 10-11 of the foregoing Motion

To Convert Debtors' Chapter 11 Cases To Cases Under Chapter 7 are true and correct

according to the best of my knowledge, information and belief.

Dated:  December 20, 2010

_____
Anthony D. Healey
Senior Vice President
Bank of America, N.A.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

In re:

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

DUKE AND KING ACQUISITION CORP.,

Court File No. 10-38652

Debtors.

Court File Nos:

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

**MEMORANDUM IN SUPPORT OF MOTION TO CONVERT DEBTORS'
CHAPTER 11 CASES TO CASES UNDER CHAPTER 7**

---

## FACTUAL BACKGROUND

The facts upon which this memorandum is based are set out in the Motion and incorporated herein.  Capitalized terms used herein and not otherwise defined are defined in the Motion.

## LEGAL ARGUMENT

The Supreme Court has noted that "[t]he preservation of business enterprises must not be at the expense of creditors."  *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 119 n.14 (1939) (citation omitted).  Section 1112(b)(1) of the Bankruptcy Code provides that the court, on request of a party in interest, *shall* convert or dismiss a case

under chapter 11 to a chapter 7 case absent unusual circumstances if the movant establishes "cause." Section 1112(b)(4) sets forth a non-exhaustive list of factors constituting "cause" for the court to evaluate in determining whether to convert a case from chapter 11 to chapter 7. Here, cause exists to convert the Debtors' chapter 11 cases to cases under chapter 7 because of (i) the substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation and (ii) the presence of other equitable factors favoring conversion.

**A.    The Debtors are Suffering Continual Losses, Cannot Operate Profitably, and There is No Reasonable Likelihood of Their Rehabilitation.**

Section 1112(b)(4)(A) of the Bankruptcy Code provides that a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" is "cause" for the conversion of a chapter 11 case to a chapter 7 case. Here, both elements are satisfied and cause exists to convert the case to chapter 7.

**1.    The Continuing Accrual of Post-petition Royalties and Advertising Fees to Burger King Constitutes a Continuing Loss to, or Diminution of, the Debtors' Estates.**

In determining whether a moving party has shown a continuing loss to or diminution of the estate, the Court must look beyond the bare form of the debtor's filed reports and financial statements and make a full evaluation of the present condition of the estate. *In re Economy Cab & Tool Co.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984). Courts have held that cause exists under Section 1112(b)(4)(A) of the Bankruptcy Code where the evidence shows "that the debtors had a negative cash flow and no intention of rehabilitating their business." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 518 (8th Cir. 2004). The *Loop* court also noted that "a sustained negative cash flow after entry of the order for relief… …is sufficient to

support a finding that the debtor is experiencing a continuing loss to the estate." *Id*. at 515-516. [4] The required diminution need not be substantial. "All that need be found is that the estate has suffered *some* diminution in value." *In re East Coast Airways*, 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992) (emphasis added). Accordingly, negative cash flow resulting from the debtor's administrative expenses is sufficient to satisfy the first element of section 1112(b)(4)(A). *Loop*, 379 F.3d at 516; *see also In re Schriock Constr., Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994) (finding that the continuing loss to or diminution of the estate could be established by showing that the debtor incurred continuing losses or maintained negative cash flows); *Matter of 3868-70 White Plains Road Inc.*, 28 B.R. 515, 518 (Bankr. S.D.N.Y. 1983) (evidence of continual negative cash flows is sufficient to satisfy the continuing loss to or diminution of the estate element).

If one were to include Burger King's accruing, but unpaid royalties and national advertising fees (and to arrive at a true and correct picture of the Debtors' financial condition, one must), the Debtors have operated with negative cash flows since the inception of this case, and will continue to do so until they abandon or liquidate their assets. The only way to stanch the bleeding and maximize value for the creditors at this point is for the Debtors to abandon their unprofitable stores and sell substantially all of their assets – in other words, a chapter 7 liquidation.

Accordingly, the Debtors' continuing inability to pay post-petition obligations as they come due satisfies the first element of Section 1112(b)(4)(A).

---

[4] Prior to the passage of the Bankruptcy Abuse and Consumer Protection Act of 2005, Pub L 109-8, 119 Stat. 23 (2005), section 1112(b)(4)(A) was codified at 1112(b)(1). Thus, cases decided prior to 2005 cite section 1112(b)(1).

## 2. There Is No Reasonable Likelihood of Rehabilitation of the Debtors.

The Debtors' intention to sell substantially all of their operating assets, and the absence of any intent to re-establish operations after these cases are closed demonstrate that there is no likelihood of rehabilitation. It is well established that the "reasonable likelihood of rehabilitation" element of Section 1112(b)(4)(A) means that the debtor is able to put itself back into good condition and reestablish its business on a sound basis. *Economy Cab*, 44 B.R. at 725 n.2 (citing *In re L.S. Good & Co.*, 8 B.R. 310 (Bankr. N.D. W.Va. 1980)); *see also Loop*, 379 F.3d at 516 (finding that a debtor with no intention of restoring its business had no reasonable likelihood of rehabilitation). Courts have also held that for there to be a reasonable likelihood of rehabilitation, an operating business must exist for the debtor to reorganize after the confirmation of the plan. *In re Gonic Realty Trust*, 909 F.2d 624, 627 (1st Cir. 1990) (affirming dismissal of a chapter 11 case where there was "no business left to reorganize"); *see also Loop Corp.*, 379 F.3d at 516 ("[I]t is difficult to imagine a liquidating debtor who will not meet the criteria for cause described in section [1112(b)(4)(A)].").

The Debtors have stated that they intend to sell their assets and cease operating. Indeed, a condition of the Limited License Agreement is that the Franchise Debtors sell the 52 locations operating under the Limited License Agreement. Accordingly, there will be no rehabilitated business at the end of this case, and the second element of Section 1112(b)(4)(A) is satisfied.

## B. Additional "Causes" Favor Converting the Debtors' Chapter 11 Case to Cases Under Chapter 7.

Additional factors favor converting the Debtors' chapter 11 cases to cases under chapter 7. The list of "causes" in section 1112(b)(4) is "non-exhaustive" and other types of

cause may establish support for conversion of a chapter 11 case to a chapter 7 case.  *Gonic*, 909 F.2d at 627 (relying on factors not specifically enumerated in section 1112(b) to dismiss the debtor's chapter 11 case).  The court may therefore consider other factors and use its equitable powers to reach the appropriate result.  *Id.*  Thus, the court need not narrowly analyze a single subsection of section 1112(b)(4) such that all other factors favoring conversion are excluded.  *Loop*, 379 F.3d at 515 n.2.

In addition to the Debtors' continuing losses and lack of any prospect of rehabilitation, the Insider Guarantors' relationship with Burger King coupled with the Debtors' intent to liquidate justifies conversion.  As this Court has recognized, "administration by a Chapter 7 trustee is the preferred vehicle for liquidation under the Bankruptcy Code" where a chapter 11 debtor seeks to remain in chapter 11 solely for the purpose of liquidating its assets.  *In re Minnesota Alpha Found.*, 122 B.R. 89 at 94 n.10 (Bankr. D. Minn. 1990.)  Additionally, where liquidation is the central focus of a chapter 11 petition, the court must be cognizant of the "self-interest of management and other professionals in retaining control."  *Id.*  In this case, the Insider Guarantors' relationship with Burger King creates a powerful conflict of interest.  The Insider Guarantors have a significant incentive to ensure that a sale of the Debtors' assets occurs, no matter the price, provided that the sale results in an assumption and assignment of all of the Debtors' franchise agreements with Burger King, even if the terms of a sale are not in the best interests of all creditors.  In such a state of affairs, Burger King is able to exercise extraordinary influence in any sale process.

An independent trustee could efficiently monetize or abandon, and distribute the Debtors' remaining assets under the Court's continued supervision and eliminate the

conflicts of interest inherent in the Insider Guarantors' relationships with Burger King. The appointment of a chapter 7 trustee would also avoid the significant time and expense that will be necessary to obtain approval of a disclosure statement and confirm a chapter 11 plan.

These factors further illustrate that converting the Debtors' chapter 11 cases to cases under chapter 7 is necessary and appropriate and will reap significant benefits for creditors.

## C.     No "Unusual Circumstances" Are Present

The 2005 BAPCPA amendments to section 1112(b) added the requirement that there must not be any "unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors or the estate." 11 U.S.C. § 1112(b)(1). Section 1112(b)(1) does not define unusual circumstances, "but the phrase contemplates conditions that are not common in chapter 11 cases." *In re Pittsfield Weaving Co.*, 393 B.R. 271, 274 (Bankr. D.N.H. 2008) (citing *In re Fisher*, 2008 WL 1775123 at *5 (Bankr. D. Mont. Apr. 15, 2008)). Courts have significant discretion in determining whether unusual circumstances exist to establish that conversion to a chapter 7 case is not in the best interest of creditors. *Id.* at 274-75 (citing *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007)).

Here, no unusual circumstances are present to justify maintaining the Debtors' cases as chapter 11 proceedings. Instead, these cases present a clear-cut situation where a continuing loss to or diminution of the estate, the admitted lack of a reasonable likelihood of rehabilitation of the debtor, and the presence of other equitable factors compel conversion to chapter 7.

## **CONCLUSION**

Each day, the amount of post-petition royalties and advertising expenses the Debtors owe to Burger King grows. There will be no business enterprise to rehabilitate at the end of this case, as the Debtors intend to sell their assets and liquidate. The Insider Guarantors have significant conflicts of interest that may cause them to operate this case for the benefit of Burger King over the other creditors. Conversion of the Debtors' chapter 11 cases to cases under chapter 7 will prevent continued loss to or diminution of the estate and protect all of the Debtors' creditors. For these reasons, the court should convert the Debtors' chapter 11 cases to cases under chapter 7.

FAEGRE & BENSON LLP

Dated December  20, 2010

   /e/  Michael F. Doty
Stephen M. Mertz (#212131)
Michael F. Doty (#0388303)
Christopher J. Harayda (#0390333)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  (612) 766-7000
Facsimile:  (612) 766-1600

  -and-

MORGAN LEWIS & BOCKIUS, LLP
Jonathan K. Bernstein
225 Franklin Street, 16th Floor
Boston, MA 02110-4104
Phone:    (617) 341-7760
Fax:       (617) 341-7701

*Attorneys for Bank of America, N.A.*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

---

|  | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
|---|---|

In re:

DUKE AND KING ACQUISITION CORP.,

                        Debtors.

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

Court File No. 10-38652

Court File Nos:

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

## ORDER GRANTING MOTION TO CONVERT DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b)(1)

---

Upon consideration of the Motion of Bank of America, National Association, to convert the above-captioned Debtors' chapter 11 cases to cases under chapter 7 pursuant to 11 U.S.C. § 1112(b)(1), and pursuant to the terms set forth in this Order,

**IT IS ORDERED THAT**:

1.      The Debtors' chapter 11 cases shall be converted to cases under chapter 7 pursuant to 11 U.S.C. § 1112(b)(1).

2.      This Court shall retain jurisdiction over any and all issues arising from or

related to the implementation and interpretation of this Order.

Dated _____

                                        _____
                                        Gregory F. Kishel
                                        UNITED STATES BANKRUPTCY JUDGE