## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER**<br>**CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | |
| (includes: | Court File Nos: |
| Duke and King Missouri, LLC; | 10-38653 (GFK) |
| Duke and King Missouri Holdings, Inc.; | 10-38654 (GFK) |
| Duke and King Real Estate, LLC; | 10-38655 (GFK) |
| DK Florida Holdings, Inc.) | 10-38656 (GFK) |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## FINAL ORDER (A) AUTHORIZING USE OF UNENCUMBERED CASH OR, IN THE ALTERNATIVE, CASH COLLATERAL AND (B) GRANTING LIEN AND ADEQUATE PROTECTION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

These cases came before the court on the Debtors' Motion for (I) Expedited Relief, and (II) Interim and Final Orders (A) Authorizing Debtors' Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection dated December 4, 2010 (the "Motion"); and a hearing to consider the interim relief requested in the Motion having been held on December 7, 2010; and the Court having entered: (a) on December 8, 2010, an Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection, Docket No. 39; (b) on December 9, 2010, an Order Re: Final Hearing on Motion of Debtors for Authority to Use Cash Collateral, Docket No. 46; (c) on December 21, 2010, Second Interim Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection, Docket No. 74; and (d) on January 4, 2011, Third Interim

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *01/24/2011*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

Order Granting Expedited Relief and (A) Authorizing Use of Unencumbered Cash or, in the Alternative, Cash Collateral and (B) Granting Adequate Protection and Continuing Hearing on Bank of America, National Association's Motion to Convert Debtors' Chapter 11 Cases to Cases Under Chapter 7, Docket No. 96; and a hearing to consider the final relief requested in the Motion having been held on January 24, 2011 (the "Final Hearing"). Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Motion. Appearances were noted on the record.

Based on the arguments of counsel and the documents of records herein, and pursuant to Bankruptcy Rule 4001, due and sufficient notice of the Motion having been given by the Debtors; and all objections to the Motion having been withdrawn, resolved or overruled by the Court, except those objections not presently resolved by this Final Order, but preserved by BofA and MBM as set forth in paragraph G of this Final Order; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors, their estates and their creditors; and the Court being fully advised in the premises, and after due deliberation and consideration and sufficient cause appearing therefor,

**THE COURT FINDS AND CONCLUDES THAT:**

A.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and reference from the District Court for the District of Minnesota pursuant to 28 U.S.C. § 157. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Notice of the Motion and the Final Hearing was sufficient under the circumstances and constitutes due and sufficient notice thereof.

C.     Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtors have retained possession of their assets and are authorized to continue the operations and management of their businesses as debtors in possession.

D.     On December 29, 2010, the Office of the United States Trustee appointed The Official Committee of Unsecured Creditors (the "Committee").  No request has been made for appointment of a trustee or examiner.

E.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.

F.     The Debtors' use of cash and other assets is necessary to the continued viability of the Debtors' businesses.  In addition, the use of cash is vital to the Debtors' efforts to maximize the value of their assets.  Absent the relief sought by this Final Order, the Debtors' estates will be immediately and irreparably harmed.  Thus, the use of cash in accordance with this Final Order is in the best interests of the Debtors' estates.

G.     The Debtors assert that Bank of America, N.A. ("BofA"), Warren Capital Corporation, the Coca-Cola Company, Duke Manufacturing Company and/or Meadowbrook Meat Company, Inc. ("MBM," and collectively, the "Secured Creditors") have a lien on or security interests in certain non-cash assets of the Debtors, but have no interest in, or lien on, the Debtors' cash.  BofA and MBM assert that the Debtors' cash is cash collateral, the use of which requires their consent or an order of the Court.  The Court makes no finding on the issue for purposes of this Final Order.  Rather, to the extent the Debtors' cash is cash collateral, the Debtors' use of such cash is, as set forth below, authorized and approved on a final basis.

H.     As of December 1, 2010, according to the books and records of the Debtors the BofA Borrowers' outstanding obligations to BofA under the BofA Notes total approximately: (a) $9,247,144 in principal on Term Loan A, plus accrued interest and late charges in an amount to be determined; (b) $0.00 on Term Loan B; (c) $1,655,283 in principal on Term Loan C, plus accrued interest in an amount to be determined; and (d) $24,037 in principal, $280.60 in interest and $272.19 in late charges on the Acquisition Note.  Term Loan D is paid in full.  In addition,

D&K Acquisition and BofA are parties to an ISDA Master Agreement and Schedule dated November 10, 2006, pursuant to which D&K Acquisition and BofA have entered into three swap transactions, as evidenced by a Confirmation dated as of March 2, 2007, and two Confirmations dated as of March 6, 2007.

I.      According to the books and records of the Debtors, as of the Petition Date, the Debtors owed MBM $97,598.19 for prepetition date deliveries of substantially all the food items and related restaurant items, including, among other things, meat products, produce, paper products, and cleaning supplies, to certain of the Debtors' restaurants located in the State of Missouri. Based upon the Debtors' books and records, the value of the inventory at those restaurants was approximately $170,000.00.

J.      Except with respect to the Debtors' cash, deposit accounts and revenues generated from the postpetition operation of the Debtors' restaurants, the Debtors agree that BofA has a lien on the assets set forth on Exhibit B to the Motion. MBM has asserted a purchase money security interest and lien on the Debtors' inventory at restaurants located in the State of Missouri, and the products and proceeds thereof.

K.      The Debtors have proposed to provide adequate protection to BofA and MBM for the use of (i) those assets of the Debtors that are collateral of BofA or MBM, and (ii) cash, but only if, and to the extent, the Court later determines that the Debtors' cash is cash collateral of BofA or MBM. The Court makes no determination as to the priority, validity or extent of any lien asserted by MBM, or the right of MBM to adequate protection. Nothing in this Final Order shall prejudice MBM's rights under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499, *et seq.*, and nothing in this Final Order shall prejudice the rights of any party-in-interest to object to the same. The Court makes no determination as to the priority, validity or extent of any lien asserted by BofA in the Debtors' cash, deposit accounts or revenues generated from the

postpetition operation of the Debtors' restaurants or the right of BofA to adequate protection in respect thereof.

L.      The evidence presented at the interim and/or final hearings substantiates the Debtors' request for use of cash and other assets consistent with this Final Order. Good cause has been shown for the entry of this Final Order. In addition, the terms and conditions of the Debtors' proposed use of cash are fair and reasonable and reflect the Debtors' exercise of prudent business judgment.

**IT IS HEREBY ORDERED THAT:**

1.      Subject to the terms of this Final Order, the Debtors shall be, and hereby are, authorized to use the cash generated by the operation of their businesses to continue to operate their businesses in the ordinary course of business through May 6, 2011, consistent with the Budget attached to this Final Order as <u>Exhibit 1</u>. The Debtors may use such cash: (a) to pay all of the expenses set forth in the attached Budget up to amounts budgeted, <u>provided</u>, <u>however</u>, that the Debtors may, if necessary, exceed certain respective line item amounts in the Budget by the following variances: payroll (7%), food vendors (excluding bread) (10%), A/P ordinary course checks (7%), rent (7%), sales taxes (10%), employee benefits (7%), real estate/property taxes (7%), A/P ordinary course – wires (7%) and professional fees (10%); and (b) to make those payments that the Debtors are authorized to make pursuant to other orders of the Court, including allowed amounts due to or on account of prepetition wages and employee benefits, taxes and fees, critical vendors, and customer obligations. Any unused portion of the variance will carry over to the following week.

2.      It shall be an event of default under this Final Order if the total of the Debtors' cash, inventory, and accounts receivable at the end of the day on any of the following dates shall be less than $1,868,000: January 21, 2011, January 28, 2011, February 4, 2011, February 11,

2011, February 18, 2011, February 25, 2011, March 4, 2011, March 11, 2011, March 18, 2011, March 25, 2011, April 1, 2011, April 8, 2011, April 15, 2011, April 22, 2011, April 29, 2011 or May 6, 2011. By no later than the end of the day on Wednesday of each week, beginning January 12, 2011, the Debtors shall deliver a report to BofA showing the Debtors' inventory, accounts receivable and cash balances as of the end of the day on the previous Friday, with a copy to the Committee. Upon the occurrence of an event of default, BofA may send a notice of default to the Debtors, the Committee and the Office of the United States Trustee. If the Debtors are unable to cure the default within 3 business days after the date that the Debtors received the notice of default by showing that the total of the Debtors' cash, inventory, and accounts receivable has increased to at least $1,868,000, the Debtors' right to use cash under this order shall terminate.

3.       It shall also be an event of default under this Final Order if, without BofA's prior consent: (i) the Debtors fail to comply with the following sale deadlines set forth in the sale procedures (the "Sale Procedures") approved by the Court in connection with Debtors' Motion for an Order Approving Sale and Bidding Procedures (the "Sale Procedures Motion"): (a) Debtors' shall receive bids from interested purchasers on or before April 5, 2011; (b) Debtors' shall make a determination regarding whether a bid is a "Qualified Bid" under the bidding procedures on or before April 7, 2011; (c) the Debtors shall conduct the auctions for the Group One Restaurants and Group Two Restaurants (as defined in the bidding procedures) on or before April 12, 2011; (d) the Debtors' shall use their reasonable best efforts to obtain a sale hearing date on or about April 15, 2011; or (e) the Debtors' shall use their reasonable best efforts to close the sale or sales on or before April 30, 2011, or (ii) the Sale Procedures are not approved by the Court in a form acceptable to BofA, or (iii) any material change is made to the Sale Procedures without BofA's consent, or (iv) no Qualified Bids are received by the Debtors, or (v) no order

approving a sale in accordance with the Sale Procedures is entered by April 22, 2011  After the occurrence of an event of default under this paragraph, BofA may send a notice of default to the Debtors, the Committee and the Office of the United States Trustee.  If the Debtors are unable to cure the default within five (5) business days after the date that the Debtors received the notice of default, absent any further order of this Court entered during such five-day period, the Debtors' right to use cash under this order shall terminate. The parties agree that the hearing on any motion filed by the Debtors following and arising from a notice of default may be heard on an expedited basis at the earliest convenience of the Court.

4.      The Debtors are hereby authorized and empowered, without further approval of the Court, to amend or modify the terms of paragraphs 2 and 3 of this Order, provided that the Debtors shall first obtain the prior written consent of each of BofA, MBM and the Committee to such amendment or modification.

5.      Subject to sections 361 and 363 of the Bankruptcy Code, as adequate protection for the Debtors' use of BofA's and MBM's alleged collateral, (a) BofA and MBM are hereby granted replacement liens, pursuant to 11 U.S.C. §§ 361(2) and 552, in the Debtors' postpetition assets of the same type and nature as those assets subject to the prepetition liens of BofA and MBM (collectively, the "Replacement Liens"); provided, however, that any and all such Replacement Liens shall have the same nature, character, validity, priority, dignity, extent and effect as the liens of BofA and MBM, if any, in such collateral prior to the Petition Date and shall be without prejudice to the rights of the Debtors, the Committee, which shall be deemed to have standing, or any other party in interest to challenge (a "Challenge") the nature, character, validity, priority, dignity, extent and effect of any such liens or commence any proceeding under the Bankruptcy Code seeking a determination with respect thereto or seeking to avoid or set aside any such liens or any defenses of the Secured Creditors thereto (provided, however, that

any such Challenge shall be commenced prior to March 22, 2011 and, in the absence of any such Challenge, the liens and claims of BofA shall be allowed, first priority, perfected security interests and liens in the Debtors' assets, the validity, extent and priority of which shall not be subject to challenge by any party.); and *provided* *further* *that* such Replacement Liens shall specifically exclude all actions under chapter 5 of the Bankruptcy Code and the proceeds thereof; and (b) BofA is hereby granted the right to receive copies of regular financial or operating reports, including those filed with the Office of the U.S. Trustee.

6.      Nothing in this Final Order shall operate to waive any of the Debtors' or the Committee's rights to contest the rights of the Secured Creditors to receive adequate protection.

7.      Any Replacement Liens granted to BofA or MBM shall be limited to the diminution in the value of BofA's or MBM's collateral.

8.      Subject to the other provisions of this Final Order, the Replacement Liens granted herein shall be valid and fully perfected without any further action by the Debtors, BofA, or MBM and without the execution or the recordation of any financing statements, security agreements, mortgages or other documents.  Notwithstanding the foregoing, BofA and MBM are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, account control agreements, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the Replacement Liens granted to them hereunder.

9.      The provisions of this Final Order, as well as the Replacement Liens and security interests granted herein, shall continue in this and any subsequent case under the Bankruptcy Code.  The Replacement Liens and security interests shall maintain their priority as provided in this Final Order, until the indebtedness of the Debtors to BofA or MBM has been completely paid and satisfied, unless otherwise ordered by the Court.

10.     This Final Order is without prejudice to the rights of the parties to seek any further or different relief, or modification of relief for use of cash or cash collateral for the period after the period covered by this Final Order, including, but not limited to, relief from the automatic stay.

11.     Except as expressly provided herein, the rights, claims, and interests of the Debtors, Secured Creditors, and all other parties in interest are hereby preserved.

12.     The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

*/e/ Gregory F. Kishel*

Dated: January  24 , 2011

_____
Gregory F. Kishel
United States Bankruptcy Judge

{2566406:5}
DB1/66365593.4

# EXHIBIT 1

# BUDGET

{2566406:5}
DB1/66365593.4

# Duke & King
## Weekly Cash Flow Forecast
### In Court Analysis
*Dollars in Actuals*

| Week | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 16 Week Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | 1/24/10 | 1/7/11 | 1/14/11 | 1/21/11 | 1/28/11 | 2/4/11 | 2/11/11 | 2/18/11 | 2/25/11 | 3/4/11 | 3/11/11 | 3/18/11 | 3/25/11 | 4/1/11 | 4/8/11 | 4/15/11 | 4/22/11 | 4/29/11 | 5/6/11 | |
| **Beginning Book** | | 1,646,021 | 1,492,766 | 1,138,207 | 1,228,207 | 1,218,793 | 811,772 | 931,723 | 952,147 | 1,244,549 | 815,007 | 890,888 | 1,220,566 | 905,407 | 546,766 | 725,274 | 1,034,000 | 851,585 | 1,336,991 | 1,646,021 |
| **Receipts:** | | | | | | | | | | | | | | | | | | | | |
| Sales | | 1,649,085 | 1,695,540 | 1,695,540 | 1,797,464 | 1,843,000 | 1,843,000 | 1,843,000 | 1,843,000 | 1,867,626 | 1,907,348 | 1,907,348 | 1,907,348 | 1,966,515 | 1,966,515 | 1,966,515 | 1,966,515 | 1,983,409 | 1,983,409 | 33,474,920 |
| Management Fees | | - | 12,000 | - | 50,000 | - | 12,000 | - | 50,000 | - | 12,000 | - | 50,000 | - | - | - | - | 50,000 | - | 248,000 |
| Other Deposits | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 822,110 |
| **Total Credits** | - | 1,656,585 | 1,715,040 | 1,703,040 | 2,078,040 | 1,884,964 | 1,862,500 | 1,850,500 | 2,262,610 | 1,865,326 | 1,926,848 | 1,914,848 | 1,964,848 | 1,974,015 | 1,974,015 | 1,966,015 | 1,974,015 | 2,040,909 | 1,990,909 | 34,545,030 |
| **Operating Disbursements:** | | | | | | | | | | | | | | | | | | | | |
| Payroll | | 545,054 | 570,740 | 540,054 | 565,054 | 565,054 | 565,054 | 565,054 | 610,740 | 570,054 | 590,740 | 570,054 | 610,740 | 610,740 | 600,355 | 578,600 | 620,355 | 588,185 | 610,245 | 10,498,106 |
| Food Vendors (Excl Bread) | | 553,872 | 553,872 | 561,984 | 558,570 | 569,484 | 569,484 | 567,362 | 567,362 | 577,362 | 577,362 | 577,118 | 577,118 | 577,118 | 577,118 | 595,165 | 595,165 | 595,165 | 595,165 | 10,345,847 |
| AP Ordinary Course Checks | | 255,908 | 236,523 | 255,908 | 255,908 | 231,977 | 231,977 | 255,908 | 255,908 | 305,561 | 271,385 | 257,119 | 271,385 | 257,119 | 222,923 | 222,923 | 222,923 | 271,385 | 222,923 | 4,587,737 |
| Rent | | - | 195,000 | 195,000 | - | - | - | - | - | 648,571 | - | 133,848 | - | 133,848 | - | 150,283 | - | 54,317 | 338,701 | 2,911,059 |
| Sales Taxes | | 63,000 | 286,164 | 151,164 | 53,163 | 47,748 | 46,748 | 262,748 | 117,748 | 283,848 | 283,848 | 305,889 | 333,697 | 50,170 | 313,660 | 148,123 | 27,535 | 54,317 | 305,170 | 2,447,204 |
| Royalty / Advertising To BK | | - | - | - | - | 25,000 | 25,000 | 25,000 | 25,000 | - | 25,000 | 25,000 | - | - | - | 25,000 | - | - | - | 100,000 |
| Employee Benefits | | 107,947 | 157,947 | - | 2,605 | 112,605 | 112,605 | 2,605 | 2,605 | 122,605 | 52,605 | 18,105 | 105,500 | 191,401 | 2,605 | 43,105 | 78,000 | 17,605 | 181,401 | 1,187,662 |
| Real Estate/ Property Taxes | | - | 30,000 | - | 256,873 | - | - | 127,552 | 11,000 | - | - | 97,000 | 30,000 | 17,000 | - | 160,000 | 160,000 | - | - | 671,426 |
| Capital Expenditures | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Banking Fees | | - | 9,000 | - | - | 11,500 | - | - | - | 11,500 | - | - | 11,500 | - | - | 11,500 | - | - | - | 43,500 |
| AP Ordinary Course - Wires | | 54,576 | 54,576 | 54,576 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 28,846 | 596,420 |
| **Total Operating Disbursements** | - | 1,773,090 | 2,018,822 | 1,586,290 | 1,741,705 | 2,211,985? | 1,716,523 | 1,830,076 | 1,583,209 | 2,294,868 | 1,827,020 | 1,585,090 | 2,332,656 | 1,795,507 | 1,795,507 | 1,653,282 | 1,657,429 | 1,555,503 | 2,612,418 | 33,386,960 |
| **Professional Fees:** | | | | | | | | | | | | | | | | | | | | |
| Financial Advisors | | - | - | - | 128,000 | - | - | - | 144,000 | - | - | 208,000 | - | 170,000 | 170,000 | - | 180,000 | - | 180,000 | 660,000 |
| Legal Counsel | | - | - | - | 140,000 | - | - | - | 140,000 | - | - | 270,000 | - | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 730,000 |
| Local Counsel | | - | - | - | 40,000 | - | - | - | 20,000 | - | - | 40,000 | - | 176,470 | 184,540 | 192,610 | 200,680 | 208,750 | 216,820 | 150,000 |
| Bank Advisors | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bank Counsel | | - | - | - | - | - | - | - | 72,000 | - | - | 105,500 | - | - | - | - | - | - | - | - |
| Committee Advisors | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 255,500 |
| US Trustee | | 10,000 | - | - | - | - | - | - | 11,000 | - | - | 30,000 | - | - | - | - | - | - | - | 40,000 |
| Investment Banker | | - | - | - | - | - | - | - | - | - | - | 17,000 | - | - | - | - | - | - | - | 50,000 |
| **Total Professional Fees** | - | 10,000 | - | - | 319,000 | - | 26,750 | - | 387,000 | - | - | 670,500 | - | - | - | - | 499,000 | - | - | 1,885,500 |
| **Non-Operating Disbursements:** | | | | | | | | | | | | | | | | | | | | |
| Utility Deposits | | 26,750 | 26,750 | 26,750 | 26,750 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 107,000 |
| Bank of America - Interest / SWAP | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Bank of America - Principal | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Warren Capital - Brokers | | - | 24,027 | - | 24,027 | - | - | - | - | - | 24,027 | - | - | - | - | 24,027 | - | 24,027 | - | 96,108 |
| **Total Non-Op Disbursements** | - | 26,750 | 50,777 | 26,750 | 26,750 | - | 24,027 | - | - | 24,027 | 24,027 | - | - | - | - | 24,027 | - | 24,027 | - | 203,108 |
| **Total Disbursements** | - | 1,809,840 | 2,069,599 | 1,613,040 | 2,087,455 | 2,291,985 | 1,742,550 | 1,830,076 | 1,970,209 | 2,294,868 | 1,851,047 | 1,585,090 | 2,280,000 | 2,332,656 | 1,795,507 | 1,657,289 | 2,156,429 | 1,555,503 | 2,612,418 | 35,475,568 |
| **Ending Book Balance** | - | 1,492,766 | 1,138,207 | 1,228,207 | 1,218,793 | 811,772 | 931,723 | 952,147 | 1,244,549 | 815,007 | 890,888 | 1,220,566 | 905,407 | 546,766 | 725,274 | 1,034,000 | 851,585 | 1,336,991 | 715,483 | 715,483 |

**Notes:**
1) Bank advisor fees to be determined

| Collateral Position: | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A/R Balance | 150,000 | 150,000 | 150,000 | 150,000 | 150,000 | 160,000 | 160,000 | 160,000 | 160,000 | 170,000 | 170,000 | 170,000 | 170,000 | 170,000 | 170,000 | 170,000 | 170,000 | 180,000 | 180,000 | 30,000 |
| A/R - BB A Players | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | - |
| A/R Rebates - RBS | 364,280 | 384,280 | 412,770 | 420,770 | 417,726 | 445,534 | 473,342 | 501,151 | 528,959 | 556,767 | 152,260 | 160,330 | 168,400 | 176,470 | 184,540 | 192,610 | 200,680 | 208,750 | 216,820 | (147,460) |
| A/R Rebates - Coke & Dr. Pepper | 244,764 | 244,764 | 417,726 | 417,726 | 417,726 | 501,151 | 528,959 | 556,767 | 136,120 | 250,273 | 278,081 | 305,889 | 333,697 | 361,505 | 389,313 | 417,121 | 444,929 | 472,737 | 500,546 | 25,782 |
| Inventory | 850,000 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | 828,052 | (21,948) |
| Total | 1,671,544 | 1,835,100 | 1,870,976 | 1,900,856 | 1,917,734 | 1,663,813 | 1,699,491 | 1,735,989 | 1,409,137 | 1,455,015 | 1,490,893 | 1,526,771 | 1,562,649 | 1,598,527 | 1,634,405 | 1,670,283 | 1,706,161 | 1,752,039 | 1,787,918 | 116,374 |
| **Sr Debt:** | | | | | | | | | | | | | | | | | | | | |
| Term Loan A | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | 9,247,144 | - |
| Term Loan C | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | 1,655,283 | - |
| Acquisition Note | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | 24,031 | - |
| Total | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | 10,926,458 | - |