# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

*********************************************************************************

| | |
|---|---|
| In re | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | |
| Debtors. | Court File No. 10-38652 |
| | Court File Nos. |
| (includes: | |
| Duke and King Missouri, LLC; | 10-38653 (GFK) |
| Duke and King Missouri Holdings, Inc.; | 10-38654 (GFK) |
| Duke and King Real Estate, LLC; | 10-38655 (GFK) |
| DK Florida Holdings, Inc.) | 10-38656 (GFK) |
| | Chapter 11 Cases |
| | Chief Judge Gregory F. Kishel |

*********************************************************************************

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER (1) AUTHORIZING SALE OF ACQUIRED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (2) DETERMINING BUYER TO BE A GOOD FAITH PURCHASER; (3) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY AND EXECUTORY CONTRACTS DESIGNATED BY BUYER; AND (5) WAIVING THE 14-DAY STAY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h) AND 6006(d).**

*********************************************************************************

On May 10, 2011, at 9:30 a.m. Central Time, in the above-captioned cases, a hearing was held on the Motion for Orders (i) Scheduling a Hearing on Stalking Horse Bids; (ii) Approving Stalking Horse Protection Fees; (iii) Approving Form of Stalking Horse Asset Purchase Agreements; (iv) Approving Form and Manner of Sale Notice and Cure Notice; (v) Authorizing Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and (vi) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts and Establishing Cure Costs (the "Sale Motion"), filed by Duke and King Missouri, LLC, as one of the debtors and debtors-in-possession (the "Debtor", and together with each of the other debtors-in-possession in these administratively consolidated cases, the "Debtors").  Strategic Restaurants Acquisition Company II, LLC (the "Buyer") has been named as the Successful Bidder at the

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/10/2011*
Lori Vosejpka, Clerk, By JRB, Deputy Clerk

Group Two Auction for the Acquired Assets that are identified in that certain Asset Purchase Agreement dated April 27, 2011, by and between the Debtor and the Buyer for Store #6030 (together with all exhibits and schedules thereto, the "Purchase Agreement").[1] The Purchase Agreement is attached hereto as Exhibit 1.

Appearances were noted on the record.

Based on the notice of Sale Motion and Sale Motion, the memorandum of points and authorities and declarations in support thereof, the documents and pleadings on file herein, all judicially noticeable facts, the arguments and representations of counsel, and such other evidence as was presented at the scheduled hearing:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.      This Court has jurisdiction to consider, determine and approve the sale (the "Sale") of the Acquired Assets (as defined in the Purchase Agreement), free and clear of all liens, liabilities, claims, interests, and encumbrances identified in the Purchase Agreement, and to authorize and direct the Debtor, on behalf of its bankruptcy estate, to enter into and perform in accordance with the Purchase Agreement.

B.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  The Sale Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).  Venue of the Chapter 11 Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief requested in the Sale Motion are 11 U.S.C. §§ 105, 363 and 365, and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

D.      This Court entered the Order Approving Sale and Bidding Procedures on January 24, 2011 [Docket No. 137] (the "Sale Procedures Order") which provided, among other things,

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement and the Sale Motion, as applicable.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. 7052.

for an auction of the Acquired Assets should qualified bidders comply with the Sale Procedures Order and submit competing bids (the "Group Two Auction"). The Debtor and the Buyer have complied with the Sale Procedures Order in all respects.

E.    Pursuant to the Sale Procedures Order, the Group Two Auction was conducted on April 26, 2011, by the Debtors, in consultation with their advisors and investment banker, Mastodon Ventures, Inc. The Sale Procedures Order (as amended)[3] set May 10, 2011 as the date of the hearing (the "Sale Approval Hearing") for approval of the Sale as contemplated by the Purchase Agreement.

F.    On April 11, 2011, the Debtor filed the Sale Motion and served copies of the Sale Motion in compliance with Local Rule 9013-3(a)(2).

G.    On April 18, 2011, the Debtor duly and timely served the Notice of Sale Approval Hearing (the "Sale Notice") in compliance with this Court's orders. On April 18, 2011, the Debtor duly and timely served the Notice Concerning Unexpired Leases and Executory Contracts and Establishing Cure Costs on the counterparties to such leases and contracts, including all counterparties to the Acquired Contracts.

H.    Based upon the foregoing and the certificates of service and publication filed with this Court, due, proper, timely, adequate and sufficient notice of the Sale Motion, the initial hearing on the Sale Motion, the Group Two Auction, the Sale Approval Hearing, the Sale of the Acquired Assets, the proposed assumption and assignment of the Acquired Contracts and the proposed rejection of the contracts has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008 and in compliance with the Sale Procedures Order and no other or further notice of the Sale Motion, the initial hearing on the Sale Motion, the Group Two Auction, the Sale Approval Hearing, the Sale of the Acquired Assets, the proposed assumption and assignment of the Acquired Contracts or the entry of this Sale Approval Order is required or necessary.

---

[3] The timeline set forth in the Sale Procedures Order was subsequently amended by stipulation.

I.     The Sale Notice was duly served by the Debtor on (i) all creditors and interested parties, including parties requesting special notice, required to receive notice pursuant to Bankruptcy Rule 2002(i), (ii) each entity or person known to the Debtor to assert a lien, encumbrance, claim or other interest in or to the assets to be affected by this Order, (iii) all Acquired Contract counterparties including notice regarding the relevant Cure Costs; (iv) the Internal Revenue Service and all state and local taxing authorities in jurisdictions where the Debtor has or may have any tax liability, and (v) the Office of the United States Trustee, all in accordance with Bankruptcy Rules 2002(a)(2), 2002(c)(1), 2002(i), 2002(k), 6004(a) and 6004(c).  The Sale Notice (i) complied in all respects with the requirements of the Bankruptcy Code and the Bankruptcy Rules and any applicable local rule, (ii) fully and adequately described the relief requested in the Sale Motion, (iii) provided fair and reasonable notice under the circumstances of the Chapter 11 Case with respect to the deadlines and procedures for objecting to the relief requested in the Sale Motion, and (iv) set forth the time, date and place for the hearing on the Sale Motion, and an opportunity to request a hearing.

J.     All parties in interest, including, without limitation, Bank of America, Burger King Corporation, all parties who claim an interest in or lien upon the Acquired Assets, all counterparties to the Acquired Contracts, all shareholders of the Debtors, all federal, state and local environmental authorities, and all U.S. or foreign federal, state and local governmental taxing authorities who have, or as a result of the Sale of Acquired Assets may have, claims, contingent or otherwise against the Debtors, have been given a reasonably opportunity to object and be heard, regarding the relief requested in the Sale Motion (including assumption and assignment of the Acquired Contracts and the Cure Costs).  All objections to the Sale Motion and to approval of the Purchase Agreement, including the transactions contemplated thereby, were resolved, withdrawn or overruled at the Sale Approval Hearing.

K.     As demonstrated by the testimony or other evidence proffered or adduced at the Sale Approval Hearing: (i) the offer from the Buyer constitutes the highest and best offer for the Acquired Assets; (ii) the Debtors conducted an auction process in accordance with, and have

otherwise complied in all respects with, the Sale Procedures Order; (iii) the auction process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets; and (iv) the Group Two Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

L.     The Group Two Auction was held in accordance with the Sale Procedures Order.

M.     The Debtor engaged in fair and reasonable marketing, advertising and other sales efforts and procedures in connection with the Sale of the Acquired Assets, which efforts and procedures have enabled the estate to obtain a fair and reasonable price for the Acquired Assets under the circumstances of the Chapter 11 Case.

N.     In accordance with the Sale Procedures Order, the Purchase Agreement was deemed a Qualified Bid (as defined in the Sale Procedures) and the Buyer was eligible to participate at the Group Two Auction.

O.     The Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative for the Acquired Assets. The Debtor's determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

P.     The Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Case. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estates than the Buyer.

Q.     The purchase price as set forth in the Purchase Agreement (the "Purchase Price") for the Acquired Assets is fair and reasonable, and constitutes reasonable consideration and reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code)

under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia. Approval of the Purchase Agreement and the Sale of the Acquired Assets in accordance with this Order and the Purchase Agreement are in the best interest of the Debtor's estate, creditors and other parties in interest. The terms of the Purchase Agreement were negotiated at arms' length and are fair and reasonable under the circumstances.

R.      The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors or any other party under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

S.      The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the Sale of the Acquired Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization.

T.      The Debtor (i) has full corporate, limited liability or other power to execute, deliver and perform its obligations under the Purchase Agreement and all other documents contemplated thereby or entered into in connection therewith, and the Sale of the Acquired Assets by the Debtor has been duly and validly authorized by all necessary corporate, limited liability or similar action, and (ii) has taken all action necessary to authorize and approve the Purchase Agreement and such other documents contemplated thereby and the consummation by them of the transactions contemplated thereby or entered into connection therewith. No third-party approvals, other than those expressly provided for in the Purchase Agreement, if any, are required by the Debtor to consummate such transactions.

U.      The Debtor is authorized and directed to sell and transfer the Acquired Assets free and clear of the Released Liens, Claims and Interests (as defined in paragraph 12 below) because it has satisfied the requirements of section 363(f) of the Bankruptcy Code.

V.     Those holders of Claims (as defined in paragraph 12 below) against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  The Debtor has met the requirements of section 363(f) with respect to all other holders of Claims as such Claim holders will have their Claims, if any, in each instance against the Debtor, or the Debtors, as applicable, including their estates or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets, in which such creditor alleges a Claim, in the same order of priority, with the same validity, force and effect that such Claims had prior to the Sale, subject to any claims and defenses the Debtor, or the Debtors and their estates, as applicable, may possess with respect thereto.

W.     The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the Sale of the Acquired Assets to the Buyer, the assumption of liabilities and obligations as set forth in the Purchase Agreement by the Buyer and the assignment of the Assumed Leases and Acquired Contracts were not free and clear of all Released Liens, Claims and Interests.

X.     The Purchase Agreement was negotiated, proposed and entered into by the parties in good faith, from arms' length bargaining positions and without collusion.

Y.     The Debtor has complied with the procedures for notice and Sale of the Acquired Assets as set forth in the Sale Procedures Order.

Z.     The Buyer is not an "insider" or "affiliate" of the Debtors (as each such term is defined in the Bankruptcy Code).  Neither the Debtor nor the Buyer, nor any of its and their respective affiliates or representatives, have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code to the Sale and the transactions contemplated by the Purchase Agreement. Specifically, the Buyer has not acted in a collusive manner with any person or entity

and the aggregate Purchase Price paid by the Buyer for the Acquired Assets was not controlled by any agreement among the bidders, or otherwise.

AA.    The Buyer is entitled to the protections afforded under section 363(m) of the Bankruptcy Code because the Buyer is a good faith purchaser in that, *inter alia*:  (i) except as set forth in the Sale Procedures Order, the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions in the Sale Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (iv) the Buyer in no way induced or caused the chapter 11 filings by the Debtors; (v) all payments to be made by the Buyer in connection with the Sale have been disclosed; (vi) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; and (vii) the negotiation and execution of the Purchase Agreement was at arms' length and in good faith.

BB.    In the absence of a stay pending appeal, if any, if the Closing occurs at any time after entry of this Order, then, with respect to the Purchase Agreement, the Buyer, as a purchaser in good faith of the Acquired Assets, shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is reversed or modified on appeal.

CC.    The Debtor is the sole and lawful owner of the Acquired Assets.  Effective as of the Closing, the transfer of the Acquired Assets is or will (i) be legal, valid and effective transfers of property of the Debtor's estate to the Buyer, as more particularly set forth in the Purchase Agreement, and (ii) vest the Buyer with all right, title, and interest of the Debtor and the Debtor's estate in and to the Acquired Assets free and clear of all Released Liens, Claims and Interests (as defined in paragraph 12 herein) under sections 363(f) and 105 of the Bankruptcy Code.

DD.    The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Acquired Contracts, each as defined in the Purchase Agreement and described in Schedule 1.1(g) to the Purchase Agreement and as identified in <u>Exhibit 2</u> to this

Order, including any amendments or modifications to such exhibits as agreed to by the Debtor and Buyer pursuant to the Purchase Agreement, in connection with the consummation of the Sale of Acquired Assets, and the assumption and assignment of the Acquired Contracts is in the best interests of the Debtor, its estate, its creditors and its equity holders.

EE. The Acquired Contracts being assigned to the Buyer as set forth in the Purchase Agreement are an integral part of the Debtor's businesses being purchased by the Buyer and, accordingly, such assumption and assignment of the Acquired Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

FF. The Acquired Contracts are unexpired leases and executory contracts, as applicable, within the meaning of the Bankruptcy Code.

GG. All amounts that are required to be paid in connection with the assumption and assignment of the Acquired Contracts that are due or owing under sections 365(b)(1)(A) and (B), and 365(f)(2)(A) of the Bankruptcy Code to (i) cure any defaults under the Acquired Contracts specified in this Order or (ii) pay all actual or pecuniary losses that have resulted from such defaults, are set forth on Exhibit 2 hereto (the "Cure Costs").

HH. Any objections to the Cure Costs associated with such Acquired Contracts are resolved as set forth on Exhibit 2 to this Order. To the extent that any counterparty failed to timely object to (i) the proposed assumption and assignment of the applicable Acquired Contract, or (ii) the Cure Cost associated with the applicable Acquired Contract, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignments of its respective Acquired Contract to the Buyer as expressly set forth on Exhibit 2 to this Order.

II. The promises of the Debtor to pay the Cure Costs (in accordance with the Purchase Agreement) and the Buyer's promise to perform the obligations under the Acquired Contracts after the Closing (in accordance with the Purchase Agreement) shall constitute adequate assurance of the Buyer's future performance under the Acquired Contracts specified in this Order that are being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

JJ.     Adequate notice and opportunity to be heard was provided to counterparties to executory contracts and unexpired leases to be assumed and assigned pursuant to this Order. Further, counterparties received adequate notice and an opportunity to object to the amount of any Cure Costs owed by the Debtor's estate on account of the Real Property Leases and the Acquired Contracts to be assumed and assigned to the Buyer under the Purchase Agreement, and as identified in attached Exhibit 2.

KK.     The assumption and assignment of the  Acquired Contracts is integral to the Purchase Agreement and is in the best interests of the Debtor and its estates, creditors and equity holders and represents the exercise of the Debtor's sound business judgment.

LL.     Any objections to the assumption and assignment of any of the Acquired Contracts to the Buyer are hereby overruled.

MM.     Neither the Buyer nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Purchase Agreement); (ii) have, *de facto* or otherwise, merged with or into any of the Debtors; (iii) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Buyer and the Debtors); or (iv) be holding itself out to the public as a continuation of the Debtors.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities.

NN.     The Debtor has good, valid and marketable title to all of the Acquired Assets. The Acquired Assets are to be transferred free and clear of any and all Released Liens, Claims and Interests (as defined in paragraph 12 below).  All of the Acquired Assets are, or will on the Closing Date, be owned by the Debtor and will be transferred to the Buyer under and pursuant to the terms of the Purchase Agreement.

OO.    All objections, if any, to the Sale Motion and to approval of the Purchase Agreement, including the transactions contemplated thereby, have been withdrawn, resolved or overruled.

Accordingly, and for good cause appearing therefor,

**IT IS HEREBY ORDERED**:

**General Provisions**

1.    The Sale Motion is granted in its entirety, subject to the terms and conditions set forth in this Order.

2.    This Court's findings of fact and conclusions of law, set forth in the Sale Procedures Order, are incorporated herein by this reference.

3.    Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Approval Hearing, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

4.    Notice of the Sale Approval Hearing was fair, proper and sufficient under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006 and the local rules.

**Approval of the Purchase Agreement and Sale**

5.    The terms, conditions, and transactions contemplated by the Purchase Agreement and all other ancillary documents are hereby approved in all respects.

6.    The Debtor is hereby authorized and directed under 11 U.S.C. §§ 105(a) and 363(b), (c), (f), (m) and (n) to sell the Acquired Assets to the Buyer without further order of this Court.

7.    The Debtor is hereby authorized, empowered, and directed to (i) perform under, consummate, and implement the Purchase Agreement, (ii) execute all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the transactions contemplated thereby, (iii) take all further actions as may be necessary or

appropriate for the purposes of assigning, transferring, granting, conveying, encumbering or transferring the Acquired Assets as contemplated by the Purchase Agreement, and (iv) take such other and further steps as are contemplated by the Purchase Agreement or reasonably required to fulfill the Debtor's obligations under the Purchase Agreement, all without further order of this Court.

8.       The Sale of the Acquired Assets and the assumption and assignment of the Acquired Contracts identified in attached Exhibit 2 and the consideration provided by Buyer under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other laws, rules or regulations of the United States, any state, county, township city, municipality, territory or possession, and the District of Columbia.

9.       The Buyer shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362 to enforce any of its remedies under the Purchase Agreement or any other Sale related document.  The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

10.      The validity of the Sale approved hereby shall not be affected by the appointment of a trustee or successor trustee, the dismissal of the Chapter 11 Case, or its conversion to another chapter under title 11 of the United States Code.  This Order shall be binding in all respects upon the Debtor, its bankruptcy estate, all creditors of, and holders of equity interests in, the Debtor, all holders of liens, claims or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer, and all successors and assigns of the Buyer upon conversion of the Debtor's Chapter 11 Case from chapter 11 to chapter 7.  This Order and the Purchase Agreement shall inure to the benefit of the Debtor's estate and its creditors, the Buyer and the respective successors, assigns and grantees.

11. The Sale of the Acquired Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise.

**Transfer of Acquired Assets**

12. Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to sell the Acquired Assets to the Buyer in accordance with the Purchase Agreement, and to transfer, assign and convey the Acquired Assets to the Buyer on the "Closing Date" (as defined in the Purchase Agreement). Upon the Debtor's receipt of the Total Consideration, such Sale, transfer, assignment and conveyance shall constitute a legal, valid, binding, and effective sale, transfer, assignment and conveyance of such Acquired Assets, which shall vest Buyer with all right, title, and interest of the Debtor to the Acquired Assets, free and clear of all (i) deeds of trust, mortgages, liens (as defined in section 101(37) of the Bankruptcy Code, and including but not limited to, mechanics', materialmens' and other consensual or statutory liens), financing statements and any other encumbrance accruing or arising at any time prior to the Closing Date (collectively, "Liens"), (ii) all debts arising under, relating to, or in connection with any act of the Debtors, all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, interests, duties, covenants, actions, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Acquired Assets and all debts arising in any way in connection with any acts of the Debtors), personal injury and other tort claims, covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, successor, transferee, product liability, environmental, tax and other liabilities and claims of any kind or nature, any claims arising under the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, et seq., or any collective bargaining agreements or other applicable law, and all causes of action and liabilities of any kind and nature, whether arising prior to or subsequent to the commencement of the

Chapter 11 Case, in each case whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, secured or unsecured, senior or subordinate, legal or equitable, or created or imposed by agreement, understanding, judgment, law, equity or otherwise, including pursuant to environmental law, anti-trust law, labor law, *de facto* merger, mere continuation, or substantial continuity (collectively, "Claims"), relating to, accruing or arising at any time prior to the Closing Date, and (iii) other interests or any other claim of any kind or nature whatsoever, including but not limited to, any theory of successor liability, successor-in-interest liability and claims, transferee liability (collectively, "Interests"). Such Liens, Claims and Interests shall exclude the Assumed Liabilities (as defined in the Purchase Agreement) and are collectively referred to as the "Released Liens, Claims and Interests."

13.     Except as explicitly authorized for payment by this Order, the Released Liens, Claims and Interests shall attach, as adequate protection to the holder thereof pursuant to 11 U.S.C. § 363(e), to the proceeds of the Sale, with the same priority, validity, force, effect and scope as of the petition date of the Debtor's Chapter 11 Case, subject to any and all defenses, offsets, counterclaims and/or other rights of any party relating thereto; provided, however, that the Debtor shall disburse, or cause to be disbursed, the Sale proceeds directly from escrow to satisfy (i) any outstanding property taxes relating to the Acquired Assets, subject to requirements of sections 2.3 and 6.1 of the Purchase Agreement; and (ii) Cure Costs, if any, with each such payment to be made concurrent with the Closing.

14.     On or before the Closing Date, each of the creditors of the Debtor's estate is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the estate's creditors, to execute and deliver such documents and take all other actions as may be reasonably necessary to release the Released Liens, Claims and Interests, if any, as such Released Liens, Claims or Interests may have been recorded or may otherwise exist.

15.     Each of the Debtor's creditors is hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release such creditor's Liens, Claims or Interests in the Acquired Assets, if any, as such Liens, Claims or Interests may

have been recorded or may otherwise exist.  If any person or entity that has filed or recorded

financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens*, or other

documents or agreements evidencing any Liens, Claims or Interests in, against or upon the

Acquired Assets prior to the Closing Date of the Sale, in proper form for filing and executed by

the appropriate parties, and has not executed termination statements, instruments of satisfaction,

releases of all Liens, Claims or Interest that the person or entity has with respect to the Acquired

Assets, then on the Closing Date, or as soon as possible thereafter, (a) the Debtors are hereby

authorized and directed to execute and file, or as appropriate record, such statements,

instruments, releases and other documents on behalf of the person or entity with respect to the

Acquired Assets and (b) the Buyer is hereby authorized on behalf of each of the Debtor's

creditors, to file, register, or otherwise record a certified copy of this Order, which, once filed,

registered or otherwise recorded, shall constitute conclusive evidence of the release of all

Claims, Liens and Interests in, against, or upon the Acquired Assets of any kind or nature

whatsoever.

       16.    All entities who are presently, or on the Closing Date may be, in possession of

some or all of the Acquired Assets (other than the Deposit and the Excluded Assets under the

terms of the Purchase Agreement) are hereby directed to surrender possession of the Acquired

Assets to the Buyer on the Closing Date, with the Liens, Claims and Interests of such entity to be

satisfied solely from the proceeds of the Sale of the Acquired Assets.

       17.    On the Closing Date, this Order shall be construed and shall constitute for any and

all purposes a full and complete general assignment, conveyance and transfer of the Acquired

Assets or a bill of sale transferring good and marketable title in the Acquired Assets to Buyer.

Each and every federal, state, and local governmental agency or department is hereby directed to

accept any and all documents and instruments necessary and appropriate to consummate the

transactions contemplated by the Purchase Agreement.  A certified copy of this Order may be

filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Released

Liens, Claims or Interests of record.

18.     This Order is and shall be binding upon and shall govern the acts of all persons and entities, including, without limitation, (i) all filing agents, (ii) filing officers, (iii) title agents, (iv) title insurers, (v) recorders of mortgages, (vi) recorders or registrars of deeds, deeds of trust, financing statements and security agreements, (vii) administrative agencies, (viii) secretaries of state, (ix) federal, state and local governmental authorities, agencies, departments, and (x) all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing persons and entities is hereby directed to accept for filing and recordation any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  If any such person or entity fails to comply with the provisions of this paragraph, such person or entity shall nonetheless be bound to any and all documents necessary or desirable to effect the transactions contemplated under the Purchase Agreement.

19.     All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, police and regulatory authorities, lenders, trade creditors, judgment holders, litigation claimants and other creditors, holding Liens, Claims or other Interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Acquired Assets to the Buyer, hereby are permanently barred, estopped and enjoined from asserting against the Buyer, the Buyer's successors or assigns, or the Acquired Assets, any such persons' or entities' Released Liens, Claims or Interests in and to the Acquired Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates, its successors, assets or properties; (ii) enforcing,

attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim or Interest against the Buyer, any of its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated on or through the Acquired Assets. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

<u>**Acquired Contracts and Real Property Leases**</u>

20.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale as contemplated under the Purchase Agreement, the Debtor's assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Purchase Agreement, of the Acquired Contracts specified in this Order and as identified in <u>Exhibit 2</u> hereto is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

21.     The Debtor is authorized in accordance with sections 105(a) and 365(a),(f) and other relevant provisions of the Bankruptcy Code to (a) assume and assign to Buyer, effective upon the Closing of the Sale as contemplated under the Purchase Agreement, the Acquired Contracts specified in <u>Exhibit 2</u> to in this Order; and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and  the Acquired Contracts specified in this Order.

22. Any Cure Costs due and owing on account of the assumption and assignment of the Acquired Contracts set forth in the Purchase Agreement and specified in Exhibit 2 to this Order, shall be paid by the Debtor out of the Sale proceeds in accordance with paragraph 13 of this Order. The payment of the applicable Cure Costs, in the amounts set forth in Exhibit 2 hereto, shall (a) effect a cure of all defaults existing thereunder as of the date that such Acquired Contract is assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. To the extent that any counterparty to an Acquired Contract did not object timely to its Cure Costs in accordance with the Procedures Order, such counterparty is deemed to have consented to such Cure Cost and the assignments of its respective Acquired Contract to the Buyer.

23. The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any of the Acquired Contracts set forth in Exhibit 2 hereto shall not be a waiver of such terms or conditions, or of the Debtor's and Buyer's rights to enforce every term and condition of the such leases and contracts.

24. Except as expressly provided for in this Order or the Purchase Agreement, the Buyer shall not have any liability for any obligations of the Debtor arising under or related to the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein, in the Purchase Agreement, the Buyer shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, liabilities relating to or arising from any environmental laws, and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing Date.

25.     Other than as authorized by the Bankruptcy Code, any provisions in any of the Acquired Contracts identified in attached Exhibit 2 that prohibit or condition the assignment of such Real Property Leases or Acquired Contracts, or that allow the counterparty to such leases and contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such lease or contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  There shall be no rent accelerations, assignment fees, increases or any other fees, amounts or costs charged to the Buyer or the Debtor as a result of the assumption and assignment of the Acquired Contracts. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Acquired Contracts have been satisfied.  On the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Acquired Contracts.

26.     On the Closing Date (i) the Acquired Contracts identified in attached Exhibit 2 will remain in full force and effect, (ii) no default shall exist under the Acquired Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default, (iii) the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Acquired Contracts, and (iv) the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Acquired Contracts.

27.     The Buyer has provided adequate assurance of future performance under the relevant Acquired Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

28.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Acquired Contracts identified in attached Exhibit 2 are forever barred and permanently enjoined from raising or asserting against the Debtor or the Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or

related to the Acquired Contracts existing as of the Closing Date or arising by reason of the Closing.

## Other Provisions

29.     The procedures set forth in the Sale Motion whereby the Debtor may solicit, evaluate, and accept or reject overbids are approved in their entirety and are deemed to have been complied with in all respects relating to the Sale transaction contemplated by the Purchase Agreement.

30.     The Sale, as contemplated by the Purchase Agreement, is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of such Sale, unless and solely to the extent such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer of the Acquired Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

31.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) the Chapter 11 Case, (ii) any subsequent chapter 7 case into which the Chapter 11 Case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

32.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Chapter 11 Case, the terms of this Order shall govern.

33.     This Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. All of the provisions of this Order are non-severable and mutually dependent.

34.     The Purchase Agreement and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such

parties, and in accordance with the terms and conditions of the Purchase Agreement, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor or its bankruptcy estate.

35.     So long as the Chapter 11 Case remains open, this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or that has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes, controversies or claims concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to the Buyer; (ii) interpret, implement and enforce the provisions of this Order; (iii) resolve disputes concerning the Purchase Agreement, (iv) protect the Buyer against any Released Liens, Claims or Interest, and (v) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Acquired Contracts identified in attached Exhibit 2.

36.     The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

37.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale transactions contemplated by the Purchase Agreement.

38.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, and any other applicable rule or law, this Court expressly

finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of this Order as set forth herein.

40.     The Debtor shall execute whatever documents are reasonably requested or required by Buyer and any other parity to effectuate the terms, conditions, and obligations of this Order.

**IT IS SO ORDERED**.

*/e/ Gregory F. Kishel*

Dated: <u>  May 10  </u>, 2011

_____
Gregory F. Kishel
Chief United States Bankruptcy Judge

SFI-684370v1

**EXHIBIT 1**

**ASSET PURCHASE AGREEMENT**


**between**


**STRATEGIC RESTAURANTS ACQUISITION COMPANY II, LLC,**

**as "Buyer,"**

**and**


**DUKE AND KING MISSOURI, LLC**

**as "Seller"**



**Dated as of April 27, 2011**

# Table of Contents

ARTICLE I.     PURCHASE AND SALE OF THE ACQUIRED ASSETS ..............................1

    Section 1.1    Transfer of Acquired Assets.........................................................................1
    Section 1.2    Excluded Assets. ..............................................................................................3
    Section 1.3    Assumption of Liabilities. ................................................................................4
    Section 1.4    Excluded Liabilities. ........................................................................................4

ARTICLE II.    CONSIDERATION .........................................................................................4

    Section 2.1    Purchase Price. .................................................................................................4
    Section 2.2    On-Hand Inventory; On-Hand Cash. ...............................................................4
    Section 2.3    Prorations. .......................................................................................................5
    Section 2.4    Closing Payments .............................................................................................5

ARTICLE III.   CLOSING AND DELIVERIES.........................................................................5

    Section 3.1    Closing. ............................................................................................................5
    Section 3.2    Seller's Deliveries. ...........................................................................................6
    Section 3.3    Buyer's Deliveries............................................................................................7

ARTICLE IV.    REPRESENTATIONS AND WARRANTIES.....................................................7

    Section 4.1    Representations and Warranties of Seller. .......................................................7
    Section 4.2    Representations and Warranties of Buyer.........................................................8
    Section 4.3    Warranties Are Exclusive. .............................................................................10

ARTICLE V.     COVENANTS AND OTHER AGREEMENTS.................................................10

    Section 5.1    Covenants of Seller. .......................................................................................10
    Section 5.2    Covenants of Buyer.........................................................................................12
    Section 5.3    Other Covenants..............................................................................................12

ARTICLE VI.    TAXES; AllOCATION.....................................................................................13

    Section 6.1    Taxes Related to Purchase of Acquired Assets..............................................13
    Section 6.2    Allocation of Purchase Price. .........................................................................13

ARTICLE VII.   CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES ............13

    Section 7.1    Conditions Precedent to Performance by Seller..............................................13
    Section 7.2    Conditions Precedent to the Performance by Buyer. .....................................14

ARTICLE VIII.  TERMINATION.................................................................................................15

    Section 8.1    Conditions of Termination. .............................................................................15
    Section 8.2    Effect of Termination; Remedies. ...................................................................16
    Section 8.3    Specific Performance .....................................................................................16
    Section 8.4    Exclusive Remedy; Waiver.............................................................................16

ARTICLE IX.    SURVIVAL AND INDEMNIFICATION........................................................16

    Section 9.1    Survival; Indemnification................................................................................16
    Section 9.2    Specific Performance. .....................................................................................17
    Section 9.3    Exclusive Remedy...........................................................................................17

ARTICLE X.     MISCELLANEOUS .................................................................................17

    Section 10.1      Allowed Administrative Expenses...........................................17
    Section 10.2      Employees........................................................................17
    Section 10.3      Risk of Loss.....................................................................18
    Section 10.4      [Intentionally Omitted].....................................................18
    Section 10.5      Alternative Transaction.....................................................18
    Section 10.6      Further Assurances...........................................................18
    Section 10.7      Successors and Assigns.....................................................18
    Section 10.8      Governing Law; Jurisdiction..............................................19
    Section 10.9      Expenses..........................................................................19
    Section 10.10     Broker's and Finder's Fees. ...............................................19
    Section 10.11     Severability. ....................................................................19
    Section 10.12     Notices............................................................................19
    Section 10.13     Amendments; Waivers......................................................20
    Section 10.14     Public Announcements......................................................21
    Section 10.15     Entire Agreement. ............................................................21
    Section 10.16     No Third Party Beneficiaries. ............................................21
    Section 10.17     Headings..........................................................................21
    Section 10.18     Counterparts; Delivery......................................................22
    Section 10.19     Construction. ...................................................................22

ARTICLE XI.    DEFINITIONS...........................................................................22

## EXHIBITS

Exhibit A...................................................................................... Sale Order

Exhibit B ..................................................................Group Two Missouri Restaurant

## SCHEDULES

Schedule 1.1(g) ............................................................... Acquired Contracts

Schedule 4.1(f)...............................................................................Litigation

Schedule 4.1(g) ...................................................................................... Lease

Schedule 6.2 ................................................................Purchase Price Allocation

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**"), dated as of April 27, 2011 (the "**Execution Date**"), is made by and between Duke and King Missouri, LLC ("**Seller**"), and Strategic Restaurants Acquisition Company II, LLC, a Delaware limited liability company ("**Buyer**"). Unless otherwise set forth, capitalized terms used in this Agreement are defined or cross-referenced in Article XI.

## RECITALS

WHEREAS, on December 4, 2010 (the "**Petition Date**"), Seller commenced a voluntary case under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101-1532 (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Minnesota (the "**Bankruptcy Court**");

WHEREAS, this Agreement shall constitute the APA (as such term is defined in the Sale Procedures);

WHEREAS, Seller has informed Buyer that Buyer is a "Qualified Bidder" pursuant to the terms of the Sale Procedures, and Buyer, pursuant to the terms of this Agreement, desires to purchase the Acquired Assets and assume the Assumed Liabilities from Seller, and Seller desires to sell, assign, transfer and deliver to Buyer the Acquired Assets together with the Assumed Liabilities, all in the manner and subject to the terms and conditions set forth in this Agreement and the Sale Order (defined below) and in accordance with sections 105, 363, 365, 1146 and all other applicable provisions of the Bankruptcy Code; and

WHEREAS, Buyer has made, or will make concurrent with the execution of this Agreement, a deposit in an amount equal to $2,250 (the "**Deposit**") into an interest bearing escrow account (the "**Deposit Escrow Account**") to be established and governed by the terms of the Deposit Escrow Agreement executed concurrently herewith..

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## ARTICLE I.    PURCHASE AND SALE OF THE ACQUIRED ASSETS

Section 1.1 Transfer of Acquired Assets.

At the Closing, and upon the terms and conditions set forth herein, Seller shall sell, assign, transfer and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in, to and under the following properties, assets and rights owned by Seller located at or used solely in connection with the Group Two Missouri Restaurant, free and clear of all Liens, liabilities, claims, interests and encumbrances, other than Permitted Liens (collectively the "**Acquired Assets**"):

(a) All cash on-hand at Seller's Group Two Missouri Restaurant on the Closing Date, in an amount no less than $1,000, and provided that such cash must be in United States currency (the "**On-Hand Cash**") (for clarity, checks or similar cash equivalents and cash in transit are not included in On-Hand Cash);

(b) The real property leased pursuant to the lease included in the Acquired Contracts, including all Leasehold Improvements thereon (collectively, the "**Leased Real Property**");

(c) All machinery, equipment, furniture, fixtures, office equipment, computer hardware, uniforms, Supplies and other related tangible personal property owned or leased by Seller, and all warranties and licenses of Seller thereunder or related thereto;

(d) All prepaid expenses of Seller;

(e) All deposits paid by Seller relating to or arising from the Acquired Assets, including, without limitation, the deposits under the Real Property Lease, but excluding Utility Deposits and Corporate Level deposits;

(f) All advertising and promotional materials relating to the Business and any rights thereto possessed, or entitled to be used, by Seller;

(g) The Franchise Agreement and those other Contracts listed in Schedule 1.1(g) (collectively, the "**Acquired Contracts**");

(h) All Inventory on-hand in the Group Two Missouri Restaurant as determined pursuant to Section 2.2 (the "**On-Hand Inventory**");

(i) All permits, authorizations, approvals, options, consents, and licenses, and all pending applications therefor (collectively, the "**Permits**") issued or to be issued to Seller as of Closing by any Government, in each case to the extent transferable;

(j) All insurance benefits, rights and proceeds arising from or relating to any event or incident that affects, impacts or alters any Acquired Asset between the Execution Date and the Closing Date;

(k) All rebates or "pre-bates," including without limitation those on account of, accrued by or due from The Coca Cola Company, Dr. Pepper/Seven Up Company, Restaurant Services, Inc., or any affiliate therefrom (the "**Rebates**"), but only to the extent allocable to the post-Closing period;

(l) To the extent relating to the Leased Real Property, any and all building, architectural and engineering plans, specifications and drawings, surveys, and environmental and soils reports in Seller's possession or control;

(m)     All of Seller's goodwill, including but not limited to all franchise rights, relating to, or in connection with, the Business;

(n)     All other items of trade fixtures and personal property located at and/or used in connection with the ownership, use, occupancy or operation of the Business, including signage, telephone numbers, facsimile numbers, listings and directories, photographs, group files, credit records, labels, promotional literature, security codes, all records in sales and catering databases, all customer data, and all other books, records, files and papers, in whatever format, but in each case excluding Employee Records; and

(o)     Except as otherwise excluded under Section 1.2, all rights, claims, rights of offset, causes of action, lawsuits, judgments and other claims or demands of any nature against any third party arising out of, and only with respect to, the Acquired Assets or Assumed Liabilities.

Section 1.2    Excluded Assets.

Notwithstanding anything to the contrary in this Agreement, Seller shall retain its right, title and interest in, to and under all of its properties, assets and rights not otherwise an Acquired Asset (collectively, the "**Excluded Assets**"), including without limitation:

(a)     All Seller's cash, checks, cash equivalents, and cash in transit, but excluding any On-Hand Cash;

(b)     All trade accounts receivable of Seller in existence as of the Closing Date (collectively, the **"Accounts Receivable"**);

(c)     All equity ownership interests in Seller;

(d)     All rights to refunds of or credits for Taxes of Seller previously paid by Seller prior to the Closing Date, and any records relating to Taxes of Seller;

(e)     Subject to Section 1.1(j) and Section 10.3, all insurance premiums, policies, contracts and coverage obtained by Seller and all rights to insurance proceeds or other Contracts of insurance or indemnity (or similar agreement) recoveries;

(f)     All avoidance claims and causes of action arising under Chapter 5 of the Bankruptcy Code and any related claims and causes of action under applicable non-bankruptcy law arising out of the same set of facts, and the proceeds from any of the foregoing;

(g)     All rights of and benefits to Seller under this Agreement, the Ancillary Agreements or any other agreements or instruments otherwise delivered, executed or made in connection with this Agreement;

(h)     The Contracts to which Seller is a party that are not an Acquired Contract and all deposits, claims, rebates or refunds thereunder or related thereto;

(i)     All Rebates but only to the extent allocable to the pre-Closing period;

(j)     All utility deposits paid by Seller prior to the Closing Date and all rights to the refund of all or any portion thereof (the "**Utility Deposits**");

(k)     Employee Records and Corporate seals, minute books, charter documents, stock transfer records, record books, original Tax and financial records and such other files, books and records relating to any of the Excluded Assets or to the organization, existence or capitalization of any Seller; and

(l)     All Corporate Level assets, properties and rights.

Section 1.3  Assumption of Liabilities.

At the Closing, Buyer shall assume, and thereafter pay, perform and discharge when due, only such liabilities that first occur or arise after the Closing Date and that relate to any of the Acquired Assets, including without limitation, any Acquired Contract (collectively, the "**Assumed Liabilities**").

Section 1.4  Excluded Liabilities.

Notwithstanding anything to the contrary in this Agreement, Seller shall retain, and remain liable and obligated for any of its respective liabilities not otherwise expressly included in the Assumed Liabilities (collectively, the "**Excluded Liabilities**").

## ARTICLE II.     CONSIDERATION

Section 2.1  Purchase Price.

The aggregate consideration for the Acquired Assets shall be (a) the sum of (i) $12,500 in cash, plus (ii) the amount of On-Hand Cash and the On-Hand Inventory, each as determined pursuant to Section 2.2 (the amounts described in clauses (i) and (ii) together, the "**Unadjusted Purchase Price**"), subject to adjustment as provided in Section 2.3 (as so adjusted, the "**Final Purchase Price**"); and (b) the assumption by Buyer of the Assumed Liabilities (such assumption, together with the Final Purchase Price, the "**Total Consideration**").

Section 2.2  On-Hand Inventory; On-Hand Cash.

Immediately after the close of business on the day before the Closing Date, but in no event later than 8:00 p.m., Seller and Buyer shall perform a physical count of all Inventory and will count the On-Hand Cash, in each case at the Group Two Missouri Restaurant. Seller shall create a written summation of the amount of (i) Inventory counted and its value, each subtotaled by restaurant and by type, and (ii) On-Hand Cash, all as reasonably approved by Buyer. A copy of the approved summations shall be provided to Buyer. The physical count of the Inventory and

the Inventory valuation shall be reasonable, but otherwise shall be based on and in accordance with Seller's prior practices and methodologies. The mutually agreed upon valuation of the Inventory shall be the value of the On-Hand Inventory for purposes of this Agreement. The mutually agreed amount of On-Hand Cash shall be the value of the On-Hand Cash for purposes of this Agreement.

Section 2.3 Prorations.

Seller shall calculate, in good faith, prorated amounts (the "**Proration**") for (a) rent under the Real Property Lease, (b) prepaid expenses, (c) Rebates, (d) Property Taxes, (e) common area maintenance charges, and (f) charges for sewer, water, fuel, telephone, electricity and other utilities (items (a) through (f) together, the "**Prorated Amounts**"), as of the Closing Date for the Group Two Missouri Restaurant. For the Proration, Seller shall be liable to the extent the Prorated Amounts relate to any time period up to but not including the Closing Date and Buyer shall be liable to the extent the Prorated Amounts relate to periods including and after the Closing Date. The Proration shall credit Seller for any deposits included in the Acquired Assets. Seller shall provide Buyer the Proration, and reasonable supporting documentation, at least three (3) days prior to the Closing Date. The Proration shall be based on the latest available rates, valuations, readings, or such other information or documents that most accurately reflect current charges, if known, or otherwise reasonably estimate the outstanding charges for the Prorated Amounts as of the Closing Date. Notwithstanding that the Proration may contain Seller's good faith estimates to prorate one or more of the Prorated Amounts, the Proration shall be final unless based on materially incorrect information. On the Closing Date, the Unadjusted Purchase Price shall be (i) increased by the net amount of the Proration if such amount is in Seller's favor, and (ii) decreased by the net amount of the Proration if such amount is in Buyer's favor.

Section 2.4     Closing Payments     At the Closing, Buyer shall pay the Unadjusted Purchase Price as follows:

(a)     by instruction to the Escrow Agent to release the Deposit from the Deposit Escrow Account, by wire transfer of immediately available funds to an account specified by Seller, or by the Bankruptcy Court, as the case may be; and

(b)     by wire transfer of immediately available funds of the remaining balance of the Final Purchase Price to an account specified by Seller, or the Bankruptcy Court, as the case may be.

## ARTICLE III.     CLOSING AND DELIVERIES

Section 3.1 Closing.

The consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place no later than ten (10) days following entry by the Bankruptcy Court of the Sale Order, provided that such order conforms to the criteria specified in the definition of Sale Order in Article XI hereof, and provided that such closing shall occur simultaneously with the Buyer's closing on the Group One Missouri Restaurants, or at such other time as may be mutually agreed to by the parties (the "**Closing Date**"), and shall be effective as of 12:01 a.m. on the Closing

Date.  Subject to such different procedures agreed upon by the parties in writing, the Closing shall take place via a "paper" close wherein Buyer and Seller shall exchange such documents and instruments or copies thereof sufficient to effect the Closing by electronic or other means without the use of a "roundtable" closing at a particular location. All proceedings to be taken and all documents to be executed and delivered by the parties at the Closing shall be deemed to have been taken and executed simultaneously and no proceedings shall be deemed to have been taken nor documents executed or delivered until all have been taken, executed and delivered.

Section 3.2 <u>Seller's Deliveries</u>.

Seller shall execute (as appropriate) and deliver to Buyer or shall deposit with the Escrow Agent for the benefit of Buyer, at or prior to the Closing or such other time as set forth in this Agreement:

(a)     A bill of sale for all of the Acquired Assets that are tangible personal property, without representation, warranty or covenant of any kind, and any such other good and sufficient instruments of sale, transfer, conveyance and assignment as shall be necessary or appropriate to sell, transfer, convey and assign to Buyer, in accordance with the terms hereof, title to the Acquired Assets free and clear of all Liens, liabilities, claims, interests and encumbrances, other than Permitted Liens;

(b)     An agreement for the assumption of the Assumed Liabilities, without representation, warranty or covenant of any kind;

(c)     For all intangible Acquired Assets, including all Acquired Contracts, (i) an agreement of assumption and assignment, without any representation, warranty or covenant of any kind, or (ii) an Assignment Order effecting the same;

(d)     For the Leased Real Property, including the Real Property Lease, (i) an agreement of assignment and assumption, without any representation, warranty or covenant of any kind, or (ii) an Assignment Order effecting the same, in each case, sufficient to sell, transfer, convey and assign to Buyer, the Leased Real Property, including the Real Property Lease, free of all Liens, liabilities, claims, interests and encumbrances, other than Permitted Liens and the Assumed Liabilities;

(e)     A certificate, dated the Closing Date, signed by its Secretary, certifying to the accuracy of the matters set forth in <u>Section 7.2(a)</u>;

(f)     All consents, orders and approvals of the Bankruptcy Court, including, without limitation, a certified copy of the Sale Order; and

(g)     Such other agreements, documents or instruments that Buyer or the Escrow Agent may reasonably request, the form and substance of which are acceptable to Buyer.

Section 3.3 Buyer's Deliveries.

Buyer shall deliver to Seller or shall deposit with the Escrow Agent for the benefit of Seller at or prior to the Closing or such other time as set forth:

(a)     The Final Purchase Price in accordance with Section 2.4;

(b)     A duly executed counterpart by Buyer of each of the documents listed in Sections 3.2(b), (c), (d), and (i);

(c)     A certificate, dated the Closing Date, signed by its Secretary, certifying the accuracy of the matters set forth in Section 7.1(a); and

(d)     Such other agreements, documents or instruments that Seller may reasonably request, the form and substance of which are acceptable to Seller.

## ARTICLE IV.     REPRESENTATIONS AND WARRANTIES

Section 4.1 Representations and Warranties of Seller.

Seller hereby represents and warrants to Buyer as of the Execution Date as follows:

(a)     Authorization and Validity. Subject to the Bankruptcy Court's entry of the Sale Order, (i) Seller has all requisite power and authority to enter into this Agreement and any Ancillary Agreements to which Seller is a party and to perform its obligations hereunder and thereunder; and (ii) this Agreement constitutes Seller's valid and binding obligation, enforceable against Seller in accordance with its respective terms.

(b)     No Conflict or Violation. The execution, delivery and performance by Seller of this Agreement and any Ancillary Agreement to which Seller is a party does not violate or conflict with any provision of Seller's certificate of organization, operating agreement, or similar organizational documents.

(c)     Title to Assets.  Seller owns, and has good, valid, and marketable title to, all of the Acquired Assets.

(d)     Consents and Approvals.  Other than such consents, waivers, authorizations or approvals that have been obtained, and subject to Buyer's receipt of the Sale Order, no consent, waiver, authorization or approval of any Person or declaration, filing or registration with any Government is required in connection with the execution and delivery by Seller of this Agreement or the performance by Seller of its obligations hereunder.

(e)     Contracts. Seller has provided Buyer access to a correct and complete copy of each Acquired Contract (and all amendments, modifications, and supplements thereto).  Subject to laws of general application relating to bankruptcy, insolvency

and the relief of debtors, each of the Acquired Contracts is valid and in full force and effect in accordance with its terms, and no option to renew or extend such Acquired Contracts has been missed or will lapse before the Closing.

(f)     Litigation.  Except as set forth on Schedule 4.1(f) and for the Chapter 11 Cases and proceedings therein, there is no action, suit, or proceeding, in equity or at law, arbitration or administrative or other proceeding by or before any Person (including, without limitation, any Government), pending, or to Seller's knowledge, threatened in writing against Seller which, if adversely determined, would result in a material adverse effect on the Business or the Acquired Assets at any time before or after the Closing Date, and Seller has not received written notice that any of the Acquired Assets are subject to any judgment, order or decree entered in any material lawsuit or proceeding that would continue to affect the Acquired Assets after Closing, nor be binding on Buyer.

(g)     Lease.  Except as set forth on Schedule 4.1(g), Seller owns and holds the leasehold estate purported to be granted by the Real Property Lease, and the Real Property Lease is in full force and effect and constitutes a valid and binding obligation of Seller, and no option to renew or extend such Real Property Lease has been missed or will lapse before the Closing.

Section 4.2 Representations and Warranties of Buyer.

Buyer hereby represents and warrants to Seller as of the Execution Date as follows:

(a)     Corporate Organization. Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite corporate power and authority to own its properties and assets and to conduct its business as now conducted.

(b)     Qualification to Conduct Business.  Buyer is duly qualified to do business as a foreign corporation and is in good standing in every jurisdiction in which the character of the properties owned or leased by it or the nature of the business conducted by it makes such qualification necessary.

(c)     Authorization and Validity.  Buyer has all requisite corporate power and authority to enter into this Agreement and any Ancillary Agreement to which Buyer is a party and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and any Ancillary Agreement to which Buyer is a party and the performance of Buyer's obligations hereunder and thereunder have been, or on the Closing Date will be, duly authorized by all necessary corporate action of Buyer, and no other corporate proceedings on the part of Buyer are necessary to authorize such execution, delivery and performance. This Agreement has been, and any Ancillary Agreement to which Buyer is a party has been duly executed by Buyer and constitutes Buyer's valid and binding obligations, enforceable against it in accordance with their respective terms, except as may be

limited by bankruptcy or other laws affecting creditors' rights and by equitable principles.

(d)     No Conflict or Violation.  The execution, delivery and performance by Buyer of this Agreement and any Ancillary Agreement to which Buyer is a party do not (i) violate or conflict with any provision of Buyer's certificate of organization, operating agreement or similar organizational documents; (ii) violate any provision of law, or any order, judgment or decree of any court or Government applicable to Buyer or any of its properties or assets; or (iii) violate or result in a breach of or constitute (with due notice or lapse of time or both) a default under any material Contract to which Buyer is party or by which Buyer is bound or to which any of Buyer's properties or assets is subject.

(e)     Consents and Approvals.  Other than the Sale Order, no consent, waiver, authorization or approval of any Person or declaration, filing or registration with any Government is required in connection with the execution and delivery by Buyer of this Agreement or any Ancillary Agreement to which Buyer is a party or the performance by Buyer of its obligations hereunder or thereunder.

(f)     Adequate Assurances Regarding Acquired Contracts.  To the best of its knowledge, Buyer is capable of satisfying the conditions contained in sections 365(b) and 365(f) of the Bankruptcy Code with respect to the Acquired Contracts. Throughout this Agreement, the term "knowledge" means in the case of Buyer, the actual knowledge of Buyer's Responsible Officers.

(g)     Franchise Agreement.  As of the Execution Date, Buyer has obtained, and at the Closing will provide Seller written evidence of, Franchisor's consent for the assignment to, and assumption by, Buyer of the Franchise Agreement (or alternatively, consent for the execution of a new Franchise Agreement as may be required by Franchisor), and waiver by Franchisor of its rights of first refusal with respect to the transactions contemplated by this Agreement ("**Franchisor's Consent**").

(h)     Litigation.  There are no claims, actions, suits, proceedings or investigations pending, or to Buyer's knowledge, threatened against Buyer, or any Related Person of Buyer, that would reasonably be expected to affect the ability of Buyer to consummate the transactions contemplated by this Agreement and each Ancillary Agreement.

(i)     Adequacy of Funds.  Buyer has cash on hand, existing availability under existing lines of credit, or other immediately available financial resources sufficient to pay the balance of the Unadjusted Purchase Price at Closing, and any adjustments thereto pursuant to Section 2.3 thereafter.

Section 4.3 Warranties Are Exclusive.

The parties acknowledge that the representations and warranties contained in this Article IV are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed. Without limiting the foregoing, Buyer acknowledges that, except for the representations and warranties contained in Section 4.1, the Acquired Assets are conveyed "AS IS," "WHERE IS" and "WITH ALL FAULTS" and that all warranties of merchantability or fitness for a particular purpose are disclaimed. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTION 4.1, SELLER AND ITS RELATED PERSONS AND AFFILIATES HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING ANY (A) USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (B) FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES OR (C) OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS. Buyer further acknowledges that Buyer has conducted, or has had an adequate opportunity to conduct, all necessary due diligence related to the Business, the Acquired Assets, the Assumed Liabilities, and all such other matters relating to or affecting any of the foregoing. In proceeding with the transactions contemplated in this Agreement, except for any representations and warranties expressly set forth in Section 4.1, Buyer is doing so based solely upon its own due diligence and review, all of which has been completed to the satisfaction of Buyer, and Buyer has not relied upon any oral or written statements, representations or guaranties whatsoever, whether express or implied, made by Seller or its agents and representatives.

## ARTICLE V.    COVENANTS AND OTHER AGREEMENTS

Section 5.1 Covenants of Seller.

Seller covenants to Buyer that, during the period from the Execution Date through and including the Closing Date or the earlier termination of this Agreement:

(a)    Conduct of Business Before the Closing. Unless otherwise agreed by Seller and Buyer in writing, Seller shall use commercially reasonable efforts to conduct its Business in all material respects in the manner in which it has been conducted since the Petition Date and in accordance with the reasonable requirements of the Franchisor, and to preserve intact its Business, organization and relationships with third parties.

(b)    Cooperation. Seller shall use commercially reasonable efforts to (i) reasonably cooperate with Buyer's effort to obtain the Consents; (ii) take, or cause to be taken, all action and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective as soon as possible the transactions contemplated hereby; and (iii) assist Buyer in the transfer of or obtaining renewals of any Permits required to own the Acquired

Assets, and to otherwise assist in the timely consummation of the transactions contemplated by this Agreement.

(c) <u>Bankruptcy Court Matters</u>.  Seller shall:

    (i)    Promptly provide Buyer with drafts of all documents, motions, orders, filings, pleadings and service lists that Seller is required to, or that are prudent to file with the Bankruptcy Court that relate to the consummation or approval of this Agreement and will provide Buyer with reasonable opportunity to review and comment on such before service and filing; <u>provided</u>, <u>however</u>, that Seller shall not be required to provide to Buyer any non-public, confidential information relating to third party bidders or their bids.

    (ii)    Use commercially reasonable efforts to obtain entry of the Sale Order by the Bankruptcy Court as soon as reasonably practicable.

    (iii)    Promptly provide Buyer with written notice and copies of any notice of appeal, motion or application filed in connection with any appeal from or application for reconsideration of, any of such orders and any related briefs.

    (iv)    Be solely responsible for the payment or satisfaction of any amounts (the "**Cure Costs**") necessary to cure any defaults and arrearages that exist on the Closing Date with respect to the Acquired Contracts.

(d) <u>Due Diligence</u>.  Seller shall provide Buyer and its representatives with reasonable access to the Leased Real Property and the Group Two Missouri Restaurant, subject to reasonable rules and guidelines established by Seller.  Seller shall also provide Buyer and its representatives with access to all due diligence materials relating directly to the Business, the Acquired Assets, the Assumed Liabilities, and all other matters reasonably related thereto, to the extent such materials are in Seller's possession or control and subject to any restrictions of applicable law.  In addition, Buyer shall have the right, but not the obligation, to contact the Franchisor and the counterparties to all Acquired Contracts, and such governmental agencies and authorities as it may elect in connection with the transactions contemplated hereunder, and Seller shall reasonably cooperate with Buyer in such regard.

(e) <u>Release of Information by Franchisor</u>.  Seller hereby authorizes Franchisor to provide directly to Buyer all information and documents in Franchisor's possession or control relating to Seller and the Business, subject to notification to Seller of the information and documents provided.

(f) <u>Continuing Information</u>.  Seller shall provide Buyer with (i) updated current financial information relating to the Group Two Missouri Restaurant, (ii) access to Seller's records regarding employee pay history at the Group Two Missouri

Restaurant, and (iv) reasonable access to, and assistance generally from, Seller's employees (direct hires or otherwise), accounting and systems personnel, and other representatives designated by Seller and subject to ongoing business demands on such personnel, to enable Buyer to obtain assignments or the transfer of Permits included in the Acquired Assets, to obtain information generally relevant to the Group Two Missouri Restaurant (including but not limited to IT and accounting systems), in each case as reasonably requested by Buyer and as such information reasonably relates to Buyer's acquisition and post-Closing operation of the Group Two Missouri Restaurant.

Section 5.2 Covenants of Buyer.

Buyer covenants to Seller that, during the period from the Execution Date through and including the Closing or the earlier termination of this Agreement:

(a)     Cooperation.  Buyer shall use commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to consummate and make effective as soon as possible the transactions contemplated hereby.

(b)     Communications. Buyer shall keep Seller reasonably informed of the status of discussions between Buyer and Franchisor in connection with the transactions contemplated hereunder.

(c)     Adequate Assurances Regarding Acquired Contracts and Required Orders.  With respect to each Acquired Contract, Buyer shall provide what it reasonably believes are adequate assurances of its future performance of such Acquired Contract.  Buyer shall promptly take such actions as may be reasonably requested by Seller to assist Seller in obtaining the Bankruptcy Court's entry of a Sale Order, an Assignment Order, and any other order of the Bankruptcy Court reasonably necessary to consummate the transactions contemplated by this Agreement.

(d)     Franchise Agreement.  At the Closing Buyer will provide Seller written evidence of, Franchisor's consent for the assignment to, and assumption by, Buyer of the Franchise Agreement (or alternatively, consent for the execution of a new Franchise Agreement as may be required by Franchisor), and waiver by Franchisor of its rights of first refusal with respect to the transactions contemplated by this Agreement ("**Franchisor's Consent**").

Section 5.3 Other Covenants.

(a)     Improper Receipt of Payment.  From and after the Closing, (i) Seller shall promptly forward to Buyer any and all payments received by it that constitutes part of the Acquired Assets; and (ii) Buyer shall promptly forward to Seller any and all payments received by Buyer that constitute part of the Excluded Assets.

# ARTICLE VI.    TAXES; ALLOCATION

Section 6.1 Taxes Related to Purchase of Acquired Assets.

Seller is responsible for the payment of all Taxes in connection with the transactions contemplated hereunder, other than Transaction Taxes, which Transaction Taxes shall be paid by Buyer.  Buyer and Seller shall cooperate to (a) determine the amount of Transaction Taxes payable in connection with the transactions contemplated under this Agreement; (b) provide all requisite exemption certificates; and (c) prepare and file any and all required Tax Returns for or with respect to such Transaction Taxes with any and all appropriate Government taxing authorities.

Section 6.2 Allocation of Purchase Price.

Seller and Buyer have allocated the Total Consideration among the Acquired Assets as set forth in Schedule 6.2 (the "**Allocation**").  The Allocation is binding upon Buyer and Seller and their respective successors and assigns, and none of the parties to this Agreement will take any position (whether in returns, audits or otherwise) that is inconsistent with the Allocation; provided, however, that the parties shall cooperate and agree to reallocate to the extent necessary to satisfy the requirements of any taxing authority.  Buyer and Seller will report the purchase and sale of the Acquired Assets on all tax returns, including without limitation Form 8594 as provided for in section 1060 of the Code, in accordance with the Allocation and will cooperate in timely filing with the Internal Revenue Service their respective Forms 8594**.**

# ARTICLE VII.    CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 7.1 Conditions Precedent to Performance by Seller.

The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing, of the following conditions, any one or more of which, other than the condition contained in Section 7.1(c), may be waived by Seller, in its discretion:

(a)    Representations and Warranties of Buyer.  The representations and warranties of Buyer made in Section 4.2 of this Agreement, in each case, shall be true and correct in all material respects as of the Execution Date and as of the Closing as though made by Buyer as of the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct on and as of such earlier date.

(b)    Performance of the Obligations of Buyer.  Buyer shall have performed in all material respects all obligations required under this Agreement and any Ancillary Agreement to which Buyer is party which are to be performed by it on or before the Closing Date.

(c)     Sale Order.  The Bankruptcy Court shall have entered the Sale Order, which shall be in full force and effect, and no order staying, reversing, modifying, vacating or amending the Sale Order shall be in effect on the Closing Date.

(d)     Closing Deliveries.  Buyer shall have made the deliveries contemplated under Section 3.3.

Section 7.2 Conditions Precedent to the Performance by Buyer.

The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing (or in the case of Section 7.2(h), on or immediately before the Closing), of the following conditions, any one or more of which, other than the condition contained in Section 7.2(c), may be waived by Buyer, in its discretion:

(a)     Representations and Warranties of Seller.  The representations and warranties of Seller made in Section 4.1 of this Agreement shall be true and correct in all material respects as of the Execution Date and as of the Closing Date as though made by Seller again as of the Closing Date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct on and as of such earlier date.

(b)     Performance of the Obligations of Seller.  Seller shall have performed in all material respects all obligations required under this Agreement and any Ancillary Agreement to which Seller is party to be performed by Seller on or before the Closing Date.

(c)     Sale Order.  The Bankruptcy Court shall have entered the Sale Order, the Sale Order shall be in full force and effect, and no order staying, reversing, modifying, vacating or amending the Sale Order shall be in effect on the Closing Date, and the Sale Order shall otherwise conform to the criteria specified in the definition of Sale Order in Article XI hereof.

(d)     Cure Costs.  Seller shall provide evidence that it has paid or has otherwise satisfied the Cure Costs.

(e)     Closing Deliveries.  Seller shall have made the deliveries contemplated under Section 3.2.

(f)     Termination of Employees.  All employees working at the Group Two Missouri Restaurant shall have been terminated and made available for hire by Buyer.

(g)     Group One Closing.  Buyer shall have closed on its acquisition of the Group One Missouri Restaurants, as that term is defined in the Group One Purchase Agreement.

# ARTICLE VIII.  <u>TERMINATION</u>

Section 8.1<u>Conditions of Termination</u>.

This Agreement may be terminated only in accordance with this <u>Section 8.1</u>.  This Agreement may be terminated at any time before the Closing as follows:

(a)     By mutual consent of Seller and Buyer;

(b)     By Seller, by notice to Buyer, if Seller has previously provided Buyer with notice of any material inaccuracy of any representation or warranty contained in <u>Section 4.2</u>, or of a material failure to perform any covenant or obligation of Buyer contained in this Agreement or any Ancillary Agreement to which Buyer is party, and Buyer has failed, within three (3) Business Days after such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Seller of Buyer's ability to remedy such inaccuracy or perform such covenant or obligation; <u>provided</u>, <u>however</u>, that Seller shall not have the right to terminate this Agreement under this <u>Section 8.1(b)</u> if Seller is then in material breach of this Agreement;

(c)     By either Seller or Buyer, if the Bankruptcy Court dismisses the Seller's Chapter 11 Case or converts the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that termination under this subsection shall be at Buyer's discretion only should conversion to a case under chapter 7 occur by motion by Seller;

(d)     By Buyer, by notice to Seller, if Buyer has previously provided Seller with notice of any material inaccuracy of any representation or warranty of Seller contained in <u>Section 4.1</u> or a material failure to perform any covenant or obligation of Seller contained in this Agreement or any Ancillary Agreement to which Seller is a party, and Seller has failed, within three (3) Business Days after such notice, to remedy such inaccuracy or perform such covenant or provide reasonably adequate assurance to Buyer of Seller's ability to remedy such inaccuracy or perform such covenant; <u>provided</u>, <u>however</u>, that Buyer shall not have the right to terminate this Agreement under this <u>Section 8.1(c)</u> if Buyer is then in material breach of this Agreement;

(e)     Automatically, upon the consummation of an Alternative Transaction;

(f)     By Buyer, by written notice to Seller, if the Group One Purchase Agreement is terminated, for whatever reason; and

(g)     By Buyer, by written notice to Seller, upon Buyer's election as set forth in <u>Section 10.3(a)</u> below.

Section 8.2 Effect of Termination; Remedies.

(a)      In the event of termination pursuant to Section 8.1, this Agreement shall become null and void and have no effect (other than Article VIII and Article X, which shall survive termination), with no liability on the part of Seller, Buyer, or their respective Affiliates or respective Related Persons, with respect to this Agreement or any Ancillary Agreement, except for any liability provided for in this Article VIII.

(b)      If this Agreement is terminated pursuant to Section 8.1(a), 8.1(c), 8.1(d), 8.1(e), 8.1(f) or 8.1(g), then, within two (2) Business Days after such termination, Buyer and Seller shall jointly instruct the Escrow Agent to distribute to Buyer from the Deposit Escrow Account the Deposit, together with interest earned thereon, by wire transfer of immediately available funds to an account designated in writing by Buyer.

(c)      If this Agreement is terminated pursuant to Section 8.1(b) then all right, title and interest to the Deposit shall automatically vest in Seller as liquidated damages, which shall constitute Seller's sole and exclusive remedy. Within two (2) Business Days after such termination, Buyer and Seller shall jointly instruct the Escrow Agent to distribute to Seller from the Deposit Escrow Account the Deposit, together with interest earned thereon, by wire transfer of immediately available funds to an account designated in writing by Seller.

Section 8.3 Specific Performance

Provided that Buyer is not then in material breach of this Agreement, this Agreement has not been terminated in accordance with its terms and an Alternative Transaction has not been approved by the Bankruptcy Court, Buyer shall be entitled to seek specific performance of this Agreement.

Section 8.4 Exclusive Remedy; Waiver.

Other than as set forth in Section 8.3, prior to the Closing, the parties' sole and exclusive remedies for any claim arising out of or in connection with this Agreement shall be termination in accordance with, and obtaining the remedies provided in, this Article VIII. The failure by either Seller or Buyer to pursue or foreclose on any right or remedy against the other party, by itself, shall not constitute a waiver, and any waiver under this Article VIII shall be effective only if made in a writing signed by the party charged with such waiver.

## ARTICLE IX.      SURVIVAL AND INDEMNIFICATION

Section 9.1 Survival; Indemnification.

None of the representations and warranties of Seller and of Buyer made in this Agreement shall survive the Closing Date, and all of such representations and warranties shall be extinguished by the Closing.  All covenants and agreements of the parties contained in this Agreement shall

survive the Closing, unless otherwise expressly stated therein. If the Closing occurs, Buyer shall indemnify and hold harmless Seller and its Affiliates and Related Persons against any and all losses, liability, expense or damage first arising after the Closing Date that result from or arise out of the Assumed Liabilities.

Section 9.2 Specific Performance.

Seller and Buyer acknowledge that in case of any breach of their respective covenants after the Closing, the other would suffer immediate and irreparable harm, which money damages would be inadequate to remedy, and accordingly, in case of any such breach each non-breaching party shall be entitled to obtain specific performance.

Section 9.3 Exclusive Remedy.

Following the Closing, the parties' sole and exclusive remedies for any claim arising out of or in connection with this Agreement shall be those set forth in this Article IX.

## ARTICLE X. MISCELLANEOUS

Section 10.1 Allowed Administrative Expenses.

Except as to the Deposit, which amount shall not be estate property and shall be segregated and held in trust for Buyer, any and all amounts owed to Buyer by Seller hereunder or under any Ancillary Agreement after the Execution Date shall constitute allowed administrative expenses in Seller's Chapter 11 Case under section 503(b)(1) of the Bankruptcy Code.

Section 10.2 Employees.

(a)     On or immediately before the Closing, Seller shall have terminated all employees working for the Business, and with respect to employees working for the Business that are employed by one or more third parties, shall cause such third party or parties to then terminate such employees.

(b)     Buyer shall offer to hire at least seventy percent (70%) of Seller's employees that are working for the Business immediately before the Closing Date, under whatever terms Buyer may determine in its sole and absolute discretion, provided that Buyer may select in its discretion the employees it chooses to hire. Subject to the foregoing, Buyer shall not be obligated to hire any additional terminated employees. Seller shall reasonably cooperate with Buyer in Buyer's efforts to hire terminated employees. Subject to limitations imposed by the Bankruptcy Code or the Bankruptcy Court, Seller shall bear all financial and other responsibility for compliance with the federal WARN Act and any similar laws of any applicable jurisdiction to the extent applicable.

Section 10.3    Risk of Loss.

At all times prior to the Closing, the risk of loss for all of the Acquired Assets shall be retained by Seller.  In the case of any Material Adverse Effect with respect to the Leased Real Property prior to the Closing, Buyer shall have the option to: (a) terminate this Agreement, or (b) accept the affected Acquired Asset(s) in the condition in which they are in following the occurrence of the Material Adverse Effect, and receive either the insurance proceeds or condemnation award which Seller shall have received (or be entitled to receive), or in the event the proceeds or award have not been received by Seller at the time of Closing, an assignment by Seller of all of its rights in and to adjust and receive the insurance proceeds or award.  In the event Buyer chooses option (b) above, Seller shall credit to Buyer the amount of any insurance deductible at Closing from the Final Purchase Price, and Seller shall not have the right to participate in any insurance adjustment, settlement or claim or condemnation proceeding, but will, at all times, reasonably cooperate with Buyer in pursuing any claim settlement, adjustment or prosecution, and any and all insurance proceeds and condemnation awards shall be the sole property of Buyer. Notwithstanding the foregoing, if the insurance proceeds or award are payable to the landlord or mortgagee for the Leased Real Property and either such party (i) has no obligation to rebuild the affected Acquired Asset(s) and (ii) has determined not to so rebuild, Buyer shall be deemed to have elected option (a) above.  Moreover, in the event of a taking of the whole of the affected Leased Real Property by a Government authority, Buyer shall be deemed to have elected option (a) above.

Section 10.4    [Intentionally Omitted]

Section 10.5    Alternative Transaction.

Notwithstanding anything herein or in the Ancillary Agreement to the contrary, Seller may furnish information concerning Seller, the Acquired Assets and the Assumed Liabilities to any Person in connection with a potential Alternative Transaction, and subject to Article VIII of this Agreement and the Sale Procedures, negotiate, enter into and consummate an Alternative Transaction.

Section 10.6    Further Assurances.

At the request and the sole expense of the requesting party, Buyer or Seller, as applicable, shall execute and deliver, or cause to be executed and delivered, such documents as Buyer or Seller, as applicable, or their respective counsel, may reasonably request to effectuate the purposes of this Agreement and the Ancillary Agreements.  Such parties shall also reasonably cooperate and take such actions prior to Closing as are reasonably necessary or desirable to effectuate a smooth transition of operations at Closing. This Section 10.6 shall survive Closing.

Section 10.7    Successors and Assigns.

This Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the parties hereto.

Section 10.8    Governing Law; Jurisdiction.

This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of Minnesota (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such State are superseded by the Bankruptcy Code or other applicable federal law.  For so long as Seller is subject to the jurisdiction of the Bankruptcy Court, the parties irrevocably elect, as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement, and consent to the exclusive jurisdiction of, the Bankruptcy Court.

Section 10.9    Expenses.

Except as otherwise provided in this Agreement, Seller and Buyer shall pay their own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated.  Buyer shall pay the cost of all surveys, title insurance policies and title reports ordered or requested by Buyer or any Related Person thereto.

Section 10.10   Broker's and Finder's Fees.

Neither Seller nor Buyer has engaged any broker or finder in connection with any of the transactions contemplated by this Agreement other than Mastodon Ventures, Inc., whose fees and expenses shall, as between the parties, be the sole responsibility of Seller, and, insofar as such party knows, no other broker or other Person is entitled to any commission or finder's fee in connection with any of the transactions contemplated by this Agreement.

Section 10.11   Severability.

In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as set forth on the Execution Date.

Section 10.12   Notices.

All notices, requests, demands, consents and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the time and day of transmission (as indicated on the time stamp of the email or the "successful transmission" receipt by facsimile), if sent via facsimile transmission to the facsimile number given below or by electronic mail to the electronic mail address given below; (iii) on the day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service addressed to the party to whom notice is to be given; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Duke and King Missouri, LLC
12281 Nicollet Avenue, South
Burnsville, MN 55337
Attention: Becky Moldenhauer, CFO
Email: bmoldenhauer@dukeandking.com
Facsimile: 952-288-2327


With a copy to (which shall not constitute notice):

McDonald Hopkins LLC
600 Superior Avenue, E.
Suite 2100
Cleveland, OH 44114
Attention:  Scott N. Opincar, Esq.
Email: sopincar@mcdonaldhopkins.com
Facsimile:  216.348.5474

If to Buyer:

Strategic Restaurants Acquisition Company II, LLC
3000 Executive Parkway, Suite 515
San Ramon, CA  94583
Attention: David L. Kanel
Facsimile: (925) 328-3318
Email: dkanel@Strategicrestaurants.com

With a copy to:

Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500
Attention: Robert Trodella, Esq.
Facsimile: 415-875-5700
Email: rtrodella@jonesday.com

(b)     Any party may change its address, facsimile number or email address for the purpose of this Section 10.12 by giving the other party written notice of its new address in the manner set forth above.

Section 10.13  Amendments; Waivers.

This Agreement may only be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may only be waived, by a written instrument

executed by Buyer and Seller, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 10.14 Public Announcements.

Promptly after the Closing, the parties shall make a joint press release in form and substance reasonably satisfactory to both of them regarding the transactions contemplated herein. Except as provided in the foregoing sentence, no party shall make any press release or public announcement concerning the transactions contemplated by this Agreement without first coordinating their communications strategy with the other party, unless a press release or public announcement is required by law, the rules of any stock exchange, or is permitted by, or required by an order of, the Bankruptcy Court. If any such announcement or other disclosure is required by law, the rules of any stock exchange or is permitted by, or required by an order of, the Bankruptcy Court, the disclosing party shall use reasonable efforts to give the non-disclosing party or parties prior notice of, and an opportunity to comment on, the proposed disclosure; provided, there shall be no liability to the disclosing party for failure to notify the other party. The parties acknowledge that Seller shall file this Agreement with the Bankruptcy Court in connection with obtaining the Sale Order and that Franchisor may provide or release its own press release or announcement without the consent or input of either Buyer or Seller.

Section 10.15 Entire Agreement.

This Agreement and the Ancillary Agreements contain the entire understanding between the parties with respect to the transactions contemplated hereby and supersede and replace all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. The Recitals, the Exhibits and all Schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 10.16 No Third Party Beneficiaries.

Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or discharge the obligation or liability of any third Persons to Seller or to Buyer. This Agreement is not intended and shall not give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.17 Headings.

The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

Section 10.18  Counterparts; Delivery.

This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which shall constitute the same agreement.  The signature of any of the parties may be delivered and made by facsimile, portable document format ("**pdf**") or other electronic means capable of creating a printable copy, and each such signature shall be treated as original signatures for all purposes.

Section 10.19  Construction.

Any reference to any law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.  The word "including" shall mean including without limitation.  Any reference to the singular in this Agreement shall also include the plural and vice versa.

## ARTICLE XI.    DEFINITIONS

As used in this Agreement, the following terms have the following meanings:

"**Accounts Receivable**" has the meanings set forth in Section 1.2(b).

"**Acquired Assets**" has the meaning set forth in Section 1.1.

"**Acquired Contracts**" has the meaning set forth in Section 1.1(g).

"**Affiliate**" means, with respect to any Person, any other Person directly or indirectly owning, controlling, owned by, controlled by or under direct or indirect common ownership or control with such Person.

"**Agreement**" has the meaning set forth in the Preamble.

"**Allocation**" has the meaning set forth in Section 6.2.

"**Alternative Transaction**" means any transaction (regardless of the form thereof) involving (a) a sale of any portion of the Acquired Assets by Seller to a purchaser or purchasers other than Buyer, including without limitation by auction, foreclosure, deed-in-lieu of foreclosure, or other secured creditor enforcement right, or (b) confirmation by the Bankruptcy Court of a plan of reorganization under which Seller fails to sell any portion of the Acquired Assets to Buyer.

"**Ancillary Agreements**" means the Confidentiality Agreement, the Deposit Escrow Agreement and any bill of sale, assignment or assumption agreement or other related agreements by and between Seller and Buyer effecting or evidencing the transactions contemplated under this Agreement.

"**Assignment Order**" means an order of the Bankruptcy Court pursuant to sections 105 and 365 of the Bankruptcy Code, which order shall be in a form satisfactory to Buyer, and which shall (i) authorize the assumption by Seller and assignment to Buyer of the Acquired Contracts, (ii)

establish the Cure Costs relating to the Acquired Contracts, and (iii) provide that the Buyer has demonstrated adequate assurance of future performance under the Acquired Contracts.

**"Assumed Liabilities"** has the meaning set forth in <u>Section 1.3</u>.

**"Bankruptcy Code"** has the meaning set forth in the Recital.

**"Bankruptcy Court"** has the meaning set forth in the Recital.

**"Burger King®"** means any Person operating a Burger King® restaurant, whether Franchisor or any franchisee thereof.

**"Business"** means any and all business activities of Seller solely relating to or connected with the operation of the Group Two Missouri Restaurant.

**"Business Day"** means any day other than Saturday, Sunday and any day that is a federal legal holiday.

**"Buyer"** has the meaning set forth in the Preamble.

"**Buyer's Responsible Officers**" means the Buyer's chief executive officer, Jerry Comstock, chief financial officer, Steven Grossman, and its general counsel, David Kanel.

**"Chapter 11 Case"** means the Chapter 11 case of Seller, case number 10-38653, jointly administered under bankruptcy case number 10-38652.

**"Closing"** has the meaning set forth in <u>Section 3.1</u>.

**"Closing Date"** has the meaning set forth in <u>Section 3.1</u>.

 **"Code"** means the Internal Revenue Code of 1986, as amended.

**"Confidentiality Agreement"** means the confidentiality agreement Buyer executed in conjunction with its review of Seller's records.

**"Consent"** means any consent, approval or waiver required pursuant to Bankruptcy Code Section 365(c)(1).

**"Contract"** means any contract, agreement, lease or sublease, license or sublicense, instrument, indenture, commitment or undertaking, whether in written form or otherwise.

**"Corporate Level"** means, as applicable, any assets, properties, expenses, costs, commitments, Contracts, obligations, liabilities or other operational activities or items conducted or owned by Seller and its Affiliates primarily for the collective benefit of the restaurant enterprise owned and maintained by Seller and its Affiliates, and their employees, including, but not limited to, all Seller Employee Benefit Plans, if any, and all liabilities and obligations of Seller and its Affiliates thereunder, in each case, so long as same are not an Acquired Asset.

**"Deposit"** has the meaning set forth in the Recitals.

**"Deposit Escrow Account"** has the meaning set forth in the Recitals.

**"Deposit Escrow Agreement"** means that certain escrow agreement, dated as of the Execution Date, by and among Buyer, Seller and Escrow Agent, governing the funding and disbursement of the Deposit Escrow Account.

**"Employee Records"** means all books, files and records held or otherwise owned by Seller that relate to current or former employees and other personnel of Seller.

**"Escrow Agent"** means US Bank, N.A.

**"Excluded Assets"** has the meaning set forth in Section 1.2.

**"Excluded Liabilities"** has the meaning set forth in Section 1.4.

**"Execution Date"** has the meaning set forth in the Preamble.

**"Final Purchase Price"** has the meaning set forth in Section 2.1.

**"Franchise Agreement"** means the franchise agreement for the Group Two Missouri Restaurant entered into between Franchisor and Seller and listed in Schedule 1.1(g).

**"Franchisor"** means Burger King Corporation, a Florida corporation, or its successors-in-interest, whether by merger, acquisition of equity or acquisition of all or substantially all of its assets.

**"Franchisor's Consent"** has the meaning set forth in Section 4.2(g).

**"Government"** means any agency, division, subdivision or governmental or regulatory authority, or any adjudicatory body thereof, of the United States or any state or territory thereof.

"**Group One Missouri Restaurants**" means the Burger King® franchised restaurants to be purchased by Buyer from Seller pursuant to the Group One Purchase Agreement.

"**Group One Purchase Agreement**" means the April 8, 2011 Asset Purchase Agreement between Buyer and Seller for the purchase and sale of the restaurants identified in that agreement.

"**Group Two Missouri Restaurant**" means the one (1) Burger King® franchised restaurants owned by Seller located in the state of Missouri and identified in Exhibit B.

**"Inventory"** means all of Seller's consumable food and beverages, including without limitation condiments, paper products and promotional items that are usable or salable by Buyer in the ordinary course of Buyer's operation of the Group Two Missouri Restaurant as a Burger King® restaurant, provided, however, Inventory shall exclude, and Buyer shall not be obligated to purchase, more than ten (10) cases of promotional items at a price not to exceed $50 per case.

**"Leased Real Property"** has the meaning set forth in Section 1.1(b).

**"Leasehold Improvements"** means those fixtures, structures and other improvements located on the Leased Real Property used in the operation of the Business.

**"Lien"** means any mortgage, pledge, security interest, encumbrance, lien (statutory or other), conditional sale agreement, claim or liability.

**"Material Adverse Effect"** means any material adverse change, event, circumstance or development with respect to, or material adverse effect on, the physical condition of the Acquired Assets.

**"On-Hand Cash"** has the meaning set forth in <u>Section 1.1(a)</u>.

**"On-Hand Inventory"** has the meaning set forth in <u>Section 1.1(h)</u>.

  **"Permits"** has the meaning set forth in <u>Section 1.1(i)</u>.

**"Permitted Liens"** mean: (a) Liens for Taxes, assessments and Government or other similar charges that are not yet due and payable; (b) easements, licenses, restrictions and other matters of record that do not adversely affect the operation of the Leased Real Property as currently operated; (c) any state of facts a survey or other visual inspection would show that do not adversely affect the operation of the Leased Real Property as currently operated; and (d) Liens arising from the Assumed Liabilities.

**"Person"** means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or Government.

**"Petition Date"** has the meaning set forth in the Recitals.

**"Property Taxes"** means all real estate and personal property Taxes, and other related assessments and fees, arising from the Acquired Assets.

**"Prorated Amounts"** has the meaning set forth in <u>Section 2.3</u>.

**"Proration"** has the meaning set forth in <u>Section 2.3</u>.

"**Real Property Lease**" means the real property lease covering the Leased Real Property identified in <u>Schedule 1.1(g)</u>.

**"Rebates"** has the meaning set forth in <u>Section 1.1(k)</u>.

**"Related Person"** means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, lenders, investment bankers or representatives of any such Person.

**"Sale Order"** means an order of the Bankruptcy Court in a form satisfactory to Buyer, approving the sale and transfer of the Acquired Assets and Assumed Liabilities to Buyer pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the operation or effect of which has not been stayed, reversed or amended (including any revisions, modifications or amendment thereof), and at Buyer's election, which may be exercised in its sole discretion, the time to appeal or seek review or rehearing has expired and no appeal or petition for review or rehearing was filed, or if filed, remains pending. The Sale Order shall include (i) authorization of the assumption by Seller and assignment to Buyer of the Acquired Contracts, (ii) terms and conditions consistent with the terms and conditions of this Agreement, and (iii) such other terms and conditions acceptable to Seller and Buyer. The Sale Order will be substantially in the form attached hereto as <u>Exhibit A</u> (provided, that, any material changes to such form of order must be approved by Seller and Buyer).

**"Sale Procedures"** means the Sale Procedures approved by the Bankruptcy Court by its Order Approving Sale and Bidding Procedures, entered on January 24, 2011.

**"Seller"** has the meaning set forth in the Preamble.

**"Supplies"** means all tangible property, other than Inventory, used in the preparation of serving, cleaning-up from meals, including without limitation smallwares, cooking and cleaning supplies and utensils, and other related items.

**"Tax Return"** means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment or collection of any Taxes (including estimated Taxes).

**"Taxes"** means all taxes, however denominated, including any interest, penalties or additions to tax that may become payable in respect thereof, imposed by any Government, whether payable by reason of contract, assumption, transferee liability, operation of law or Treasury Regulation section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under state, local or foreign law), which taxes shall include all income taxes, payroll and employee withholding, unemployment insurance, social security (or similar), sales and use, excise, franchise, gross receipts, occupation, real and personal property, stamp, transfer, workmen's compensation, customs duties, registration, documentary, value added, alternative or add-on minimum, estimated, environmental (including taxes under section 59A of the Code) and other assessments or obligations of the same or a similar nature, whether arising before, on or after the Closing Date.

**"Total Consideration"** has the meaning set forth in <u>Section 2.1</u>.

**"Transaction Taxes"** means all state and local transfer taxes that are actually imposed solely by reason of the sale, transfer, assignment and delivery of the Acquired Assets to Buyer and that are not exempt under section 1146(a) of the Bankruptcy Code. Solely for the purpose of clarity, Transaction Taxes shall not include any taxes imposed on the basis of income, profit, or gross receipts of the Business.

**"Unadjusted Purchase Price"** has the meaning set forth in <u>Section 2.1</u>.

"**WARN Act**" shall mean the Worker Adjustment and Retraining Notification Act of 1988.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Execution Date.

**BUYER:**

**Strategic Restaurants Acquisition Company II, LLC**

By: _____

Name: _____

Title: _____

**SELLER:**

**Duke and King Missouri, LLC**

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Execution Date.

**BUYER:**

**Strategic Restaurants Acquisition Company II, LLC**

By: _____
Name: _____
Title: _____

**SELLER:**

**Duke and King Missouri, LLC**

By: *Becky Moldenhauer*
Name: *Becky Moldenhauer*
Title: *VP + CFO*

# **EXHIBIT A**

## **Sale Order**

See attached.

**************************************************************************

In re

DUKE AND KING ACQUISITION CORP.,

          Debtors.

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

Court File No. 10-38652

Court File Nos.

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Chief Judge Gregory F. Kishel

**************************************************************************

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER (1) AUTHORIZING SALE OF
ACQUIRED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND
ENCUMBRANCES; (2) DETERMINING BUYER TO BE A GOOD FAITH
PURCHASER; (3) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN
UNEXPIRED LEASE OF NON-RESIDENTIAL REAL PROPERTY AND EXECUTORY
CONTRACTS DESIGNATED BY BUYER; AND (5) WAIVING THE 14-DAY STAY
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(h) AND
6006(d).**

**************************************************************************

On May 10, 2011, at 9:30 a.m. Central Time, in the above-captioned cases, a hearing was

held on the Motion for Orders (i) Scheduling a Hearing on Stalking Horse Bids; (ii) Approving

Stalking Horse Protection Fees; (iii) Approving Form of Stalking Horse Asset Purchase

Agreements; (iv) Approving Form and Manner of Sale Notice and Cure Notice; (v) Authorizing

Debtors to Sell Assets Free and Clear of Liens, Claims, Interests and Encumbrances; and

(vi) Authorizing Assumption and Assignment of Unexpired Leases and Executory Contracts and

Establishing Cure Costs (the "Sale Motion"), filed by Duke and King Missouri, LLC, as one of

the debtors and debtors-in-possession (the "Debtor", and together with each of the other debtors-

in-possession in these administratively consolidated cases, the "<u>Debtors</u>").  Strategic Restaurants Acquisition Company II, LLC (the "<u>Buyer</u>") has been named as the Successful Bidder at the Group Two Auction for the Acquired Assets that are identified in that certain Asset Purchase Agreement dated April 27, 2011, by and between the Debtor and the Buyer for Store #6030 (together with all exhibits and schedules thereto, the "<u>Purchase Agreement</u>").[1]  The Purchase Agreement is attached hereto as <u>Exhibit 1</u>.

Appearances were noted on the record.

Based on the notice of Sale Motion and Sale Motion, the memorandum of points and authorities and declarations in support thereof, the documents and pleadings on file herein, all judicially noticeable facts, the arguments and representations of counsel, and such other evidence as was presented at the scheduled hearing:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    This Court has jurisdiction to consider, determine and approve the sale (the "<u>Sale</u>") of the Acquired Assets (as defined in the Purchase Agreement), free and clear of all liens, liabilities, claims, interests, and encumbrances identified in the Purchase Agreement, and to authorize and direct the Debtor, on behalf of its bankruptcy estate, to enter into and perform in accordance with the Purchase Agreement.

B.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  The Sale Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).  Venue of the Chapter 11 Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The statutory predicates for the relief requested in the Sale Motion are 11 U.S.C. §§ 105,  363 and 365, and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[1] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement and the Sale Motion, as applicable.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. 7052.

D.       This Court entered the Order Approving Sale and Bidding Procedures on January 24, 2011 [Docket No. 137] (the "Sale Procedures Order") which provided, among other things, for an auction of the Acquired Assets should qualified bidders comply with the Sale Procedures Order and submit competing bids (the "Group Two Auction").  The Debtor and the Buyer have complied with the Sale Procedures Order in all respects.

E.       Pursuant to the Sale Procedures Order, the Group Two Auction was conducted on April 26, 2011, by the Debtors, in consultation with their advisors and investment banker, Mastodon Ventures, Inc.  The Sale Procedures Order (as amended)[3] set May 10, 2011 as the date of the hearing (the "Sale Approval Hearing") for approval of the Sale as contemplated by the Purchase Agreement.

F.       On April 11, 2011, the Debtor filed the Sale Motion and served copies of the Sale Motion in compliance with Local Rule 9013-3(a)(2).

G.       On April 18, 2011, the Debtor duly and timely served the Notice of Sale Approval Hearing (the "Sale Notice") in compliance with this Court's orders.  On April 18, 2011, the Debtor duly and timely served the Notice Concerning Unexpired Leases and Executory Contracts and Establishing Cure Costs on the counterparties to such leases and contracts, including all counterparties to the Acquired Contracts.

H.       Based upon the foregoing and the certificates of service and publication filed with this Court, due, proper, timely, adequate and sufficient notice of the Sale Motion, the initial hearing on the Sale Motion, the Group Two Auction, the Sale Approval Hearing, the Sale of the Acquired Assets, the proposed assumption and assignment of the Acquired Contracts and the proposed rejection of the contracts has been provided in accordance with sections 102(1), 363(b) and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008 and in compliance with the Sale Procedures Order and no other or further notice of the Sale Motion, the initial hearing on the Sale Motion, the Group Two Auction, the Sale Approval Hearing, the Sale

---

[3]  The timeline set forth in the Sale Procedures Order was subsequently amended by stipulation.

of the Acquired Assets, the proposed assumption and assignment of the Acquired Contracts or the entry of this Sale Approval Order is required or necessary.

I.     The Sale Notice was duly served by the Debtor on (i) all creditors and interested parties, including parties requesting special notice, required to receive notice pursuant to Bankruptcy Rule 2002(i), (ii) each entity or person known to the Debtor to assert a lien, encumbrance, claim or other interest in or to the assets to be affected by this Order, (iii) all Acquired Contract counterparties including notice regarding the relevant Cure Costs; (iv) the Internal Revenue Service and all state and local taxing authorities in jurisdictions where the Debtor has or may have any tax liability, and (v) the Office of the United States Trustee, all in accordance with Bankruptcy Rules 2002(a)(2), 2002(c)(1), 2002(i), 2002(k), 6004(a) and 6004(c).  The Sale Notice (i) complied in all respects with the requirements of the Bankruptcy Code and the Bankruptcy Rules and any applicable local rule, (ii) fully and adequately described the relief requested in the Sale Motion, (iii) provided fair and reasonable notice under the circumstances of the Chapter 11 Case with respect to the deadlines and procedures for objecting to the relief requested in the Sale Motion, and (iv) set forth the time, date and place for the hearing on the Sale Motion, and an opportunity to request a hearing.

J.     All parties in interest, including, without limitation, Bank of America, Burger King Corporation, all parties who claim an interest in or lien upon the Acquired Assets, all counterparties to the Acquired Contracts, all shareholders of the Debtors, all federal, state and local environmental authorities, and all U.S. or foreign federal, state and local governmental taxing authorities who have, or as a result of the Sale of Acquired Assets may have, claims, contingent or otherwise against the Debtors, have been given a reasonably opportunity to object and be heard, regarding the relief requested in the Sale Motion (including assumption and assignment of the Acquired Contracts and the Cure Costs).  All objections to the Sale Motion and to approval of the Purchase Agreement, including the transactions contemplated thereby, were resolved, withdrawn or overruled at the Sale Approval Hearing.

K. As demonstrated by the testimony or other evidence proffered or adduced at the Sale Approval Hearing: (i) the offer from the Buyer constitutes the highest and best offer for the Acquired Assets; (ii) the Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Sale Procedures Order; (iii) the auction process set forth in the Sale Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets; and (iv) the Group Two Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.

L. The Group Two Auction was held in accordance with the Sale Procedures Order.

M. The Debtor engaged in fair and reasonable marketing, advertising and other sales efforts and procedures in connection with the Sale of the Acquired Assets, which efforts and procedures have enabled the estate to obtain a fair and reasonable price for the Acquired Assets under the circumstances of the Chapter 11 Case.

N. In accordance with the Sale Procedures Order, the Purchase Agreement was deemed a Qualified Bid (as defined in the Sale Procedures) and the Buyer was eligible to participate at the Group Two Auction.

O. The Purchase Agreement constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Debtor's estate than would be provided by any other available alternative for the Acquired Assets. The Debtor's determination that the Purchase Agreement constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtor's business judgment.

P. The Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Case. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtor's estates than the Buyer.

Q.     The purchase price as set forth in the Purchase Agreement (the "<u>Purchase Price</u>") for the Acquired Assets is fair and reasonable, and constitutes reasonable consideration and reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession,  and the District of Columbia.  Approval of the Purchase Agreement and the Sale of the Acquired Assets in accordance with this Order and the Purchase Agreement are in the best interest of the Debtor's estate, creditors and other parties in interest.  The terms of the Purchase Agreement were negotiated at arms' length and are fair and reasonable under the circumstances.

R.     The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors or any other party under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

S.     The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the Sale of the Acquired Assets pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization.

T.     The Debtor (i) has full corporate, limited liability or other power to execute, deliver and perform its obligations under the Purchase Agreement and all other documents contemplated thereby or entered into in connection therewith, and the Sale of the Acquired Assets by the Debtor has been duly and validly authorized by all necessary corporate, limited liability or similar action, and (ii) has taken all action necessary to authorize and approve the Purchase Agreement and such other documents contemplated thereby and the consummation by them of the transactions contemplated thereby or entered into connection therewith.  No third-party approvals, other than those expressly provided for in the Purchase Agreement, if any, are required by the Debtor to consummate such transactions.

U.      The Debtor is authorized and directed to sell and transfer the Acquired Assets free and clear of the Released Liens, Claims and Interests (as defined in paragraph 12 below) because it has satisfied the requirements of section 363(f) of the Bankruptcy Code.

V.      Those holders of Claims (as defined in paragraph 12 below) against the Debtors, their estates or any of the Acquired Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  The Debtor has met the requirements of section 363(f) with respect to all other holders of Claims as such Claim holders will have their Claims, if any, in each instance against the Debtor, or the Debtors, as applicable, including their estates or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets, in which such creditor alleges a Claim, in the same order of priority, with the same validity, force and effect that such Claims had prior to the Sale, subject to any claims and defenses the Debtor, or the Debtors and their estates, as applicable, may possess with respect thereto.

W.      The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the Sale of the Acquired Assets to the Buyer, the assumption of liabilities and obligations as set forth in the Purchase Agreement by the Buyer and the assignment of the Assumed Leases and Acquired Contracts were not free and clear of all Released Liens, Claims and Interests.

X.      The Purchase Agreement was negotiated, proposed and entered into by the parties in good faith, from arms' length bargaining positions and without collusion.

Y.      The Debtor has complied with the procedures for notice and Sale of the Acquired Assets as set forth in the Sale Procedures Order.

Z.      The Buyer is not an "insider" or "affiliate" of the Debtors (as each such term is defined in the Bankruptcy Code).  Neither the Debtor nor the Buyer, nor any of its and their respective affiliates or representatives, have engaged in any conduct that would prevent the

application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code to the Sale and the transactions contemplated by the Purchase Agreement. Specifically, the Buyer has not acted in a collusive manner with any person or entity and the aggregate Purchase Price paid by the Buyer for the Acquired Assets was not controlled by any agreement among the bidders, or otherwise.

AA.     The Buyer is entitled to the protections afforded under section 363(m) of the Bankruptcy Code because the Buyer is a good faith purchaser in that, *inter alia*:  (i) except as set forth in the Sale Procedures Order, the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Buyer complied with the provisions in the Sale Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (iv) the Buyer in no way induced or caused the chapter 11 filings by the Debtors; (v) all payments to be made by the Buyer in connection with the Sale have been disclosed; (vi) no common identity of directors or controlling stockholders exists between the Buyer and any of the Debtors; and (vii) the negotiation and execution of the Purchase Agreement was at arms' length and in good faith.

BB.     In the absence of a stay pending appeal, if any, if the Closing occurs at any time after entry of this Order, then, with respect to the Purchase Agreement, the Buyer, as a purchaser in good faith of the Acquired Assets, shall be entitled to the protections of section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is reversed or modified on appeal.

CC.     The Debtor is the sole and lawful owner of the Acquired Assets.  Effective as of the Closing, the transfer of the Acquired Assets is or will (i) be legal, valid and effective transfers of property of the Debtor's estate to the Buyer, as more particularly set forth in the Purchase Agreement, and (ii) vest the Buyer with all right, title, and interest of the Debtor and the Debtor's estate in and to the Acquired Assets free and clear of all Released Liens, Claims and Interests (as defined in paragraph 12 herein) under sections 363(f) and 105 of the Bankruptcy Code.

DD.     The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Acquired Contracts, each as defined in the Purchase Agreement and described in Schedule 1.1(g) to the Purchase Agreement and as identified in Exhibit 2 to this Order, including any amendments or modifications to such exhibits as agreed to by the Debtor and Buyer pursuant to the Purchase Agreement, in connection with the consummation of the Sale of Acquired Assets, and the assumption and assignment of the Acquired Contracts is in the best interests of the Debtor, its estate, its creditors and its equity holders.

EE.     The Acquired Contracts being assigned to the Buyer as set forth in the Purchase Agreement are an integral part of the Debtor's businesses being purchased by the Buyer and, accordingly, such assumption and assignment of the Acquired Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

FF.     The Acquired Contracts are unexpired leases and executory contracts, as applicable, within the meaning of the Bankruptcy Code.

GG.     All amounts that are required to be paid in connection with the assumption and assignment of the Acquired Contracts that are due or owing under sections 365(b)(1)(A) and (B), and 365(f)(2)(A) of the Bankruptcy Code to (i) cure any defaults under the Acquired Contracts specified in this Order or (ii) pay all actual or pecuniary losses that have resulted from such defaults, are set forth on Exhibit 2 hereto (the "Cure Costs").

HH.     Any objections to the Cure Costs associated with such Acquired Contracts are resolved as set forth on Exhibit 2 to this Order.  To the extent that any counterparty failed to timely object to (i) the proposed assumption and assignment of the applicable Acquired Contract, or (ii) the Cure Cost associated with the applicable Acquired Contract, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignments of its respective Acquired Contract to the Buyer as expressly set forth on Exhibit 2 to this Order.

II.     The promises of the Debtor to pay the Cure Costs (in accordance with the Purchase Agreement) and the Buyer's promise to perform the obligations under the Acquired Contracts after the Closing (in accordance with the Purchase Agreement) shall constitute

adequate assurance of the Buyer's future performance under the Acquired Contracts specified in this Order that are being assigned to the Buyer within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

JJ.    Adequate notice and opportunity to be heard was provided to counterparties to executory contracts and unexpired leases to be assumed and assigned pursuant to this Order. Further, counterparties received adequate notice and an opportunity to object to the amount of any Cure Costs owed by the Debtor's estate on account of the Real Property Leases and the Acquired Contracts to be assumed and assigned to the Buyer under the Purchase Agreement, and as identified in attached Exhibit 2.

KK.    The assumption and assignment of the  Acquired Contracts is integral to the Purchase Agreement and is in the best interests of the Debtor and its estates, creditors and equity holders and represents the exercise of the Debtor's sound business judgment.

LL.    Any objections to the assumption and assignment of any of the Acquired Contracts to the Buyer are hereby overruled.

MM.    Neither the Buyer nor its affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (i) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Purchase Agreement); (ii) have, *de facto* or otherwise, merged with or into any of the Debtors; (iii) be a mere continuation of the Debtors or their estates (and there is no continuity of enterprise between the Buyer and the Debtors); or (iv) be holding itself out to the public as a continuation of the Debtors.  The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the Purchase Agreement with respect to the Assumed Liabilities.

NN.    The Debtor has good, valid and marketable title to all of the Acquired Assets. The Acquired Assets are to be transferred free and clear of any and all Released Liens, Claims and Interests (as defined in paragraph 12 below).  All of the Acquired Assets are, or will on the

Closing Date, be owned by the Debtor and will be transferred to the Buyer under and pursuant to the terms of the Purchase Agreement.

OO.    All objections, if any, to the Sale Motion and to approval of the Purchase Agreement, including the transactions contemplated thereby, have been withdrawn, resolved or overruled.

Accordingly, and for good cause appearing therefor,

**IT IS HEREBY ORDERED**:

## General Provisions

1.    The Sale Motion is granted in its entirety, subject to the terms and conditions set forth in this Order.

2.    This Court's findings of fact and conclusions of law, set forth in the Sale Procedures Order, are incorporated herein by this reference.

3.    Any objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Approval Hearing, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

4.    Notice of the Sale Approval Hearing was fair, proper and sufficient under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, and 6006 and the local rules.

## Approval of the Purchase Agreement and Sale

5.    The terms, conditions, and transactions contemplated by the Purchase Agreement and all other ancillary documents are hereby approved in all respects.

6.    The Debtor is hereby authorized and directed under 11 U.S.C. §§ 105(a) and 363(b), (c), (f), (m) and (n) to sell the Acquired Assets to the Buyer without further order of this Court.

7.    The Debtor is hereby authorized, empowered, and directed to (i) perform under, consummate, and implement the Purchase Agreement, (ii) execute all additional instruments and

documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the transactions contemplated thereby, (iii) take all further actions as may be necessary or appropriate for the purposes of assigning, transferring, granting, conveying, encumbering or transferring the Acquired Assets as contemplated by the Purchase Agreement, and (iv) take such other and further steps as are contemplated by the Purchase Agreement or reasonably required to fulfill the Debtor's obligations under the Purchase Agreement, all without further order of this Court.

8.      The Sale of the Acquired Assets and the assumption and assignment of the Acquired Contracts identified in attached <u>Exhibit 2</u> and the consideration provided by Buyer under the Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and any other laws, rules or regulations of the United States, any state, county, township city, municipality, territory or possession, and the District of Columbia.

9.      The Buyer shall not be required to seek or obtain relief from the automatic stay under Bankruptcy Code section 362 to enforce any of its remedies under the Purchase Agreement or any other Sale related document. The automatic stay imposed by Bankruptcy Code section 362 is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

10.      The validity of the Sale approved hereby shall not be affected by the appointment of a trustee or successor trustee, the dismissal of the Chapter 11 Case, or its conversion to another chapter under title 11 of the United States Code. This Order shall be binding in all respects upon the Debtor, its bankruptcy estate, all creditors of, and holders of equity interests in, the Debtor, all holders of liens, claims or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer, and all successors and assigns of the Buyer upon conversion of the Debtor's Chapter 11 Case from chapter 11 to chapter 7. This

Order and the Purchase Agreement shall inure to the benefit of the Debtor's estate and its creditors, the Buyer and the respective successors, assigns and grantees.

11.     The Sale of the Acquired Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code, or any other provision of the Bankruptcy Code, or otherwise.

**Transfer of Acquired Assets**

12.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtor is authorized to sell the Acquired Assets to the Buyer in accordance with the Purchase Agreement, and to transfer, assign and convey the Acquired Assets to the Buyer on the "Closing Date" (as defined in the Purchase Agreement).  Upon the Debtor's receipt of the Total Consideration, such Sale, transfer, assignment and conveyance shall constitute a legal, valid, binding, and effective sale, transfer, assignment and conveyance of such Acquired Assets, which shall vest Buyer with all right, title, and interest of the Debtor to the Acquired Assets, free and clear of all (i) deeds of trust, mortgages, liens (as defined in section 101(37) of the Bankruptcy Code, and including but not limited to, mechanics', materialmens' and other consensual or statutory liens), financing statements and any other encumbrance accruing or arising at any time prior to the Closing Date (collectively, "Liens"), (ii) all debts arising under, relating to, or in connection with any act of the Debtors, all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, interests, duties, covenants, actions, restrictions (including, but not limited to, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Acquired Assets and all debts arising in any way in connection with any acts of the Debtors), personal injury and other tort claims, covenants, defects, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, successor, transferee, product liability, environmental, tax and other liabilities and claims of any kind or nature, any claims arising under the Workers Adjustment Restraining and Notification Act, 29 U.S.C. § 2101, et seq., or any

collective bargaining agreements or other applicable law, and all causes of action and liabilities of any kind and nature, whether arising prior to or subsequent to the commencement of the Chapter 11 Case, in each case whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, secured or unsecured, senior or subordinate, legal or equitable, or created or imposed by agreement, understanding, judgment, law, equity or otherwise, including pursuant to environmental law, anti-trust law, labor law, *de facto* merger, mere continuation, or substantial continuity (collectively, "Claims"), relating to, accruing or arising at any time prior to the Closing Date, and (iii) other interests or any other claim of any kind or nature whatsoever, including but not limited to, any theory of successor liability, successor-in-interest liability and claims, transferee liability (collectively, "Interests"). Such Liens, Claims and Interests shall exclude the Assumed Liabilities (as defined in the Purchase Agreement) and are collectively referred to as the "Released Liens, Claims and Interests."

13. Except as explicitly authorized for payment by this Order, the Released Liens, Claims and Interests shall attach, as adequate protection to the holder thereof pursuant to 11 U.S.C. § 363(e), to the proceeds of the Sale, with the same priority, validity, force, effect and scope as of the petition date of the Debtor's Chapter 11 Case, subject to any and all defenses, offsets, counterclaims and/or other rights of any party relating thereto; provided, however, that the Debtor shall disburse, or cause to be disbursed, the Sale proceeds directly from escrow to satisfy (i) any outstanding property taxes relating to the Acquired Assets, subject to requirements of sections 2.3 and 6.1 of the Purchase Agreement; and (ii) Cure Costs, if any, with each such payment to be made concurrent with the Closing.

14. On or before the Closing Date, each of the creditors of the Debtor's estate is authorized and directed, and the Buyer is hereby authorized, on behalf of each of the estate's creditors, to execute and deliver such documents and take all other actions as may be reasonably necessary to release the Released Liens, Claims and Interests, if any, as such Released Liens, Claims or Interests may have been recorded or may otherwise exist.

15.    Each of the Debtor's creditors is hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release such creditor's Liens, Claims or Interests in the Acquired Assets, if any, as such Liens, Claims or Interests may have been recorded or may otherwise exist.  If any person or entity that has filed or recorded financing statements, mortgages, deeds of trust, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any Liens, Claims or Interests in, against or upon the Acquired Assets prior to the Closing Date of the Sale, in proper form for filing and executed by the appropriate parties, and has not executed termination statements, instruments of satisfaction, releases of all Liens, Claims or Interest that the person or entity has with respect to the Acquired Assets, then on the Closing Date, or as soon as possible thereafter, (a) the Debtors are hereby authorized and directed to execute and file, or as appropriate record, such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Buyer is hereby authorized on behalf of each of the Debtor's creditors, to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims, Liens and Interests in, against, or upon the Acquired Assets of any kind or nature whatsoever.

16.    All entities who are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets (other than the Deposit and the Excluded Assets under the terms of the Purchase Agreement) are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date, with the Liens, Claims and Interests of such entity to be satisfied solely from the proceeds of the Sale of the Acquired Assets.

17.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets or a bill of sale transferring good and marketable title in the Acquired Assets to Buyer. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the

transactions contemplated by the Purchase Agreement.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Released Liens, Claims or Interests of record.

18.    This Order is and shall be binding upon and shall govern the acts of all persons and entities, including, without limitation, (i) all filing agents, (ii) filing officers, (iii) title agents, (iv) title insurers, (v) recorders of mortgages, (vi) recorders or registrars of deeds, deeds of trust, financing statements and security agreements, (vii) administrative agencies, (viii) secretaries of state, (ix) federal, state and local governmental authorities, agencies, departments, and (x) all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing persons and entities is hereby directed to accept for filing and recordation any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.  If any such person or entity fails to comply with the provisions of this paragraph, such person or entity shall nonetheless be bound to any and all documents necessary or desirable to effect the transactions contemplated under the Purchase Agreement.

19.    All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, police and regulatory authorities, lenders, trade creditors, judgment holders, litigation claimants and other creditors, holding Liens, Claims or other Interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing Date or the transfer of the Acquired Assets to the Buyer, hereby are permanently barred, estopped and enjoined from asserting against the Buyer, the Buyer's successors or assigns, or the Acquired Assets, any such persons' or entities' Released

Liens, Claims or Interests in and to the Acquired Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against the Buyer, any of its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyer, any of its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim or Interest against the Buyer, any of its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyer, any of its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated on or through the Acquired Assets. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Order.

## Acquired Contracts and Real Property Leases

20.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale as contemplated under the Purchase Agreement, the Debtor's assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Purchase Agreement, of the Acquired Contracts specified in this Order and as identified in Exhibit 2 hereto is approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

21.     The Debtor is authorized in accordance with sections 105(a) and 365(a),(f) and other relevant provisions of the Bankruptcy Code to (a) assume and assign to Buyer, effective upon the Closing of the Sale as contemplated under the Purchase Agreement, the Acquired Contracts specified in Exhibit 2 to in this Order; and (b) execute and deliver to the Buyer such

documents or other instruments as may be necessary to assign and  the Acquired Contracts specified in this Order.

22.     Any Cure Costs due and owing on account of the assumption and assignment of the Acquired Contracts set forth in the Purchase Agreement and specified in <u>Exhibit 2</u> to this Order, shall be paid by the Debtor out of the Sale proceeds in accordance with paragraph 13 of this Order.  The payment of the applicable Cure Costs, in the amounts set forth in <u>Exhibit 2</u> hereto, shall (a) effect a cure of all defaults existing thereunder as of the date that such Acquired Contract is assumed and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default.  To the extent that any counterparty to an Acquired Contract did not object timely to its Cure Costs in accordance with the Procedures Order, such counterparty is deemed to have consented to such Cure Cost and the assignments of its respective Acquired Contract to the Buyer.

23.     The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any of the Acquired Contracts set forth in <u>Exhibit 2</u> hereto shall not be a waiver of such terms or conditions, or of the Debtor's and Buyer's rights to enforce every term and condition of the such leases and contracts.

24.     Except as expressly provided for in this Order or the Purchase Agreement, the Buyer shall not have any liability for any obligations of the Debtor arising under or related to the Acquired Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein, in the Purchase Agreement, the Buyer shall not be liable for any Claims against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, liabilities relating to or arising from any environmental laws,

and any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing Date.

25.     Other than as authorized by the Bankruptcy Code, any provisions in any of the Acquired Contracts identified in attached <u>Exhibit 2</u> that prohibit or condition the assignment of such Real Property Leases or Acquired Contracts, or that allow the counterparty to such leases and contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such lease or contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  There shall be no rent accelerations, assignment fees, increases or any other fees, amounts or costs charged to the Buyer or the Debtor as a result of the assumption and assignment of the Acquired Contracts. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Acquired Contracts have been satisfied.  On the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Acquired Contracts.

26.     On the Closing Date (i) the Acquired Contracts identified in attached <u>Exhibit 2</u> will remain in full force and effect, (ii) no default shall exist under the Acquired Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default, (iii) the Buyer shall be deemed to be substituted for the Debtor as a party to the applicable Acquired Contracts, and (iv) the Debtor shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Acquired Contracts.

27.     The Buyer has provided adequate assurance of future performance under the relevant Acquired Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

28.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to the Acquired Contracts identified in attached <u>Exhibit 2</u> are forever barred and

permanently enjoined from raising or asserting against the Debtor or the Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Acquired Contracts existing as of the Closing Date or arising by reason of the Closing.

## Other Provisions

29.     The procedures set forth in the Sale Motion whereby the Debtor may solicit, evaluate, and accept or reject overbids are approved in their entirety and are deemed to have been complied with in all respects relating to the Sale transaction contemplated by the Purchase Agreement.

30.     The Sale, as contemplated by the Purchase Agreement, is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of such Sale, unless and solely to the extent such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer of the Acquired Assets within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

31.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) the Chapter 11 Case, (ii) any subsequent chapter 7 case into which the Chapter 11 Case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

32.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in the Chapter 11 Case, the terms of this Order shall govern.

33.     This Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order. All of the provisions of this Order are non-severable and mutually dependent.

34. The Purchase Agreement and any related agreements, documents or instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms and conditions of the Purchase Agreement, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor or its bankruptcy estate.

35. So long as the Chapter 11 Case remains open, this Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtor is a party or that has been assigned by the Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes, controversies or claims concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Acquired Assets to the Buyer; (ii) interpret, implement and enforce the provisions of this Order; (iii) resolve disputes concerning the Purchase Agreement, (iv) protect the Buyer against any Released Liens, Claims or Interest, and (v) enter any orders under sections 363 or 365 of the Bankruptcy Code with respect to the Acquired Contracts identified in attached Exhibit 2.

36. The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Purchase Agreement be authorized and approved in its entirety.

37. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale transactions contemplated by the Purchase Agreement.

38. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made

applicable by Bankruptcy Rule 7054, and any other applicable rule or law, this Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of this Order as set forth herein.

40.     The Debtor shall execute whatever documents are reasonably requested or required by Buyer and any other parity to effectuate the terms, conditions, and obligations of this Order.

**IT IS SO ORDERED**.

Dated: _____, 2011

_____
Honorable Gregory F. Kishel
United States Bankruptcy Judge

SFI-684370v1

## <u>EXHIBIT B</u>

### Group Two Missouri Restaurant

| No. | Rest. # | Address | City/State/Zip |
|-----|---------|---------|----------------|
| 1 | 06030 | 1011 W. Central Avenue | Carthage, MO |

<u>**Schedule 1.1(g)**</u>

**Acquired Contract**

1.  Restaurant Franchise Agreement between Burger King Corporation and Duke and King Missouri, LLC, dated March 2, 2007, as same may have been thereafter amended.

2.  Lease Agreement dated August 15, 2008 by and between Friendly Family LLC, a New Jersey limited liability company, as landlord and Duke and King Missouri, LLC, a Delaware limited liability company, as tenant.

## Schedule 4.1(f)

### Litigation


Bruce D. Swisshelm, Sr., Plaintiff vs. Duke and King Missouri, LLC, Duke and King Real Estate, LLC, and Duke and King Acquisition Corporation, Defendants/Counterclaim Plaintiffs, vs. The Swisshelm Group, Inc., Swisshelm Family Limited Partnership, Pointguard Enterprises, Inc., and Bruce D. Swisshelm Sr., Counterclaim Defendants (Case No. 0831-CV13985, Circuit court of Greene County, Missouri).

## <u>Schedule 4.1(g)</u>

## Lease


1.      Lease Agreement dated August 15, 2008 by and between Friendly Family LLC, a New Jersey limited liability company, as landlord and Duke and King Missouri, LLC, a Delaware limited liability company, as tenant.

## Schedule 6.2

### Purchase Price Allocation

| No. | Rest. # | Address | City/State/Zip | Allocation |
|-----|---------|---------|----------------|------------|
| 1 | 06030 | 1011 W. Central Avenue | Carthage, MO | $12,500 equipment |

\*    Plus, any additional amounts paid pursuant to <u>Section 2.2</u>, and subject to adjustment pursuant to <u>Section 2.3</u>.

## EXHIBIT 2

| Type of Contract/Lease | Counter Party | Store # | Region | Debtor | Agreed Cure Amount |
|---|---|---|---|---|---|
| 1 Limited License Agreement Store #06030 | Burger King Corporation | 06030 | Group 2 | Duke & King Missouri | 51,644.19 |
| 2 Non-Residential Real Property Lease | Friendly Family LLC | 06030 | Group 2 | Duke & King Missouri | 6,506.05 |