UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

DUKE AND KING
ACQUISITION CORP,
Debtors.

Court File No. 10-38652 (GFK)

Includes:

| | |
|---|---|
| Duke and King Missouri, LLC | 10-38653 |
| Duke and King Missouri Holdings, Inc. | 10-38654 |
| Duke and King Real Estate, LLC | 10-38655 |
| Duke and King Florida Holdings, Inc. | 10-38656 |

NOTICE OF HEARING ON
MOTION TO DISMISS OR CONVERT

TO:     The debtors, all creditors and other parties in interest:

A motion has been filed by the United States Trustee to dismiss or convert the above-captioned jointly administered cases.

On Thursday, June 16, 2011, at 9:30 a.m., before the Honorable Gregory F. Kishel, Chief U.S. Bankruptcy Judge, in Courtroom No. 2A, Warren E. Burger Federal Building and United States Courthouse, at 316 North Robert Street, Saint Paul, MN 55101, the Court will hold a hearing to determine whether this case should be dismissed or converted to chapter 7.

Any response to this motion must be filed and delivered not later than June 11, 2011, which is five before the time of the hearing, (including Saturdays, Sundays or Holidays). See Local Bankruptcy Rule 9006-1(b). **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

Dated: _____

CLERK OF BANKRUPTCY COURT

By:     _____
        Deputy Clerk

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DUKE AND KING
ACQUISITION CORP,
Debtors.

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

Court File No. 10-38652 (GFK)

Includes:
Duke and King Missouri, LLC                  10-38653
Duke and King Missouri Holdings, Inc.        10-38654
Duke and King Real Estate, LLC               10-38655
Duke and King Florida Holdings, Inc.         10-38656

_____

NOTICE OF HEARING AND
MOTION TO DISMISS OR CONVERT CASES TO CHAPTER 7
_____

TO:      The debtor(s) and other entities specified in Local Rule 1204(a).

1.       The United States Trustee, by his undersigned attorney, moves the court for the relief

requested below and gives notice of hearing.

2. On Thursday, June 16, 2011, at 9:30 a.m., before the Honorable Gregory F. Kishel, Chief

U.S. Bankruptcy Judge, in Courtroom No. 2A, Warren E. Burger Federal Building and United States

Courthouse, at 316 North Robert Street, Saint Paul, MN 55101, the Court will hold a hearing to

determine whether these cases should be dismissed or converted to chapter 7.

3.  Any response to this motion must be filed and delivered not later than June 11, 2011,

which is five before the time of the hearing, (including Saturdays, Sundays or Holidays).  See Local

Bankruptcy Rule 9006-1(b).  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY**

**FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.  This court has jurisdiction over this motion pursuant to 28 U.S.C. Sections 157 and 1334,

Fed. R. B. P. 5005 and Local Rule 1070-1. The United States Trustee has standing to file this motion

pursuant to 28 U.S.C. Section 586(a) and 11 U.S.C. Section 307.   This proceeding is a core proceeding.

5.      This motion arises under 11 U. S. C. Section 1112(b) and Fed. R. Bankr. P. 1017, 2002 and 4004.  This motion is filed under Fed. R. Bankr. P. 9013, 9014 and Local Rules 9013-1 through 9013-3.  The United States Trustee requests that the cases be dismissed or converted to cases under chapter 7, preferably converted to chapter 7.

## BACKGROUND FACTS

6.  These cases were commenced by the filing of voluntary petitions under chapter 11 on December 4, 2010.  By order dated December 8, 2010, the court directed that the cases be jointly administered (Docket #40).    The jointly administered cases are now pending in this court.

7.  The Debtors collectively owned 87 Burger King franchise restaurants in six states.   On April 11, 2011, the Debtors filed a motion seeking authority to undertake a process for selling the Burger King franchises through the use of "stalking horse" bidders, along with the related assumption and assignment of executory contracts, etc.   The court approved that process on April 14, 2011. (Docket #217).    Subsequently, the Debtors went through the established stalking horse sale process and on May 10, 2011, and the court entered a series of orders whereby the sale of most of the Debtors' operating assets was approved.   See Docket #295 through #304.

8.  On information and belief, at the time this motion is heard, the Debtors will have closed on the sale of the restaurants and will have no further business operations, but instead will be left with relatively little furniture, fixtures and equipment to liquidate.

### Comprehensive Settlement Agreement

9.  As part of the process of selling the Debtors' restaurants, the Debtors needed to resolve claims among the major parties to the case.   On May 3, 2011, the Debtors filed a motion seeking

approval of a comprehensive settlement agreement among the Debtors, the Official Committee of

Unsecured Creditors (UCC), Bank of America, Burger King Corporation and Coca Cola

Corporation. Docket #273.   That motion was approved by an order entered on May 10, 2011.

Docket #294.   Attached to the Settlement Motion was the settlement term sheet.  That term sheet

provided, *inter alia*, as follows:

      A.  That settlement proceeds would be paid to Bank of America no later than the later

of May 30, 2011, or the date that the Debtors receive funds from the closing of the Group

One restaurants.

      B.  That the Debtors will pay Burger King Corporation no later than the later of May

30, 2011 or the closing of the Group One restaurants, but in no event later than June 15,

2011.

      C. Burger King Corp agrees to the closure of any Group Two restaurants which are

not sold.

      D.  "William Kaye will be designated to serve as liquidating trustee under any

liquidating trust agreement approved under a plan of liquidation."[1]   Docket #273, ¶14.


    10.  On information and belief, when this motion is heard, the Comprehensive Settlement

will have been effectuated, the restaurant sales will have closed, the major payments will have been

made and the Debtors will no longer have any remaining restaurants in operation.    On further

information and belief, the provision wherein the Debtors agreed to allow William Kaye to act as

---

[1]William Kaye of East Rockaway, New York is the chair of the official Committee of
Unsecured Creditors (UCC).  Mr. Kaye has been a senior bankruptcy advisor for Coca Cola for
over ten years and was the subject of the U.S. Trustee's objection to the expense reimbursement
motion heard on May 3, 2011.  See Docket #271.

"liquidating trustee" under a "liquidating trust agreement" pursuant to a "liquidating plan" establishes the Debtors' expectation that they will go through the process of having a disclosure statement approved and will seek confirmation of a plan which includes such provisions.

`                                              Professionals

11.  The major constituencies in this case have hired numerous professionals, as follows.

Debtors:
     McDonald Hopkins, LLC,  Cleveland, Ohio - Lead Counsel to Debtors
     Fredrikson & Byron, P.A., Minneapolis, MN - Local Counsel to Debtors
     Conway MacKenzie, Inc. - Birmingham, Mich. - Restructuring Advisors to Debtors
     SS&G Financial Services - Cincinnati, OH - Tax and Audit Professionals for Debtors
     Mastadon Ventures, Inc.  - Austin, TX - Investment Banker for D

Unsecured Creditors' Committee
     Freeborn & Peters, LLP - Chicago, IL - Lead counsel to UCC
     Maslon Edelman Borman & Brand - Minneapolis, MN - Local Counsel to UCC
     Mesirow Financial Consulting, Inc., Dallas Texas - Financial consultant to UCC


12.  Thus far in the case, fee applications have been filed and approved by the court for McDonald Hopkins, Fredrikson & Byron, Conway MacKenzie, Maslon Edelman, Freeborn Peters, Miesrow and expense reimbursement for Coca Cola.  Those applications covered from the inception of these cases through the end of February.  By the undersigned's calculations, those allowed fees and expenses total $1,356,654.42.

13.  As yet, no fees have been sought by Mastadon or SS&G.   Further, additional fees and expenses incurred by all professionals from the beginning of March, 2011 through the preseent time remains unknown, although it appears likely to be again as much as has already been allowed.




<u>Asset Sale Motion</u>

14.   On May 18, 2011, the Debtors filed a motion seeking approval to sell certain assets to entities owned by Debtors' insiders and to approve procedures for future sales. Docket #327. (Asset Sale Motion).   That motion is scheduled to be heard simultaneous to this motion.

15.   The verified Asset Sale Motion states: "(S)ubstantially all of the Debtors' restaurant level operating assets will be sold by the end of May 2011". Docket #327 at ¶8.

16.   On May 24, 2011, simultaneous to the filing of this motion, the U.S. Trustee filed an objection to the Debtors' Asset Sale Motion.   The U.S. Trustee's objections to the Debtors' Asset Sale Motion is based, *inter alia*, on the fact that the Debtors want to sell assets, including a car and office furniture, equipment and computers and computer servers to a company controlled by Debtors' insiders, that the proposed sales are not in the best interests of the estates and that the proposed sale appear designed to benefit Debtors' insiders at the expense of the estates[2].

17.   The proposed buyer of assets in the Debtors' Asset Sale Motion is "bd's Mongolian Grill" (Mongolian), which has as its officers Rodger Head and Becky Moldenhauer, who are also the controlling officers of these debtors.   See Asset Sale Motion, Docket #327, ¶9.   In addition, on information and belief, Mongolian's corporate headquarters has the same location as the corporate offices of these Debtors, 12281 Nicollet Ave. S., Burnsville, MN.   See attached Exhibit #1[3].

18.   Debtors' Asset Sale motion also shows that the car to be sold is a 1999 Lexus LX7 which will be sold for $5,000.00.   That car is identified on the sworn Schedule B, #25, which was filed in the Duke and King Acquisition Corp. case, where it is given a value of $6,702.00.

---

[2]That objection is hereby incorporated by reference.

[3]Exhibit #1 is a true and correct printout from the Minnesota Secretary of State - business organizations division, which shows "Mongolian Operating Company, LLC" as an active business  operating out of the same location as the Debtors.

19.   Attached hereto as Exhibit #2 is the Minnesota Department of Motor Vehicles (DMV) records for Duke & King Acquisition Corp. which shows that it owns that car.  Based on the U.S. Trustee's review of the DMV records, this is the only vehicle shown by the DMV as owned by any of the Debtors.

20.   Attached as Exhibit #3 and #4 are respectively printouts from the Kelley Blue Book and NADA used car guide databases.   Based on those sources, the trade in value of the Debtor's Lexus which will be sold to the related entity for $5000, is between $12,925.00 and $15,450.00, assuming 100,000 miles and average condition.

21.   The Debtors' Asset Sale Motion also seeks authority to sell computers, computer servers, office furniture fixtures and equipment to bd's Mongolian Grill.     Based on the description of the assets in the Asset Sale Motion and the fact that the buyer is co-located with the Debtor, it appears that the "sale" will not require any assets to be moved.

22.   Nothing in the Debtors' Asset Sale Motion indicates that any efforts have been made to market the assets to be sold.  Nothing in the Motion indicates whether the assets to be sold have been appraised.   The only reference to the value of the property to be sold is a footnote in which the Debtors allege that the $11,525 is "based on the average prices on E-bay or other re-sale websites". See Docket #327, ¶9, footnote#1.    Instead, the Debtor's Asset Sale Motion simply states "management believes it is in the best position to maximize the value of the assets being sold because they have knowledge of the market and potential buyers".   Docket #327, ¶13.   There is no factual basis for this assertion in the Asset Sale Motion since nothing anywhere in the record of any of these cases shows that management has experience selling office equipment, furniture, cars or computers.

<u>Continued Use of Cash</u>

23.   On May 18, 2011, the Debtors filed a stipulation for continued use of cash and cash collateral.  Docket #326.   The stipulation was approved by order entered on May 20, 2011.  Docket #329.   Attached to both the order and the stipulation is a budget covering through August 26, 2011.  (Budget).  A copy of that Budget is attached hereto as Exhibit #5.   Included in that Budget are line items described as "Payment to BD's for services" and "Payment to BD's for Corporate Costs".

24.   The "Payment to BD's for services" line shows payments of $8,435 per week from June 3, 2011 through June 24, 2011 inclusive; $2,570 per week for the next four weeks and $1,250 per week after that.   The "Payment to BD's for Corporate Costs" shows payment of $28,900 on July 1, 2011, and $7,912 on August 5, 2011.     The total of these two line items is $97,082.00.    On information and belief, "BD's"  is the same as "bd's Mongolian Grill", the entity controlled by the Debtors' insiders which operates at the same location as the Debtors and which is the proposed purchaser of substantial assets of the Debtors described in the Asset Sale Motion.  Nothing in the record indicates how these line item expenses were calculated or what the Debtors will receive in return for these payments.

25.   The Debtors' future budget (Exhibit #4) also shows that after July 1, 2011, there will be no further operating expenses for the Debtors other than payment of professional fees, bank fees and payments to "BD's".

<u>MOTION TO CONVERT</u>

26.   The U.S. Trustee moves the court for an order immediately converting these cases to ones under chapter 7.   Cause is based on two major grounds.  First, it appears the insiders are selling the remaining non-operating assets to a related company for less than fair market value and with no evidence that any efforts were make to have an arms length sale.   In addition, it appears from the

future budget that the Debtors' expect to continue with future transactions with the insiders' related

entity, again with no indicia of the fair value of those payments or whether they are in the estates'

best interests.   Second, these chapter 11 cases are for all meaningful purposes over.  The operating

restaurants have either been sold or closed, there are no ongoing operations to reorganize and all

competing claims among the major parties have been settled and approved by the court.  As a result,

no purpose would be served by incurring substantial additional professional fees to go through the

process of approving a disclosure statement and getting a plan confirmed.

<u>Transactions with Insiders</u>

27.   First, cause exists to immediately convert the cases to chapter 7 because the Debtors

appear to have ceased acting in the best interests of the estate when they proposed assets sales to a

company controlled by insiders for less than adequate consideration.  The Asset Sale Motion now

before the court does not appear to be in the best interests of the bankruptcy estates but instead

appears to be in the interests of insiders.   Such conduct constitutes gross mismanagement which is

cause to convert under 11 U.S.C. §1112(b)(4)(B).

28.   Specifically, the Debtors are now seeking authority to sell the Lexus to bd's Mongolian

Grill for a sum that appears to be about $10,000 less than the fair market value.   bd's Mongolian

Grill is an entity co-located with the Debtors and run by the same individuals that control the Debtors.

 Although the Debtors have alleged this is a reasonable sale, nothing in the record does supports that

assertion.  Rather, outside evidence from used car guides indicates that it is not a reasonable sale.

Debtors' current management can never independently exercise their fiduciary duties and determine

what is an appropriate sale price for the sale of an asset to a related company.  Management has a

fiduciary duty to sell assets for the best price available for the benefit of all creditors.   Failure to do

so is gross mismanagement of the estates.

29. Likewise, the Asset Sale Motion proposes the sale of all the office equipment computers, computer servers, furniture and fixtures which are owned by the Debtors to that same insiders company, bd's Mongolian Grill. Again, that motion seeking approval of the sale clearly fails to meet the best interests of creditors test. Instead, it proposes to make such sales at prices that have not been tested on the open market and appears designed as an accommodation to the Debtors' insiders' related entity, bd's Mongolian Grill. This part of the proposed sale also appears to constitute gross mismanagement.

30. In addition, the Debtors' Asset Sale Motion, insofar as it requests authority to sell 15 laptop computers to employees, also has not been shown as in the best interests of the estate and its creditors. The value of the computers remains uncertain and it is also not clear if some of these individual buyers are also connected to bd's Mongolian Grill.

31. The Debtors' future budget also proposes to make payments to "BD's" for "services" and for "corporate costs". Again, this is not clearly an arms length transaction and the need for and value of those transactions appear to benefit insiders. In fact, it appears that the Debtors will incur these expenses because after the Asset Sale, bd's Mongolian will own the Debtors' computers and server and can require that the Debtors pay for access to what they formerly owned. The prospective budgeted payments of $97,082.00 to "BD's" must be reviewed by an independent trustee. A chapter 7 trustee or other independent fiduciary must determine the most cost effective way for the estates to maintain records and data through the final distribution of funds to creditors.

32. Each of these separate transactions with the insiders requires an immediate review and an independent trustee to determine what is in the estates' best interests[4]. Since the Debtors'

---

[4] It's somewhat surprising that the Debtors have hired countless professionals who have handled numerous complex, detailed transactions, yet when they get to the very end and have to sell the remaining office furniture and equipment, they don't bother to hire an auctioneer or

management appears to have now started working for the benefit of related entities, an independent fiduciary in the form of a chapter 7 trustee should be appointed immediately.  A chapter 7 trustee would also be in a position to independently negotiate with bd's Mongolian if access to computers and personnel is truly needed.

33.  Based on the foregoing, the court should order the immediate conversion of the cases to chapter 7 pursuant to 11 U.S.C. §1112(b)(4)(B) based on a gross mismanagement of the estates.

<u>Remaining in Chapter 11 is Not in The Best Interests of the Estates</u>

34.   Cause also exists to convert these cases to chapter 7 based on the substantial and continuing loss to and diminution of the estate and an absence of reasonable likelihood of rehabilitation, as provided for in 11 U.S.C. §1112(b)(4)(A).   Specifically, the Debtors have sold all of their operating assets and have no future prospects of running a Burger King franchise or any other business.   The major claims among the parties have been resolved, approved by the court, and satisfied per the Comprehensive Settlement Agreement and all sales and payments will have closed when this motion is heard.   The only thing left is the furniture, fixtures, equipment and computers at the Debtors' location and cash.  As a result, there is no remaining likelihood of a business rehabilitation of any kind.   Further, as set forth above, the Debtors have shown that they're not capable of independently administering the remaining assets.   Absence of a reasonable likelihood of rehabilitation is the first of the two components of cause under §1112(b)(4)(B).

35.  The second component of cause under §1112(b)(4)(B) is substantial or continuing losses to the estates.   There is now and will continue to be a continuing and substantial diminution of the estates if the cases are not immediately converted to chapter 7.  Under the Comprehensive Settlement

appraiser, instead they simply decide that insiders' related company should be the exclusive bidders.

Agreement, the parties have indicated the intent to propose a "plan of liquidation" for which Mr. Kaye will serve as "liquidating trustee" under any "liquidating trust agreement"[5].   In excess of $1.3 million has been allowed for professional fees through the end of February 2011 and substantial additional fees and expenses have accrued since then in order to get the Comprehensive Settlement Agreement approved and the restaurant sales closed, so it is likely that professional fees now exceed $2 million.  While the U.S. Trustee does not dispute that the issues among the parties were complex, needed to be resolved and that the professional services provided value, that part of the case is now over.  No purpose would be served by allowing the Debtors' professionals to now go through the process of drafting a "plan of liquidation" when very little remains to be liquidated.   Instead, such a chapter 11 plan of distribution would be grossly inefficient insofar as it would cause the incurrence of unnecessary professional fees and expenses and would instead simply waste estate assets to the detriment of creditors.

36.   Specifically, any proposed plan at this juncture would require that the plan, disclosure statement, "liquidating trust agreement" and related documents be drafted, circulated, reviewed by all the professionals in the case, and approved at a hearing for which parties would need to be present.  The costs of drafting, circulating, mailing, travel by professionals to St. Paul for the disclosure statement hearing, and travel again to St. Paul for the confirmation hearing would run up substantial additional expenses with no corresponding value to creditors.  Even if allowed to go forward, there are no assurances that the Debtors will get a plan confirmed.   The costs of such a process would easily reach into hundreds of thousands of additional dollars, all of which would be detrimental to

---

[5]Notwithstanding his position as the chair of the Unsecured Creditors' Committee, the representative of Coca Cola on the UCC would appear to be better positioned to gain from his position as liquidating trustee than from collecting on Coca Cola's claim.

the estates.  In addition, there is the continuing costs of U.S. Trustee fees, the costs of preparing

monthly operating reports, etc.

37.    Conversely, a conversion to chapter 7 would clearly be less expensive.    The

compensation provisions for chapter 7 trustees in 11 U.S.C.§326 are limited to what is "reasonable".

The chapter 7 trustee panel members in Minnesota have generally agreed that in cases where there

is substantial cash to distribute, the determination of what is reasonable is based on a lodestar

calculation of hourly rate multiplied by time spent and the U.S. Trustee would only appoint a trustee

who agreed such compensation terms.   Hence, with a conversion there will be only one independent

professional, utilizing the established local chapter 7 procedures, charging hourly, to resolve claims

and distribute what is left to distribute.

38.  Based on the foregoing, there is and will continue to be a substantial, continuing loss to

and diminution of the estate.    Those losses will become more substantial if the cases are not

converted to chapter 7 now.  In addition, there is a complete absence of reasonable likelihood of

rehabilitation.  Accordingly, cause exists for the immediate conversion of these cases pursuant to 11

U.S.C. §1112(b)(4)(B).

<u>Conclusion</u>

39.    Cause exists to immediately convert these cases under both §1112(b)(4)(A) and

§1112(b)(4)(B).    While there remains a few remaining things to wrap up, those things are best

handled by an independent chapter 7 trustee, particularly since it appears current management has

a conflict and appears incapable of completing its fiduciary duties for the benefit of all creditors.

In addition, the bankruptcy estates have now been substantially administered, there is nothing left to

rehabilitate and allowing the Debtors to remain under chapter 11 will clearly cause substantial and

continuing losses to and a diminution of the estate in the form of ongoing administrative expenses.

As a result, cause exists to immediately convert these cases to chapter 7 and the court should order that they are converted under 11 U.S.C. §1112(b)(4).

40.   The debtor is not a person described in Section 1112(c).  The debtor is eligible to be a debtor under chapter 7.

41.   There are no unusual circumstances which would warrant that the court allow the Debtors to remain under chapter 11 notwithstanding the U.S. Trustee's showing of cause to convert the cases to chapter 7.

42.   If necessary, the U.S. Trustee will call in support of this objection the following adverse witnesses:

> Becky Moldenhauer and/or
> Rodger Head
> 12281 Nicollet Ave
> Burnsville, MN 55337

Ms. Moldenhauer and/or Mr. Head will testify to their roles in the Debtors in possession, their positions with and interests in bd's Mongolian Grill, their experience liquidating office furniture equipment and computers, the efforts taken to sell the various assets, and other pertinent matters.

WHEREFORE, the United States Trustee moves the court for an order dismissing this case or converting it to a chapter 7 case and such other relief as may be just and equitable.  The United States Trustee submits that the best interests of the estate and its creditors requires that the cases be converted to chapter 7 immediately.

Dated: May 24, 2011                          HABBO G. FOKKENA
                                             United States Trustee

                                     By:     __e/Michael R. Fadlovich_____
                                             MICHAEL R. FADLOVICH
                                             Attorney/Advisor
                                             MN Attorney I.D. No. 158410

United States Trustee's Office
1015   U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 334-1352

# Exhibit 1



WELCOME TO THE OFFICE OF THE
**Minnesota** Secretary of State Online Access     PRO*file*

DA Home   UCC   **Business Services**   **Account**   **Session Briefcase**   **Help/FAQs**   **About**   Login

## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 3456820-2 | **Entity Type:** | Limited Liability Company |
| **Original Date of Filing:** | 8/18/2009 | **Entity Status:** | Active |
| **Entity Date to Expire:** | | **Chapter:** | 322B |
| **Good Standing:** (date of last annual filing) | 2010 | | |

| | |
|---|---|
| **Name:** | Mongolian Operating Company LLC |
| **Registered Office Address:** | 12281 Nicollet Ave S |
| | Burnsville, MN, 55337 |
| **Home State:** | MN |
| | |
| **Agent Name:** | No Agent Filed |

[ Additional Entity Detail ]     [ Return to Search List ]     [ New Search ]

---

DA Home | OSS Home | Contacts | Privacy Policy | Terms & Conditions

Use of this site and services indicates your acceptance of the Terms & Conditions of Use.
©Copyright 2001 , Minnesota Office of the Secretary of State. All Rights Reserved.

# Exhibit 2

**Motor Vehicle Query  5/19/2011 4:28:28 PM   tefrazer  Station: 6149  Deputy:**

| Title | | | Printed | Suspense | | Liens | Flags | Files |
|---|---|---|---|---|---|---|---|---|
| M1990W047 | | | Y | N | | 0 | | |

| Plate | | VIN | | Exp. | Sticker | Tax | Prv. Plt |
|---|---|---|---|---|---|---|---|
| TCD569 (077) | | JT6HT00W7X0052077 | | 02 12 | 402045 | 35.00 | CBB527 |

| Year | Make | Model | Style | Color | Class | Empty Wt | |
|---|---|---|---|---|---|---|---|
| 1999 | LEXS | LX7 | 4W | GRY | 09 | | |

| Transfer Date | Last Trans | First Sale | Base | Odometer | Reissue YR |
|---|---|---|---|---|---|
| 02 16 07 | R 02 14 11 | 03 22 1999 | 056400 | | 13 |

| Owner | | DOB | ID |
|---|---|---|---|
| DUKE AND KING ACQUISITION CORP | | 00 00 0000 | D785381004327 |

| Street | City | County/State | Zip |
|---|---|---|---|
| 12281 NICOLLET AVE | BURNSVILLE | DAKOTA | 55337 |

| Secured Party # 1 | | | Date |
|---|---|---|---|
| Street | City | State | Zip |
| | | | |

### PLATE/STICKER INFORMATION

| Key | Status | Year | Class | Weight | Issued By | Updated | Allocated |
|---|---|---|---|---|---|---|---|
| TCD569 | (SOLD) | 97 | P | | 190 INTERNET RENEWAL | 01/30/06 | 12/16/05 |
| Key | Status | Year | Class | Weight | Issued By | Updated | Allocated |
| 402045 | | | | | | | |

### PREVIOUS OWNERS
### P R I O R  O W N E R 1

| Title | Transfer Date | Exp | Odometer |
|---|---|---|---|
| G0970L312 | | 0208 | 0000010 |
| Owner | | | DOB |
| NATH MGMT INC | | | 00 00 0000 |
| Street | City | State | Zip |
| 900 E 79TH ST | BLOOMINGTON | 27 | 55420 |

# Exhibit 3



**Kelley Blue Book**
THE TRUSTED RESOURCE

SEARCH

**Home   New Cars   Certified Pre-Owned   Used Cars   Research   Reviews & News   Dealers & Inventory   Used Cars For Sale   Loans & Insurance**

Used Car Values | Search Used Car Classifieds | Certified Pre-Owned | Compare Vehicles | Perfect Car Finder | Most Researched Vehicles | CARFAX Vehicle History

**Welcome Back** | Sign In | Create Account | My KBB      ZIP Code: 55402      Recently Viewed      You Might Also Like      Free Dealer Price Quote


Roll over to explore

Twilight Gray Metallic



Options shown



► Find a Dealer

**News**      More Car News

10 Coolest Cars Under $18,000
Chrysler Pays Back Taxpayers
Even... - AOL Autos

Home > Used Cars > 1999 > Lexus > LX > LX 470 Sport Utility 4D

📄 Save Vehicle 🖨 Print ✉ Email 🔖 BOOKMARK

## 1999 Lexus LX 470 Sport Utility 4D

**Trade-In Value**
Private Party Value
Suggested Retail Value
CPO Value
Photo Gallery
Cars For Sale NEW!
Compare Vehicles
Review
Consumer Ratings
Find Your Next Car
Specifications

**BUY A USED CAR**
**On Blue Book Classifieds™**

Lexus
LX
75 Miles
Near ZIP 55402
**To View Ads, Click**

**Shopping Tools**
CARFAX Record Check
Auto Loan from 3.89% APR
Compare Insurance Rates
with Progressive
Payment Calculator
Find a Dealer

**Find The Right Car**
**Compare Used vs. New**

$10,000 to $15,000
Both New and Used
Luxury
**To View List, Click**

**View Another Vehicle**
Select Year...
Select Make...
Select Model...
Or Search by Category
Or Change ZIP Code

### BLUE BOOK® TRADE-IN VALUE ›WHAT'S THIS?


More Photos

| Condition ‹WHAT'S THIS?› | Value |
|---|---|
| **Excellent** | **$16,200** |
| **Good** | **$15,450** |
| **Fair** | **$14,125** |

## NEXT STEP:   Price New Cars

**Local Listings:**
◉ Search Lexus LX
○ Search all Cars For Sale near 55402

SEARCH

**News, Reviews & Top 10s**

10 Coolest Cars Under $18,000
10 New Names for 2011
Chrysler Pays Back Taxpayers Even Earlier - AOL Autos
2011 Best Redesigned Vehicle
Who Really Wins? Detroit vs Japan, Korea and Europe for Fuel Economy
Advantage - AOL Autos

Read More

**Average Consumer Rating (77 Reviews)**      Read Reviews

⭐⭐⭐⭐⭐ **4.9** out of 5      Review the 1999 Lexus LX

**Vehicle Highlights**
**Mileage:**         100,000
**Engine:**          V8, 4.7 Liter
**Transmission:**    Automatic
**Drivetrain:**      4WD

**Selected Equipment**      **Change Equipment**

**Standard**

| | | |
|---|---|---|
| Air Conditioning | Tilt Wheel | Dual Power Seats |
| Power Windows | AM/FM Stereo | Leather |
| Power Door Locks | Cassette | Privacy Glass |
| Cruise Control | CD (Multi-Disc) | Alloy Wheels |
| Power Steering | Dual Air Bags | |

Advertisement

📋 Finance & Insurance

Get a New Car Loan from
2.99% APR
Get a Pre-Owned Loan from
3.89% APR
Get Your Credit Score Now
Get a Free Insurance Quote

advertisement


Roll over to explore

Twilight Gray Metallic

► Find a Dealer

**Lexus LX**



**Locate a Dealer**

Presented by: ⓁLEXUS

---

**CARFAX Record Check**                    Powered by **CARFAX**

VIN:

No VIN? No Problem!

### Blue Book Trade-In Value

Kelley Blue Book Trade-In Value is the amount consumers can expect to
receive from a dealer for a trade-in vehicle, assuming an accurate appraisal
of the vehicle's condition, mileage and features. This value will likely be less
than the Private Party Value because the reselling dealer incurs the cost of
safety inspections, reconditioning and other costs of doing business.

**Vehicle Condition Ratings**

Check Vehicle Title History

#### Excellent
▭▭▭▭▭                                               **$16,200**
  - Looks new, is in excellent mechanical condition and needs no
    reconditioning.
  - Never had any paint or body work and is free of rust.
  - Clean title history and will pass a smog and safety inspection.
  - Engine compartment is clean, with no fluid leaks and is free of any
    wear or visible defects.
  - Complete and verifiable service records.

Less than 5% of all used vehicles fall into this category.

#### Good
▭▭▭▭                                                 **$15,450**
  - Free of any major defects.
  - Clean title history, the paints, body, and interior have only minor
    (if any) blemishes, and there are no major mechanical problems.
  - Little or no rust on this vehicle.
  - Tires match and have substantial tread wear left.
  - A "good" vehicle will need some reconditioning to be sold at retail.

Most consumer owned vehicles fall into this category.

#### Fair
▭▭▭                                                  **$14,125**
  - Some mechanical or cosmetic defects and needs servicing but is
    still in reasonable running condition.
  - Clean title history, the paint, body and/or interior need work
    performed by a professional.
  - Tires may need to be replaced.
  - There may be some repairable rust damage.

#### Poor
▭                                                      **N/A**
  - Severe mechanical and/or cosmetic defects and is in poor running
    condition.
  - May have problems that cannot be readily fixed such as a
    damaged frame or a rusted-through body.
  - Branded title (salvage, flood, etc.) or unsubstantiated mileage.

Kelley Blue Book does not attempt to report a value on a "poor" vehicle
because the value of these vehicles varies greatly. A vehicle in poor
condition may require an independent appraisal to determine its value.

\* Minnesota 05/20/2011

---

**Accurate Condition Appraisal**               Change Condition

Accurately appraising the condition of a vehicle is an important aspect in
determining its Blue Book value. Taking our 16 question condition quiz will
ensure you know the correct condition rating.

# NEXT STEP:   Price New Cars

© 2011 Kelley Blue Book Co., Inc. All rights reserved. 5/20/2011-5/26/2011 Edition.
The specific information required to determine the value for this particular vehicle was
supplied by the person generating this report. Vehicle valuations are opinions and may
vary from vehicle to vehicle. Actual valuations will vary based upon market conditions,
specifications, vehicle condition or other particular circumstances pertinent to this
particular vehicle or the transaction or the parties to the transaction. This report is
intended for the individual use of the person generating this report only and shall not
be sold or transmitted to another party. Kelley Blue Book assumes no responsibility for
errors or omissions. (v.11053)

**On KBB.com**    Home  New Cars  Certified Pre-Owned  Used Cars  Research  Reviews & News  Dealers  Used Cars For Sale  Loans & Insurance  KBB^ Green  KBB^ Mobile  Motorcycles

**Featuring**    2011 Detroit Auto Show    2011 Best Resale Value Awards    10 Comfy Cars Under $30K    10 Cool Cars Under $18K    This Week's 5 Great Car Deals

**About KBB**    About Us  Contact Us  Careers  FAQ  Media  Advertising  Linking  Privacy  Site Map  Copyright & Trademarks  Terms of Service



© 1995-2011 Kelley Blue Book Co., Inc.    Business Inquiries

# Exhibit 4


The Power of Vehicle Information

**HOME**   **AUTOS**   **CLASSIC CARS**   **MOTORCYCLES**   **BOATS**   **RVs**   **MANUFACTURED HOMES**   **BUY A PRICE GUIDE**

ADVERTISEMENT

What's your Credit Score?
freecreditscore.com
©2011 ConsumerInfo.com, Inc.
Get my Free Score!
With enrollment in freecreditscore.com™

Change Make > Change Year & Model > Change Trim > Change Mileage & Options > Standard Equipment

### 1999 Lexus LX470-V8-4WD
Utility 4D

share   print   email



View Pictures

| Pricing | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| **Base Price** | $8,250 | $10,500 | $12,400 | $15,900 |
| **Mileage:** 100,000 | $2,425 | $2,425 | $2,425 | $2,425 |
| **Options:** (add options) | | | | |

**TOTAL PRICE**   **$10,675** **$12,925** **$14,825** **$18,325***

* This Retail price is based on a clean vehicle history report . Don't make a $18,325 mistake.
Get a Free VIN Check today. Find out why AutoCheck is better than Carfax.

We found **0** 1999 Lexus listings of this model within 25 miles of your ZIP code
**Click to See Them**

ADVERTISEMENT
Is your
**Credit Score**
an embarrassment?


**SEE YOUR FREE SCORE!**
With enrollment in Triple Advantage®

freecredit score.com

| Vehicle History Report | Pricing & Specs | Pictures & Videos | Reviews & Ratings | Similar Vehicles |
|---|---|---|---|---|
| **Check for Accidents Now** Press GO or Enter VIN | Standard Equipment Specs & Performance | Pictures Available Colors 360° Views Test Drive Videos Crash Test Videos | Expert Reviews Consumer Reviews Consumer Ratings Safety Ratings Recall Information Standard Warranty | **Compare Vehicles** More Luxury Cars Top 10 Luxury Cars Model History |

AutoCheck

**Find Your Car**

Lexus
ZIP 55402

Powered by
AutoTrader

**Sell Your Car**
Sell it Now
Powered by
AutoTrader   GO

**Free Insurance Quote**
Quote Instantly and Save
Allstate   GO

**Extended Auto Warranty**
Free Instant Quote
MotorAide™   GO

**Free Auto Loan Quote**
Bad Credit OK!
   GO

**Know your Credit History**
See your Score Instantly - $0
freecreditscore.com   GO

### Standard Equipment Details

**Engine Specifications**
Type: Gas V8
Size: 4.7L/287
Horsepower: 230 @ 4800 RPM
Torque: 320 @ 3400 RPM

**Drive Train**
Drive Train: Four Wheel Drive
Transmission: 4 speed Automatic w/OD, Electronic

**Safety**
Air Bag-Driver-Front
Air Bag-Passenger-Front
Brakes-ABS-4 Wheel
Brakes-Type-4 Wheel DISC
Engine Immobilizer/Vehicle Anti-Theft System
Headlights-Auto-Off
Headlights-Auto-On
Headlights-Daytime Running lights
Locks-Child Safety Rear Door

**Comfort & Convenience**
Air Cond-Auto Climate Control
Air Cond-Front
Air Cond-Rear
Cruise Control
Keyless Entry
Locks-Pwr
Mirrors-Electrochromic Rearview
Mirrors-Pwr Driver
Mirrors-Pwr Passenger
Mirrors-Vanity-Driver
Mirrors-Vanity-Driver Illuminated
Mirrors-Vanity-Passenger
Mirrors-Vanity-Passenger Illuminated
Reading Lamps-Front
Rear Seat Heat Ducts
Seat Trim-Leather
Seat-Heated Driver
Seat-Heated Passenger
Seat-Pwr-Driver
Seat-Pwr-Passenger
Seats-Front Bucket
Steering Wheel-Adjustable
Steering-Pwr
Suspension-Active Suspension System
Universal Garage Door Opener
Windows-Pwr

**Music & Entertainment**
Audio-AM/FM Stereo
Audio-Cassette Player

Audio-CD Changer
Audio-CD Player
Audio-Upgrade Sound System

**Interior**
Auxiliary Pwr Outlet
Floor Mats-Front
Floor Mats-Rear
Seat-Additional Rear

**Exterior**
Defogger-Rear Window
Fog Lamps-Front
Luggage Rack/Roof Rack
Mirrors-Heated Driver
Mirrors-Heated Exterior
Mirrors-Heated Passenger
Roof-Generic-Sun/Moon
Roof-Sun-Pwr Tilt/Sliding
Roof-Sun-Shield
Running Boards
Trailer Hitch Receiver
Windows-Deep Tinted
Wipers-Intermittent
Wipers-Variable Speed Intermittent

**Tires**
Front Tire Size: P275/70R16
Rear Tire Size: P275/70R16

**Wheels**
Front Wheel Material: Aluminum
Rear Wheel Material: Aluminum

Back to top

Disclaimer

Home | Media Room | About Us | Help/FAQ | Contact Us | Advertise | Link to Us | Buy a Price Guide | Business Users | Change ZIP | Follow Us

© Copyright 2011 National Appraisal Guides Inc. All Rights Reserved.   Copyright | Privacy Policy
© 2000-2011 Chrome Systems Corporation.

# Exhibit 5

Duke & King
Cash Budget
Dollars In Actuals

| Week / Date | 1 5/20/2011 | 2 5/27/2011 | 3 6/3/2011 | 4 6/10/2011 | 5 6/17/2011 | 6 6/24/2011 | 7 7/1/2011 | 8 7/8/2011 | 9 7/15/2011 | 10 7/22/2011 | 11 7/29/2011 | 12 8/5/2011 | 13 8/12/2011 | 14 8/19/2011 | 15 8/26/2011 | Other | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 2,720,753 | 2,853,322 | 1,797,640 | 1,984,800 | 1,935,338 | 1,799,928 | 1,179,889 | 1,160,786 | 1,132,836 | 1,130,266 | 802,626 | 801,376 | 792,215 | 787,965 | 786,715 | 785,465 | 2,720,753 |
| **Receipts:** | | | | | | | | | | | | | | | | | |
| Operating Receipts | 1,990,909 | 578,373 | | | | | | | | | | | | | | | 2,569,282 |
| Cash In Transit | | | 268,800 | | | | | | | | | | | | | | 298,826 |
| Accounts Receivable/Credit Cards | | | 146,949 | | | | | | | | | | | | | | 146,949 |
| Rebates - Soda (Net) | | | | 88,948 | | | | | | | | | | | | | 88,948 |
| Rebates - RSI | | | | | | | | | | | | | | | | 198,016 | 198,016 |
| Utilities - Post-Petition | | | | | | | | | | | | | | | | 86,053 | 86,053 |
| Wells Fargo LOC Release | | | | | | | 49,858 | | | | | | | | | | 49,858 |
| Workers Compensation Refunds | | | | | | | | | | | | | | | | 100,000 | 100,000 |
| Professional Fee Retainers | | | | | | | | | | | | | | | | 275,000 | 275,000 |
| Residual Cash Sale Proceeds | | 279,705 | | | | | | | | | | | | | | | 279,705 |
| **Sub Total Receipts** | 1,990,909 | 858,078 | 415,749 | 88,948 | | | 49,858 | | | | | | | | | 659,069 | 4,062,637 |
| **Operating Disbursements (From Waterfall)** | | | | | | | | | | | | | | | | | |
| Operating Disbursements | 1,858,340 | 1,913,759 | | | | | | | | | | | | | | | 2,6xx,xxx |
| Working Capital | | | | | | | | | | | | | | | | | |
| Prepaid Dr. Pepper | | | | | | | | | | | | | | | | | |
| Group 2 Working Capital Liabilities | | | | | | | | | | | | | | | | | |
| Group 2 Closing Costs | | | | | | | | | | | | | | | | | |
| Sales Taxes | | | | | 87,500 | 87,500 | | | | | | | | | | | |
| Corporate Payroll/Vacation | | | 87,500 | 87,500 | | | | | | | | | | | | | |
| Professional Fees | | | 132,655 | | | 484,960 | | | | 192,570 | | | | | | | |
| Corporate Payables | | 162,750 | | 30,986 | 30,986 | 30,986 | 30,986 | | | | | | | | | 111,384 | |
| Success Plan | | | | | | | | | | | | | | | | | |
| 503(B)(9) Claims | | | | | | | | | | | | | | | | 139,430 | |
| **Sub Total Disbursements** | 1,858,340 | 1,913,759 | 220,155 | 118,486 | 118,486 | 603,446 | 30,986 | | | 192,570 | | | | | | 250,813 | |
| **Wind Down Disbursements:** | | | | | | | | | | | | | | | | | |
| Payment to BD's for services | | | 8,435 | 8,435 | 8,435 | 8,435 | 2,570 | 2,570 | 2,570 | 2,570 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 10,000 | |
| Contract Labor | | | | 8,488 | 8,488 | 8,158 | 6,505 | 22,380 | | | | | | | | | |
| Payment to BD's for Corporate Costs | | | | | | | 28,900 | | | | | | | | | | |
| Tax Returns 2011 | | | | | | | | | | | | 7,912 | | | | 31,100 | |
| 401K | | | | | | | | | | | | | | | | 15,200 | |
| Bank Fees | | | | 3,000 | | | | 3,000 | | | | | 3,000 | | | 6,000 | |
| W-2 Forms | | | | | | | | | | | | | | | | 10,000 | |
| 1099 Forms | | | | | | | | | | | | | | | | 500 | |
| Professional Fees | | | | | | | | | | 132,500 | | | | | | 91,800 | |
| **Sub Total Wind Down Disbursements** | | | 8,435 | 19,924 | 16,924 | 16,593 | 37,975 | 27,950 | 2,570 | 135,070 | 1,250 | 9,162 | 4,250 | 1,250 | 1,250 | 164,600 | |
| **Total Disbursements** | 1,858,340 | 1,913,759 | 228,590 | 138,410 | 135,410 | 620,039 | 68,961 | 27,950 | 2,570 | 327,640 | 1,250 | 9,162 | 4,250 | 1,250 | 1,250 | 415,413 | 5,734,243 |
| **Ending Cash** | 2,853,322 | 1,797,640 | 1,984,800 | 1,935,338 | 1,799,928 | 1,179,889 | 1,160,786 | 1,132,836 | 1,130,266 | 802,626 | 801,376 | 792,215 | 787,965 | 786,715 | 785,465 | 1,029,120 | 1,029,120 |

Privileged Confidential and Subject To Change

<u>VERIFICATION</u>

I, Michael R. Fadlovich, attorney for the United States Trustee, the movant named in the

foregoing motion, declare under penalty of perjury that the foregoing is true and correct according

to the best of my knowledge, information and belief.


Executed on: May 24, 2011

Signed:      ____e/Michael R. Fadlovich_____
             MICHAEL R. FADLOVICH
             Trial Attorney

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | **JOINTLY ADMINISTERED UNDER** |
|---|---|
| In re: | **CASE NO. 10-38652** |

DUKE AND KING
    ACQUISITION CORP,          Court File No. 10-38652 (GFK)
       Debtors.

Includes:

| Duke and King Missouri, LLC | 10-38653 |
|---|---|
| Duke and King Missouri Holdings, Inc. | 10-38654 |
| Duke and King Real Estate, LLC | 10-38655 |
| Duke and King Florida Holdings, Inc. | 10-38656 |

_____

<u>MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO CONVERT OR DISMISS</u>

_____

The United States Trustee, by the undersigned attorney, submits this memorandum in support of the motion to dismiss this case or convert it to a Chapter 7 case.

A proceeding to dismiss a case or convert a case to another chapter is governed by 11 U.S.C. §1112 and Fed. R. Bankr. P. 9014. A request for dismissal or conversion of a case shall be made by motion. A motion to dismiss or a motion to convert a case shall be deemed a motion either to dismiss or to convert, whichever is in the best interest of creditors and the estate. Loc. R. Bankr. P. 1017-2. A case may be converted to a Chapter 7 case if the debtor may be a debtor under Chapter 7. §1112(f). The authority for the United States Trustee to move to convert or dismiss the debtor's Chapter 11 petition is located at 11 U.S.C. § 1112(b) and (e) and Local Rule 1007-2(a).[6]

Subsection (b)(4) provides a non-exhaustive list of examples of cause. Section 1112(b)(1) in relevant parts provides:

_____

[6] 28 U.S.C. § 586(a)(8) <u>requires</u> that the U.S. Trustee file a motion to convert or dismiss if there is a material ground for relief under Section 1112(b).

(b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court <u>shall</u> convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate-, and

(2)The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and <u>specifically identifies unusual circumstances</u> establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that -

(A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) -

(i)for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

(4) For purposes of this subsection, the term "cause" includes –

(A) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

(B) gross mismanagement of the estate;

.   .   .

(E) Failure to comply with an order of the court;

(F) Unexcused failure to satisfy any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;

(G) Failure to attend the meeting of creditors convened under Section 341(a) . . . without good cause shown by the debtor;

(H) Failure to timely provide information or attend meetings reasonably requested by the United States Trustee . . .

11 U.S.C. § 1112(b)[7]. *(emphasis added).*

In this case, cause exists to convert based on gross mismanagement of the estate insofar as it appears the Debtors are engaged in transactions with insiders which are not in the bests interests of the estate and its remaining creditors.   In addition, there is an ongoing loss to and diminution of the estate and an absence of a reasonable likelihood of rehabilitation.   As a result, there is cause under section 1112(b)(4)(A) and (B).

"The purpose of § 1112(b)(1) is to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Loop v. U.S. Trustee*, 379 F. 3d 511, 515 (8th Cir. 2004), citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D. N.Y. 1995).  The parties to a case are entitled to rely on facts established in the record in making a case for conversion or dismissal under §1112(b).  *Loop*, 379 F. 3d at 518.   Here, all the facts cited by the U.S. Trustee are either in the record and based on Debtors' prior verified motions or are from independent sources and are attached as exhibits to the U.S. Trustee's motion.

A bankruptcy court has broad discretion in deciding whether to dismiss or convert a pending chapter 11 case.  *Lumber Exchange Bldg. v. Mutual Life Ins. Co. (In re Lumber Exchange Bldg., Ltd.)*, 968 F.2d 647, 648 (8th Cir. 1992).   Cause for conversion or dismissal is not limited to the reasons expressed in §§ 1112(b), (e).  11 U.S.C. 102(3); <u>Moody v. Security Pac. Business Credit, Inc.</u>, 85 B.R. 319, 352-53 (W.D. Pa. 1988).

In this case, cause is based on the fact that the Debtors have completed the administration of their operating assets and resolved major claims with major creditors.   Now, with the remaining

---

[7]As amended by the Bankruptcy Technical Corrections Act of 2010, P.L. 111-327, December 22, 2010.

assets, it appears they are attempting to engage in self dealing with a related company to the detriment of remaining creditors.   They should not be allowed to do so.  In addition, no purpose would be served by allowing for a liquidating plan and the related costs and expenses since doing so would cause a substantial and unnecessary depletion of the estate with no corresponding benefit. In addition, there are no unusual circumstances that warrant the court's allowance of the Debtors to remain under chapter 11 and propose a plan, as provided for in §1112(b).

Based on the foregoing the United States Trustee requests that the court immediately enter an order converting the case to chapter 7.    An independent trustee is needed to undertake the remaining administration of the estate.

HABBO G. FOKKENA
United States Trustee
Region 12

Dated: May 24, 2011              BY:  _____e/Michael R. Fadlovich_____
MICHAEL R. FADLOVICH
Attorney/Advisor
MN Attorney I.D. No. 158410
U.S. Trustee's Office
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 334-1350

## <u>CERTIFICATE OF SERVICE</u>

In re:

DUKE AND KING
    ACQUISITION CORP,
       Debtors.

**JOINTLY ADMINISTERED UNDER
CASE NO. 10-38652**

Court File No. 10-38652 (GFK)

Includes:

| | |
|---|---|
| Duke and King Missouri, LLC | 10-38653 |
| Duke and King Missouri Holdings, Inc. | 10-38654 |
| Duke and King Real Estate, LLC | 10-38655 |
| Duke and King Florida Holdings, Inc. | 10-38656 |

-

The undersigned hereby certifies under penalty of perjury that he is an employee in the

Office of the United States Trustee for the District of Minnesota and is a person of such age and

discretion as to be competent to serve papers. That on May 24, 2011, he caused to be served a

copy of the attached: United States Trustee's Motion to Convert or Dismiss chapter 11 cases

under 11 U.S.C. §1112(b), by placing said copy in a postpaid envelope addressed to the person(s)

hereinafter named, at the place and address stated below, which is the last known address, and by

depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

**Scott N Opincar**
McDonald Hopkins LLC
600 Superior Ave E Ste 2100
Cleveland, OH 44114

Duke & King Acquisition Corp., *et al.*
12281 Nicollet Ave. S
Burnsville, MN 55337

MEADOWBROOK MEAT COMPANY INC
LARRY B RICKE
RICKE & SWEENEY PA
325 CEDAR ST STE 600
ST PAUL MN 55101

**Clinton E. Cutler**
Fredrikson & Byron, P.A.
200 South Sixth Street Ste 4000
Minneapolis, MN 55402

BURGER KING CORPORATION
PAUL J BATTISTA
GENOVESE JOBLOVE & BATTISTA
100 SE 2ND ST 44TH FL
BANK OF AMERICA TOWER
MIAMI FL 33131

BANK OF AMERICA NA
STEPHEN M MERTZ
FAEGRE & BENSON LLP
90 S 7TH ST
2200 WELLS FARGO CTR
MINNEAPOLIS MN 55402-3901

Thomas F. Blakemore
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703

Jonathan T. Edwards
Alston & Bird LLP
1201 West Peachtree St.
One Atlantic Center
Atlanta, GA 20209-2424

ANNIE C WELLS
MORGAN LEWIS & BOCKIUS LLP
101 PARK AVE
NEW YORK, NY 10178

Joseph Geraghty
Conway Mackenzie, Inc.
109 N. Main Street
500 Performance Place
Dayton, Ohio, 45402

Joseph Johnson, Esq.
Office of the General Counsel
The Coca Cola Company
P.O. Box 1754
Atlanta, GA 30301

Julie Oanh T. Nguyen
350 Santa Helena
Solana Beach, CA 92075

P&C Rental LLP.
PO Box 14366
Scottsdale, AZ 85267

RICHARD S LAUTER
FREEBORN & PETERS LLP
311 S WACKER DR STE 3000
CHICAGO, IL 60606

William Kaye
The Coca-Cola company
31 Rose Lane
East Rockaway, NY 11518

In addition, the following have been served via the bankruptcy court's CM/ECF electronic service system.

Paul J Battista pbattista@gjb-law.com, mpacheco@gjb-law.com

Matthew R. Burton mburton@losgs.com, swood@losgs.com

Gordon B. Conn conn@kwgc-law.com

Kenneth Corey-Edstrom kcoreyedstrom@larkinhoffman.com, klatham@larkinhoffman.com

Clinton E. Cutler ccutler@fredlaw.com, jwitt@fredlaw.com

Michael F. Doty mdoty@faegre.com

Sarah M Gibbs sgibbs@fredlaw.com, jwitt@fredlaw.com

Steven A. Ginther mn@dor.mo.gov

John L. Greer jgreer@hughesmathews.com,

Aaron L Hammer ahammer@freebornpeters.com,

Christopher J Harayda charayda@faegre.com,

Carole Clark Isakson isakson@kwgc-law.com

Dennis L Johnson johnsonlaw43@msn.com,

Michael J Kaczka MKACZKA@MCDONALDHOPKINS.COM

Douglas W. Kassebaum dkassebaum@fredlaw.com,

Jeffrey D. Klobucar jklobucar@foleymansfield.com

Eoin L Kreditor ekreditor@fsglawyers.com,

Adam D. Maier adam.maier@leonard.com,

Stephen M Mertz smertz@faegre.com

Dan R Nelson dnelson@lathropgage.com

Steven C. Opheim sopheim@dudleyandsmith.com,

Scott N Opincar SOPINCAR@MCDONALDHOPKINS.COM,

Larry B. Ricke rickel@srsg.net

Shawn M Riley SRILEY@MCDONALDHOPKINS.COM

Richard C Salmen rsalmen@felhaber.com

Mark D. Stephenson marks@stephenson-sanford.com, chrish@sstmnlaw.com

Amy J Swedberg amy.swedberg@maslon.com

US Trustee ustpregion12.mn.ecf@usdoj.gov

Lee J Viorel lviorel@lowtherjohnson.com

Vogel Law Firm Ltd Vogel mwv@vogellawfirm.net

Wendy S Walker WWALKER@MORGANLEWIS.COM

Annie C Wells awells@morganlewis.com

**By:     e/Michael R. Fadlovich**
Michael R. Fadlovich
Trial Attorney
MN Atty I.D. No. 158410
U.S. Trustee's Office
300 South Fourth St., #1015
Minneapolis, MN  55415
(612) 334-1350

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

**JOINTLY ADMINISTERED UNDER**
In re:                                                          **CASE NO. 10-38652**

DUKE AND KING
            ACQUISITION CORP,                    Court File No. 10-38652 (GFK)
                    Debtors.

Includes:
Duke and King Missouri, LLC                         10-38653
Duke and King Missouri Holdings, Inc.           10-38654
Duke and King Real Estate, LLC                     10-38655
Duke and King Florida Holdings, Inc.              10-38656

---

### ORDER OF CONVERSION

---

The above-entitled cases came before the court on the motion by the United States Trustee

seeking an order dismissing the chapter 11 cases or converting them to cases under chapter 7.

Michael R. Fadlovich appeared on behalf of the United States Trustee.  Other appearances were

noted in the record.

Based upon the U.S. Trustee's motion, the findings of the court on the record, and all of

the files, records and proceedings herein, it is hereby ORDERED:

That the above named jointly administered chapter 11 cases are converted to chapter 7.

_____
GREGORY F. KISHEL
Chief United States Bankruptcy Judge