\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | Court File Nos: |
| (includes: | |
| Duke and King Missouri, LLC; | 10-38653 (GFK) |
| Duke and King Missouri Holdings, Inc.; | 10-38654 (GFK) |
| Duke and King Real Estate, LLC; | 10-38655 (GFK) |
| DK Florida Holdings, Inc.) | 10-38656 (GFK) |
| | Chapter 11 Cases |
| | Judge Gregory F. Kishel |

---

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT CASES TO CHAPTER 7

---

The Official Committee of Unsecured Creditors (the "*Committee*") appointed in the above-captioned chapter 11 cases, by and through its undersigned counsel, hereby objects (the "*Objection*") to the *Motion to Dismiss or Convert Cases to Chapter 7* (the "*Conversion Motion*") filed by the United States Trustee (the "*U.S. Trustee*"). In support of its Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

In the Conversion Motion, the U.S. Trustee asserts that the Debtors' pending motion to sell certain *de minimis* assets to an entity controlled by their insiders constitutes "gross mismanagement" under section 1112(b)(4)(B) of title 11 of the United States Code (the "*Bankruptcy Code*"), and that further bankruptcy objectives and liquidation can be better effectuated under chapter 7 since nothing is left to "reorganize" in chapter 11, thereby warranting

conversion of these cases to chapter 7. These assertions stand in stark contrast to the results achieved by the estates in liquidating the Debtors' assets, resolving millions of dollars in heavily contested claims and the strong prospects for confirmation of a chapter 11 plan, and also represent a gross misrepresentation of the exemplary efforts of the Debtors and other key constituencies in these cases.

At the outset of these cases, the outlook was dire for all major constituents. The Debtors' franchisor, Burger King Corporation ("*BKC*") asserted substantial administrative claims for overdue marketing and royalty fees and contemplated not renewing the license agreements for 52 of the Debtors' 87 restaurants. The Debtors' senior secured lender, Bank of America, N.A. ("*BofA*") was opposed to the Debtors even using cash collateral and went so far as to file a motion to convert the cases. Indeed, even the Committee's financial advisors believed there was little chance of a recovery for unsecured creditors.

Despite the immense obstacles in place, the Committee, the Debtors, BKC and BofA were able to reach a global settlement (the "*Global Settlement*") in conjunction with the principal asset sale recently approved by this Court. Under the Global Settlement, the Debtors' unsecured creditors could recover upwards of thirty percent (30%) on their claims, which this Court recently observed at the hearing on the sale of the principal assets, is a respectable distribution – an outcome that was largely inconceivable at the commencement of these cases.

If granted, the Conversion Motion would result in a devastating and unfortunate waste of the estates' resources and would place the positive achievements of the Debtors, the Committee and their professionals at grave risk. Conversion would jeopardize the unsecured creditors' recovery by terminating the joint plan of liquidation process ("*Joint Plan*"), which was and remains a central part of the framework for the Global Settlement. Additionally, conversion will

deny unsecured creditors the opportunity to appoint the extraordinarily well-qualified Mr. William Kaye as liquidating trustee, who has agreed to serve without compensation.

Moreover, as set forth in more detail below, allowing the cases to continue under chapter 11 in order to confirm a Joint Plan will allow for a more cost-effective means for administering the remaining estate assets, and can be overseen by those parties with the most knowledge – not to mention the most at stake – in these cases. Appointment of a chapter 7 trustee despite such assets in place will only breed waste and duplication that will harm unsecured creditors.

At this stage in the proceedings, the constituency with the most at stake is the unsecured creditors. The Committee submits – and bankruptcy law actually supports – that unsecured creditors should be given the opportunity to proceed in the way they see most appropriate – in this case, through the pursuit of the Joint Plan. The Conversion Motion should therefore be denied.

## RELEVANT BACKGROUND

### A. The Chapter 11 Cases

On December 4, 2010 (the "*Petition Date*"), Duke and King Acquisition Corp. and certain affiliated entities (collectively, the "*Debtors*") filed voluntary petitions (the "*Cases*") for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. At the time of their bankruptcy filing, the Debtors operated 87 separate restaurant franchise locations (the "*Restaurants*") through BKC in Minnesota, Missouri, Wisconsin, Iowa, Illinois and Kansas.

On December 29, 2010, the Office of the U.S. Trustee appointed the Committee as an official committee to represent the interests of unsecured creditors of the Debtors pursuant to

section 1102 of the Bankruptcy Code. The U.S. Trustee filed formal notice with the Court reflecting such appointment on that same date.

**B.    The Debtors' Principal Asset Sale**

On January 7, 2011, the Debtors filed a motion for an order approving sale and bidding procedures (the "*Sale Procedures Motion*"), seeking to establish certain procedures with respect to the sale of substantially all of the Debtors' assets. The procedures set forth in the Sale Procedures Motion proposed marketing the Restaurants in two separate groups – Group One Restaurants and Group Two Restaurants. Additionally, Group One Restaurants were separated based upon geographic regions. This Court entered an Order approving the procedures set forth in the Sales Procedures Motion, as amended, on January 19, 2011 (the "*Sale Procedures Order*").

On April 11, 2011, the Debtors filed a motion (the "*Sale Motion*") seeking to, *inter alia*, schedule a hearing on stalking horse bids, approving stalking horse protection fees, approving the form of stalking horse asset purchase agreements, approving the form and manner of sale and cure notices and authorizing the Debtors to sell assets free and clear of liens, claims, interests and encumbrances. The Court entered an Order granting the Sale Motion on April 14, 2011.

In accordance with the Sale Procedure Order, an auction (the "*Auction*") was held and conducted on April 26, 2011. The Debtors subsequently named the highest and best offers for each of the Restaurant Groups and regions as follows:

| **Successful Bidder** | **Group and Region** |
|---|---|
| Heartland Food Corp. ("*Heartland*") | Group 1, Minnesota Region |
| Crown Ventures Iowa, Inc. ("*Crown*") | Group 1, Illinois and Wisconsin Regions<br>Group 1, Davenport Region<br>Certain Group 2 Restaurants |

| Strategic Restaurant Acquisition Corp II, LLC ("*SRAC*") | Group 1, Missouri Region<br>Certain Group 2 Restaurants |
|---|---|

On May 10, 2011, this Court entered a series of orders authorizing the Debtors to sell the auctioned assets to the winning bidders (collectively, the "*Sale Transactions*"). *See* Doc. 307, 306, 304, 303, 302, 301, 300, 299, 298 and 297.

## C.    The Global Settlement Amongst Key Parties-In-Interest

The primary parties-in-interest in these cases had substantial disputes concerning their respective entitlement to, and the distribution of, the Debtors' assets. As of the Petition Date, BofA asserted claims in excess of $11 million, secured by liens on substantially all of the Debtors' assets.

As part of their request to use cash collateral, however, the Debtors asserted that BofA did not hold a valid security interest in the Debtors' cash. The Committee subsequently challenged BofA's security interests in certain of the Debtors' assets by filing an eight-count adversary complaint (the "*Committee Adversary Proceeding*") against BofA on April 14, 2011.

The Debtors' franchisor, BKC, also asserted substantial administrative claims relating to royalties and advertising obligations. BKC estimated that its administrative claims would total approximately $3.9 million by March 31, 2011 and would continue to rise thereafter.

At the time of the Auction, the Debtors, BofA, the Committee and BKC, among others, agreed upon the Global Settlement to govern everything from the structured distribution of sale proceeds amongst the major constituents to the manner in which these cases would be brought to a successful conclusion. Specifically, the Global Settlement provided for the following: (i) payment to BofA of $5 million, a waiver of its deficiency claims and dismissal of the Committee Adversary Proceeding; (ii) payment to BKC of approximately $4.7 million and the waiver all other claims against the estates; (iii) other creditors, including administrative and unsecured

creditors, to receive the first $500,000 of any overbids, with any additional amounts to be split among such creditors and BofA 25% and 75%, respectively; and (iv) the Committee chair's representative, William Kaye, to serve as the initial Liquidating Trustee under the Joint Plan.[1]

On May 3, 2011, the Debtors filed a motion seeking approval of the compromises reached pursuant to the Global Settlement (the "*Settlement Motion*"). The U.S. Trustee did not object to the Global Settlement, including, without limitation, to the contemplated Joint Plan structure set forth in the supporting documentations, and this Court approved the Global Settlement by order dated May 10, 2011 (the "*Global Settlement Order*"). The Sale Transactions closed on May 26, 2011, although a variety of post-closing reconciliations and other wind-down items remain.

### D.      Motion to Sell *De Minimis* Assets

On May 18, 2011, the Debtors filed a motion seeking to sell certain corporate-level and other assets not subject to the Auction having a *de minimis* value (the "*De Minimis Assets*"), not to exceed a threshold of $20,000. These assets include an automobile, computers and office furniture. The Debtors propose to immediately sell the De Minimis Assets to certain individuals affiliated with the Debtors in order to minimize transaction costs, which would increase the net recovery for unsecured creditors but still preserve the Committee's right to review each sale transaction.

### E.      The Conversion Motion

On May 24, 2011, the U.S. Trustee filed the Conversion Motion, which asserts two grounds for the conversion or dismissal of the Debtors' chapter 11 cases: (i) the proposed sale of

---

[1]      A copy of the term sheet documenting the Global Settlement and approved by the Court is attached hereto as <u>Exhibit 1</u>.

the De Minimis Assets to the Debtors' insiders constitutes "gross mismanagement" under section 1112(b)(4)(B); and (ii) the Debtors have sold essentially all of their assets and there is a substantial and continuing diminution of the estates if they remain in chapter 11, which justifies conversion under section 1112(b)(4)(B).

## F.      The Joint Plan

Prior to the hearing on the Conversion Motion, the Debtors and the Committee will file their proposed Joint Plan, which contemplates the creation of a creditor trust that will hold and liquidate all remaining estate assets. As agreed in the Global Settlement, Mr. William Kaye – who possesses extraordinary experience and is intimately familiar with these cases given his role as Committee chairman – will serve as the initial Liquidating Trustee.[2] The Debtors and the Committee further submit that a Liquidating Trustee appointed under the Joint Plan can more efficiently and economically administer the balance of these estates than a chapter 7 trustee appointed upon conversion.

### "CAUSE" DOES NOT EXIST TO CONVERT THESE CASES

At the request of a party in interest, absent unusual circumstances, a court shall "convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1). The party seeking conversion bears the burden of proving that "cause" exists by a preponderance of the evidence. *See generally In re Economy Cab & Tool Co., Inc.*, 44 B.R. 721, 724 (Bankr. D. Minn. 1984).

---

[2]      A copy of Mr. William Kaye's *curriculum vitae* is attached hereto as <u>Exhibit 2</u>. While the Committee acknowledges that this jurisdiction possesses many qualified chapter 7 panel trustees, it is hard to fathom a person more qualified than Mr. Kaye to serve under the circumstances given his intimate knowledge of these cases, his unparalleled experience in major bankruptcy matters across the country and, as further discussed below, his willingness to serve as Liquidating Trustee and disbursing agent without compensation. Frankly speaking, creditors are truly fortunate to have Mr. Kaye willing to continue serving the estates in these cases.

Section 1112(b)(4) of the Bankruptcy Code enumerates several bases upon which "cause" to convert a chapter 11 case to chapter 7 may be established. In the Conversion Motion, the U.S. Trustee first relies on section 1112(b)(4)(A) of the Bankruptcy Code, which sets forth a two-part test for determining the existence of cause: a showing of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

Second, the U.S. Trustee argues that cause exists based upon the alleged "gross management of the estate" due to his belief that the Debtors have somehow stopped acting in the best interests of the estates by proposing – what the Committee believes to be and what the evidence will conclusively establish – a fair market value transaction for *de minimis* assets to certain corporate insiders. Under the circumstances of these cases, the U.S. Trustee has not – and, in fact, cannot – satisfy his burden of proof necessary to establish that "cause" exists under sections 1112(b)(4)(A) and 1112(b)(4)(B) to convert these Cases. Moreover, the Debtors and the Committee are prepared to present evidence in support of their Objections that conversion will negatively impact creditors' recoveries and that the Joint Plan is in the "best interest of creditors" as defined in section 1129(a)(7) of the Bankruptcy Code.

**I.     There Has Been No Substantial or Continuing Loss and the Absence of a
         Reasonable Likelihood of Rehabilitation.**

In the instant cases, no "substantial or continuing loss[es] to or diminution of the [estates] and the absence of a reasonable likelihood of rehabilitation" exist to establish cause for conversion or dismissal under section 1112(b)(4)(A). To satisfy the "continuing loss to or diminution of the estate" requirement, a movant must prove both a substantial or continuing loss to and diminution of the estates *and* the absence of a reasonable likelihood of rehabilitation. *See*

*In re Lykes Bros. S.S. Co.*, 196 B.R. 586, 595 (Bankr. M.D. Fla. 1996). As demonstrated below, the U.S Trustee cannot meet either prong of this test.

A.   **The U.S. Trustee Has Not Met His Burden of Proving a Substantial or Continuing Loss to or Diminution of the Estates.**

The U.S. Trustee has failed to establish that the estates are suffering a substantial or continuing loss. "Courts must evaluate losses on a case-by-case basis." *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003). "[A] court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements." *Id.*

In support of showing a substantial or continuing loss, the U.S. Trustee makes vague assertions regarding the amount of professional fees, but the Conversion Motion makes no mention of the Debtors' assets and recoveries. As of the most recently filed operating reports, the Debtors' ending cash balance on April 21, 2011 was $3,700,330.11 and reported net accounts receivable of $577,725.04 during this same period. Coupled with the proceeds from the Sale Transactions and the fact that the Debtors are no longer expending money to operate the Restaurants, the Debtors' estates are not experiencing a substantial or continuing loss such that conversion or dismissal is appropriate. Indeed, the U.S. Trustee would be hard-pressed to assert that *any* loss is occurring at this time.

Based upon the foregoing, no "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" exists to establish "cause" pursuant to section 1112(b)(4)(A). Instead, as the facts and circumstances of these cases firmly establish, the interests of unsecured creditors are better protected under the contemplated Joint Plan.

### B. The Estates Can Be Administered More Expeditiously and Less Expensively Under the Joint Plan.

The purpose of converting chapter 11 cases to chapter 7 for continuing loss and the absence of a reasonable likelihood of rehabilitation is to prevent a debtor from "gambling on the enterprise at the creditor's expense where there is no hope of rehabilitation." *U.S. Trustee v. GPA Technical Consultants, Inc.* 106 B.R. 139, 141 (Bankr. S.D. Ohio 1989). Even when reorganization is no longer a viable option, courts have held that conversion should not be ordered when liquidation would proceed more expeditiously and less expensively under control of the debtor. *In re Denrose Diamond*, 49 B.R. 754, 757 (Bankr. S.D.N.Y. 1985) (citing *In re W.J. Rewoldt Co. Inc.,* 22 B.R. 459, 462 (Bankr. E.D. Mich. 1982)).

In this matter, the Debtors and the Committee will submit the Joint Plan, which establishes a trust for the liquidation of the Debtors' remaining assets for the primary benefit of general unsecured creditors. The Debtors and the Committee are proposing the Joint Plan because they believe a creditor trust that has the support of the Debtors and the Committee and is administered by Mr. William Kaye can be run more efficiently and expeditiously than a chapter 7 estate.

Additionally, the Committee submits that the creditor trust created under the Joint Plan will minimize the expenses associated with administering the estates' remaining assets. Despite the U.S. Trustee's assertions to the contrary, it cannot be denied that section 326 provides a compensation structure that could allow a chapter 7 trustee to take a substantial portion of the funds that would otherwise be available to general unsecured creditors. ***Conversely, the Committee has confirmed that the proposed initial Liquidating Trustee will serve without compensation***.

While the Liquidating Trustee will engage professionals to assist in administering the estates' assets, it is undoubtedly the case that a chapter 7 trustee would also retain similar professionals to carry out his duties. Moreover, the proposed Liquidating Trustee intends to engage professionals that are already involved in these cases, thus eliminating the need for those professionals expend considerable – and redundant – expense familiarizing themselves with the Debtors' operations and financial affairs. "[B]ringing in new parties and attorneys in the middle or at the end of the reorganization process to begin a liquidation in a Chapter 7 proceeding is generally not the most practical, efficient, expeditious, or most effective manner of liquidating estates." *In re Western Pac. Airlines, Inc.*, 218 B.R. 590, 595 (Bankr. D. Colo. 1998) (quoting Anderson and Wright, *Liquidating Plans of Reorganization*, 56 Am. Bankr. L.J. 29, 47 (1982)). Consequently, the Committee believes that liquidation would be more expeditious and less expensive if conducted under the proposed Joint Plan, and "cause" therefore does not exist to convert these cases.

## II. There Has Been No "Gross Mismanagement" of the Estates.

The U.S. Trustee also argues under section 1112(b)(4)(B) of the Bankruptcy Code that "cause" exists to convert the cases due to the alleged gross mismanagement of the estates. The U.S. Trustee contends that insiders of the Debtors are selling the De Minimis Assets to a related company for less than fair market value and with no evidence that any efforts were made to conduct an arm's-length sale. The U.S. Trustee further asserts that the continuation of future transactions with the insiders' related company serves no purpose in the cases.

Although the Bankruptcy Code does not define "gross mismanagement," courts have concluded with that "[g]ross mismanagement suggests some extreme ineptitude on the part of management to the detriment of the organization. But it must rise above simple mismanagement

to achieve the level envisioned by the [Bankruptcy] Code." *In re Mako, Inc.*, 102 B.R. 809, 812 (Bankr. E.D. Okla. 1988); *see also In re Microwave Prod. of Am., Inc.*, 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989) ("The factors used to determine gross mismanagement vary depending on the facts of the case, but often include elements that hint at fraud, in addition to negligence"); *In re La Sherene, Inc.*, 3 B.R. 169, 174-75 (Bankr. S.D. Ga. 1980) (noting that "slight evidence of mismanagement in the form of imprudent or poor business decisions or use of resources are to be expected" and that the inquiry is concerned with management's pre-motion activities in measuring gross mismanagement).

Despite the U.S. Trustee's contention, simply no evidence in the record exists to support a finding that the estates have been grossly mismanaged – if mismanaged at all. According to the U.S. Trustee, "gross mismanagement" exists simply because the Debtors purport to sell the De Minimis Assets to certain insiders – an argument that conveniently ignores the outstanding results the Debtors achieved in consummating the Sale Transactions and the Global Settlement. And to the contrary, the Debtors' independent valuation of the De Minimis Assets on eBay and other resale websites actually proves that the Debtors and their estates have been extraordinarily well-managed on this particular issue.

"Section 363(b)(1) mandates that the best interest of the estate be met by requiring any sale not in the ordinary course of business be: 1) for a fair and reasonable price, and 2) in good faith." *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D.Mo. 1988). It is not bad faith *per se* for an insider or fiduciary of a debtor to purchase its assets under section 363 of the Bankruptcy Code. *See In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *see also In re Xact Telesolutions, Inc.*, 2006 WL 66665, *5-6 (D. Md. Jan. 10, 2006) (same). Further, collusion in

the sale process is lacking when the purchaser's identity as an insider has been fully disclosed to the court. *See In re Med. Software Solutions*, 286 B.R. 431, 446 (Bankr. D. Utah 2002).

Management of a chapter 11 debtor certainly owes a fiduciary duty to its creditors. However, a debtor cannot ignore *bona fide* purchase offers that would provide immediate cash to unsecured creditors while at the same time minimize the associated costs of sale, especially when the process will be subject to review by the Committee in order to ensure that the best price is reached for the asset.

Moreover, the Debtors' method of valuing the De Minimis Assets for the purposes of the motion is not an uncommon method in a chapter 11 case. *See In re Mervyn's Holdings, LLC*, Doc. 954 and 1055 (08-11586, Bankr. D. Del.) (Debtors were permitted to sell miscellaneous assets valued at less than $10,000 through eBay without obtaining further court authority); *In re AIOC Corp.*, 1999 WL 1327910, *1 (Bankr. S.D.N.Y. Dec. 20, 1999) (Court found that an auction of art through eBay was likely to yield a price that was *per se* fair and the product of good faith and arm's-length dealings). Simply stated, there is no evidence that management has grossly mismanaged the estates such that "cause" exists under section 1112(b)(4)(B) to convert the cases to chapter 7. The plain truth is that the Debtors have appropriately managed this particular (very minor) sale issue – an action that is consistent with their exemplary handling of these cases from inception and the unexpectedly favorable results achieved for creditors with the Committee through the Global Settlement.

## ASSUMING *ARGUENDO* THAT "CAUSE" EXISTS, DENIAL OF THE CONVERSION MOTION IS STILL WARRANTED UNDER THE CIRCUMSTANCES

The absence of "cause" to convert the cases ends the inquiry into the merits of the Conversion Motion and obviates the need for the Court to consider whether conversion would be in the best interests of creditors and the estates. However, assuming *arguendo* that the U.S.

Trustee has established "cause" for conversion, the Committee contends that it would not be in the best interest of creditors and the estates to convert the chapter 11 cases to chapter 7.

Upon a determination that "cause," in accordance with section 1112(b), has been shown, a court should not convert a chapter 11 case when specifically identified "unusual circumstances" establish that such relief is not in the best interest of creditors and the estate. *See In re Orbit Petroleum, Inc.*, 395 B.R. 145, 148 (Bankr. D.N.M. 2008); 11 U.S.C. § 1112(b)(1). Although the Bankruptcy Code does not define "unusual circumstances," "the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." *In re Miell*, 419 B.R. 357, 366-67 (Bankr. N.D. Iowa 2009).

The "unusual circumstances" provision grants this Court broad discretion to examine the particular circumstances of these cases and to deny the Conversion Motion, even if the U.S. Trustee has satisfied the literal meaning of sections 1112(b)(4)(A) and 1112(b)(4)(B). *See, e.g., In re Prod. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008) (Courts "do have significant discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal."); *In re 1031 Tax Grp. LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) ("The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. . . . [Section 1112(b)] explicitly provides for this discretion where a court is able to identify 'unusual circumstances . . . that establish that the requested conversion is not or dismissal is not in the best interest of the estate.'").[3]

---

[3] While section 1112(b) was amended in 2005 to state that the court "shall" convert upon proof of cause, due to the addition of the "unusual circumstances" language, the court still has the discretion to deny a motion to dismiss. *See In re 1031 Tax Grp. LLC*, 374 B.R. at 93; *In re Prod.Int'l Co.*, 395 B.R. at 109.

Further, "the court must determine whether the best interests of creditors and the estate are served by converting or dismissing the case." *Miell*, 395 B.R. at 367; s*ee generally Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 517 (8th Cir. 2004) (noting under pre-BAPCPA section 1112(b) that a court can consider the best interests of creditors and deny conversion). In determining the best interests of creditors, a court may consider whether creditors support conversion. *See Miell*, 395 B.R. at 367; c*ompare Loop Corp.*, 290 B.R. 108, 115 (D. Minn. 2003) ("Judge Kressel concluded that conversion was in the best interests of the creditors, noting that the Committee favored conversion and that these creditors were in the best position to determine their own best interests.")

In the 8th Circuit case of *Loop Corp.*, the U.S. Trustee moved to convert the debtors' cases to chapter 7 because, after the debtors had completed the liquidation of most estate assets, administrative expenses continued to accumulate from the debtors' failed efforts to confirm a liquidating plan. The bankruptcy court found that the U.S. Trustee had shown "cause" for conversion, but the court still gave the parties five additional weeks to negotiate a confirmable plan. At the end of the five weeks, the parties did not reach an agreement on a confirmable plan, and the creditors' committee – which had previously opposed conversion – actually supported the U.S. Trustee's motion for conversion. The bankruptcy court thus converted the cases to chapter 7. The bankruptcy court's decision was affirmed in both the District Court and the Eighth Circuit Court of Appeals. In its opinion, the Eighth Circuit noted that conversion or dismissal may still be denied under the court's broad discretion if it is not in the best interest of creditors and the estate.

In the present matter, compelling reasons warrant that the Debtors remain in chapter 11, and conversion or dismissal is not in the best interests of the creditors and the estates. Perhaps

most importantly, in contrast to the circumstances present in *Loop,* the Committee – and by extension, the unsecured creditors as a whole – oppose conversion and support the Joint Plan process and ultimate appointment of the Liquidating Trustee. This process was expressly contemplated under the Global Settlement previously approved by the Court and was not opposed by the U.S. Trustee. *See* Settlement Motion, p. 2 (stating "the terms of the Term Sheet establish the structure for the Debtors to propose and confirm a joint liquidating plan as the means to wrap up the bankruptcy cases"). To abandon this approach under the flimsy pretext of a *de minimis* asset sale subverts a cornerstone of the Global Settlement and denies creditors a key benefit of their bargain in these cases.[4] The Bankruptcy Court in *Loop* specifically cited the committee's preference for conversion and the fact that these creditors were "in the best position to determine their own best interests." *Loop Corp.*, 290 B.R. at 115. Accordingly, the Committee submits that its preference for liquidation under the Joint Plan should be given significant weight in these cases.

Moreover, important post-closing reconciliation and other wind-down activities remain, as well as settlement negotiations with other key parties (specifically including secured creditor Warren Capital Group). These actions must be continued by the Liquidating Trustee to maximize recoveries for creditors.

Finally, the Debtors and the Committee also have not been afforded an opportunity to confirm the Joint Plan. In *Loop*, the Bankruptcy Court only entered a conversion order after the parties had repeatedly failed to compromise and confirm a plan of liquidation. At the very least, therefore, the Debtors and the Committee should be allowed to seek confirmation of the Joint

---

[4]     By seeking the requested relief in the Conversion Motion, the U.S. Trustee has essentially mounted a procedurally improper collateral attack on the Global Settlement that should not be sanctioned by this Court.

Plan. Given the advanced stage of the Joint Plan documents and procedural posture of these Cases, proceeding with a confirmation process for the Joint Plan should not result in significant additional administrative costs.[5] Accordingly, at a minimum, the Debtors and the Committee should have an opportunity to confirm the Joint Plan before this Court even considers the question of conversion.

## **CONCLUSION**

For the reasons stated herein, the Committee requests that the Court deny the Conversion Motion.

---

[5] As previously stated, the Joint Plan will be filed prior to the hearing on the Conversion Motion, and the Debtors and the Committee do not expect that significant revisions are needed. The other primary parties in these chapter 11 cases, namely BofA and BKC, have waived their remaining claims and thus have little reason or ability to object to the Joint Plan.

Dated:  June 10, 2011

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DUKE AND KING ACQUISITION CORP., *et al.***

By: /s/ Aaron L. Hammer
        One of Its Attorneys

Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
Devon J. Eggert, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
Facsimile:  312.360.6995
ahammer@freebornpeters.com
rlatuer@freebornpeters.com

        and

Amy J. Swedberg, Esq.
MASLON EDELMAN BORMAN &
BRAND, LLP
330 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Telephone: 612.672.8200
Facsimile: 612.672.8397
amy.swedberg@maslon.com

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**************************************************************************

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER**<br>**CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | Court File Nos: |
| (includes:<br>Duke and King Missouri, LLC;<br>Duke and King Missouri Holdings, Inc.;<br>Duke and King Real Estate, LLC;<br>DK Florida Holdings, Inc.) | 10-38653 (GFK)<br>10-38654 (GFK)<br>10-38655 (GFK)<br>10-38656 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

---

### UNSWORN CERTIFICATE OF SERVICE

---

I, Aaron L. Hammer, declare that on June 10, 2011, the following documents:

1.     Objection of the Official Committee of Unsecured Creditors to United States Trustee's Motion to Dismiss or Convert Cases to Chapter 7; and

3.     Unsworn Certificate of Service.

were electronically filed through the Electronic Case Filing System (ECF), to the Filing Users, including the following entities and sent via U.S. Mail as listed on the attached.

Dated:  June 10, 2011                    Respectfully submitted:

                                                   **FREEBORN & PETERS LLP**


                                                   By:     /s/ Aaron L. Hammer
                                                             Aaron L. Hammer, Esq.
                                                             Richard S. Lauter, Esq.
                                                             Devon J. Eggert, Esq.
                                                             FREEBORN & PETERS LLP
                                                             311 South Wacker Drive, Suite 3000
                                                             Chicago, Illinois 60606
                                                             Telephone:  312.360.6000
                                                             Facsimile:  312.360.6520

                                                             *Counsel to the Official Committee of*
                                                             *Unsecured Creditors*

Parties who currently receive e-mail notice/service for the above-referenced matter:

Paul J Battista on behalf of Debtor DK Florida Holdings, Inc.
pbattista@gjb-law.com, mpacheco@gjb-law.com

Matthew R. Burton on behalf of Interested Party POOYA INCORPORATED
mburton@losgs.com, swood@losgs.com

Gordon B. Conn on behalf of Interested Party Bruce Swisshelm
conn@kwgc-law.com

Kenneth Corey-Edstrom on behalf of Interested Party Burger King Corporation
kcoreyedstrom@larkinhoffman.com,
bhogan@larkinhoffman.com;bpeppersack@larkinhoffman.com;klatham@larkinhoffman.com;jre
ding@larkinhoffman.com

Clinton E. Cutler on behalf of Debtor DK Florida Holdings, Inc.
ccutler@fredlaw.com, jwitt@fredlaw.com

Michael F. Doty on behalf of Interested Party Bank of America, N.A.
mdoty@faegre.com

Michael Fadlovich on behalf of U.S. Trustee US Trustee
michael.fadlovich@usdoj.gov

Sarah M Gibbs on behalf of Debtor Duke and King Acquisition Corp
sgibbs@fredlaw.com, jwitt@fredlaw.com

Steven A. Ginther on behalf of Interested Party Missouri Department of Revenue
mn@dor.mo.gov

John L. Greer on behalf of Interested Party PAN O GOLD BAKING CO
jgreer@hughesmathews.com, jcurran@hughesmathews.com;sjansen@hughesmathews.com

Aaron L Hammer on behalf of Creditor Committee Committee of Unsecured Creditors of Duke
and King Acquisition Corp.
ahammer@F&Ppeters.com, bkdocketing@F&Ppeters.com

Christopher J Harayda on behalf of Interested Party Bank of America, N.A.
charayda@faegre.com, jeanderson@faegre.com

Carole Clark Isakson on behalf of Interested Party Bruce Swisshelm
isakson@kwgc-law.com

Dennis L Johnson on behalf of Interested Party The Skillman Corporation
johnsonlaw43@msn.com, dennis935@msn.com

Michael J Kaczka on behalf of Debtor Duke and King Acquisition Corp
MKACZKA@MCDONALDHOPKINS.COM

Douglas W. Kassebaum on behalf of Debtor DK Florida Holdings, Inc.
dkassebaum@fredlaw.com, scharter@fredlaw.com;bankruptcy@fredlaw.com

Jeffrey D. Klobucar on behalf of Creditor Reinhart Foodservice, L.L.C.
jklobucar@foleymansfield.com

Eoin L Kreditor on behalf of Interested Party The Lakes Adventure, LLC
ekreditor@fsglawyers.com, jsandoval@fsglawyers.com

Adam D. Maier on behalf of Interested Party INLAND REAL ESTATE CORPORATION
adam.maier@leonard.com, callie.sanford@leonard.com,ma.xiong@leonard.com

Stephen M Mertz on behalf of Interested Party Bank of America, N.A.
smertz@faegre.com

Dan R Nelson on behalf of Interested Party South Campbell Street Investment Company, LLC
dnelson@lathropgage.com

Steven C. Opheim on behalf of Interested Party Cappas Family Limited Partnership
sopheim@dudleyandsmith.com, mborries@dudleyandsmith.com

Scott N Opincar on behalf of Debtor Duke and King Acquisition Corp
SOPINCAR@MCDONALDHOPKINS.COM, bkfilings@mcdonaldhopkins.com

Larry B. Ricke on behalf of Interested Party Meadowbrook Meat Company, Inc.
rickel@srsg.net

Shawn M Riley on behalf of Debtor Duke and King Acquisition Corp
SRILEY@MCDONALDHOPKINS.COM

Richard C Salmen on behalf of Interested Party Sunflower Square Shopping Center, LLC
rsalmen@felhaber.com

Amy J Swedberg on behalf of Creditor Committee Committee of Unsecured Creditors of Duke and King Acquisition Corp.
amy.swedberg@maslon.com

US Trustee
ustpregion12.mn.ecf@usdoj.gov

Lee J Viorel on behalf of Interested Party Wood Family Limited Partnership
lviorel@lowtherjohnson.com

Vogel Law Firm Ltd Vogel
mwv@vogellawfirm.net

Wendy S Walker on behalf of Debtor DK Florida Holdings, Inc.
WWALKER@MORGANLEWIS.COM

Annie C Wells on behalf of Debtor DK Florida Holdings, Inc.
awells@morganlewis.com

Parties who are not currently on the list to receive e-mail and who will receive a copy by First Class Mail:

Thomas F. Blakemore on behalf of Creditor
Reinhart Foodservice, L.L.C.
Winston & Strawn LLP
35 W. Wacker Dr.
Chicago, IL 60601-9703

Jonathan T. Edwards on behalf of Interested
Party Meadowbrook Meat Company, Inc.
Alston & Bird LLP
1201 West Peachtree St.
One Atlantic Center
Atlanta, GA 20209-2424

Gabriel Fazzini
1804 Nicolia Dr. #108
Carlsbad, CA 92013

GILBERT MECHANICAL
CONTRACTORS INC
4551 W 76TH ST
EDINA, MN 55435

IKON OFFICE SOLUTIONS
RECOVERY & BKY GROUP
3920 ARKWRIGHT RD STE 400
MACON, GA 31210

K-Two, LLC.
3 Silver Queen Court
Park City, UT 84060

LAURENCE R KENNEDY
13997 ST CROIX TRAIL N
STILLWATER, MN 55082

Legacy Enterprises, Inc.
c/o Dan R. Nelson
Lathrop & Gage LLP
P.O. Box 4288
Springfield, MO 65808-4288

MARK KIM & HELEN KIM
MIRAE LAW LLC
1701 GOLF RD STE 1-1106
ROLLING MEADOWS, IL 60008

Julie Oanh T. Nguyen
350 Santa Helena
Solana Beach, CA 92075

P&C Rental LLP.
PO Box 14366
Scottsdale, AZ 85267

R JEFFREY POLLOCK on behalf of Debtor
Duke and King Acquisition Corp
MCDONALD HOPKINS LLC
600 SUPERIOR AVE E
SUITE 2100
CLEVELAND, OH 44114

JAMES T REMINGTON on behalf of
Interested Party CONSOLIDATED
ENERGY COOP
126 S KNOWLES
NEW RICHMOND, WI 54017

SIMON ROOFING & SHEET METAL
CORP
FRIEDMAN & RUMMELL CO LPA
GLENN R OSBORNE
132 S BROAD ST STE 101
CANFIELD, OH 44406

SS&G FINANCIAL SERVICES
C/O LISA HAFFER CPA
11500 NORTHLAKE DRIVE
SUITE 210
CINCINNATI, OH 45249

STONE DEPOT INC
1498 HAGUE AVE
ST PAUL, MN 55104

TRAVELERS
ACCOUNT RESOLUTION
NATIONAL ACCOUNTS
ATTN CHENTEL PINNOCK
1 TOWER SQ - 5MN
HARTFORD, CT 06183-4044

The Coca-Cola company
31 Rose Lane
East Rockaway, NY 11518

ANNIE C WELLS on behalf of Interested
Party Bank of America, N.A.
MORGAN LEWIS & BOCKIUS LLP
101 PARK AVE
NEW YORK, NY 10178

Fredrickson & Byron PA on behalf of
Debtor DK Florida Holdings, Inc.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402

Pursuant to Local Rule 9006-1, the filing constitutes service or notice of the filed documents on the Filing Users.

# EXHIBIT 1

## SETTLEMENT TERM SHEET

### IN RE: DUKE AND KING ACQUISITION CORP., ET AL,
### Case No. 10-38652 (Bankr. D. Minn.)

1. Duke and King Acquisition Corp., Duke and King Missouri, LLC, Duke and King Missouri Holdings, Inc., Duke and King Real Estate, LLC, and DK Florida Holdings, Inc. (collectively, the "Debtors") shall pay Bank of America ("BofA") $5,000,000 plus the amounts set forth in paragraph 7 below from the sale proceeds by the later of (i) May 30, 2011, and (ii) the date upon which the Debtors receive the funds from the closing of the sale of the final Group One Region.

2. BofA waives all deficiency claims against the Debtors and their estates; provided, however, that such waiver does not encompass any claims BofA may have against third parties.

3. Debtors waive all claims against BofA and Burger King Corporation ("BKC") and their respective officers, directors, employees and professionals, including chapter 5 avoidance claims.

4. Debtors and the Official Committee of Unsecured Creditors (the "Committee') will not challenge BofA's right to receive the lesser of (i) 25% of BKC's cure costs or (ii) $1,000,000 subject to and in accordance with the separate agreement between BKC and BofA, effective January 24, 2011. Subject and pursuant to its separate agreement with BKC, BofA will receive these amounts in addition to any amounts BofA receives under this term sheet.

5. The Debtors will pay $4,730,918 (the "Settlement Payment") to BKC by the later of (i) May 30, 2011, and (ii) the date upon which the Debtors receive the funds from the closing of the sale of the final Group One Region[1], but in no event later than June 15, 2011. The Debtors and the Committee will not challenge or object to BKC's rights to receive the Settlement Payment provided for in this paragraph on any basis whatsoever. At the closing of the Group One Regions related to store numbers 3792, 6299 and 16573, the Debtors shall also pay BKC any pro rated real estate taxes due under the respective BKC lease for such restaurants through the closing date. In addition, BKC shall be able to retain an amount equal to approximately $27,000 held by BKC in a building improvement fund for store number 4111.

6. BofA waives any credit bid rights it may have against the Illinois Region or the Wisconsin Region or any of the Group Two Restaurants.

---

[1] Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Sale and Bidding Procedures (as amended), filed on March 25, 2011.

{2693020:4}

7. The first $500,000 of any net increased value from overbids over and above the Stalking Horse Bids or favorable working capital adjustments, if any, for the Group 1 Regions, or bids for the Group Two Restaurants, shall go to the benefit of the estates/unsecured creditors. The value of any bids in excess of that amount will be shared 75% to BofA and 25% to the estates/unsecured creditors.

8. Except as provided in Paragraphs 1, 4, and 7, and consistent with Paragraphs 2, 3, and 19 BofA waives its right to receive any additional distributions from the Debtors or the Debtors' estates, and BofA shall have no liability for paying any administrative expense, secured or other claims against any of the Debtors.

9. Except as set forth herein and in consideration of the Settlement Payment, BKC waives all other claims against the Debtors and the estates.

10. BKC waives collection and enforcement of all third-party guaranties relating to the Debtors and the Debtors shall cause all such guarantors to waive all claims against BKC.

11. BKC agrees to the closure of any unsold Group Two Restaurants and/or restaurants in any Group One Region that are not being assigned to the ultimate purchaser, provided that such closures are de-identified.

12. The Committee agrees to not object to the sale of any Group One Region or Group Two Restaurants on any grounds.

13. The Committee shall dismiss, with prejudice, the Complaint filed against BofA, styled as Adv. Proc. No. 11-03083.

14. William Kaye will be designated to serve as liquidating trustee under any liquidating trust agreement approved under a plan of liquidation.

15. The Coca-Cola Company and its affiliated entities (collectively, "Coke") shall reduce its administrative and/or secured claim against the Debtors by $125,000.   *JJ*

16. Coke will pay to the Debtors the net outstanding rebate ~~by the later of (i) May 30, 2011 and (ii) ten days after the closing of the sale of the final Group One Region~~ *as soon as practical after it receives the information necessary to calculate any amount owing.*

17. Coke shall deliver a waiver of all third party guaranties relating to the Debtors. In the event, however, that such waiver is not delivered on or before May 10, 2011, the Debtors shall indemnify such third parties on an administrative claim basis.   *JJ*

18. BofA, the Committee, BKC or Coke each agree to not object to the Debtors' employee stay incentive bonus motion.

19. Any other sources of cash or reductions in costs shall be for the sole benefit of the estates/unsecured creditors.

Dated: April 26, 2011                    AGREED TO AND ACCPETED BY:


**(As to Paragraphs 1-19)**

Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027
Michael J. Kaczka (OH 0076548)
McDONALD HOPKINS LLC
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION


**(As to Paragraphs 1-4, 6-8, 18-19)**

Stephen M. Mertz (#212131)
Michael F. Doty (#0388303)
Christopher J. Harayda (#0390333)
FAEGRE & BENSON
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: 612-766-7000
Facsimile: 612-766-1600

COUNSEL FOR BANK OF AMERICA, N.A.

{2693020:4}

(As to Paragraphs 4, 12-15, 18-19)

_____

Aaron L. Hammer
Richard S. Lauter
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: 312-360-6000
Facsimile: 312-360-6995
ahammer@freebornpeters.com
rlauter@freebornpeters.com

COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS


(As to Paragraphs 4-5, 9-11, 18-19)

_____

Paul J. Battista, Esq. (FL. Bar No. 884162)
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. Second Street, 44th Floor
Miami, FL 33131
305-349-2300

COUNSEL FOR BURGER KING CORP.


(As to Paragraphs 16-18)

_____

Joseph Johnson, Jr.
THE COCA-COLA COMPANY
P.O. Box 1734
NAT 2008 Mail Stop
Atlanta, GA. 30313
404 676-4150 Phone
404 598-4150 Fax
josjohnson@na.ko.com

COUNSEL FOR THE COCA-COLA COMPANY


{2693020:4}

# EXHIBIT 2

# William Kaye

**Managing Director**



31 Rose Lane
East Rockaway, New York 11518

Telephone  516.374.3705
Facsimile   516.569.6531
e-mail: billkaye@jllconsultants.com

William Kaye is the Managing Director of JLL Consultants, Inc., through which he acts as a bankruptcy/insolvency consultant in various capacities, primarily in connection with chapter 11 cases.  In addition to representing various clients on chapter 11 committees, Mr. Kaye also serves in various post-confirmation wind-down capacities.

### Current and Recent Chapter 11 and Post-Confirmation Assignments

### Assignments as Plan Administrator, Liquidating Trustee or Litigation Trustee

*ATA Airlines, Inc.* .  US Bankruptcy Court, Indianapolis, IN.  Selected by Creditorsq Committee to serve as Trustee of Unsecured Creditors Trust established pursuant to the confirmed First Amended Plan of the Debtor.

*Avado Brand, Inc.* .  US Bankruptcy Court, Dallas, TX.  Selected by Committee to serve as Litigation Trustee under Joint Plan of Reorganization.

*Bonus Stores, Inc.* .  US Bankruptcy Court, Wilmington, DE.  Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan. Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan.

*BFW Liquidation, Inc. (Bruno's Supermarkets)* – US Bankruptcy Court, Birmingham, AL.

*Chi-Chi's, Inc.* .  US Bankruptcy Court, Wilmington, DE. Selected by Committee as the Liquidating Trustee pursuant to confirmed Liquidating Chapter 11 Plan.

*Furr's Restaurant Group, Inc.* .  US Bankruptcy Court, Dallas, TX. Designated by Committee as Trustee for the Liquidating Trust created pursuant to the Plan of Liquidation.

*Gadzooks, Inc.* – Dallas, TX.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

*Heartland Technology, Inc.* .  US Bankruptcy Court, Chicago, IL.  Served as Plan Administrator upon emergence of company from Chapter 11.

*Kiel Bros.* .  US Bankruptcy Court, Indianapolis, IN.  Selected by Committee to serve as Liquidating Agent under confirmed Plan of Liquidation.

*Movie Gallery, Inc. [Hollywood Video]* (first chapter 11 case) .  US Bankruptcy Court, Richmond, VA.  Selected by Committee to serve as Litigation Trustee and Plan Administrator.

*Murray, Inc.* .  US Bankruptcy Court, Nashville, TN.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

*Neumann Homes, Inc.* .  US Bankruptcy Court, Chicago, IL.  Liquidating Trustee under confirmed Plan.

*Nutritional Sourcing Corporation* .  US Bankruptcy Court, Wilmington DE. JLL Consultants, Inc. selected as Liquidating Trustee under confirmed Plan of Liquidation

*Oceanaire Seafood Restaurants, Inc.* .   Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Reorganization.

*Old WM, Inc. [successor to Workflow Management, Inc.* .  USBC, Norfolk, VA - JLL Consultants, Inc. selected as Liquidating Trustee under confirmed Plan of Liquidation

*One-to One Interactive, LLC* .  US Bankruptcy Court, Boston, MA. Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

*Penn Traffic, Inc.* .  post confirmation, selected by Plan Administrator to handle preference matters and collection of accounts receivable.

*Recycled Paperboard, Inc.* .  US Bankruptcy Court, Newark, NJ.  Selected by Committee to serve as Liquidating Trustee under confirmed Plan of Liquidation.

*United Artists Theatre Circuit, Inc.* .  US Bankruptcy Court, Wilmington, DE. Selected by Committee and Debtor to serve as Plan Coordinator under Plan of Reorganization to handle preference recoveries and oversight responsibility for claims reconciliation and reduction process.

*United Petroleum Corp.* .  US Bankruptcy Court, Miami, FL.  Selected by Committee to be Liquidating Trustee under confirmed Plan of Liquidation.

*Value Music, Inc.* .  US Bankruptcy Court, Baltimore, MD. Selected by Committee to act post-confirmation to manage pursuit of Chapter 5 claims and make distribution to General Unsecured Creditors.



### Chapter 11 Assignments as Restructuring Officer or Board Member

*Globe Manufacturing Corp.* .  US Bankruptcy Court Tuscaloosa, AL.  Retained as Special Restructuring Officer during Chapter 11 Case.  After confirmation of the Plan, continued as Plan Administrator.

*Heartland Technology, Inc.* .  US Bankruptcy Court, Chicago, IL.  Retained as Chief Restructuring Officer (CRO) prior to filing of Chapter 11 Cases for a technology company.  Took company into Chapter 11 abd ontinued as CRO during case.

*Neumann Homes, Inc.* .  U.S Bankruptcy Court , Chicago, IL.  Elected as sole director of one of the largest home builders to file chapter 11.

### Assignments as Collateral Trustee Post-Effective Chapter 11 Cases

*Factory Card Outlets, Inc.* .  Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

*Friedman's Jewelry* .  Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

*Kmart, Inc.* .  Collateral Agent under confirmed Plan of Reorganization for Secured Trade Creditor Program established under Plan.

### Assignments as Chairman or Member of Post-Confirmation Oversight Committees or Board of Directors of a Reorganized Debtor

*AmeriServe Food Distribution Corp.* .  US Bankruptcy Court, Wilmington, DE. Chairman of Creditors̓ Committee during the pendency of Chapter 11 Case.  Chairman of the Post-Confirmation Oversight Committee.

*Eagle Food Centers, Inc.* .  US Bankruptcy Court, Chicago, IL.  Chairman of Creditors̓ Committee during pendency of Chapter 11 Case and then selected by Committee as the unsecured creditors̓ representative of the Company̓s post-emergence board of directors.

*GC Companies, Inc. (General Cinemas)* .  US Bankruptcy Court, Wilmington, DE.  Chairman of Creditors Committee during the pendency of the Chapter 11 Case. Chairman of Post-Confirmation Oversight Committee.

*Phar-Mor, Inc.* .  Member of Creditors̓ Committee during pendency of Chapter 11 Case. Member, Post-Confirmation Oversight Committee.

*Schlotzskys, Inc.* - Chairman of Creditors̓ Committee during Chapter 11 Case.  Member of Post-Confirmation Oversight Committee.

*Trans World Airlines, Inc.* – US Bankruptcy Court, Wilmington, DE.  Chairman of Creditors̓ Committee during Chapter 11 Case.  Member of Post-Confirmation Board of Directors.

*U.S. Airways, Inc.* .  US Bankruptcy Court, Alexandria, VA.  Member of Creditors Committee during Chapter 11 Case. Member of Post-Confirmation Committee charged with review and recommendation on various issues including claims resolution and final fee application review.

### Current and Recent Chapter 11 Committee Assignments in Major Cases

AmeriKing, Inc. .  USBC NY, NY.  Committee Chairman

AmeriServe Food Distribution Corp. .  USBC, Wilmington, DE. Committee Chairman

AmeriStop, *et al*. .  USBC, Cincinnati, OH.  Committee Co-Chairman

Ames Department Stores, Inc. .  USBC New York, NY.  Alternate to Committee Co-Chairman

AMF Bowling Centers, Inc. .  USBC, NY, NY. Committee Co-Chairman

Appalachian Oil Company, Inc. .  USBC, Greenville, TN.  Committee Chairman

Avado Brand, Inc. .  USBC Dallas, TX.  Committee Co-Chairman

Bashasq Inc. .  US Bankruptcy Court, Phoenix, AZ. Committee Chairman

Big ‰A+Drug Stores, Inc. .  USBC, Los Angeles, CA. Committee Member

Bonus Stores, Inc. .  USBC, Wilmington, DE.  Committee Chairman

Brown & Cole Supermarkets .  USBC, Seattle, WA.  Committee Chairman

Bruno̓s Supermarkets, Inc. .  USBC, Birmingham, AL.  Committee Chairman

JLL Consultants, Inc.

*Current and Recent Chapter 11 Committee Assignments in Major Cases, con't.*

Buehler Foods, Inc. .  USBC, Indianapolis, IN.  Committee Member
Buffets, Inc. .  USBC, Wilmington, DE.  Committee Co-Chairman
Carmike Cinemas, Inc. .  USBC, Wilmington, DE.  Committee Chairman
CCI of West Palm Beach  .  USBC West Palm Beach, FL.  Committee Member
Chi-Chiᶜs, Inc. .  USBC, Wilmington, DE.  Committee Chairman
Clark Retail Group .  USBC, Chicago, IL.  Committee Member
Commissary Operations, Inc. .   USBC, Nashville, TN. Committee Vice Chairman
Convenience USA, Inc. .  USBC, Wilmington, DE.  Committee Chairman
Crescent Oil Co., Inc. .  USBC, Kansas City, KS.  Committee Chairman
Delta Airlines, Inc. .  USBC, New York, NY.  Committee Member
Eagle Food Centers, Inc. .  USBC, Chicago, IL. Committee Chairman
Fas Mart Convenience Stores, Inc. .  USBC, Richmond, VA.  Committee Chairman
Flying J Oil Co, Inc. .  USBC, Wilmington, DE.  Committee Member
Furrᶜs Restaurant Group, Inc. .  USBC, Dallas, TX.  Committee Chairman
GC Companies [General Cinemas] .  USBC, Wilmington, DE.  Committee Chairman
ICH Corp., Inc. .  USBC, New York, NY. Committee Co-Chairman
Kiel Bros. Oil Co. .  USBC Indianapolis, IN. Committee Co-Chairman
Kmart .  USBC, Chicago, IL.  Consultant to Committee Member
Lechters, Inc. .  USBC, New York, NY.  Committee Co-Chairman
Loews Cineplex Theatre Co., Inc. .  USBC, New York, NY.  Committee Chairman
Max & Ermaᶜs, Inc. .  USBC, Pittsburgh, PA.  Committee Chairman
Movie Gallery, Inc. .  USBC Richmond, VA.  Committee Chairman
Murray, Inc. .  USBC, Nashville, TN.  Committee Chairman
Nutritional Sourcing Corporation .  USBC, Wilmington DE.  Committee Member
Oceanaire Seafood Restaurants, Inc. .  US Bankruptcy Court, Dallas, TX.  Committee Chairman
One-to-One Interactive .  USBC, Boston, MA. Committee Chairman
Penn Traffic Company .  Consultant to Committee Member and Alternate
Phar-Mor, Inc.  .  USBC, Youngstown, OH.  Committee Co-Chairman
Piccadilly Cafeterias, Inc. .  Committee Vice Chairman
Premier International Holdings, Inc. (Six Flags Amusement Parks) -  USBC New York, NY. Committee Co-Chair
Roadhouse Grills, Inc., USBC West Palm Beach, FL .  Committee Member
RSM BFS Partners (A *Burger King* franchisee) USBC, Santa Ana, CA Committee Chairman
Sam Seltzerᶜs Steakhouses, Inc. .  USBC, Tampa, FL.  Committee Chairman
Schlotzskys, Inc. .  USBC, San Antonio, TX.  Committee Co-Chairman
Snyderᶜs Drug Stores, Inc. / Drug Emporium, Inc. .  USBC Youngstown, OH. Committee Member
Souper Salad, Inc. .  Committee Co-Chairman
Southwest Waffles (a *Waffle House* Ffranchisee) .  USBC, Nashville, TN.  Committee Chairman
Trans World Airlines, Inc. .  USBC, Wilmington, DE.  Committee Chairman
Twin Cities Avanti, Inc. .  USBC, Central Dist. of CA.  Committee Co-Chairman
U.S. Airways, Inc. .  USBC, Alexandria, VA.  Alternate and consultant to Committee Member
United Air Lines, Inc. .  USBC, Chicago, IL.  Committee Member
United Artists Theatre Circuit, Inc. .  USBC, Wilmington, DE. Committee Chairman
US Airways Group, Inc. .  USBC, Alexandria, VA.  Consultant and Alternate to Committee Member
Valu Food, Inc. .  USBC, Baltimore, MD.  Committee Chairman
Value Music, Inc. .  USBC, Atlanta, GA.  Committee Chairman
Vicorp, Inc. (VI Acquisition Corp.) .  USBC, Wilmington, DE.  Committee Co-Chair
Wherehouse Entertainment, Inc. .  USBC, Wilmington, DE.  Committee Member
Wherenberg Theatres, Inc. .  USBC, St. Louis, MO.  Committee Chairman


J<sub>L</sub><sub>L</sub> Consultants, Inc.

### References

*Attorneys:*

Paul Aronzon, Milbank Tweed, Los Angeles, CA [Tel. 213. 892.4377]
Robert Feinstein, Esq. .  Pachulski, Stang, Ziehl & Jones, NY, NY  [Tel. 212.624.9431]
Charles Gibbs, Esq. .  Akin Gump Strauss Hauer & Feld, LLP, Dallas, TX [Tel. 214.969.4710]
Scott Hazan, Esq. .  Otterbourg Steindler Houston & Rosen, NY, NY  [Tel. 212.661.9100]
Fred Hodara, Esq. .  Akin Gump Strauss Hauer & Feld, LLP, NY, NY  [Tel. 212.872.8040]
James Carr, - Kelley, Drye & Warren, New York, NY [Tel. 212.808.7955]
William McKenna, Esq. .  Foley & Lardner LLP, Chicago, IL [Tel. 312.832.4541]
Holland O'Neil, Esq. .  Gardere Wynne Sewell LLP, Dallas, TX [Tel. 214.999.4961]
George Panagakis, Esq. .  Skadden, Arps, Slate, Meagher & Flom, LLP, Chicago, IL [Tel. 312-3-407-0638
Keith Shapiro, Esq. .  Greenberg Traurig, LLP, Chicago, IL [Tel. 312.456.8405]
James Sprayragen, Esq. .  Kirkland & Ellis [312.862-2481]
Samuel Stricklin, Esq. .  Bracewell & Giuliani, Dallas, TX [Tel. 214.758.1095]

*Financial Advisors:*

Michael Atkinson .  PROTIVITI, Baltimore, MD [Tel. 410.454.6836]
Russ Belinski .  Chanin Capital Partners, Los Angeles, CA  [Tel. 310.445.2511]
Michael Eisenband .  FTI Financial Services, New York, NY  [Tel. 212.499.3647]
Irwin Gold .  Houlihan Lokey Howard & Zubin, Los Angeles, CA  [Tel. 310.788.5337]
Lawrence Lattig .  Mesirow Financial Consulting, Dallas, TX  [Tel. 214.954.1444]
Steven Sims .  FTI Financial Services, New York, NY  [Tel. 212.841.9369]
Teri Stratton, CPA .  Giuliani Capital Partners, Los Angeles, Ca [Tel. 213.977.4464]

*Clients:*

American Greetings Co. .  Art Tuttle, Exec. Director, Retail Financial Services [Tel. 216.252.7300 ext 1635]
Buffalo Rock Company .  Roger Barker, Chief Financial Officer [Tel. 205.912.2230]
Coca-Cola Refreshments .  Richard Stiteler, Credit Advisor [Tel. 813.569.3708]
Pepsi Bottling Group .  Michael Bevilacqua, Senior Group Manager [Tel. 336.896.5577]
The Coca-Cola Company .  John Lewis, Jr., Esq., Sr. Managing Attorney [Tel. 404.676.4016]