## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**********************************************************************

In re:

DUKE AND KING ACQUISITION CORP.,

Debtors.

(includes:
Duke and King Missouri, LLC;
Duke and King Missouri Holdings, Inc.;
Duke and King Real Estate, LLC;
DK Florida Holdings, Inc.)

**JOINTLY ADMINISTERED UNDER CASE NO. 10-38652**

Court File No. 10-38652

Court File Nos:

10-38653 (GFK)
10-38654 (GFK)
10-38655 (GFK)
10-38656 (GFK)

Chapter 11 Cases
Chief Judge Gregory F. Kishel

**********************************************************************

### NOTICE OF HEARING AND JOINT MOTION FOR ORDER GRANTING (I) EXPEDITED HEARING AND (II) DEEMED ACCEPTANCE OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED SEPTEMBER 23, 2011

**********************************************************************

TO:     The parties on the attached service list.

1.      The above-captioned debtors and debtors in possession (collectively, the "Debtors"), together with the Official Committee of Unsecured Creditors (the "Committee," and together with the Debtors, the "Movants"), by and through their undersigned counsel, move the Court for the relief requested below and give notice of a hearing.

2.      The Court will hold a hearing on this motion on September 26, 2011 at 1:30 p.m., or as soon thereafter as counsel can be heard, in Courtroom No. 2A, United States Courthouse, 316 North Robert Street, St. Paul, Minnesota.

3.      Local Rule 9006-1(b) provides responsive deadlines to this motion. However, given the expedited relief sought, the Movants will not object to the timeliness of responses provided they are delivered and filed before the time set for the hearing.   **UNLESS A**

{2923145:}

**RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petitions commencing these Chapter 11 cases were filed on December 4, 2010.  These cases are now pending before this Court.

5.     This motion arises under 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019, and Local Rule 3019-1.  This motion is filed under Federal Rule of Bankruptcy Procedure 9006 and 9014, and Local Rules 9006-1 and 9013-1 through 9013-3.

6.     The Movants requests an order determining that the Debtors' and the Committee's Third Amended Joint Chapter 11 Plan of Liquidation of the Debtors and Official Committee of Unsecured Creditors, dated September 23, 2011 (the "Modified Plan") be deemed accepted.  This relief is appropriate because the Modified Plan does not adversely change the treatment of the claim of any creditor.

## BACKGROUND FOR RELIEF REQUESTED

7.     On August 10, 2011, the Court entered an Order and Notice for Hearing on Confirmation of Plan, Docket No. 430.  That Order approved the Second Amended Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of the Debtors and Official Committee of Unsecured Creditors, dated August 8, 2011, Docket No. 428 (the "Disclosure Statement"), regarding the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and Official Committee of Unsecured Creditors, dated August 8, 2011, Docket No. 427 (the "Plan").[1]

---

[1] Capitalized terms appearing herein that are not otherwise defined shall have the meanings ascribed to such terms in the Plan.

8.      On August 25, 2011, in accordance with the Order and Notice for Hearing on Confirmation, the Debtors mailed a copy of the Disclosure Statement, Plan, the Order and Notice for Hearing on Confirmation of Plan, and ballot (collectively, the "Voting Packet") to all creditors and other parties in interest in these cases.

9.      Since distribution of the Voting Packet, the Plan has been modified as evidenced by the Modified Plan.  Attached hereto as Exhibit A is a blackline of the Plan and Modified Plan showing the proposed modifications.  Because negotiations regarding the Plan continue as of the filing of this motion, the Debtors have not filed the Modified Plan on the Court's docket.

10.     The Debtors and the Committee modified the Plan to include a requirement that the proposed Liquidating Trustee be required to post a bond, in an amount to be determined by the Court, at the proposed Liquidating Trustee's own personal expense.  Any cost of the bond will not be paid out of Liquidating Trust Assets.  In addition, the Plan was modified to provide that the Liquidating Trustee, on behalf of the Liquidating Trust, shall file with the Bankruptcy Court (and provide to Michael R. Fadlovich, Trial Attorney, U.S. Department of Justice, Office of the United States Trustee, 1015 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, and any other party entitled to receive any such report pursuant to the Liquidating Trust Agreement), no later than 30 days after March 31, June 30, September 30, and December 31 of each calendar year, a quarterly report regarding the administration of property subject to its ownership and control pursuant to the Modified Plan, distributions made by it, fees and expenses of the Liquidating Trust paid in any such quarterly period, and other matters relating to the implementation of the Modified Plan.

11.     The Office of the United States Trustee ("UST") has filed an objection to the Plan.  The Debtors, the Committee, and UST have attempted to negotiate a consensual resolution of the UST's objections. To date, the objection of the UST has not been resolved.  Movants

assert that any changes to the Plan will act to improve the protections afforded to the beneficiaries of the Liquidating Trust and will not affect the treatment of Class 3 unsecured claims, as will be described at the hearing.  **THE DEBTORS AND THE COMMITTEE GIVE NOTICE OF THEIR INTENTION TO SEEK APPROVAL OF ANY SUCH CHANGES AT THE HEARING.**

**RELIEF REQUESTED**

11.     The Movants seek an expedited hearing on this motion for cause.  11 U.S.C. § 1127 and Bankruptcy Rule 3019 provide that a plan may be modified if the Court finds that the proposed modification does not adversely change the treatment of the claim of any creditor or interest holder who has not accepted the modification in writing.   Presently, there are two changes in the Modified Plan:  (1) that the Liquidating Trustee be required to post a bond, in an amount to be determined by the Court, at the proposed Liquidating Trustee's own personal expense, and (2) that the Liquidating Trustee be required to file quarterly reports with the Court regarding the administration of property subject to its ownership and control pursuant to the Modified Plan, distributions made by it, fees and expenses of the Liquidating Trust paid in any such quarterly period, and other matters relating to the implementation of the Modified Plan. Neither of these two changes modifies the substance of the Plan, and both benefit creditors by providing additional protections to beneficiaries of the Liquidating Trust and additional oversight over the actions of the Liquidating Trustee.

12.     In addition, the Movants request approval of changes to the Plan, if any, resulting from further negotiations with the UST.  Because these negotiations are continuing, and because plan confirmation is scheduled for Monday, September 26, 2011, the Movants believes cause exists to reduce notice of the hearing.

13.     Because the proposed modifications satisfy the requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, the Movants request that the Court deem the Modified Plan to be accepted by creditors who have voted in favor of the Plan.

14.     Pursuant to Local Rule 9013-2(a), this motion is accompanied by a memorandum of law, proposed order, and proof of service.

15.     Pursuant to Local Rule 9013-2(c), the Movants give notice that they may call Becky Moldenhauer, if necessary, to testify at the hearing on the motion regarding the facts set forth herein.  Ms. Moldenhauer's business address is 12281 Nicollet Avenue, Burnsville, MN 55337.

WHEREFORE, the Movants respectfully requests that this Court enter an order (I) granting expedited relief, (II) determining that the modifications proposed by the Debtors and the Committee, as evidenced by the Modified Plan, do not adversely change the treatment of the claim of any creditor or the interest of anyone who has not accepted in writing the modification and deeming accepted the Modified Plan, and (III) granting such further relief as the Court deems just and equitable.

September 23, 2011

FREDRIKSON & BYRON, P.A.

_/e/ Douglas W. Kassebaum_
Clinton E. Cutler (#158094)
Douglas W. Kassebaum (#386802)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
ccutler@fredlaw.com
dkassebaum@fredlaw.com

– and –

FREEBORN & PETERS LLP

_/e/ Aaron L. Hammer_
Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone:  (312) 360-6000
Facsimile:  (312) 360-6995
ahammer@freebornpeters.com
rlatuer@freebornpeters.com

– and –

McDONALD HOPKINS LLC

Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027
Michael J. Kaczka (OH 0076548)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

MASLON EDELMAN BORMAN & BRAND,
LLP

Amy J. Swedberg, Esq.
330 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Telephone: (612) 672-8200
Facsimile: (612) 672-8397
amy.swedberg@maslon.com

ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

**<u>EXHIBIT A</u>**

Document comparison by Workshare Professional on Thursday, September 22, 2011 4:28:14 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/DOCUME~1/sopincar/LOCALS~1/Temp/4/WDGX/10D0/OPEN/0002/2821472.DOC |
| Description | 2821472 |
| Document 2 ID | file://S:/CLIENTS/35084/00008/2922352.DOC |
| Description | 2922352 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "SECOND AMENDED **JOINT CHAPTER 11 PLAN OF**" changed to "THIRD AMENDED **JOINT CHAPTER 11 PLAN OF**" |
| 3-4 | Change | "August 8, 2011" changed to "September 23, 2011" |
| 5-6 | Change | "Proponents") propose the...plan of liquidation" changed to "Proponents") propose the...plan of liquidation" |
| 7 | Insertion | Liquidating Trustee shall...be paid by William Kaye. |
| 8 | Change | "**3.3.5**  Reports To Be Filed by the Liquidating" changed to "**3.3.5**     Quarterly Reports...Filed by the Liquidating" |
| 9 | Change | "Bankruptcy Court (and...entitled to receive" changed to "Bankruptcy Court (and...entitled to |

| | | receive" |
|---|---|---|
| 10 | Change | "Agreement), no later than 30 days after June" changed to "Agreement), no later than...after March 31, June" |
| 11-12 | Change | "June 30 and December 31 of each calendar" changed to "June 30, September 30,...31 of each calendar" |
| 13-14 | Change | "December 31 of each...the administration" changed to "December 31 of each...the administration" |
| 15 | Change | "Plan, distributions made...matters relating to the" changed to "Plan, distributions made...matters relating to the" |
| 16-17 | Change | "Dated:  August 8, 2011" changed to "Dated: September 23, 2011" |
| 18 | Insertion | Name: William Kaye, in...of The Coca-Cola Company |

**Statistics:**

| | Count |
|---|---|
| Insertions | 12 |
| Deletions | 6 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 18 |

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | Court File Nos: |
| (includes: | |
| Duke and King Missouri, LLC; | 10-38653 (GFK) |
| Duke and King Missouri Holdings, Inc.; | 10-38654 (GFK) |
| Duke and King Real Estate, LLC; | 10-38655 (GFK) |
| DK Florida Holdings, Inc.) | 10-38656 (GFK) |
| | Chapter 11 Cases |
| | Chief Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ~~SECOND~~[1] **THIRD**[2] AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

~~August 8,~~[3] September 23,[4] 2011

| | |
|---|---|
| McDONALD HOPKINS LLC | FREEBORN & PETERS LLP |
| Shawn M. Riley (OH 0037235) | Aaron L. Hammer (IL 6243069) |
| Scott N. Opincar (OH 0064027) | Richard S. Lauter (IL 6182859) |
| Michael J. Kaczka (OH 0076548) | 311 South Wacker Drive, Suite 3000 |
| 600 Superior Avenue, East, Suite 2100 | Chicago, Illinois 60606-6677 |
| Cleveland, Ohio 44114-2653 | Telephone: (312) 360-6000 |
| Telephone: (216) 348-5400 | Facsimile: (312) 360-6995 |
| Facsimile: (216) 348-5474 | ahammer@freebornpeters.com |
| sriley@mcdonaldhopkins.com | rlauter@freebornpeters.com |
| sopincar@mcdonaldhopkins.com | |
| mkaczka@mcdonaldhopkins.com | -and- |
| -and- | |
| FREDRIKSON & BYRON, P.A. | MASLON EDELMAN BORMAN & BRAND, LLP |
| Clinton E. Cutler (#158094) | |
| Douglas W. Kassebaum (#386802) | Amy J. Swedberg (#271019) |
| 200 South Sixth Street, Suite 4000 | 330 Wells Fargo Center |
| Minneapolis, Minnesota 55402 | 90 South Seventh Street |
| Telephone: (612) 492-7000 | Minneapolis, Minnesota 55402-4140 |
| Facsimile: (612) 492-7077 | Telephone: (612) 672-8200 |
| ccutler@fredlaw.com | Facsimile: (612) 672-8397 |
| dkassebaum@fredlaw.com | amy.swedberg@maslon.com |
| CO-COUNSEL FOR DEBTORS | CO-COUNSEL FOR OFFICIAL COMMITTEE |

AND DEBTORS IN POSSESSION                    OF UNSECURED CREDITORS

## TABLE OF CONTENTS

**ARTICLE I** DEFINED TERMS, RULES OF INTERPRETATION  AND COMPUTATION OF TIME ................................................................ 1

**1.1**  Defined Terms ................................................................................ 1

**1.2**  Rules of Interpretation and Computation of Time ........................... 1

   **1.2.1**  Rules of Interpretation .......................................... 1
   **1.2.2**  Computation of Time .............................................. 2

**ARTICLE II** CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................................................ 2

**2.1**  Unclassified Claims ....................................................................... 2

   **2.1.1**  Payment of Administrative Claims ............................ 2
   **2.1.2**  Payment of Priority Tax Claims ............................... 3

**2.2**  Classified Claims ........................................................................... 3

   **2.2.1**  Secured Claims (Class 1) – Unimpaired ..................... 3
   a.    Class 1A – Warren Capital Secured Claim .................... 3
   b.    Class 1B – Coca-Cola Secured Claim ......................... 4
   **2.2.2**  Other Priority Claims (Class 2) – Unimpaired ............. 4
   **2.2.3**  General Unsecured Claims (Class 3) – Impaired .......... 4
   **2.2.4**  Interests in Debtors (Class 4) – Impaired ................. 4

**2.3**  Special Provisions Relating to the Rights of Setoff of Creditors ........ 4

**ARTICLE III** MEANS FOR IMPLEMENTATION OF THE PLAN .................. 5

**3.1**  Confirmation Exhibits ..................................................................... 5

**3.2**  Winddown of Debtors ...................................................................... 5

**3.3**  Liquidating Trust ............................................................................ 5

   **3.3.1**  Liquidating Trust Generally .................................... 5
   **3.3.2**  Funding of and Transfer of Assets into the Liquidating Trust ..... 6
   **3.3.3**  Liquidating Trustee .............................................. 6
   **3.3.4**  Liquidating Trust Agreement ................................... 7
   **3.3.5**  Reports To Be Filed by the Liquidating Trustee ........... 7
   **3.3.6**  Fees and Expenses of the Liquidating Trust ............... 7
   **3.3.7**  Indemnification ................................................... 7
   **3.3.8**  Tax Treatment ................................................... 7
   **3.3.9**  Disposition of Assets by Liquidating Trust ................. 8
   **3.3.10** Settlement of Causes of Actions and Disputed Claims ... 8
   **3.3.11** De Minimis Distributions ...................................... 8

**3.4**  Special Provisions .......................................................................... 8

   **3.4.1**  Limitations on Amounts To Be Distributed to Holders of Allowed Insured Claims ............................................ 8
   **3.4.2**  Preservation of Causes of Action; Avoidance Actions ... 8

> 3.4.3    Effectuating Documents; Further Transactions; Exemption from
>           Certain Transfer Taxes ................................................................ 8
> 3.4.4    Comprehensive Settlement of Claims and Controversies ...................... 9

**ARTICLE IV** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 9

4.1    Assumption and Assignment ........................................................... 9

4.2    Cure of Defaults ........................................................................... 9

4.3    Bar Date for Rejection Damage Claims ............................................ 9

4.4    Approval of Rejection .................................................................... 9

**ARTICLE V** SUBSTANTIVE CONSOLIDATION ................................................. 10

5.1    Consolidation for Certain Purposes ................................................. 10

5.2    Order Granting Consolidation ........................................................ 10

**ARTICLE VI** CONFIRMATION OF THE PLAN ................................................... 10

6.1    Conditions Precedent to Confirmation .............................................. 10

6.2    Conditions Precedent to the Effective Date ....................................... 10

6.3    Waiver of Conditions to Confirmation or Effective Date ..................... 11

6.4    Cramdown .................................................................................. 11

6.5    Effect of Nonoccurrence of Conditions to the Effective Date ............... 11

6.6    Effect of Confirmation of the Plan .................................................. 11
> 6.6.1    Limitation of Rights of Holders of Claims ............................ 11
> 6.6.2    Releases .......................................................................... 11
> 6.6.3    Injunction ........................................................................ 12
> 6.6.4    Exculpation ...................................................................... 12

6.7    Request for Waiver of Stay of Confirmation Order ............................ 12

**ARTICLE VII** RETENTION OF JURISDICTION .................................................. 12

**ARTICLE VIII** MISCELLANEOUS PROVISIONS ................................................ 14

8.1    Modification of the Plan ............................................................... 14

8.2    Revocation of the Plan .................................................................. 14

8.3    Severability of Plan Provisions ...................................................... 14

8.4    Dissolution of the Creditors' Committee ........................................... 14

8.5    Successors and Assigns ................................................................. 15

8.6    Section 1125(e) Good Faith Compliance .......................................... 15

8.7    Governing Law ........................................................................... 15

## TABLE OF EXHIBITS

Exhibit A     —     Defined Terms

Exhibit B     —     Notice Parties

## TABLE OF CONFIRMATION EXHIBITS

Exhibit 3.2          —    Insurance

Exhibit 3.3.1        —    Liquidating Trust Agreement

Exhibit 3.4.2        —    Causes of Action

Exhibit 4.1          —    Assumed Executory Contracts and Unexpired Leases

{2922352:}

## INTRODUCTION

Duke and King Acquisition Corp., Duke and King Missouri, LLC, Duke and King Missouri Holdings, Inc., Duke and King Real Estate, LLC, and DK Florida Holdings, Inc. (collectively, the "Debtors") and the Official Committee of Unsecured Creditors in the Debtors' chapter 11 cases (the "Creditors' Committee" and with the Debtors, the "Plan Proponents") propose the following ~~second~~5 third6 amended joint plan of liquidation for the resolution of the outstanding claims against and interests in the Debtors' respective bankruptcy estates. Reference is made to the Second Amended Disclosure Statement for the Second Amended Joint Chapter 11 Plan of Liquidation for a discussion of the Debtors' history, business, properties and operations of the Debtors, a summary and analysis of this Plan, risk factors related to this Plan and certain other matters related to the Chapter 11 Cases, including the substantive consolidation of the Debtors' bankruptcy estates. This Plan follows the closing of a sale of most of the Debtors' operating assets to Strategic Restaurants Acquisition Company II, LLC, Heartland Midwest, LLC, Cave Enterprises Operations, LLC and Crown Ventures Iowa, Inc., respectively, and contemplates the liquidation of any unsold assets and distribution of the proceeds pursuant to this Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Plan Proponents reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

### 1.1    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth in Exhibit A. Any term that is not otherwise defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each term is defined in Exhibit A), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 1.2    Rules of Interpretation and Computation of Time

#### 1.2.1    Rules of Interpretation

For purposes of this Plan, unless otherwise provided in this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "in this Plan," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of formation, limited liability operating agreement, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

### 1.2.2    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE II
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims, statutory fees payable pursuant to 28 U.S.C. § 1930 and Priority Tax Claims, are placed in the following Classes.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, statutory fees and Priority Tax Claims, as described in Section 2.1, have not been classified and thus are excluded from the following Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim qualifies within the description of such other Classes.

## 2.1    Unclassified Claims

### 2.1.1    Payment of Administrative Claims

a.    Administrative Claims in General

Except as otherwise specified in this Section 2.1, and subject to the Bar Date provisions in this Plan, unless an order of the Bankruptcy Court provides otherwise, each holder of an Allowed Administrative Claim shall receive, in full satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim on the later of (i) as soon as practical after the Effective Date or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim.

The Debtors estimate there to be approximately $2,900,000 of Allowed Administrative Claims, which shall receive a 100% distribution.

b.    Statutory Fees

On or before the Effective Date, Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 with respect to the periods ending on or before the Effective Date shall be paid in Cash equal to the amount of such Allowed Administrative Claims.  With respect to any Chapter 11 Case not converted, closed or dismissed in accordance with the provisions of Sections 2.2.6 and 3.4 of this Plan, all fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid by the Liquidating Trust until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

c.    Bar Dates for Administrative Claims

(i)    General Administrative Claim Bar Date Provisions

Except as otherwise provided in this Plan or an order of the Bankruptcy Court, requests for payment of Administrative Claims must have been Filed pursuant to the procedures specified in the Administrative Bar Date Order.  Holders of Administrative Claims that did not File and serve such a request by the Administrative Bar Date are forever barred from asserting such Administrative Claims against the Debtors, the Liquidating Trust or their respective property, and any such alleged Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed by the Claims Objection Bar Date.

(ii)     Bar Dates for Professional Compensation

All unpaid Fee Claims incurred by Professionals prior to the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to sections 328, 330 or 503(b)(4) of the Bankruptcy Code.   Final applications for allowance of Fee Claims for services rendered in connection with the Chapter 11 Cases shall be Filed with the Bankruptcy Court no later than 45 days after the Effective Date.   Objections to any Fee Claims must be filed and served on the Notice Parties and the requesting party in accordance with the applicable Bankruptcy Rules.   To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

The Debtors shall estimate and segregate the Fee Carveout prior to transferring the remaining assets to the Liquidating Trust.   To the extent that the Fee Carveout is greater than the total amount of the Allowed Fee Claims, the excess amounts shall be transferred to the Liquidating Trust.   To the extent that the Fee Carveout is less than the total amount of the Allowed Fee Claims, the deficiency amounts shall be paid from the Liquidating Trust.

### 2.1.2     Payment of Priority Tax Claims

a.     Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Priority Tax Claim, Cash equal to the amount of such Allowed Priority Tax Claim, on the later of (a) as soon as practical after the Effective Date or (b) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim.

The Debtors estimate there to be approximately $1,000 of Allowed Priority Tax Claims, which shall receive a 100% distribution.

b.     Other Provisions Concerning Treatment of Priority Tax Claims

Notwithstanding the provisions of Section 2.1.2.a, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim.   Any such Claim or demand for any such penalty shall be subject to treatment in Class 3 (General Unsecured Claims), as applicable, if not subordinated to Class 3 Claims pursuant to an order of the Bankruptcy Court.   The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, the Liquidating Trust or their respective property (other than as a holder of a Class 3 Claim).

## 2.2     Classified Claims

### 2.2.1     Secured Claims (Class 1) – Unimpaired

The Debtors estimate there to be between approximately $300,000 and $550,000 of Allowed Secured Claims, which shall receive a 100% distribution.

a.     **Class 1A – Warren Capital Secured Claim**

Unless Warren and the applicable Debtor or the Liquidating Trustee agree to a different treatment, 30 days after the later of (a) the Effective Date and (b) the date on which the Claim is Allowed, in full satisfaction of its Allowed Claim, Warren shall receive: (a) the net proceeds of the sale of the property securing such Claim, up to the Allowed amount of such Claim; (b) the return of property securing such Claim; or (c) Cash equal to the value of the property securing such Claim, up to the value of the Allowed Secured Claim.

### b.    Class 1B – Coca-Cola Secured Claim

Unless Coca-Cola and the applicable Debtor or the Liquidating Trustee agree to a different treatment, 30 days after the later of (a) the Effective Date and (b) the date on which the Claim is Allowed, in full satisfaction of its Allowed Claim, Coca-Cola shall receive: (a) the net proceeds of the sale of the property securing such Claim, up to the Allowed amount of such Claim; (b) the return of property securing such Claim; or (c) Cash equal to the value of the property securing such Claim, up to the value of the Allowed Secured Claim.

### 2.2.2    Other Priority Claims (Class 2) – Unimpaired

Each Holder of an Allowed Other Priority Claim shall receive, in full satisfaction of its Other Priority Claim, Cash equal to the amount of such Allowed Other Priority Claim on the later of (a) as soon as practical after the Effective Date or (b) the date on which such Other Priority Claim becomes an Allowed Other Priority Claim.

The Debtors estimate there to be approximately $1,000 of Allowed Other Priority Claims, which shall receive a 100% distribution.

### 2.2.3    General Unsecured Claims (Class 3) – Impaired

On one or more Distribution Dates, each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata share of the net proceeds of the Liquidating Trust Assets after the payment of all Allowed Fee Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims and Allowed Secured Claims, and the payment of all costs and expenses of the Liquidating Trust.

The obligations to Holders of Allowed General Unsecured Claims shall be governed by the Liquidating Trust Agreement.

The Debtors estimate there to be approximately $6,000,000-$7,500,000 of Allowed General Unsecured Claims, which shall receive a 19-38% distribution.

### 2.2.4    Interests in Debtors (Class 4) – Impaired

On the Effective Date, all Interests in the Debtors, except for those in Duke Acquisition and Duke Missouri, shall be deemed automatically cancelled, shall be of not further force, whether surrendered for cancellation or otherwise, and the obligations of the Debtors thereunder or in any way related thereto shall be discharged.  All Interests are not entitled to any distributions under this Plan.  Holders of Class 4 Claims are conclusively deemed to have rejected this Plan, and the votes of Holders of Class 4 Claims therefore will not be solicited.

## 2.3    Special Provisions Relating to the Rights of Setoff of Creditors

Nothing in this Plan shall expand or enhance a creditor's right of setoff, which shall be determined as of the Petition Date.  Nothing in this Plan is intended to, or shall be interpreted to, approve any creditor's effectuation of a post-Petition Date setoff without the consent of the Debtors unless prior Bankruptcy Court approval has been obtained.

## ARTICLE III
## MEANS FOR IMPLEMENTATION OF THE PLAN

**3.1    Confirmation Exhibits**

All Confirmation Exhibits to this Plan shall be filed with the Bankruptcy Court no later than 10 days before the Confirmation Hearing.

**3.2    Winddown of Debtors**

As soon as practicable after the Effective Date and except as otherwise provided in this Plan, each of the Debtors shall take all necessary steps to effect their winddown and dissolution and the authority, power and incumbency of the Persons then acting as directors and officers of the Debtors shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause; *provided, however,* that Duke Acquisition and Duke Missouri shall not dissolve under state law until (i) the Claim of Coca-Cola has been resolved and the Coke Claim Retainer shall be funded for such resolution and subsequent dissolution; and (ii) all Insurance recoveries have been resolved, to the extent the corporate existence of Duke Acquisition and Duke Missouri need to be maintained for such resolution.  The relevant Insurance is set forth on Confirmation Exhibit 3.2.

**3.3    Liquidating Trust**

### 3.3.1    Liquidating Trust Generally

On or prior to the Effective Date, the Liquidating Trust, attached as Confirmation Exhibit 3.3.1, shall be established pursuant to the Liquidating Trust Agreement for the purpose of liquidating remaining Assets and distributing the proceeds thereof to Holders of Allowed General Unsecured Claims (Class 3 Claims) in accordance with the terms of this Plan.  Subject to and to the extent set forth in this Plan, the Confirmation Order, the Liquidating Trust Agreement or other agreement (or any other order of the Bankruptcy Court entered pursuant to or in furtherance hereof), the Liquidating Trust (and the Liquidating Trustee) shall possess the rights of the Debtors for all matters pertaining to the Cases and be empowered to:  (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the Liquidating Trust provisions of this Plan; (b) accept, preserve, receive, collect, manage, invest, supervise, prosecute, settle and protect the Liquidating Trust Assets (directly or through its professionals, in accordance with this Plan); (c) sell, liquidate, transfer, distribute or otherwise dispose of the Liquidating Trust Assets (directly or through its professionals) or any part thereof or any interest in this Plan upon such terms as the Liquidating Trustee determines to be necessary, appropriate or desirable; (d) calculate and make distributions to holders of Allowed Claims pursuant to the procedures for allowing Claims and making distributions prescribed in this Plan; (e) comply with this Plan and exercise the Liquidating Trustee's rights and fulfill his obligations thereunder; (f) review, reconcile or object to Claims and resolve such objections as set forth in this Plan; (g) represent the Estates in pursuit of Causes of Action (including Avoidance Actions) that may be retained and enforced by the Liquidating Trust, if any, to the extent that their pursuit would likely result in an economic benefit to holders of Claims; (h) retain and compensate professionals to represent the Liquidating Trustee with respect to his or her responsibilities; (i) establish and maintain a Disputed Claims Reserve; (j) file appropriate Tax returns and other reports on behalf of this Liquidating Trust and pay Taxes or other obligations owed by the Liquidating Trust; (k) exercise such other powers as may be vested in the Liquidating Trustee under the Liquidating Trust Agreement or this Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions of this Plan and the Liquidating Trust Agreement; (l) object to the amount of any Claim on any Schedule if the Liquidating Trustee determines in good faith that the Claim is invalid or has previously been paid or satisfied; (m) pay any and all residual statutory fees of any Debtors as provided in Section 2.1.1.b of this Plan; (n) dissolve the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement; (o) appear and be heard on matters brought before the

Bankruptcy Court or other courts of competent jurisdiction; (p) have the right to obtain records of, or related to, a Debtor (including, without limitation, bank statements and cancelled checks); (q) be entitled to notice and opportunity for hearing; (r) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (s) have exclusive standing to commence Causes of Action; and (t) be entitled to request entry of a final decree closing the Chapter 11 Cases.  Notwithstanding anything to the contrary in this Section, the Liquidating Trust's primary purpose is liquidating the assets transferred to it by the Debtors and making distributions of the assets of the Liquidating Trust to holders of Allowed Claims.

### 3.3.2   Funding of and Transfer of Assets into the Liquidating Trust

a.      On the Effective Date, the Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust.  The Liquidating Trust Assets shall vest in the Liquidating Trust on the Effective Date free and clear of all Claims, liens, encumbrances, charges and other interests, except as otherwise provided in this Plan.  All property held for distribution pursuant to this Plan shall be held by the Liquidating Trust in trust for the Holders of Allowed Claims and shall not be deemed property of the Debtors.  Nothing in this Plan, however, shall preclude payment of:  (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Effective Date; and (ii) the Liquidating Trust Expenses in accordance with this Plan and the Liquidating Trust Agreement from the Liquidating Trust Assets.  The Debtors are authorized to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Liquidating Trust Assets to the Liquidating Trust, subject to oversight from the Liquidating Trustee.

b.      The Liquidating Trustee shall have the authority to create sub-accounts or sub-trusts within the Liquidating Trust, and into which the Liquidating Trustee may deposit any Unliquidated Assets, including real or personal property pending its liquidation.  The Liquidating Trustee, as trustee of such sub-accounts or sub-trusts may hold legal title to such property.  Once liquidated, any Cash proceeds of such sub-accounts or sub-trusts shall be deposited directly into the primary trust account.

c.      The act of transferring assets and rights to the Liquidating Trustee of the Liquidating Trust, as authorized by this Plan, shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the applicable Debtor.

### 3.3.3   Liquidating Trustee

a.      The initial Liquidating Trustee shall be William Kaye.  The Liquidating Trustee shall record and account for all proceeds received upon any disposition of Liquidating Trust Assets and shall hold such proceeds for distribution in accordance with the Liquidating Trust Agreement and this Plan.  The Liquidating Trustee shall be obligated to give a bond or surety or other security for the performance of any of his duties under the Plan or the Liquidating Trust Agreement in an amount as ordered by the Bankruptcy Court at the hearing on confirmation of the Plan.  All costs and expenses of procuring any such bond shall not be deemed trust administrative expenses of the Liquidating Trust and shall be paid by William Kaye.[7]

b.      The powers, rights and responsibilities of the Liquidating Trustee shall be specified in the Liquidating Trust Agreement and shall include the authority and responsibility to fulfill the items identified in this Plan.  Other rights and duties of the Liquidating Trustee and the Beneficiaries of the Liquidating Trust shall be as set forth in the Liquidating Trust Agreement.

c.      The Liquidating Trustee shall not be compensated in his capacity as trustee of the Liquidating Trust.

      d.      The Liquidating Trustee shall have the authority to retain certain professionals to assist in performing his duties and obligations as trustee of the Liquidating Trust. The Liquidating Trustee may engage JLL Consultants, Inc., of which the Liquidating Trustee is a managing director, at the monthly rate of (i) $10,000.00 for the first four months of employment, (ii) $7,500.00 for the six months immediately following, and (iii) $5,000.00 for each month of employment thereafter. It is contemplated that JLL Consultants, Inc. will perform all non-legal services necessary to assist the Liquidating Trustee as trustee of the Liquidating Trust, including, without limitation, performing avoidance action defense analyses; negotiations and analysis with respect to claims objections; administrative functions with respect to claims reconciliation; assistance with the liquidation and distribution of Liquidating Trust Assets; issue or file any necessary tax returns, statements or other documentation; assistance with distributions to the Beneficiaries of the Liquidating Trust; and to perform such other services necessary to preserve and administer the Liquidating Trust Assets.

      e.      The Liquidating Trustee may hire Becky Moldenhauer (who is an "insider" of the Debtors as that term is defined in the Bankruptcy Code) for post-confirmation services at a rate of $100 per hour.

### 3.3.4   Liquidating Trust Agreement

The Liquidating Trust Agreement generally shall provide for, among other things: (a) the payment of reasonable compensation to the Liquidating Trustee; (b) the payment of other expenses of the Liquidating Trust, including the cost of pursuing the claims, rights and causes of action assigned to the Liquidating Trust; (c) the retention of counsel, accountants, financial advisors or other professionals and the payment of their compensation; (d) the investment of Cash by the Liquidating Trustee within certain limitations; (e) the preparation and filing of appropriate Tax returns and other reports on behalf of the Liquidating Trust and the payment of Taxes or other obligations owed by the Liquidating Trust; (f) the orderly liquidation of the Liquidating Trust's assets; and (g) the litigation, settlement, abandonment or dismissal of any claims, rights or Causes of Action assigned to the Liquidating Trust.

### 3.3.5   Quarterly [8] Reports To Be Filed by the Liquidating Trustee

The Liquidating Trustee, on behalf of the Liquidating Trust, shall File with the Bankruptcy Court (and provide to Michael R. Fadlovich, Trial Attorney, U.S. Department of Justice, Office of the United States Trustee, 1015 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, and [9] any other party entitled to receive any such report pursuant to the Liquidating Trust Agreement), no later than 30 days after March 31, [10] June 30 [11] 30, September 30, [12] and December 31 of each calendar year, a semi-annual [13] quarterly [14] report regarding the administration of property subject to its ownership and control pursuant to this Plan, distributions made by it, fees and expenses of the Liquidating Trust paid in any such quarterly period, [15] and other matters relating to the implementation of this Plan.

### 3.3.6   Fees and Expenses of the Liquidating Trust

Except as otherwise ordered by the Bankruptcy Court, the reasonable and necessary fees and expenses of the Liquidating Trust (including the reasonable and necessary fees and expenses of any professionals assisting the Liquidating Trustee in carrying out its duties under this Plan) shall be exclusively funded by the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement without further order from the Bankruptcy Court.

### 3.3.7   Indemnification

The Liquidating Trust Agreement may include reasonable and customary indemnification provisions for the benefit of the Liquidating Trustee and/or other parties. Any such indemnification shall be the sole responsibility of the Liquidating Trust and payable solely from the Liquidating Trust Assets.

### 3.3.8    Tax Treatment

As more fully set forth in the Liquidating Trust Agreement, the Liquidating Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986 and the regulations promulgated thereunder, specifically Treas. Reg. § 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Beneficiaries treated as the grantors and owners of the Liquidating Trust Assets.

### 3.3.9    Disposition of Assets by Liquidating Trust

On the Effective Date, the Debtors shall transfer to the Liquidating Trust all of the Liquidating Trust Assets.  The Liquidating Trustee may conduct any sales or liquidations of Unliquidated Assets from the Liquidating Trust in any manner authorized under the terms of this Plan, the Liquidating Trust Agreement or otherwise approved by the Bankruptcy Court.

### 3.3.10   Settlement of Causes of Actions and Disputed Claims

The Liquidating Trustee may settle, compromise, abandon or withdraw any Cause of Action, including any Avoidance Action, in any manner approved by the Bankruptcy Court.  The Liquidating Trustee may settle or compromise any Disputed Claims in any manner approved by the Bankruptcy Court.

### 3.3.11   De Minimis Distributions

The Liquidating Trustee shall not be required to make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim of a General Unsecured Creditor.  To the extent that any interim distribution is not paid to a General Unsecured Creditor on the grounds that it amounts to less than twenty-five dollars ($25.00), the amount of such withheld distribution shall be reserved for addition to any future distribution or as the final distribution to such General Unsecured Creditor, and may be made at that time if the total distribution is at least twenty-five dollars ($25.00).

## 3.4    Special Provisions

### 3.4.1    Limitations on Amounts To Be Distributed to Holders of Allowed Insured Claims

Distributions under this Plan to each Holder of an Allowed Insured Claim shall be in accordance with the treatment provided under this Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the Holder thereof under any pertinent Insurance Contracts and applicable law.  Nothing in this Section 3.4.1 constitutes a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' Insurers.

### 3.4.2    Preservation of Causes of Action; Avoidance Actions

On the Effective Date, the Debtors shall transfer to the Liquidating Trust, as the representative of the Estates under section 1123(b) of the Bankruptcy Code, all Causes of Action, including Avoidance Actions, and the Liquidating Trustee may enforce any Causes of Action that the Debtors or the Estates may hold against any entity to the extent not expressly released under this Plan or by any Final Order of the Bankruptcy Court, including but not limited to those items identified on Confirmation Exhibit 3.4.2. The Liquidating Trust shall also control any privilege rights of the Debtors, including but not limited to the attorney/client privilege, related to the Causes of Action.

### 3.4.3    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes

The Chief Financial Officer of each Debtor and the Liquidating Trustee, as the case may be, shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp Tax, real estate transfer Tax, mortgage recording Tax, sales or use Tax or similar Tax: (a) the creation of any mortgage, deed of trust, lien or other security interest; (b) the making or assignment of any lease or sublease; or (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments executed in connection with any of the foregoing or pursuant to this Plan.

### 3.4.4    Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan, including the releases set forth in Article V, shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and their respective property and Claim and Interest Holders and is fair, equitable and reasonable.

## ARTICLE IV
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 4.1    Assumption and Assignment

Each Executory Contract, Unexpired Lease or other agreement listed on Confirmation Exhibit 4.1 shall be or has been assumed and assigned to one of the Purchasers as of the Effective Date. All other Executory Contracts, Unexpired Leases or other agreements not already rejected by Order of the Bankruptcy Court shall be deemed rejected as of the Effective Date.

### 4.2    Cure of Defaults

Upon information and belief, all Cure Amount Claims have been satisfied in accordance with the terms and procedures of the Sales, the related process and the Sale Orders; provided, however, that in the event a Cure Amount Claim remains due and owing, such payments shall be made by the Liquidating Trust. The Liquidating Trust shall retain all the rights to contest any outstanding Cure Amount Claims.

### 4.3    Bar Date for Rejection Damage Claims

To the extent not previously rejected in accordance with an Order of the Bankruptcy Court, Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to Section 4.1 of this Plan must be Filed with the Bankruptcy Court and served on the Debtors or, on and after the Effective Date, the Liquidating Trustee, by no later than 30 days after the later of (a) notice of entry of an order approving the rejection of such Executory Contract or Unexpired Lease, (b) notice of the entry of Confirmation Order or (c) notice of an amendment to Confirmation Exhibit 4.1, and upon allowance, shall be an Allowed General Unsecured Claim. Any Claims not Filed within such applicable time periods shall be forever barred from receiving a distribution from the Debtors, the Estates or the Liquidating Trust.

**4.4     Approval of Rejection**

Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all Executory Contracts and Unexpired Leases pursuant to Section 4.1 of this Plan to the extent not previously assumed or rejected by order of the Bankruptcy Court.

## ARTICLE V
## SUBSTANTIVE CONSOLIDATION

**5.1     Consolidation for Certain Purposes**

The Plan Proponents are requesting that the Bankruptcy Court approve the Debtors' election to substantively consolidate the Estates.  Accordingly, for purposes of implementing this Plan, pursuant to such order: (a) all assets and liabilities of the Debtors shall be pooled; and (b) with respect to any guarantees by one Debtor of the obligations of any Debtor, and with respect to any joint or several liability of any Debtor, the Holder of any Claims for such obligations shall receive a single recovery on account of any such joint obligations of the Debtors, in each case except to the extent otherwise provided in this Plan.

Such election to treat the Estates as if they were consolidated solely for the purpose of implementing this Plan shall not affect: (a) the legal and corporate structures of the Debtors to the extent not dissolved; and (b) distributions from any Insurance Contracts or proceeds of such policies. In addition, such election to treat the Estates as consolidated for the purpose of implementing this Plan shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code, except to the extent otherwise expressly waived by the Debtors.

**5.2     Order Granting Consolidation**

This Plan serves as a motion seeking entry of an order consolidating the Debtors as described in Section 5.1 above.  Upon a proper evidentiary showing at the Confirmation Hearing by the Plan Proponents, the consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court.

## ARTICLE VI
## CONFIRMATION OF THE PLAN

**6.1     Conditions Precedent to Confirmation**

The following conditions are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section 6.3 of this Plan:

A.     The Confirmation Order shall be reasonably acceptable in form and substance to the Plan Proponents.

B.     This Plan shall not have been materially amended, altered or modified from the version as Filed on August 8, 2011, unless such material amendment, alteration or modification has been made in accordance with Section 8.1 of this Plan.

C.     All Confirmation Exhibits to this Plan are in form and substance reasonably satisfactory to the Plan Proponents.

**6.2     Conditions Precedent to the Effective Date**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied or duly waived pursuant to Section 6.3 of this Plan:

A.      The Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order.

B.      No stay of the Confirmation Order shall then be in effect.

C.      The Liquidating Trust Agreement shall be executed, the Liquidating Trust shall be created and the Liquidating Trustee shall have been appointed and shall have accepted such appointment.

D.      This Plan and all Confirmation Exhibits to this Plan shall not have been materially amended, altered or modified from this Plan as confirmed by the Confirmation Order, unless such material amendment, alteration or modification has been made in accordance with Section 8.1 of this Plan.

**6.3     Waiver of Conditions to Confirmation or Effective Date**

The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time by the unanimous consent of the Plan Proponents without an order of the Bankruptcy Court.

**6.4     Cramdown**

The Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed not to have accepted this Plan pursuant to section 1126 of the Bankruptcy Code.

**6.5     Effect of Nonoccurrence of Conditions to the Effective Date**

If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 6.3 of this Plan, then upon the successful adjudication of an adversary proceeding by the Debtors made before the time that each of such conditions has been satisfied and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the Filing of such adversary proceeding, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is satisfied or waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this Section 6.5: (1) this Plan shall be null and void in all respects, including with respect to the releases described in Section 6.6.2 of this Plan; (2) nothing contained in this Plan shall (a) constitute a waiver or release of any Claims by or against any Debtor or (b) prejudice in any manner the rights of the Debtors or any other party in interest; and (3) the Liquidating Trust, if already created, shall be promptly dissolved.

**6.6     Effect of Confirmation of the Plan**

**6.6.1     Limitation of Rights of Holders of Claims**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation shall not discharge Claims against the Debtors; provided, however, that no Holder of a Claim against the Debtors may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtors, the Liquidating Trustee or property of the Estates, except as expressly provided in this Plan.

### 6.6.2    Releases

Except as otherwise provided in the Global Settlement Order, each and every entity voting to accept this Plan on account of its Allowed Claim or Interest shall be deemed to forever release and waive all claims, demands, debts, rights, causes of action and liabilities in connection with or related to any of the Debtors, the Creditors' Committee, the Chapter 11 Cases or this Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, that are based in whole or in part on any act, omission or other occurrence taking place on or prior to the Effective Date, against the Released Parties to the fullest extent permitted under applicable law. In addition, the Debtors shall be deemed to release any and all such claims, demands, debts, rights, causes of action and liabilities against the Released Parties other than themselves. Notwithstanding anything in this Plan or in the releases set forth above to the contrary, nothing herein shall be construed to release, and the Plan Proponents do not hereby release, any rights of the Plan Proponents or the Liquidating Trustee: (a) to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder; (b) to litigate Disputed Claims, including without limitation to make any claim, or demand or allege and prosecute any cause of action against any Holder of any Disputed Claims; and (c) to litigate claims and causes of action not specifically released herein, including claims and Causes of Action contained in any adversary complaint filed during the pendency of the Chapter 11 Cases that have not been withdrawn or dismissed prior to the Confirmation Date.

### 6.6.3    Injunction

Except as provided in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability against the Debtors or an Interest or other right of an equity security holder are permanently enjoined from taking any of the following actions on account of any such Claims, debts, liabilities, Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Released Parties or their property; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Released Parties or their property; (c) creating, perfecting or enforcing any lien or encumbrance against the Released Parties or their property; (d) asserting a right of subordination of any kind against any debt liability, or obligation due to the Released Parties or their property; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

### 6.6.4    Exculpation

Subject to the occurrence of the Effective Date, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases and this Plan, the solicitation of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan; provided, however, that the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; provided further that nothing in this Plan shall, or shall be deemed to, release the Exculpated Parties, or exculpate the Exculpated Parties with respect to, their respective obligations or covenants arising pursuant to this Plan.

## 6.7    Request for Waiver of Stay of Confirmation Order

This Plan shall serve as a motion seeking a waiver of the stay of the Confirmation Order imposed by Bankruptcy Rule 3020(e). Any objection to this request for waiver shall be Filed with the Bankruptcy Court and served on the parties listed in Exhibit B to this Plan on or before the Voting Deadline, or such other date as may be fixed by the Bankruptcy Court. In the event any such objections are timely Filed, a hearing with respect thereto shall occur at the Confirmation Hearing.

## ARTICLE VII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases after the Effective Date as is legally permissible, including jurisdiction to:

A.      Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the amount, allowance, priority or classification of Claims;

B.      Resolve any issues arising under the Asset Purchase Agreements or the Sale Order;

C.      Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

D.      Resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is a party or with respect to which any Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including any Cure Amount Claims;

E.      Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

F.      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and either grant or deny any applications involving any Debtor that may be pending on the Effective Date or brought thereafter;

G.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with this Plan, the Liquidating Trust Agreement, the Disclosure Statement or the Confirmation Order;

H.      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan, the Liquidating Trust Agreement or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to this Plan, the Liquidating Trust Agreement or any entity's rights arising from or obligations incurred in connection with this Plan, the Liquidating Trust Agreement or such documents;

I.      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

J.      Issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to

restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

K.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to this Plan are enjoined or stayed;

L.    Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order;

M.    Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 11 Cases;

N.    Enter a final decree or decrees closing the Chapter 11 Cases;

O.    Determine matters concerning state, local and federal Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any Disputed Claims for Taxes;

P.    Hear all matters arising out of the consummation of the Sales;

Q.    Recover all assets of the Debtors and their Estates, wherever located; and

R.    Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

### 8.1    Modification of the Plan

Subject to the restrictions on alteration, amendment and modification set forth in section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to alter, amend or modify this Plan before the Effective Date.

### 8.2    Revocation of the Plan

The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw this Plan, or if Confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against any Debtor; (b) prejudice in any manner the rights of the Debtors (or any of them), any Debtor or any other party in interest; or (c) constitute an admission of any sort by the Debtors (or any of them), any Debtor or any other party in interest.

### 8.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**8.4    Dissolution of the Creditors' Committee**

On the Effective Date, the Creditors' Committee and any other official committees appointed in the Chapter 11 Cases shall dissolve, and the members of the Creditors' Committee and their respective Professionals shall cease to have any duty, obligation or role arising from or related to the Chapter 11 Cases. The Professionals retained by the Creditors' Committee and the respective members thereof shall not be entitled to assert any Fee Claim whatsoever for any services rendered or expenses incurred after the Effective Date in their capacity as professionals for the Creditors' Committee, except to the extent necessary to File, prepare and defend any fee application.

**8.5    Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**8.6    Section 1125(e) Good Faith Compliance**

The Debtors, the Creditors' Committee and its individual members, and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

**8.7    Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflict of laws thereof.

**[This space intentionally left blank.]**

Dated: ~~August 8,~~[16] September 23,[17] 2011

Respectfully Submitted,

| | |
|---|---|
| Duke and King Acquisition Corp. (for itself and on behalf of its Affiliated Debtors) | The Official Committee of Unsecured Creditors of Duke and King Acquisition Corp. and Its Affiliated Debtor Entities |

By:_____

Name:  Rodger Head

Title:    Chief Executive Officer

By:_____

Name: William Kaye, in his capacity as the designee of The Coca-Cola Company[18]

Title:   Chair of the Committee


McDONALD HOPKINS LLC
Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027)
Michael J. Kaczka (OH 0076548)
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

-and-

FREEBORN & PETERS LLP
Aaron L. Hammer (IL 6243069)
Richard S. Lauter (IL 6182859)
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone: (312) 360-6000
Facsimile: (312) 360-6995
ahammer@freebornpeters.com
rlauter@freebornpeters.com

-and-

FREDRIKSON & BYRON, P.A.
Clinton E. Cutler (#158094)
Douglas W. Kassebaum (#386802)
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile: (612) 492-7077
ccutler@fredlaw.com
dkassebaum@fredlaw.com

MASLON EDELMAN BORMAN & BRAND, LLP
Amy J. Swedberg (#271019)
330 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Telephone: (612) 672-8200
Facsimile: (612) 672-8397
amy.swedberg@maslon.com

CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

CO-COUNSEL FOR OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

Document comparison by Workshare Professional on Thursday, September 22, 2011 4:44:21 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/DOCUME~1/sopincar/LOCALS~1/Temp/4/WDGX/10D0/OPEN/0003/2821487.DOC |
| Description | 2821487 |
| Document 2 ID | file://S:/CLIENTS/35084/00008/2922438.DOC |
| Description | 2922438 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "79.    "Plan" means this...plan of liquidation" changed to "79.        "Plan" means this...plan of liquidation" |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 1 |
| Deletions | 1 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 2 |

## EXHIBIT A

## DEFINED TERMS

As used in this Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules (as each such term is defined below), shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.      "Administrative Bar Date" means (a) May 30, 2011, for Administrative Claims arising on or before May 10, 2011; or (b) 30 days after the Effective Date for Administrative Claims arising after May 10, 2011, except as otherwise set forth in this Plan.

2.      "Administrative Bar Date Order" means the Order Establishing Bar Date for Payment of Administrative Expense Claims and Approving Form and Notice Thereof, entered on April 5, 2011 (Docket No. 202).

3.      "Administrative Claim" means a Claim against a Debtor or its Estate arising on or after the Petition Date and prior to the Effective Date for a cost or expense of administration in the Chapter 11 Cases that is entitled to priority or superpriority under sections 333, 364(c)(1), 503(b), 503(c), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under sections 328, 330(a), 331 or 333 of the Bankruptcy Code, including Fee Claims; (c) Allowed Claims, pursuant to section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtors in the 20 days immediately prior to the Petition Date and sold to the Debtors in the ordinary course of the Debtors' businesses; and (d) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930.

4.      "Allowed… Claim" or "Allowed… Interest" means an Allowed Claim or Allowed Interest, as the case may be, in the particular Class or category specified.

5.      "Allowed Claim" means:

(a)      a Claim that (i) has been listed by a particular Debtor on its Schedules as other than disputed, contingent or unliquidated and (ii) is not a Disputed Claim;

(b)      a Claim (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law and (ii) that is not a Disputed Claim; or

(c)      a Claim that is expressly allowed: (i) in any stipulation or agreed order of the Bankruptcy Court executed by the Debtors or the Liquidating Trust and the Claim Holder; (ii) in any contract, instrument or other agreement entered into in connection with this Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of this Plan.

6.      "Allowed Interest" means any Interest expressly deemed allowed by this Plan.

7.      "Assets" means all of a Debtor's property, rights and interests that are property of a Debtor's Estate pursuant to section 541 of the Bankruptcy Code.

8.      "Asset Purchase Agreements" means those certain asset purchase agreements between Cave, Crown, Heartland and Duke Acquisition, respectively; or those certain asset purchase agreements between SRAC and Duke Missouri, respectively; each of which are attached to the Sale Orders as Exhibit A.

9.      "Avoidance Actions" means, collectively and individually, preference actions, fraudulent conveyance actions and other claims or causes of action under sections 510, 542, 544, 547, 548, 549, 550, 551, 553 and other applicable provisions of the Bankruptcy Code and other similar state law and federal law claims and causes of action, whether or not such action was commenced prior to the Effective Date and not otherwise sold to a Purchaser.

10.     "Ballot" means the form or forms distributed to each Holder of an impaired Claim entitled to vote on this Plan on which the Holder indicates, among other things, either acceptance or rejection of this Plan.

11.     "Bankruptcy Code" means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to these Chapter 11 Cases.

12.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Minnesota.

13.     "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

14.     "Bar Date" means the bar date established by the Bar Date Notice, which is April 18, 2011, for most General Unsecured Claims or a bar date established by other applicable order of the Bankruptcy Court,.

15.     "Bar Date Notice" means the Notice of Chapter 11 Bankruptcy Cases, Meeting of Creditors & Deadlines filed on December 17, 2010 (Docket No. 68), as the same may be amended, modified or supplemented.

16.     "Beneficiaries" means Holders of Claims entitled to receive a distribution or other amounts pursuant to Article II of this Plan or as otherwise allowed under the terms of this Plan.

17.     "Business Day" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     "Cash" means legal tender of the United States of America and equivalents thereof.

19.     "Cash Collateral Order" means the Final Order (A) Authorizing Use of Unencumbered Cash, or, in the Alternative, Cash Collateral and (B) Granting Lien and Adequate Protection, entered on January 24, 2011 (Docket No. 138), and as subsequently modified by stipulation and agreed orders of the Bankruptcy Court on March 31, 2011 (Docket No. 195) and May 18, 2011 (Docket No. 328).

20.     "Cash Investment Yield" means the net yield earned by the applicable Disbursing Agent from the investment of Cash held pending distribution pursuant to this Plan (including any Cash received by the Disbursing Agent on account thereof), which investment shall be in a manner consistent with the Liquidating Trust Agreement.

21.     "Cause of Action" or "Causes of Action" means, individually or collectively and without limitation, any action, cause of action, liability, obligation, right to legal or equitable remedies, suit, debt, sum of money, damage, judgment, claim and demand whatsoever, whether known or unknown, matured or unmatured, disputed or undisputed and whether asserted or assertable directly or derivatively in law, equity or otherwise, including, without limitation, all Avoidance Actions.  Without limiting the generality of the foregoing and for purposes of disclosure, the term includes all claims and causes of action against officers, directors and other agents, employees and professionals arising in either tort or contract.

22.     "Cave" means Cave Enterprises Operations, LLC.

23.     "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by the Debtors in the Bankruptcy Court that are being jointly administered under Case No. 10-38652.

24.     "Claim" means a claim (as defined in section 101(5) of the Bankruptcy Code) against a Debtor.

25.     "Claims Objection Bar Date" means, for all Claims (other than Fee Claims, which are treated in Section 2.1.1.c(ii) of this Plan), the latest of: (a) 90 days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) 60 days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such a Claim.

26.     "Class" means a class of Claims, as described in Article II.

27.     "Closing Date" means May 26, 2011.

28.     "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

29.     "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket within the meaning of Bankruptcy Rules 5003 and 9021.

30.     "Confirmation Exhibits" means, collectively, the documents identified on the "Table of Confirmation Exhibits," which documents shall be Filed no later than 10 days before the Confirmation Hearing, to the extent not Filed earlier.

31.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of this Plan, as such hearing may be continued from time to time.

32.     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

33.     "Coca-Cola" means The Coca-Cola Company.

34.     "Coke Claim Retainer" means the Cash set aside prior to the Effective Date for use in resolving the Claim of Coca-Cola.

35.     "Creditors' Committee" means the statutory official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

36.     "Crown" means Crown Ventures Iowa, Inc.

37.     "Cure Amount Claim" means a Claim based upon a Debtor's monetary defaults under an Executory Contract or Unexpired Lease that is to be paid in connection with the assumption of such contract or lease under section 365 of the Bankruptcy Code by one of the Debtors in connection with this Plan.

38.     "Debtors" or "Debtor" means, individually or collectively as the case may be, (a) Duke Acquisition; (b) Duke Missouri; (c) Duke Missouri Holdings; (d) Duke Real Estate; and (e) DK Florida.

39.     "Disclosure Statement" means the second amended disclosure statement (including all exhibits and schedules thereto or referenced in this Plan) that relates to this Plan and has been prepared and distributed by the Plan Proponents, pursuant to section 1125(g) of the Bankruptcy Code, as the same may be amended, modified or supplemented.

40.     "Disputed Claim" means, for any Claim:

(d)     if no proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on a Debtor's Schedules as disputed, contingent or unliquidated or (ii) a Claim that is not listed on a Debtor's Schedules;

(e)     prior to and on the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, all Claims that have not been expressly Allowed (i) in any stipulation or agreed order entered by the Bankruptcy Court executed by the Debtors and Claim Holder; (ii) in any contract, instrument or other agreement entered into in connection with this Plan and, if prior to the Effective Date, approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the terms of this Plan; or

(f)     after the Claims Objection Bar Date, if a proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, such Claims for which the Debtors or the Liquidating Trustee have Filed an objection in the Bankruptcy Court, and such objection has not been resolved in its entirety by a Final Order or withdrawn (and for which there is no agreement with the Claim Holder to treat the Claim as a Disputed Claim for a period of time after the Claim Objection Bar Date). Notwithstanding the above, if a Claim is an Allowed Claim under the definition set forth in this Plan, it shall not also be considered to be a Disputed Claim.

41.     "Disputed Claims Reserve" means the reserve of Liquidating Trust Assets to be maintained as part of the Liquidating Trust, which reserve shall maintain such assets in trust for (a) distributions to Holders of Disputed Claims that become Allowed Claims that are not General Unsecured Claims; and (b) Pro Rata distributions to Holders of Disputed Claims that become Allowed General Unsecured Claims pursuant to the terms of this Plan.

42.    "Disputed Insured Claim" means an Insured Claim that is also a Disputed Claim.

43.    "Distribution Date" means a date selected by any Disbursing Agent in accordance with the terms of this Plan, the Liquidating Trust Agreement or other applicable documents to make distributions on account of Allowed Claims.

44.    "DK Florida" means DK Florida Holdings, Inc., a Delaware corporation.

45.    "Duke Acquisition" means Duke and King Acquisition Corp., a Delaware corporation.

46.    "Duke Missouri" means Duke and King Missouri, LLC, a Delaware limited liability company.

47.    "Duke Missouri Holdings" means Duke and King Missouri Holdings, Inc., a Delaware corporation.

48.    "Duke Real Estate" means Duke and King Real Estate, LLC, a Delaware limited liability company.

49.    "Effective Date" means a day, as determined by the Plan Proponents, that is the Business Day as soon as reasonably practicable after all conditions in Section 6.2 of this Plan have been met or waived in accordance with Section 6.3 of this Plan.

50.    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461.

51.    "Estate" means, as to each Debtor, the estate created for such Debtor in its Chapter 11 Case, pursuant to section 541 of the Bankruptcy Code.

52.    "Exculpated Parties" means the Debtors, the Liquidating Trustee, the Creditors' Committee, or any of their respective members, officers, directors, trustees, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives, acting in such capacity.

53.    "Executory Contract or Unexpired Lease" means a contract or lease to which a Debtor is a party that is subject to assumption, assumption and assignment or rejection under section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

54.    "Face Amount" means either: (a) the full stated amount claimed by the Holder of such Claim in any proof of claim Filed by the Bar Date or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; (b) if no proof of claim is Filed by the Bar Date or otherwise deemed timely Filed under applicable law, the full amount of the Claim listed on the Debtors' Schedules, provided, however, that such amount is not listed as disputed, contingent or unliquidated; or (c) the amount of the Claim (i) acknowledged by the applicable Debtor or the Liquidating Trustee in any objection Filed to such Claim, (ii) estimated by the Bankruptcy Court for such purpose pursuant to section 502(c) of the Bankruptcy Code or (iii) proposed by the Liquidating Trustee if (A) no proof of claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such amount is not listed in the Debtors' Schedules or is listed in the Debtors' Schedules as disputed, contingent or unliquidated or (B) the proof of claim specifies an unliquidated amount (in whole or in part).

55.    "Fee Carveout" means Cash in the amount of $155,000, including the Coke Claim Retainer, set aside in a segregated account prior to the funding of the Liquidating Trust in the aggregate face amount of all Fee Claims.

56.    "Fee Claim" means a Claim under sections 328, 330(a), 331, 333, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases.

57.    "File," "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

58.    "Final Distribution Date" for a particular Class of Claims means the Distribution Date upon which a final distribution to Holders of Allowed Claims in the Class are to be made.

59.    "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in these Chapter 11 Cases, or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or petition for certiorari or move, under Bankruptcy Rule 9023 and/or Rule 59 of the Federal Rules of Civil Procedure, for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceeding for a new trial, reargument or rehearing has been timely taken or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

60.    "General Unsecured Claim" means any Claim that is not an Administrative Claim, Secured Claim, Cure Amount Claim, Priority Claim, or Priority Tax Claim.

61.    "Global Settlement Order" means the Order Granting Motion for (A) Expedited Hearing and (B) an Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Comprehensive Settlement, Docket No. 294.

62.    "Heartland" means Heartland Midwest, LLC.

63.    "Holder" means a party that holds or is deemed to hold a Claim or Interest, as the case may be.

64.    "Insurance" means the applicable insurance coverage provided to the Debtors in the form of the policies described at Confirmation Exhibit 3.2.

65.    "Insurance Contract" means any policy of third party liability insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim, together with any other contracts that pertain or relate to such policy.

66.    "Insured Claim" means that portion of any Claim arising from an incident or occurrence alleged to have occurred prior to the Effective Date: (a) as to which any Insurer is obligated pursuant to the terms, conditions, limitations and exclusions of its Insurance Contract(s), to pay any judgment, settlement or contractual obligation with respect to the Debtors; or (b) that any Insurer otherwise agrees to pay as part of a settlement or compromise of a claim made under the applicable Insurance Contract(s).

67.     "Insurer" means any company or other entity that issued, or is responsible for, a policy of third-party liability insurance under which any of the Debtors could have asserted or did assert, or may in the future assert, a right to coverage for any claim under an Insurance Contract.

68.     "Interest" means the rights and interest of the holder of any instrument evidencing an ownership interest in a Debtor.

69.     "Liabilities" means any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence taking place on or prior to the Effective Date.

70.     "Liquidating Trust" means the trust established pursuant to Section 3.3 of this Plan to administer the Liquidating Trust Assets and to make distributions to Holders of Allowed Claims.

71.     "Liquidating Trust Agreement" means the trust agreement governing the Liquidating Trust, to be dated on or prior to the Effective Date, which shall be substantially in the form of Confirmation Exhibit 3.3.1.

72.     "Liquidating Trust Assets" means, collectively, all of the Debtors' Assets as of the Effective Date (excluding the Fee Carveout), including but not limited to (a) Causes of Action, including the Avoidance Actions; (b) the Unliquidated Assets; (c) Cash; (d) any and all rights to the Insurance, the proceeds thereof or the return of premiums related thereto; and (e) the residual rights to the Coke Claim Retainer (if any).  After the funding of the Liquidating Trust, the Liquidating Trust Assets shall also include any fiduciary accounting income and appreciation in trust principal.

73.     "Liquidating Trust Expenses" means any and all reasonable fees, costs and expenses incurred by the Liquidating Trust or the Liquidating Trustee (or any agent, Person, entity or professional engaged by the Liquidating Trust or the Liquidating Trustee) in connection with any of their duties under this Plan and the Liquidating Trust Agreement, including any reasonable administrative fees, attorneys' fees and expenses, insurance fees, Taxes and escrow expenses.

74.     "Liquidating Trustee" means William Kaye (or any successor trustee in his or her capacity as the trustee of the Liquidating Trust).

75.     "Notice Parties" means: (a) prior to the Effective Date, counsel for the Debtors, the Creditors' Committee and the United States Trustee; and (b) on or after the Effective Date, the United States Trustee and counsel to the Liquidating Trustee.

76.     "Other Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

77.     "Person" means any individual, firm, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other entity.

78.     "Petition Date" means December 4, 2010, the date on which the Debtors Filed their petitions for relief and commenced the Chapter 11 Cases.

79.     "Plan" means this ~~second~~[1] third[2] amended joint plan of liquidation of the Debtors and the Creditors' Committee, and all Plan Schedules and Confirmation Exhibits attached hereto or referenced in this Plan, as the same may be amended, modified or supplemented.

80.     "Plan Proponents" means collectively the Debtors and the Creditors' Committee.

81.     "Priority Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Claim, an Administrative Superpriority Claim or a Priority Tax Claim.

82.     "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

83.     "Pro Rata" means, when used with reference to a distribution of property to Holders of Allowed Claims in a particular Class or other specified group of Claims pursuant to Article II, proportionately so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of (a) the amount of property to be distributed on account of such Claim to the amount of such Claim, is the same as the ratio of (b) the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims, as the case may be, in such Class or group of Claims.  Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their Face Amount for purposes of calculating the Disputed Claims Reserve and the Pro Rata distribution of property to Holders of Allowed Claims in such Class.

84.     "Professional" means any professional employed in the Chapter 11 Cases pursuant to sections 327, 328, 333, 363 or 1103 of the Bankruptcy Code, or any professional or other entity seeking compensation or reimbursement of expenses in connection with these Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

85.     "Purchaser" or "Purchasers" means Cave, Crown, Heartland and SRAC, or any single one of them, as purchasers under their respective Asset Purchase Agreements.

86.     "Record Date" means the date of the order approving the Disclosure Statement.

87.     "Released Parties" means, collectively and individually, the Debtors, the Creditors' Committee (solely in their capacity as Creditors' Committee members), the Liquidating Trustee and the current and former officers and directors of the Debtors.

88.     "Representatives" means, with respect to any entity, such entity's successor, predecessor, officer, director, trustee, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity.

89.     "Sales" means the sales of substantially all the operating assets of the Debtors to the Purchasers, pursuant to the Asset Purchase Agreements.

90.     "Sale Orders" means those certain Orders entered by the Bankruptcy Court on May 10, 2011, approving the respective Sales to the Purchasers.

91.     "Schedules" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by a Debtor on January 10, 2011, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

92.     "Secured Claim" means a Claim that is secured by a lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) of the Bankruptcy Code and, if applicable, section 1129(b) of the Bankruptcy Code.

93.     "SRAC" means Strategic Restaurants Acquisition Company II, LLC.

94.     "Tax" means: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental, excise or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

95.     "United States Trustee" means the Office of the United States Trustee for the District of Minnesota.

96.     "Unliquidated Assets" means the Debtors' non-Cash assets remaining as of the Effective Date.

97.     "Voting Deadline" means the deadline for submitting Ballots to either accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code that is specified in the Disclosure Statement, the Ballots or related solicitation documents approved by the Bankruptcy Court.

98.     "Warren" means Warren Capital Corporation.

Document comparison by Workshare Professional on Friday, September 23, 2011
12:21:56 PM

| Input: | |
|---|---|
| Document 1 ID | file://S:/CLIENTS/35084/00008/2826727.DOC |
| Description | 2826727 |
| Document 2 ID | file://S:/CLIENTS/35084/00008/2922452.DOC |
| Description | 2922452 |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Redline Summary: | | |
|---|---|---|
| No. | Change | Text |
| 1-2 | Change | "“Parties”) in accordance...Joint Chapter 11 Plan of" changed to "“Parties”) in accordance...Joint Chapter 11 Plan of" |
| 3-4 | Change | "Committee of Unsecured...“Plan”), confirmed by" changed to "Committee of Unsecured...“Plan”), confirmed by" |
| 5-6 | Change | "infra) by the Order...Joint Chapter 11 Plan of" changed to "infra) by the Order...Joint Chapter 11 Plan of" |
| 7 | Change | "this Liquidating Trust...Liquidating Trustee" changed to "this Liquidating Trust...Liquidating Trustee" |
| 8 | Change | "4.3    No Bond" changed to "4.3    Bond" |
| 9 | Deletion | The Liquidating Trustee shall serve without bond. |
| 10 | Insertion | The Liquidating Trustee,...be paid by William |

| | | Kaye. |
|---|---|---|
| 11 | Change | "6.7     Compliance with Tax Requirements/Allocation" changed to "6.7          Compliance with Tax Requirements/Allocation" |
| 12-13 | Change | "9.2.2   Semi-Annual Reports.  Within thirty (30)" changed to "9.2.2     Quarterly Reports...Trust, shall File" |
| 14 | Moved to | with the Bankruptcy Court |
| 15 | Insertion | (and provide to Michael...report pursuant to the |
| 16 | Moved to | Liquidating Trust Agreement |
| 17 | Change | "days after" changed to "), no later than 30 days after" |
| 18 | Change | "days after June" changed to "days after March 31, June" |
| 19-20 | Change | "June 30 and December 31 of" changed to "June 30, September 30, and December 31 of" |
| 21 | Deletion | and December 31 of every...during the term of this |
| 22 | Moved from | Liquidating Trust Agreement |
| 23 | Deletion | following the Effective...a "Semi-Annual Report") |
| 24 | Moved from | with the Bankruptcy Court |
| 25-26 | Change | ".  The Semi-Annual Report...of the Liquidating Trust" changed to "each calendar year, a...of the Liquidating Trust" |
| 27-28 | Change | "of the Liquidating Trust...of the Liquidating Trust" changed to "of the Liquidating Trust...of the Liquidating Trust" |
| 29 | Change | "of the Liquidating Trust Assets." changed to "of the Liquidating Trust...of this Plan." |
| 30 | Insertion | Telephone:   952-288-2330 |
| 31 | Insertion | Facsimile:  952-288-2344 |
| 32 | Insertion | E-Mail:   rodgerhead@comcast.net |
| 33-34 | Change | "with a copy to:" changed to "With a copy to:" |

| Statistics: | |
|---|---|
| | Count |

| | |
|---|---|
| Insertions | 17 |
| Deletions | 13 |
| Moved from | 2 |
| Moved to | 2 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 34 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

*********************************************************************************

In re:                                    **JOINTLY ADMINISTERED UNDER**
                                          **CASE NO. 10-38652**

DUKE AND KING ACQUISITION CORP.,          Court File No. 10-38652

              Debtors.
                                          Court File Nos:

(includes:
Duke and King Missouri, LLC;              10-38653 (GFK)
Duke and King Missouri Holdings, Inc.;    10-38654 (GFK)
Duke and King Real Estate, LLC;           10-38655 (GFK)
DK Florida Holdings, Inc.)                10-38656 (GFK)

                                          Chapter 11 Cases
                                          Chief Judge Gregory F. Kishel

*********************************************************************************
## DUKE AND KING ACQUISITION CORP.  LIQUIDATING TRUST AGREEMENT
*********************************************************************************

Dated: _____, 2011

McDONALD HOPKINS LLC                      FREEBORN & PETERS LLP
Shawn M. Riley (OH 0037235)               Aaron L. Hammer (IL 6243069)
Scott N. Opincar (OH 0064027)             Richard S. Lauter (IL 6182859)
Michael J. Kaczka (OH 0076548)            311 South Wacker Drive, Suite 3000
600 Superior Avenue, East, Suite 2100     Chicago, Illinois 60606-6677
Cleveland, Ohio 44114-2653                Telephone: (312) 360-6000
Telephone: (216) 348-5400                 Facsimile: (312) 360-6995
Facsimile: (216) 348-5474                 ahammer@freebornpeters.com
sriley@mcdonaldhopkins.com                rlauter@freebornpeters.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com               -and-

-and-

FREDRIKSON & BYRON, P.A.                  MASLON EDELMAN BORMAN &
Clinton E. Cutler (#158094)               BRAND, LLP
Douglas W. Kassebaum (#386802)            Amy J. Swedberg (#271019)
200 South Sixth Street, Suite 4000        330 Wells Fargo Center
Minneapolis, Minnesota 55402              90 South Seventh Street
Telephone: (612) 492-7000                 Minneapolis, Minnesota 55402-4140
Facsimile: (612) 492-7077                 Telephone: (612) 672-8200
ccutler@fredlaw.com                       Facsimile: (612) 672-8397
dkassebaum@fredlaw.com                    amy.swedberg@maslon.com

*Counsel for Debtors and Debtors-in-Possession*     *Counsel to the Official Committee*
                                                    *of Unsecured Creditors*

{2922452:}

## DUKE AND KING ACQUISITION CORP. LIQUIDATING TRUST AGREEMENT

### PREAMBLE

This Agreement (the "*Liquidating Trust Agreement*") is made this _____ day of _____, 2011, by and among Duke and King Acquisition Corp. and its affiliated debtors and debtors-in-possession (the "*Debtors*"), the Official Committee of Unsecured Creditors (the "*Creditors' Committee*"), and William Kaye, not individually, but solely as trustee of this Liquidating Trust (the "*Liquidating Trustee*" and, collectively with the Debtors and the Creditors' Committee, the "*Parties*") in accordance with the ~~Second~~[1] *Third*[2] *Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors* Dated ~~August 8,~~[3] *September 23,*[4] 2011 (the "*Plan*"), confirmed by the Bankruptcy Court (as defined *infra*) by the *Order Confirming the* ~~Second~~[5] *Third*[6] *Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors*, dated _____, 2011 (the "*Confirmation Order*").[1]

### R E C I T A L S :

A.     On December 4, 2010, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Minnesota (the "*Bankruptcy Court*") and commenced their chapter 11 cases (the "*Chapter 11 Cases*");

B.     On December 29, 2010, the Office of the United States Trustee (the "*U.S. Trustee*") appointed the Creditors' Committee, which consists of the following five (5) unsecured creditors:  The Coca-Cola Company (Creditors' Committee Chair); K-Two, LLC; Gilbert Mechanical Contractors; Julie Oanh T. Nguyen; and P&C Rental LLP;

C.     The Plan and the Confirmation Order provide, among other things, that the Liquidating Trustee shall be empowered to make distributions, pursuant to the Plan, the Confirmation Order and this Liquidating Trust Agreement, to Holders of Claims entitled to receive a distribution or other amounts pursuant to Article II of the Plan or as otherwise allowed under the terms of the Plan (each a "*Beneficiary*" and collectively, the "*Beneficiaries*");

D.     The Liquidating Trust is created pursuant to, and to effectuate, the Plan and the Confirmation Order;

E.     The Liquidating Trust is created on behalf of, and for the sole benefit of, the Beneficiaries;

F.     The powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by this Liquidating Trust Agreement, the Plan, applicable orders issued by the Bankruptcy Court (including the Confirmation Order), and general fiduciary obligations of trustees under Delaware law;

G.     Pursuant to the terms and conditions of the Plan, the Confirmation Order and this Liquidating Trust Agreement, the Liquidating Trustee shall administer all assets of the Liquidating Trust,

---

[1]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

including, without limitation (a) Causes of Action, including the Avoidance Actions; (b) the Unliquidated Assets; (c) Cash; (d) any and all rights to the Insurance, the proceeds thereof or the return of premiums related thereto; and (e) the residual rights to the Coke Claim Retainer (if any) (collectively, the "*Liquidating Trust Assets*"); provided, however, that the Liquidating Trust Assets shall expressly exclude the Fee Carveout and the Coke Claim Retainer;

H.     This Liquidating Trust Agreement is intended to supplement and complement the Plan and the Confirmation Order; provided, however, that if any of the terms and/or provisions of this Liquidating Trust Agreement conflict with the terms and/or provisions of the Plan or the Confirmation Order, the Plan and the Confirmation Order shall govern; and

I.     The Liquidating Trust is intended to qualify as a "liquidating trust" under the Internal Revenue Code of 1986 and the regulations promulgated thereunder, specifically Treas. Reg. § 301.7701-4(d), and as such is a "grantor trust" for federal income Tax purposes with the Beneficiaries treated as the grantors and owners of the Liquidating Trust Assets. In particular:

(i)     The Liquidating Trust is organized for the primary purpose of liquidating the Liquidating Trust Assets, with no objective to conduct a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trust shall not be deemed a successor of the Debtors for Tax purposes;

(ii)     The Liquidating Trust provides that the Beneficiaries of the Liquidating Trust will be treated as the grantors of the Liquidating Trust and deemed owners of the Liquidating Trust Assets. This Liquidating Trust Agreement requires the Liquidating Trustee to file returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a);

(iii)     This Liquidating Trust Agreement provides for consistent valuations of the transferred property by the Liquidating Trustee and the Beneficiaries, and those valuations shall be used for federal income Tax purposes;

(iv)     All of the Liquidating Trust's income is to be treated as subject to Tax on a current basis to the Beneficiaries who will be responsible for payment of any Tax due;

(v)     The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills; and

(vi)     The Liquidating Trustee is required to make a distribution at least once per twelve-month period to the Beneficiaries in the order of priorities set forth in this Liquidating Trust Agreement based on the Liquidating Trust's net income, except that the Liquidating Trustee may retain an amount of net income reasonably necessary to maintain the value of the Liquidating Trust Assets or to satisfy claims and contingent liabilities (including Disputed Claims).

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan and the Confirmation Order, and expressly incorporating the Recitals into the terms and provisions of this Liquidating Trust Agreement, the Parties agree as follows:

## ARTICLE I
## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1    Transfer of Assets to the Liquidating Trust

1.1.1    Pursuant to the Plan, the Debtors, the Creditors' Committee and the Liquidating Trustee hereby establish the Liquidating Trust on behalf of the Beneficiaries, to be treated as the grantors and deemed owners of the Liquidating Trust Assets, and the Debtors and their Estates hereby transfer, assign and deliver to the Liquidating Trust, on behalf of the Beneficiaries, all of their right, title and interest in the Liquidating Trust Assets, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. The Liquidating Trust agrees to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Beneficiaries, subject to the terms of the Plan, the Confirmation Order and this Liquidating Trust Agreement.

1.1.2    All rights in connection with the vesting and transfer of the Liquidating Trust Assets, including the Causes of Action, will vest with the Liquidating Trust; provided, however, that the transfer of any attorney-client privileges, work-product protection or other privilege or immunity attaching to any documents or communications of the Debtors' or the Creditors' Committee's professionals (whether written or oral), shall relate only to those Causes of Action that the Liquidating Trustee intends to prosecute. All bank accounts established by the Debtors will be transferred to and held in the Liquidating Trust on behalf of the Beneficiaries, subject to the provisions of the Plan and this Liquidating Trust Agreement. The Debtors, the Creditors' Committee and the Liquidating Trustee are authorized to take all necessary actions to effectuate the foregoing.

1.2    Title to Assets

1.2.1    Within seven (7) days of the Effective Date, unless extended by mutual consent of the Debtors and the Creditors' Committee, the Debtors and their Estates shall transfer the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Beneficiaries. Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all assets and properties transferred to the Liquidating Trust pursuant to the Plan shall vest in the Liquidating Trust in accordance with section 1141 of the Bankruptcy Code. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to such Liquidating Trust Assets or the Liquidating Trust.

1.2.2    For federal income Tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Beneficiaries) shall treat the transfer of the Liquidating Trust Assets by the Debtors and their Estates to the Liquidating Trust as a transfer of such assets by the Debtors and their Estates to the Holders of Allowed Claims entitled to distributions under the Plan and the Confirmation Order, followed by a transfer by such Holders to the Liquidating Trust. Thus, the Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income Tax purposes.

1.2.3    To any extent not effectuated by the Confirmation Order, the Debtors and the Creditors' Committee shall execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Debtors and the Creditors' Committee shall

take or cause to be taken such further action as may reasonably be necessary or appropriate, to vest or perfect in or confirm to the Liquidating Trust title to and possession of the Liquidating Trust Assets.

1.3     Valuation of Assets

The Liquidating Trust, to the extent that the Liquidating Trustee deems it necessary or appropriate, may conduct a good faith valuation of the Liquidating Trust Assets, and shall make such valuation available to the Beneficiaries by filing a report of such valuation with the Bankruptcy Court promptly after its completion.  The valuation shall be used consistently by all parties (including the Debtors, the Liquidating Trustee and the Beneficiaries) for federal income Tax purposes.  Any dispute regarding the valuation of the Liquidating Trust Assets shall be resolved by the Bankruptcy Court.

1.4     Claims Against the Liquidating Trust Assets

The Liquidating Trust Assets shall be subject to the claims of the Liquidating Trustee, its Professionals (as defined *infra*) and Non-Professionals (as defined *infra*) and U.S. Trustee fees.  The Liquidating Trustee shall be entitled to reimburse such persons out of any available Cash in the Liquidating Trust, for reasonable compensation and actual reasonable out-of-pocket expenses, and against and from any and all loss, liability, expense or damage, which each may sustain in good faith and without willful misconduct, gross negligence, fraud or, solely in the case of the Liquidating Trustee, breach of fiduciary duty other than negligence, in the exercise and performance of any of the powers and duties of the Liquidating Trustee.

## ARTICLE II
## APPOINTMENT OF THE LIQUIDATING TRUSTEE

William Kaye is hereby appointed to serve as the initial Liquidating Trustee under the Plan and hereby accepts this appointment and agrees to serve in such capacity, effective upon the date of this Liquidating Trust Agreement.  The Liquidating Trustee shall record and account for all proceeds received upon any disposition of the Liquidating Trust Assets and shall hold such proceeds for distribution in accordance with this Liquidating Trust Agreement and the Plan. [7] Any successor Liquidating Trustee shall be appointed as set forth in **Section 4.6** in the event any Liquidating Trustee is removed or resigns pursuant to this Liquidating Trust Agreement, or if such Liquidating Trustee otherwise vacates the position.

## ARTICLE III
## DUTIES AND POWERS OF THE LIQUIDATING TRUSTEE

3.1     Generally

The Liquidating Trustee shall be responsible for administering the Liquidating Trust Assets and taking actions on behalf of, and representing, the Liquidating Trust.  The Liquidating Trustee shall have the authority to bind the Liquidating Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Liquidating Trustee and not individually.

3.2     Scope of Authority

Within the limitations set forth herein, the responsibilities and authority of the Liquidating Trustee shall include, without limitation:  (a) collecting and liquidating the Liquidating Trust Assets and distributing the Liquidating Trust Assets to the Beneficiaries in accordance with the Plan, the Confirmation Order and this Liquidating Trust Agreement; (b) facilitating the prosecution or settlement of objections to, or estimations of, Claims in accordance with, but subject to the limitations set forth in, the Plan; (c) analyzing, prosecuting and settling Causes of Action (including Avoidance Actions); (d) filing all required Tax returns and paying Taxes and all other obligations on behalf of the Liquidating Trust

from funds held by the Liquidating Trust; (e) filing Semi-Annual Reports; (f) providing periodic reports to the Bankruptcy Court and other parties-in-interest on the status of the Claims resolution process, the status of the prosecution of Causes of Action (including Avoidance Actions), distributions to Beneficiaries and the financial status of the Liquidating Trust; and (g) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidating Trustee pursuant to the Plan, this Liquidating Trust Agreement, any Bankruptcy Court order or as may otherwise be necessary and proper to carry out the provisions of the Plan and the Confirmation Order.

3.3     Fiduciary Obligations to the Liquidating Trust and Beneficiaries

The Liquidating Trustee's actions as Liquidating Trustee will be held to the same standard as a trustee of a trust under Delaware law.  His or her fiduciary obligations to the Liquidating Trust and its Beneficiaries are the same fiduciary obligations that the trustee of a trust owes to that trust and its beneficiaries under Delaware law.

3.4     Powers

In connection with the administration of the Liquidating Trust, except as otherwise set forth in this Liquidating Trust Agreement, the Plan or the Confirmation Order, the Liquidating Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidating Trust, without further authorization from the Bankruptcy Court.  Without limiting, but subject to, the foregoing, the Liquidating Trustee is expressly authorized, but not required, unless otherwise provided in this Liquidating Trust Agreement and subject to the limitations contained herein, in the Plan and in the Confirmation Order, to:

(a)     hold legal title (on behalf of the Liquidating Trust as Liquidating Trustee, but not individually) to the Liquidating Trust Assets;

(b)     effect all actions and execute all agreements, instruments and other documents necessary to implement the Plan;

(c)     protect and enforce the rights to the Liquidating Trust Assets vested in the Liquidating Trust by the Plan and the Confirmation Order by any method deemed appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     invest funds (in the manner set forth in **Section 3.8**), make distributions, and pay Taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee and/or the Liquidating Trust in accordance with the Plan and the Confirmation Order;

(e)     prosecute, defend, compromise, adjust, arbitrate, abandon or otherwise deal with and settle, in accordance with the terms set forth herein and in the Plan and Confirmation Order, all actions arising under state law or the Bankruptcy Code, specifically, but not limited to, Avoidance Actions arising under or related to Chapter 5 of the Bankruptcy Code and other Causes of Action;

(f)     determine, compromise and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

(g)     file, if necessary, any and all Tax and information returns with respect to the Liquidating Trust and pay Taxes properly payable by the Liquidating Trust, if any, commensurate with the Liquidating Trust's classification as a grantor trust pursuant to Treas. Reg. § 1.671-4(a);

{2922452:}                                          7

(h)      make all Tax withholdings and make Tax elections by and on behalf of the Liquidating Trust;

(i)      send annually to each Beneficiary a separate statement stating the Beneficiary's share of income, gain, loss, deduction or credit and instruct all such Beneficiaries to report such items on their federal Tax returns;

(j)      in reliance upon the Claims List (as defined *infra*) provided by the Debtors, maintain on the Liquidating Trustee's books and records, a register evidencing the beneficial interest herein held by each Beneficiary;

(k)      administer, reconcile, compromise, estimate and/or resolve Claims in accordance with, but subject to the limitations set forth in, the Plan (including the filing of any objections to such Claims as appropriate);

(l)      establish such reserves for Disputed Claims, Taxes, assessments, Professional fees and other expenses of administration of the Liquidating Trust as may be necessary and appropriate for the proper operation of matters incident to the Liquidating Trust;

(m)      make distributions as provided for in this Liquidating Trust Agreement, the Plan and the Confirmation Order;

(n)      open and maintain bank accounts on behalf of or in the name of the Liquidating Trust;

(o)      pay expenses and make disbursements necessary to preserve, liquidate and enhance the Liquidating Trust Assets;

(p)      purchase such insurance coverage as the Liquidating Trustee deems necessary and appropriate with respect to the liabilities and obligations of the Liquidating Trustee (in the form of an errors and omissions policy, fiduciary policy or otherwise);

(q)      purchase such insurance coverage as the Liquidating Trustee deems necessary and appropriate with respect to real and personal property which may be or may become Liquidating Trust Assets;

(r)      retain and pay Professionals and Non-Professionals as provided for in **Article X** of this Liquidating Trust Agreement to assist the Liquidating Trust and/or the Liquidating Trustee with respect to its responsibilities to the extent permitted by this Liquidating Trust Agreement, the Plan and the Confirmation Order;

(s)      take such actions as are necessary, appropriate or desirable to close or dismiss the Chapter 11 Cases;

(t)      take such actions as are necessary, appropriate or desirable to terminate the existence of the Debtors to the extent not already effectuated pursuant to the Plan;

(u)      terminate and dissolve the Liquidating Trust pursuant to and in accordance with the terms of the Plan and this Liquidating Trust Agreement; and

{2922452:}                                    8

(v)     assume such other powers as may be vested in or assumed by the Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan, the Confirmation Order or this Liquidating Trust Agreement.

3.5     <u>General Authority of the Liquidating Trustee</u>

Unless specifically stated otherwise herein, the Liquidating Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Liquidating Trust Agreement or specifically contemplated in the Plan and the Confirmation Order.

3.6     <u>Limitation of Liquidating Trustee's Authority; No On-Going Business</u>

The Liquidating Trustee shall have no power or authority except as set forth in this Liquidating Trust Agreement, in the Plan or in the Confirmation Order.  For federal Tax purposes, the Liquidating Trustee shall not be authorized to engage in any trade or business with respect to the Liquidating Trust Assets except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidating Trust Assets as required by applicable law and consistent with the treatment of the Liquidating Trust as a liquidating trust under Treas. Reg. § 301.7701-4(d), to the extent such actions are permitted by this Liquidating Trust Agreement.

3.7     <u>Other Activities of the Liquidating Trustee</u>

The Liquidating Trustee shall be entitled to be employed by third parties while serving as Liquidating Trustee for the Liquidating Trust; <u>provided</u>, <u>however</u>, that such employment shall not include actions or representations of parties that are adverse to the Liquidating Trust.

3.8     <u>Investment and Safekeeping of Liquidating Trust Assets</u>

All monies and other assets received by the Liquidating Trust shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Liquidating Trust Assets.  The Liquidating Trustee shall promptly invest any such monies in the manner set forth in this **Section 3.8**, but shall otherwise be under no liability for interest or income on any monies received by the Liquidating Trust hereunder and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Liquidating Trustee.  Investment of any monies held by the Liquidating Trust shall be administered in accordance with the Liquidating Trustee's general duties and obligations hereunder and in view of the Liquidating Trustee's general fiduciary duties under Delaware law.  The rights and powers of the Liquidating Trustee to invest the Liquidating Trust Assets transferred to the Liquidating Trust, the proceeds thereof or any income earned by the Liquidating Trust, shall be limited to the right and power to:  (a) invest such Liquidating Trust Assets (pending distributions in accordance with the Plan and the Confirmation Order) in (i) short-term direct obligations of, or obligations guaranteed by, the United States of America or (ii) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (b) deposit such assets in demand accounts at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "*Permissible Investments*"); <u>provided</u>, <u>however</u>, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the Internal Revenue Service ("*IRS*") guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

3.9     Authorization to Expend Liquidating Trust Assets

The Liquidating Trustee may expend assets of the Liquidating Trust to the extent necessary to: (a) satisfy and discharge liabilities and to maintain the value of the Liquidating Trust Assets during liquidation; (b) pay Liquidating Trust Expenses (including, but not limited to, any Taxes imposed on the Liquidating Trust, and fees and expenses in connection with litigation or compensation of the Liquidating Trustee in accordance with **Section 4.1** below); (c) satisfy other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with this Liquidating Trust Agreement, the Plan or the Confirmation Order; and (d) make distributions to Beneficiaries on account of their Allowed Claims in accordance with this Liquidating Trust Agreement, the Plan and the Confirmation Order.

# ARTICLE IV
## LIQUIDATING TRUSTEE

4.1     Compensation of the Liquidating Trustee

The Liquidating Trustee shall be entitled to receive, but is not required to accept, reasonable compensation for services rendered on behalf of the Liquidating Trust.  All compensation and other amounts payable to the Liquidating Trustee shall be paid out of the Liquidating Trust Assets.  The Liquidating Trust shall reimburse the Liquidating Trustee for its actual reasonable out-of-pocket expenses incurred including, without limitation, postage, telephone and facsimile charges upon receipt of periodic billings.  All reimbursement for expenses payable to the Liquidating Trustee shall be paid from the Liquidating Trust Assets in priority over any distributions to Beneficiaries to be made under the Plan.  If the Liquidating Trust Assets are insufficient to fully satisfy the amounts payable to, or other obligations owing to, the Liquidating Trustee, the Beneficiaries shall be required to disgorge their Pro Rata share of any interim distributions received from the Liquidating Trust, until all such amounts have been fully paid and all such obligations have been fully satisfied.  If the Liquidating Trustee dies or becomes disabled, then such former Liquidating Trustee (or his or her estate, successor or assigns) shall be entitled to any remaining unpaid compensation and reimbursement due hereunder.  The initial Liquidating Trustee has elected to forgo receipt of compensation (but not reimbursement of out-of-pocket expenses).

4.2     Term of Service

The Liquidating Trustee shall serve until the earliest of:  (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under this Liquidating Trust Agreement and the Plan; (b) termination of the Liquidating Trust in accordance with this Liquidating Trust Agreement; and (c) the Liquidating Trustee's death, resignation or removal.

4.3     ~~No~~ [8] Bond

~~The Liquidating Trustee shall serve without bond.~~ [9]

The Liquidating Trustee, or any successor Liquidating Trustee appointed under Section 4.6 of the Liquidating Trust Agreement, shall be obligated to give a bond or surety or other security for the performance of any of his duties under the Plan or this Liquidating Trust Agreement in an amount as ordered by the Bankruptcy Court at the hearing on Confirmation of the Plan.  All costs and expenses of procuring any such bond shall not be deemed trust administrative expenses of the Liquidating Trust and shall be paid by William Kaye. [10]

4.4     Removal

The Liquidating Trustee may be removed for cause at any time by any person upon entry of an order of the Bankruptcy Court following a noticed motion for removal served upon the Liquidating Trustee (and his or her Professionals); provided, however, that the Liquidating Trustee may not be removed until a successor Liquidating Trustee has been named. Any person seeking removal through an order of the Bankruptcy Court must demonstrate to the Bankruptcy Court that such removal is appropriate for cause. The removal shall be effective on the date specified in the order. "Cause" shall include, without limitation: (a) the undue prolongation of the duration of the Liquidating Trust and of distributions of the Liquidating Trust Assets to the Beneficiaries; (b) gross negligence, fraud or willful misconduct (as determined by a Final Order) in connection with the affairs of the Liquidating Trust; (c) a physical and/or mental disability that substantially prevents the Liquidating Trustee from performing the duties of a Liquidating Trustee hereunder; or (d) breach of fiduciary duty or an unresolved conflict of interest.

4.5     Resignation

The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the parties entitled to notice under **Section 13.10** hereof. The resignation will be effective on the later of: (a) the date specified in the notice; (b) the date that is thirty (30) days after the date the notice is delivered; and (c) the date the successor Liquidating Trustee accepts his or her appointment as such.

4.6     Appointment of Successor Trustee

4.6.1     In the event the Liquidating Trustee resigns pursuant to this Liquidating Trust Agreement, the Liquidating Trustee shall designate a successor Liquidating Trustee (who shall be appointed by motion before the Bankruptcy Court) within fifteen (15) days before the proposed resignation is to take effect. In the event the Liquidating Trustee is removed or upon the Liquidating Trustee's death, any Beneficiary may petition the Bankruptcy Court to appoint a proposed successor Liquidating Trustee within thirty (30) days after the occurrence of the vacancy. If the Liquidating Trustee or any Beneficiary fails to so appoint a successor Liquidating Trustee within the prescribed periods, then: (a) if the Liquidating Trustee is resigning, any Beneficiary may appoint a successor Liquidating Trustee; or (b) if the Liquidating Trustee is removed or upon the Liquidating Trustee's death, the Bankruptcy Court may appoint a successor Liquidating Trustee.

4.6.2     Any successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment and shall deliver such acceptance to the Bankruptcy Court. Thereupon, such successor Liquidating Trustee shall, without any further act, become vested with all of the properties, rights, powers, trusts and duties of his or her predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that the removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidating Trustee all the estates, properties, rights, powers and trusts of the removed or resigning Liquidating Trustee.

4.7     Liquidating Trust Continuance

The resignation or removal of the Liquidating Trustee will not terminate the Liquidating Trust or revoke any existing agency created pursuant to this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee.

**ARTICLE V**
**LIQUIDATING TRUST BENEFICIARIES**

5.1     Identification of Beneficiaries

The beneficial interests of each Beneficiary in the Liquidating Trust shall be recorded and set forth in the Claims List maintained by the Liquidating Trustee.

5.2     Beneficial Interest Only

The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary or the Debtors to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided herein.

5.3     Ownership of Beneficial Interests Hereunder

Each Beneficiary shall own a beneficial interest in the Liquidating Trust Assets equal in proportion to the Pro Rata share of such Beneficiary's Allowed Claim in accordance with the Plan.

5.4     Evidence of Beneficial Interest

Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the Claims List.

5.5     Limitation on Transferability

It is understood and agreed that the beneficial interests in the Liquidating Trust shall be non-assignable during the term of this Liquidating Trust Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Liquidating Trustee, and the Liquidating Trustee may continue to pay all amounts to or for the benefit of the assigning Beneficiary until receipt of proper notification and proof of assignment by operation of law.  The Liquidating Trustee may rely upon such proof without the requirement of any further investigation.  Any notice of a change of beneficial interest ownership as permitted by operation of law shall be forwarded to the Liquidating Trustee by registered or certified mail pursuant to the notice provisions set forth in **Section 13.10** hereof.  The notice shall be executed by both the transferee and the transferor, and the signatures of the parties shall be acknowledged before a notary public and as required by Bankruptcy Rule 3001(e).  The notice must clearly describe the interest to be transferred.  The Liquidating Trustee may conclusively rely upon such signatures and acknowledgments as evidence of such transfer without the requirement of any further investigation.

5.6     Conflicting Claims

If any conflicting claims or demands are made or asserted with respect to the Liquidating Trust Assets, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of the Liquidating Trust Assets resulting in adverse claims or demands being made in connection with such assets, then, in any of such events, the Liquidating Trustee shall be entitled to refuse to comply with any such conflicting claims or demands.  In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the Liquidating Trust Assets that are the subject of the claims or demands involved, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any of such parties for its refusal to comply with any of such conflicting claims or demands, nor shall the

Liquidating Trustee be liable for interest on any funds that it may so withhold. The Liquidating Trustee shall be entitled to refuse to act until either: (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (b) all differences have been resolved by a valid written agreement among all of such parties and the Liquidating Trustee.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     Timing and Methods of Distributions

6.1.1     Generally.  The Liquidating Trustee, on behalf of the Liquidating Trust, or such other entity as may be designated by the Liquidating Trustee, on behalf of the Liquidating Trust, will make all distributions to the Beneficiaries as set forth in, and as required by, this Liquidating Trust Agreement, the Plan and the Confirmation Order. Unless the entity or Person receiving a payment agrees otherwise, the Liquidating Trustee, in its sole discretion, will make any payment in Cash to be made by the Liquidating Trust by check drawn on a domestic bank or by wire transfer from a domestic bank.

6.1.2     Priority of Distributions.  After payment of all unpaid Liquidating Trust Expenses, the Liquidating Trustee in its good faith judgment and based on available Liquidating Trust Assets, shall distribute all remaining Cash to Holders of Allowed Claims, Pro Rata. The Liquidating Trustee may withhold from amounts distributable to any entity any and all amounts, determined in the Liquidating Trustee's reasonable discretion to be required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof, or to otherwise facilitate the administration of the Liquidating Trust.

6.1.3     Distributions by the Liquidating Trustee.  Subject to the provisions of this **Article VI**, the Liquidating Trustee shall make an initial distribution (the "*Initial Distribution*") of Cash income (including as Cash for this purpose, all cash equivalents) to the Beneficiaries on or within 180 days of the Effective Date, which time may be extended by Order of the Bankruptcy Court. The Liquidating Trustee shall make subsequent distributions from time to time in accordance with the provisions of this **Article VI**, but such additional distributions shall occur at least once per year after the date of the Initial Distribution. The Liquidating Trustee shall make distributions to the Beneficiaries of all net Cash income (including as Cash for this purpose, all cash equivalents) from time to time at such time intervals as decided by the Liquidating Trustee (but within a reasonable time after creation of a Disputed Claims Reserve (as defined *infra*) determined to be sufficient to make Pro Rata distributions on Disputed Claims and to pay the Liquidating Trust Expenses in full), pursuant to the terms of the Plan and the Confirmation Order. The Liquidating Trustee may cause the Liquidating Trust to retain an amount of net Cash proceeds or net Cash income reasonably necessary to maintain the value of its assets, as set forth in, and to effectuate the provisions of, the Plan and the Confirmation Order. The Liquidating Trustee may withhold from the amount distributable from the Liquidating Trust at any time to any Person (except with respect to the IRS) such sum or sums as may be sufficient to pay any Tax or Taxes or other charge or charges that have been or may be imposed on such Person or upon the Liquidating Trust with respect to the amount distributable or to be distributed under the income Tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for in this Liquidating Trust Agreement, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement, and the Liquidating Trustee may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this **Section 6.1.3**. Notwithstanding the foregoing, but without prejudice to the Liquidating Trustee's rights hereunder, such Person shall have the right with respect to the United States, or any state, or any political subdivision of either, to contest the imposition of any Tax or other charge by reason of any distribution hereunder.

{2922452:}                                          13

6.1.4   <u>Claims List</u>.  At least ten (10) days prior to the Effective Date, the Debtors will deliver to the Liquidating Trustee a list of all Claims scheduled by the Debtors and/or filed against the Debtors as of such date, the addresses of all Holders of such Claims as of a record date that is not more than fifteen (15) days prior to the date of the list, the designation and amount of each such Claim as disputed or not disputed, fixed or contingent and liquidated or unliquidated, and the Employer or Taxpayer Identification Number as assigned by the IRS for each Holder (the "*Claims List*").  The Liquidating Trustee shall be entitled to rely upon the Claims List in calculating and making distributions from the Liquidating Trust as provided herein; <u>provided</u>, <u>however</u>, that the Claims List shall be adjusted from time to time by the Liquidating Trustee as necessary to maintain its accuracy.  The Liquidating Trustee shall also revise the Claims List from time to time upon receipt of notice from a Beneficiary notifying the Liquidating Trustee of a change of address or stating that its Claim has been transferred to a new Beneficiary, that the new Beneficiary has complied with any applicable provisions of Bankruptcy Rule 3001(e) (and providing evidence thereof) and setting forth the name and address of such new Beneficiary.  The Liquidating Trustee shall establish the revised Claims List that is to be used in conjunction with any particular distribution no less than fourteen (14) days prior to the date of such distribution.  Nothing herein shall impair or otherwise affect the Liquidating Trustee's right to object to the allowance of Claims as provided in **Section 7.1**.

6.2   <u>Delivery of Distributions</u>

Subject to the provisions of Bankruptcy Rule 2002(g), and except as otherwise provided herein, distributions and deliveries to Holders of record of Allowed Claims shall be made at the address of each such Holder set forth on the Claims List.

6.3   <u>No Postpetition Interest on Claims</u>

Except as expressly provided in the Plan, the Confirmation Order or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or as required by applicable bankruptcy law, postpetition interest will not accrue on account of any Claim and the Liquidating Trustee will not distribute postpetition interest on account of any Claim.

6.4   <u>No Post-Confirmation Date Interest on Claims</u>

Post-Confirmation Date interest will not accrue on account of any Claim, and the Liquidating Trustee will not distribute post-Confirmation Date interest on account of any Claim.

6.5   <u>Undeliverable Distributions</u>

If any distribution with respect to an Allowed Claim is returned to the Liquidating Trustee as undeliverable, no further distributions shall be made to such Holder, unless the Liquidating Trustee is notified in writing of the Claim Holder's current address.  Upon receipt of the notification, the Liquidating Trustee will remit all missed distributions to the Claim Holder without interest.  All claims for undeliverable distributions must be made on or before the first anniversary of the Confirmation Date of the Plan.  If a claim is not made within that time, all unclaimed distributions will revert to the Liquidating Trust and be distributed Pro Rata to the remaining Beneficiaries of the Liquidating Trust.  Nothing contained in the Plan, the Confirmation Order or this Liquidating Trust Agreement shall require the Liquidating Trustee to attempt to locate any Beneficiary.

6.6   <u>Lapsed Distributions</u>

Any distribution that has not cleared within ninety (90) days of the date of the distribution will lapse.  With respect to any lapsed distributions, the lapsed distribution will revert to the Liquidating Trust and be distributed to the remaining Beneficiaries of the Liquidating Trust.

6.7    [11]Compliance with Tax Requirements/Allocation

To the extent applicable, the Liquidating Trust shall comply with all Tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan and the Confirmation Order shall be subject to such withholding and reporting requirements.  For Tax purposes, distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

6.8    Fractional Dollars; *De Minimis* Distributions

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under this Liquidating Trust Agreement, the Plan or the Confirmation Order would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.  The Liquidating Trustee shall not be required to make any payment of less than twenty-five dollars ($25) with respect to any Allowed Claim.  To the extent that any interim distribution is not paid to a Beneficiary on the grounds that it amounts to less than twenty-five dollars ($25), the amount of such withheld distribution shall be reserved for addition to any future distribution or as the final distribution to such Beneficiary, and may be made at that time if the total distribution is at least twenty-five dollars ($25).

6.9    Setoffs

The Liquidating Trustee may, pursuant to sections 502(d) or 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Beneficiary and the distributions to be made pursuant to the Plan and the Confirmation Order on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Liquidating Trust may hold against a Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Liquidating Trust or the Estates of any such claims, rights and causes of action that they may possess against such Holder.

6.10    Preservation of Debtors' Subordination Rights

All subordination rights and claims relating to the subordination by the Debtors or their Estates of the Claims of any Beneficiary shall remain valid and enforceable by the Liquidating Trust, unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise, and may be asserted by the Liquidating Trustee as necessary or appropriate.

6.11    Waiver by Creditors of All Subordination Rights

Except as otherwise ordered by the Bankruptcy Court, each Beneficiary shall be deemed to have waived all contractual, legal and equitable subordination rights that they may have, whether arising under general principles of equitable subordination, section 510(c) of the Bankruptcy Code or otherwise, with respect to any and all distributions to be made under the Plan and the Confirmation Order, and all such contractual, legal or equitable subordination rights that each Beneficiary has individually and collectively, with respect to any such distribution, made pursuant to the Plan and the Confirmation Order shall be discharged and terminated, and all actions related to the enforcement of such subordination rights will be permanently enjoined.

# ARTICLE VII
## PROCEDURES FOR RESOLUTION OF DISPUTED,
## CONTINGENT AND UNLIQUIDATED CLAIMS

### 7.1     Objections to Claims; Prosecution of Disputed Claims

The Liquidating Trustee, on behalf of the Liquidating Trust, may file objections to Claims, even if such Claims were scheduled by the Debtors as undisputed, liquidated and non-contingent. The Liquidating Trustee shall have the authority to file, settle, compromise or withdraw any objections to Claims, without approval of the Bankruptcy Court. The Liquidating Trustee shall file objections to Claims on or before the latest of: (a) ninety (90) days after the Effective Date, subject to extension by order of the Bankruptcy Court; (b) forty-five (45) days after the Filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by this Plan, the Confirmation Order, the Bankruptcy Rules or a Final Order for objecting to such a Claim.

### 7.2     Estimation of Claims

The Liquidating Trustee, on behalf of the Liquidating Trust, may at any time request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors, the Creditors' Committee or the Liquidating Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trust may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 7.3     Disputed Claims

7.3.1    If the Liquidating Trustee has objected to a Claim, distributions will be withheld only with respect to the amount actually in dispute, and such objection shall not affect payments or distributions under the Plan on the undisputed portion of the Claim.

7.3.2    The Liquidating Trustee shall maintain, in accordance with the Liquidating Trustee's powers and responsibilities under the Plan, the Confirmation Order and this Liquidating Trust Agreement, a Disputed Claims Reserve.

7.3.3    Once a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall, as soon as practicable following the entry of a Final Order regarding the allowance of such Claim, and to the extent of the allowance of such Claim, distribute to the Holder thereof, from the Disputed Claims Reserve, such amount of Liquidating Trust Assets as would have been distributed to such Holder if the allowed portion of its Claim had been an Allowed Claim on the Confirmation Date, less such Holder's share of any Taxes paid or payable by the Disputed Claims Reserve. If a Disputed Claim becomes disallowed, in whole or part, the Liquidating Trustee shall reallocate the disallowed amount previously set aside in the Disputed Claims Reserve in connection with such Disputed Claim among the

Beneficiaries and the Disputed Claims Reserve on behalf of the Disputed Claims not yet resolved, as applicable, all to be distributed pursuant to **Article VI** of this Liquidating Trust Agreement.

# ARTICLE VIII
## LIABILITY AND EXCULPATION PROVISIONS

8.1    Standard of Liability

In no event shall the Liquidating Trustee or the Liquidating Trust, or their respective Professionals, Non-Professionals or representatives, be held personally liable for any claim asserted against the Liquidating Trust or the Liquidating Trustee, or any of their Professionals, Non-Professionals or representatives. Specifically, the Liquidating Trustee, the Liquidating Trust and their respective Professionals, Non-Professionals or representatives shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith. Notwithstanding the foregoing, the Liquidating Trust or the Liquidating Trustee, or any of their Professionals, Non-Professionals or representatives may be held personally liable to the extent that the action taken or omitted to be taken by each of the same or their respective Professionals, Non-Professionals or representatives is determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, fraud or, solely in the case of the Liquidating Trustee, breach of fiduciary duty other than negligence. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, fraud or a breach of fiduciary duty.

8.2    Reliance by Liquidating Trustee

Except as otherwise provided in **Article III** hereof:

(a)    the Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order or other paper or document reasonably believed by him or her to be genuine and to have been signed or presented by the proper party or parties except as otherwise provided in the Plan or the Confirmation Order; and

(b)    the Liquidating Trustee shall not be liable for any action reasonably taken or not taken by him or her in accordance with the advice of a Professional retained pursuant to **Article X**, and Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Liquidating Trust Agreement, and the Liquidating Trustee shall have no personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidating Trustee are determined by a Final Order to be solely due to the Liquidating Trustee's own gross negligence, willful misconduct, fraud or breach of fiduciary duty, other than negligence.

8.3    Exculpation

8.3.1    From and after the Effective Date, the Liquidating Trustee and its Professionals, Non-Professionals and representatives shall be and hereby are exculpated by all Persons, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Liquidating Trust Agreement, the Plan, the Confirmation Order or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final

Order to be solely due to their own respective gross negligence, willful misconduct, fraud or, solely in the case of the Liquidating Trustee, breach of fiduciary duty, other than negligence.

        8.3.2   No Holder of a Claim or other party-in-interest will be permitted to pursue any claim or cause of action against the Liquidating Trustee or its Professionals, Non-Professionals or representatives for making payments in accordance with the Plan or the Confirmation Order or for implementing the provisions of the Plan or the Confirmation Order.  Any act taken or not taken by the Liquidating Trustee with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct or fraud or, solely in the case of the Liquidating Trustee, a breach of fiduciary duty, other than negligence.

8.4    <u>Indemnification</u>

        The Liquidating Trust shall indemnify, defend and hold harmless the Liquidating Trustee and its respective Professionals, Non-Professionals and representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including reasonable attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud or, solely in the case of the Liquidating Trustee, breach of fiduciary duty, other than negligence, to the fullest extent permitted by applicable law.

# ARTICLE IX
## ADMINISTRATION

9.1    <u>Purpose of the Liquidating Trust</u>

        The Liquidating Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Accordingly, the Liquidating Trust shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, make timely distributions to the Beneficiaries and not unduly prolong the duration of the Liquidating Trust.

9.2    <u>Books and Records</u>

        9.2.1   <u>Maintenance of Books and Records</u>.  The Liquidating Trustee shall maintain, with respect to the Liquidating Trust and the Beneficiaries, books and records relating to the assets and income of the Liquidating Trust and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidating Trust in such detail and for such period of time as the Liquidating Trustee determines may be necessary to make full and proper accounting in respect thereof in accordance with this **Article IX** and to comply with applicable provisions of law.  Except as otherwise provided herein, in the Plan, or in the Confirmation Order, nothing in this Liquidating Trust Agreement requires the Liquidating Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets.  Subject to all applicable privileges, the Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Liquidating Trust Agreement, under the Plan and the Confirmation Order, or otherwise, upon thirty (30) days' prior written notice delivered to the Liquidating Trustee, to request a reasonable inspection (as determined by the Liquidating Trustee) of such books and records; <u>provided</u>, <u>however</u>, that, if so requested, such Beneficiary shall:  (a) first enter into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee; (b) make such

other reasonable arrangements as requested by the Liquidating Trustee; and (c) bear all costs and expenses of such inspection.

9.2.2   ~~Semi-Annual Reports.   Within thirty (30)~~[12]Quarterly Reports The Liquidating Trustee, on behalf of the Liquidating Trust, shall File[13] with the Bankruptcy Court[14] (and provide to Michael R. Fadlovich, Trial Attorney, U.S. Department of Justice, Office of the United States Trustee, 1015 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, and any other party entitled to receive any such report pursuant to the[15] Liquidating Trust Agreement[16]), no later than 30[17] days after March 31, [18]June 30[19]30, September 30,[20] and December 31 of ~~every calendar year during the term of this~~[21] ~~Liquidating Trust Agreement~~[22] ~~following the Effective Date, the Liquidating Trustee shall file a report (each a "~~*Semi-Annual Report*~~")~~[23] ~~with the Bankruptcy Court~~[24]   ~~The Semi-Annual Report shall set forth:  (a) all distributions to Beneficiaries during the period covered by such Semi-Annual Report; (b) a summary~~[25]each calendar year, a quarterly report regarding the administration of property subject to its ownership and control pursuant to this Plan, distributions made by it, fees and expenses[26] of the Liquidating Trust ~~deposits and disbursements during the period covered by such Semi-Annual Report; and (c)~~[27]paid in any such quarterly period,[28] a summary of the Liquidating Trust Assets, and other matters relating to the implementation of this Plan[29].

### 9.3   Security Interests

The Liquidating Trustee, its respective Professionals and Non-Professionals and the U.S. Trustee are hereby granted a first-priority lien on, and security interest in, the Liquidating Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, to be retained by or otherwise due hereunder to each of the above.  The Liquidating Trustee shall cause the Liquidating Trust to take such actions and execute such documents as the Liquidating Trustee, its respective Professionals and Non-Professionals and the U.S. Trustee deem appropriate to perfect the security interests granted hereunder. The Liquidating Trustee is authorized to execute and deliver all documents on behalf of the Liquidating Trust to accomplish the purposes of this Liquidating Trust Agreement, the Plan and the Confirmation Order.

### 9.4   Compliance with Laws

Any and all distributions of Liquidating Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state Tax and securities laws.

### ARTICLE X
### PROFESSIONALS AND NON-PROFESSIONALS

### 10.1   Retention of Professionals and Non-Professionals

10.1.1   Retention of Professionals.   The Liquidating Trustee, upon the later to occur of the Effective Date and acceptance by the Liquidating Trustee of its appointment in accordance with the Plan and this Liquidating Trust Agreement, shall have the right to retain its own professionals without any further approval by any court or otherwise including, without limitation, legal counsel, accountants, experts, advisors, consultants, investigators, appraisers, real estate brokers, auctioneers and other professionals as the Liquidating Trustee deems appropriate (collectively, the "*Professionals*").  Such Professionals shall be compensated in accordance with **Section 10.3** hereof.  The Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in the Chapter 11 Cases for efficiency.

10.1.2    Retention of Non-Professionals.  The Liquidating Trustee, upon the later to occur of the Effective Date and acceptance by the Liquidating Trustee of its appointment in accordance with the Plan and this Liquidating Trust Agreement, shall have the right to retain non-professionals without any further approval by any court or otherwise including, without limitation, employees, independent contractors or other agents as the Liquidating Trustee deems appropriate (the "*Non-Professionals*").  Such Non-Professionals shall be compensated in accordance with **Section 10.3** hereof.  The Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors and agents of any party in the Chapter 11 Cases for efficiency.

10.2    Retention of Liquidating Trustee's Legal Counsel

The initial Liquidating Trustee has chosen to retain Freeborn & Peters LLP as its counsel.  Such retention is made pursuant to this **Article X** without any further approval by any court.  Freeborn & Peters LLP is a Professional as that term is used herein, and shall be compensated in accordance with **Section 10.3** hereof.

10.3    Compensation of Professionals and Non-Professionals

Each Professional and Non-Professional shall submit monthly invoices to the Liquidating Trustee for its fees and expenses incurred in connection with services requested by, and provided to, the Liquidating Trustee.  The Liquidating Trustee may pay the reasonable fees and expenses of such Professionals and Non-Professionals as an expense of the Liquidating Trust without application to the Bankruptcy Court, subject to the following procedure:  Each Professional and Non-Professional shall serve its fee invoice (which shall contain detailed time entries) upon the Liquidating Trustee no more frequently than once a month.  The Liquidating Trustee shall have until fourteen (14) days after its receipt of an invoice to review such invoice and deliver to the applicable Professional or Non-Professional, any objections thereto.  Any objection to an invoice (each an "*Objection*") must:  (a) be in writing; and (b) set forth the precise nature of the Objection and the amount of objectionable fees and expenses at issue.  If no Objection is timely filed, served and received in respect of an invoice, then the Professional or Non-Professional shall be entitled to payment from the Liquidating Trust on such invoice.  If a timely Objection is filed, the Professional or Non-Professional shall be entitled to payment from the Liquidating Trust of only that portion of the invoice that is not the subject of the Objection, and the Liquidating Trustee and the affected Professional or Non-Professional may attempt to resolve on a consensual basis that portion of the invoice that is the subject of the Objection.  If the parties are unable to reach a resolution of the Objection, the affected Professional or Non-Professional may file a request for payment of the disputed amount with the Bankruptcy Court and serve such request on the Liquidating Trustee on regular notice, and the Liquidating Trustee or the affected Professional or Non-Professional may request, by motion, that the Bankruptcy Court adjudicate and rule on the Objection.

**ARTICLE XI**
**TAXES**

11.1    Tax Returns and Payments

The Liquidating Trustee will be responsible for:  (a) the preparation and timely filing of all required federal, state and local Tax returns for the Liquidating Trust and the Debtors; (b) the timely payment of any Taxes shown on such returns as owing by the Liquidating Trust or the Debtors (as applicable) from the applicable Liquidating Trust Assets; and (c) the preparation and timely distribution to the Beneficiaries of any necessary federal, state or local information returns.  The Liquidating Trustee will retain all Tax returns and supporting documentation until the expiration of the applicable statute of

limitations.  The Liquidating Trustee may request an expedited determination of the Taxes owed by the Debtors, the Liquidating Trust or any Disputed Claims Reserve under section 505(b) of the Bankruptcy Code for any Tax return for which such determination may be requested.

### 11.2    Liquidating Trust

The Liquidating Trustee will file Tax returns pursuant to Treas. Reg. § 1.671-4(a) on the basis that the Liquidating Trust is a grantor trust that is a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d) and related regulations.  Pursuant to such provisions, for federal income Tax purposes, the Liquidating Trustee will allocate to the Beneficiaries their applicable shares of any income or loss of the Liquidating Trust Assets, and such Beneficiaries will be subject to Tax on the Liquidating Trust Assets' taxable income on a current basis.  As soon as reasonably practicable after the close of each calendar year, the Liquidating Trustee will send each affected Beneficiary a statement setting forth such Beneficiary's share of the Liquidating Trust's income, gain, deduction, loss and credit for the year and will instruct the Beneficiary to report all such items on his, her or its Tax return for such year and pay any Tax due with respect thereto.

### 11.3    Disputed Claims Reserve

The Liquidating Trustee will file all applicable Tax and other returns and statements for the Disputed Claims Reserve in accordance with the requirements for discrete trusts taxed pursuant to section 641, *et seq.* of the Internal Revenue Code or as "disputed ownership funds" within the meaning of Treas. Reg. § 1.468B-9(b)(1), as applicable.  In addition, the Liquidating Trustee will pay from the applicable Liquidating Trust Assets on a current basis any Taxes owed on any net income or gain of such Disputed Claims Reserve.

### 11.4    Tax Withholding and Reporting; Liability for Taxes

The Liquidating Trustee (and its designees) will comply with all applicable Tax withholding and reporting requirements imposed on it or on the Liquidating Trust by any governmental unit, and all distributions pursuant to the Plan will be subject to applicable withholding and reporting requirements. The Liquidating Trustee (and its designees) will be authorized to take any actions that may be necessary or appropriate to comply with such Tax withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding Taxes or establishing any other mechanism the Liquidating Trustee believes is reasonable and appropriate, including requiring Holders of Claims to submit appropriate Tax and withholding certifications.  To the extent any Claim Holder fails to submit appropriate Tax and withholding certifications as required by the Liquidating Trustee, such Claim Holder's distribution may, in the Liquidating Trustee's reasonable discretion, be deemed undeliverable and be subject to the provisions of the Plan and this Liquidating Trust Agreement with respect to undeliverable distributions.  Each Person or entity receiving (or deemed to receive) a distribution pursuant to the Plan will have sole responsibility for the payment of any Taxes imposed on it.

## ARTICLE XII
## TERMINATION OF THE LIQUIDATING TRUST

### 12.1    Duration and Extension

The Liquidating Trust will terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidating Trust for a

finite period if it is necessary to the liquidating purpose thereof. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained at least six (6) months prior to the expiration of such extended term; provided, however, that prior to requesting any such extension, the Liquidating Trustee must receive an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the trust as a grantor trust for federal income Tax purposes.

### 12.2   Termination Upon Distribution of All Liquidating Trust Assets

The Liquidating Trust will terminate and the Liquidating Trustee will have no additional responsibility in connection therewith except as may be required to effectuate such termination under relevant law and except as described in **Section 12.4** hereof, upon the latest of: (a) the payment of all costs, expenses and obligations incurred in connection with administering the Liquidating Trust; (b) the distribution of all remaining Liquidating Trust Assets; (c) the closure or dismissal of the Chapter 11 Cases; and (d) the completion of any necessary or appropriate reports, Tax returns or other documentation determined by the Liquidating Trustee, in its reasonable discretion, to be necessary, appropriate or desirable, in each case pursuant to and in accordance with the Plan, the Confirmation Order and this Liquidating Trust Agreement.

### 12.3   Diligent Administration

The Liquidating Trustee shall: (a) not unduly prolong the duration of the Liquidating Trust; (b) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidating Trust Assets; (c) effect the distribution of the Liquidating Trust Assets to the Beneficiaries in accordance with the terms hereof; and (d) endeavor to terminate the Liquidating Trust as soon as practicable and without derogating from the Plan or this Liquidating Trust Agreement. Prior to and upon termination of the Liquidating Trust, the Liquidating Trustee shall distribute the Liquidating Trust Assets to the Beneficiaries in accordance with their distribution rights under the Plan and the Confirmation Order, subject to the provisions set forth herein. If any distributions of the Liquidating Trust are not duly claimed, the Liquidating Trustee shall dispose of all such distributions in accordance with the Plan, the Confirmation Order and this Liquidating Trust Agreement.

### 12.4   Other Termination Procedures

Upon termination of this Liquidating Trust, the Liquidating Trustee will file a written notice with the Bankruptcy Court disclosing the Liquidating Trust's termination. Notwithstanding the foregoing, after the termination of the Liquidating Trust, the Liquidating Trustee will have the power to exercise all the rights, powers and privileges herein conferred solely for the purpose of liquidating and winding up the affairs of the Liquidating Trust. Except as otherwise provided under the Plan or this Liquidating Trust Agreement, for a period of five (5) years after the distribution of all of the Liquidating Trust Assets, the Liquidating Trustee will retain the books, records and files that have been delivered to or created by the Liquidating Trustee, at which time the Liquidating Trustee may dispose of such books, records and files in any manner that the Liquidating Trustee deems appropriate. Except as otherwise specifically provided herein after termination of this Liquidating Trust Agreement, the Liquidating Trustee shall have no further duties or obligations hereunder.

# ARTICLE XIII
# MISCELLANEOUS PROVISIONS

### 13.1   Intention of Parties To Establish a Grantor Trust

This Liquidating Trust Agreement is intended to create a grantor trust for United States federal income Tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

### 13.2    Preservation of Privilege

In connection with the rights, claims and Causes of Action that constitute the Liquidating Trust Assets, any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Creditors' Committee, on the one hand, and the Liquidating Trustee, on the other hand, are authorized to take all necessary actions to effectuate the transfer of such privileges.  For the avoidance of doubt, neither the Liquidating Trustee nor the Liquidating Trust shall be treated as a successor to the Debtors or their Estates for any purpose.

### 13.3    Cooperation

The Debtors and their Professionals shall provide the Liquidating Trustee with access to or copies of such of their books and records as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers under this Liquidating Trust Agreement, the Plan or the Confirmation Order, and all reasonable costs and fees of the Debtors' and their Professionals relating to their compliance with this **Section 13.3** shall be paid by the Liquidating Trust.  All third parties in possession of the Debtors' books and records shall provide the Liquidating Trustee with similar cooperation, and the Liquidating Trustee shall have the right to seek appropriate relief from the Bankruptcy Court to the extent that a third party unreasonably refuses to cooperate with the Liquidating Trustee's requests.

### 13.4    Payment of Statutory Fees

Following the transfer of all Liquidating Trust Assets to the Liquidating Trust on and after the Effective Date and through the date that a final decree is entered in the Chapter 11 Cases, the Liquidating Trust shall be obligated to pay any U.S. Trustee fees pursuant to 28 U.S.C. § 1930(a)(6) on account of the Estates.

### 13.5    Prevailing Party

In the event of a dispute regarding the provisions of this Liquidating Trust Agreement or the enforcement thereof, the prevailing party shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

### 13.6    Implied Authority of the Liquidating Trustee

No person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of Liquidating Trust Assets.

### 13.7    Confidentiality

The Liquidating Trustee, its employees, Professionals and Non-Professionals (each a "*Confidential Party*" and collectively the "*Confidential Parties*") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their

capacity as a Confidential Party, of or pertaining to any entity to which any of the Liquidating Trust Assets relate; provided, however, that such information may be disclosed if: (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties; (b) was available to the Confidential Parties on a non-confidential basis prior to its disclosure to the Confidential Parties pursuant to this Liquidating Trust Agreement; (c) becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with the Debtors or the Liquidating Trust, provided that the source is not also bound by a confidentiality agreement with the Debtors or the Liquidating Trust; or (d) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.   In the event that any Confidential Party is requested to divulge confidential information pursuant to subparagraph (d), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee to allow the Liquidating Trustee sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidating Trustee in making any such objection, including, but not limited to, appearing in any judicial or administrative proceeding in support of the Liquidating Trustee's objection to such disclosure.

13.8    Governing Law; Submission to Jurisdiction; Service of Process

This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of law.   The Bankruptcy Court will have exclusive jurisdiction over any dispute arising out of or in connection with the transactions contemplated by this Liquidating Trust Agreement.   The parties to this Liquidating Trust Agreement consent to the exclusive jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) and irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such dispute in the Bankruptcy Court or that any such dispute brought in the Bankruptcy Court has been brought in an inconvenient forum.   This Liquidating Trust Agreement is subject to any order or act of the Bankruptcy Court applicable hereto. Process may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court.   Without limiting the foregoing, each party to this Liquidating Trust Agreement agrees that service of process on that party may be made upon the designated Person or entity at the address provided in **Section 13.10** hereof and will be deemed to be effective service of process on that party.

13.9    Severability

If any provision of this Liquidating Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Liquidating Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

13.10    Notices

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered via personal delivery, first-class mail (unless registered or certified mail is required), facsimile or  electronic mail to the addresses as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**Liquidating Trustee**:

William Kaye
JLL Consultants, Inc.
31 Rose Lane
East Rockaway, New York  11518
Telephone:  516-374-3705
Facsimile:  _____
E-Mail:  _____

with a copy to:

Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6000
Facsimile: 312-360-6995
E-mail: ahammer@freebornpeters.com
        rlauter@freebornpeters.com

**Debtors**:

Rodger Head
Duke and King Acquisition Corp
12281 Nicollet Avenue South
Burnsville, Minnesota  55337
Telephone:  952-288-2330[30]
Facsimile:  952-288-2344[31]
E-Mail:  rodgerhead@comcast.net[32]

~~with~~[33]With[34] a copy to:

Scott N. Opincar, Esq.
McDonald Hopkins LLC
600 Superior Avenue, East, Suite 2100
Cleveland, Ohio  44114
Telephone:  216-348-5400
Facsimile:  216-348-5474
E-Mail:  sopincar@mcdonaldhopkins.com

13.11   Notices if to a Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on the Claims List.

13.12   Headings

The Article and Section headings contained in the Liquidating Trust Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Liquidating Trust Agreement or of any term or provision thereof.

13.13   Counterparts and Facsimile Signatures

This Liquidating Trust Agreement may be executed in counterparts and a facsimile or other electronic form of signature shall be of the same force and effect as an original.

13.14   Amendment or Waiver

Any substantive provision of this Liquidating Trust Agreement may be materially amended or waived by the Liquidating Trustee, with the approval of the Bankruptcy Court upon notice and an opportunity for a hearing; provided, however, that no change may be made to this Liquidating Trust Agreement that would adversely affect the federal income Tax status of the Liquidating Trust as a "grantor trust," if applicable.  Technical or non-material amendments to or waivers of portions of this Agreement may be made by the Liquidating Trustee without the approval of the Bankruptcy Court, as necessary, to clarify this Liquidating Trust Agreement or to enable the Liquidating Trust to effectuate the terms of this Liquidating Trust Agreement.

13.15   Intervention

On the Effective Date, and without requirement of obtaining any order of the Bankruptcy Court, the Liquidating Trustee shall be deemed to have intervened or substituted as plaintiff, moving, defendant or additional party, as appropriate, in any adversary proceeding, contested matter, Claim objection or other motion that was filed prior to the Effective Date, where the subject matter of such action involves any Disputed Claim, any Liquidating Trust Asset or any Claim, to the extent such Claim impacts the Liquidating Trust Assets.

*[Remainder of Page Intentionally Blank]*

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**LIQUIDATING TRUSTEE**

By: _____
William Kaye, not individually, but solely as
trustee of the Liquidating Trust

**DUKE AND KING ACQUISITION CORP.**

By: _____
Rodger Head
Its President and Chief Executive Officer

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: _____
Its Chair

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In re: | **JOINTLY ADMINISTERED UNDER CASE NO. 10-38652** |
| DUKE AND KING ACQUISITION CORP., | Court File No. 10-38652 |
| Debtors. | |
| | Court File Nos: |
| (includes: | |
| Duke and King Missouri, LLC; | 10-38653 (GFK) |
| Duke and King Missouri Holdings, Inc.; | 10-38654 (GFK) |
| Duke and King Real Estate, LLC; | 10-38655 (GFK) |
| DK Florida Holdings, Inc.) | 10-38656 (GFK) |
| | Chapter 11 Cases |
| | Chief Judge Gregory F. Kishel |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR ORDER GRANTING
(I) EXPEDITED HEARING AND (II) DEEMED ACCEPTANCE OF THE THIRD
AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
DATED SEPTEMBER 23, 2011**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),
together with the Official Committee of Unsecured Creditors (the "Committee," and together
with the Debtors, the "Movants"), intend to file a modified plan, as more fully described in the
Joint Motion for Order Granting (I) Expedited Hearing and (II) Deemed Acceptance of the Third
Amended Joint Chapter 11 Plan of Liquidation of the Debtors and Official Committee of
Unsecured Creditors, dated September 23, 2011 (the "Motion") and accompanying blacklined
exhibit. The Modified Plan does not adversely affect the interests of any creditor who voted in
favor of the Plan[1] Accordingly, the Movants request that the Court determine that holders of
claims that voted to accept the Plan be deemed to have accepted the Modified Plan.

---

[1] Capitalized terms not defined in this memorandum of law have the meanings ascribed to them in the Motion.

## <u>ARGUMENT</u>

**I.      CAUSE EXISTS TO REDUCE NOTICE OF THE HEARING**

Local Rule 9006-1(a) provides that moving papers shall be filed and delivered not later than ten days before the hearing.  However, subsection (d) provides that the Court may reduce notice on the hearing for cause.

Here, cause exists to reduce notice of the hearing.  As described below, none of the changes in the Modified Plan adversely impact any holders of claims.  Accordingly, limited notice of the changes is sufficient.

**II.     THE COURT SHOULD DETERMINE THAT THE MODIFICATIONS DO NOT ADVERSELY CHANGE THE TREATMENT OF ANY CLAIM OF ANY CREDITOR OR OTHER PARTY WHO HAS NOT ACCEPTED THE MODIFICATIONS IN WRITING.**

Bankruptcy Code section 1127 provides in relevant part:

(a)      The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

.   .   .   .

(d)      Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

Federal Rules of Bankruptcy Procedure 3019(a) provides:

[A]fter a plan has been accepted and before its confirmation, the proponent may file a modification of the plan.  If the court finds after hearing on notice to the trustee, any committee appointed under the Code and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

15.    In addition, Local Rule 3019-1 provides that "[t]he proponent of a plan in a Chapter 11 or 12 case may file a modified plan any time before confirmation." Presently, there are two kinds of changes in the Modified Plan: (1) that the Liquidating Trustee be required to post a bond, in an amount to be determined by the Court, at the proposed Liquidating Trustee's own personal expense, and (2) that the Liquidating Trustee be required to file quarterly reports with the Court regarding the administration of property subject to its ownership and control pursuant to the Modified Plan. Neither of these two changes modifies the substance of the Plan, and both benefit creditors by providing additional protections to beneficiaries of the Liquidating Trust and additional oversight over the actions of the Liquidating Trustee.

The proposed changes to the Plan will only improve the protections afforded to creditors and will not affect the treatment of Class 3 unsecured claims. As a result, the Modified Plan does not adversely affect the treatment of the claims of creditors or equity security holders in any class under the Plan. *See In re TransWorld Airlines*, 185 B.R. 302, 322 (Bankr. E.D. Mo. 1995); *In re American Solar King Corp.,* 90 B.R. 808, 823-26 (Bankr. W.D. Texas 1988); *In re Mount Vernon Plaza Community Urban Redevelopment Corporation I,* 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987). Thus, the Court should deem the Modified Plan to be accepted by creditors and equity security holders who have voted in favor of the Plan.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

For the foregoing reasons, the Movants respectfully request that the Court enter the relief sought in the Motion.


September 23, 2011

FREDRIKSON & BYRON, P.A.

*/e/ Douglas W. Kassebaum*
Clinton E. Cutler (#158094)
Douglas W. Kassebaum (#386802)
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Phone (612) 492-7000
Fax (612) 492-7077
ccutler@fredlaw.com
dkassebaum@fredlaw.com

– and –

McDONALD HOPKINS LLC

Shawn M. Riley (OH 0037235)
Scott N. Opincar (OH 0064027)
Michael J. Kaczka (OH 0076548)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Phone (216) 348-5400
Fax (216) 348-5474
sriley@mcdonaldhopkins.com
sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION

FREEBORN & PETERS LLP

*/e/ Aaron L. Hammer*
Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone:  (312) 360-6000
Facsimile:  (312) 360-6995
ahammer@freebornpeters.com
rlatuer@freebornpeters.com

– and –

MASLON EDELMAN BORMAN & BRAND, LLP

Amy J. Swedberg, Esq.
330 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-4140
Telephone:  (612) 672-8200
Facsimile:  (612) 672-8397
amy.swedberg@maslon.com


ATTORNEYS FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

{2923752:}

4

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**********************************************************************

In re:                                                    **JOINTLY ADMINISTERED UNDER**
                                                                **CASE NO. 10-38652**

DUKE AND KING ACQUISITION CORP.,                   Court File No. 10-38652

                        Debtors.
                                                        Court File Nos:
(includes:
Duke and King Missouri, LLC;                            10-38653 (GFK)
Duke and King Missouri Holdings, Inc.;                  10-38654 (GFK)
Duke and King Real Estate, LLC;                         10-38655 (GFK)
DK Florida Holdings, Inc.)                              10-38656 (GFK)


                                                        Chapter 11 Cases
                                                        Chief Judge Gregory F. Kishel

**********************************************************************

### ORDER GRANTING EXPEDITED HEARING AND DEEMING ACCEPTANCE OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS DATED SEPTEMBER 23, 2011

**********************************************************************

This case came before the court on expedited motion seeking deemed acceptance of the

Third Amended Joint Chapter 11 Plan of Liquidation of the Debtors and Official Committee of

Unsecured Creditors dated September 23, 2011 (the "Third Amended Plan"). Based on all the

files, records, and proceedings herein, the Court being advised in the premises:

    IT IS ORDERED:

    1.       The debtors' motion for expedited relief is granted.

    2.       Those holders of claims who voted to accept the Second Amended Joint Chapter

11 Plan of Liquidation of the Debtors and Official Committee of Unsecured Creditors dated

August 8, 2011, are deemed to have accepted the Third Amended Plan.

Dated:                                    _____
                                          Gregory F. Kishel
                                          Chief United States Bankruptcy Judge